# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEOGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| CLAUDIA OLTEAN, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| TMX FINANCE CORPORATE SERVICES, INC., | ) ) ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Claudia Oltean ("Plaintiff"), through her undersigned counsel, brings this action against TMX Finance Corporate Services, Inc.. ("TMX" or "Defendant") pursuant to the investigation of her attorneys, personal knowledge as to herself and her own acts and otherwise upon information and belief, and alleges as follows:

## INTRODUCTION

1.       TMX is an affiliate company of TitleMax, TitleBucks, and InstaLoan, title loan lenders and title pawn lenders who do business in sixteen states.

2.       On or about March 30, 2023, TMX announced that it had been the recipient of a hack and exfiltration of sensitive personal information ("SPI") involving approximately 4,822,580 individuals[1] who have used Defendant's services in the past (the "Data Breach").

3.       TMX stated that the hack and exfiltration occurred in "early December 2022".[2]

---

[1]       https://apps.web.maine.gov/online/aeviewer/ME/40/179ab0ce-2c43-4119-ae5a-db766d4be3e0.shtml, last accessed April 4, 2023.
[2] *Id.*

4.      TMX reported that this SPI included "name, date of birth, passport number, driver's license number, federal/state identification card number, tax identification number, Social Security Number and/or financial account information, and other information such as phone number, address, and email address."[3]

5.      Plaintiff and Class members now face a present and imminent lifetime risk of identity theft, which is heightened here by the loss of Social Security numbers.

6.      The information stolen in cyber-attacks allows the modern thief to assume victims' identities when carrying out criminal acts such as:

- Filing fraudulent tax returns;
- Using your credit history;
- Making financial transactions on behalf of victims, including opening credit accounts in victims' names;
- Impersonating victims via mail and/or email;
- Impersonating victims in cyber forums and social networks;
- Stealing benefits that belong to victims; and
- Committing illegal acts which, in turn, incriminate victims.

7.      Plaintiff's and Class members' SPI was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the SPI of Plaintiff and Class members.

8.      As of this writing, there exist many class members who have no idea their SPI has been compromised, and that they are at significant risk of identity theft and various other forms of personal, social, and financial harm.  The risk will remain for their respective lifetimes.

9.      Plaintiff brings this action on behalf of all persons whose SPI was compromised as a result of Defendant's failure to: (i) adequately protect consumers' SPI, (ii) adequately warn its

_____

[3] *Id.*

current and former customers and potential customers of its inadequate information security practices, and (iii) effectively monitor its platforms for security vulnerabilities and incidents (the "Class"). Defendant's conduct amounts to negligence and violates state statutes.

10.    Plaintiff and similarly situated individuals have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished inherent value of SPI; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their SPI; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) deprivation of rights they possess under California data privacy laws; and (v) the continued and certainly an increased risk to their SPI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the SPI.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

12.    This Court has personal jurisdiction over Defendant because Defendant's principal places of business is located within this District.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from this District. Defendant resides within this judicial district and a substantial part of the events giving rise to the claims alleged herein occurred within this judicial district.

## PARTIES

14.     Plaintiff Claudia Oltean is a natural person residing in Jacksonville, Florida.  On or about April 3, 2023, Plaintiff was informed via letter dated March 30, 2023 that she had been a victim of the Data Breach.

15.     Defendant TMX Finance Corporate Services, Inc. is a Delaware corporation with its principal place of business at 15 Bull Street, Suite 200, Savannah, GA, 31401.

## FACTUAL ALLEGATIONS

16.     Defendant is an affiliate of a series of title loan and title pawn companies.  On information and belief, these title loan and title pawn companies use Defendant to store the SPI of their customers.

17.     In the normal course of business, Defendant and/or its affiliates collect SPI from individuals who take out various loans with these affiliates.  This SPI includes Social Security Numbers, driver's license numbers, passport numbers, bank account numbers, routing numbers, credit or debit card numbers.  TMX and/or its affiliates also collect customers' full names, dates of birth, addresses, phone numbers, and other contact information.

18.     InstaLoan's Privacy Policy (for example) states, "[t]o protect our personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings."[4]

19.     On or about March 30, 2023, Defendant announced:

> On February 13, 2023, we detected suspicious activity on our systems and promptly took steps to investigate the incident. As part of that investigation, global forensic cybersecurity experts were retained. Based on the investigation to date, the earliest known breach of TMX's systems started in early December 2022. On March 1, 2023, the investigation confirmed that information may have been acquired between February 3, 2023 – February 14, 2023. We promptly began a

---

[4] https://www.tmxdisclosures.com/instaloan/privacy-policy, last accessed April 4, 2023.

review of potentially affected files to determine what information may have been involved in this incident. We notified the FBI but have not delayed this notification for any law enforcement investigation."[5]

20.    TMX conceded that the hacker gained access, but states that it "believes the incident has been contained."[6]

21.    As of this writing, Defendant has offered minimal concrete information on the steps it has taken or specific efforts made to reasonably ensure that such a breach cannot or will not occur again.  It has merely stated, "We have implemented additional security features, such as additional endpoint protection and monitoring, as well as resetting all employee passwords."[7]

22.    Defendant is offering a wholly-inadequate solitary year of credit monitoring from Experian IdentityWorks to all affected customers, including Plaintiff and the Class.

23.    This response is entirely inadequate to Plaintiff and class members who now potentially face several years of heightened risk from the theft of their SPI and who may have already incurred substantial out-of-pocket costs in responding to the Data Breach.

24.    Defendant had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class members, to keep their SPI confidential and to protect it from unauthorized access and disclosure.

25.    Plaintiff and Class members provided their SPI to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

26.    Defendant's data security obligations were particularly important given the

---

[5]     https://apps.web.maine.gov/online/aeviewer/ME/40/179ab0ce-2c43-4119-ae5a-db766d4be3e0.shtml, last accessed April 4, 2023.
[6] *Id.*
[7] *Id.*

substantial increase in cyber-attacks and/or data breaches preceding the date of the breach.

27.    Indeed, data breaches, such as the one experienced by Defendant, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendant's industry, including Defendant.

28.    According to the Federal Trade Commission ("FTC"), identity theft wreaks havoc on consumers' finances, credit history, and reputation and can take time, money, and patience to resolve.[8]  Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank and finance fraud.[9]

29.    The SPI of Plaintiff and members of the Classes was taken by hackers to engage in identity theft or and or to sell it to other criminals who will purchase the SPI for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

30.    Defendant knew, or reasonably should have known, of the importance of safeguarding the SPI of Plaintiff and members of the Class, including Social Security numbers, dates of birth, and other sensitive information, as well as of the foreseeable consequences that would occur if Defendant's data security systems were breached, including, specifically, the significant costs that would be imposed on Plaintiff and members of the Class a result of a breach.

---

[8] *See Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (Apr. 2013), https://dss.mo.gov/cd/older-youth-program/files/taking-charge-what-to-do-if-identity-is-stolen.pdf, last accessed April 4, 2023

[9] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id*.

31.     Plaintiff and members of the Class now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their SPI.

32.     The injuries to Plaintiff and members of the Class were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the SPI of Plaintiff and members of the Class.

33.     The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

34.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their networks' vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

35.     The FTC further recommends that companies not maintain SPI longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

36.     The FTC has brought enforcement actions against businesses for failing to protect consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an

unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

37.    Defendant failed to properly implement basic data security practices, and its failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer SPI constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

38.    A number of industry and national best practices have been published and should have been used as a go-to resource and authoritative guide when developing Defendant's cybersecurity practices.

39.    Best cybersecurity practices include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

40.    Upon information and belief, Defendant failed to meet the minimum standards of the following cybersecurity frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established standards in reasonable cybersecurity readiness.

41.    These foregoing frameworks are existing and applicable industry standards in Defendant's industry, and Defendant failed to comply with these accepted standards, thereby opening the door to the cyber-attack and causing the Data Breach.

42.    Businesses that store personal information are likely to be targeted by cyber criminals. Credit card and bank account numbers are tempting targets for hackers. However, information such as dates of birth and Social Security numbers are even more attractive to hackers; they are not easily destroyed and can be easily used to perpetrate identity theft and other types of

fraud.

43.     The SPI of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web.  Numerous sources cite dark web pricing for stolen identity credentials.  For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[10]

44.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration ("SSA") stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[11]

45.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

46.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the

---

[10] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs, last accessed April 4, 2023

[11] SSA, *Identity Theft and Your Social Security Number*, SSA Publication No. 05-10064 (Jun. 2018), https://www.ssa.gov/pubs/EN-05-10064.pdf, last accessed April 4, 2023.

new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[12]

47.    Furthermore, as the SSA warns:

Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.

If you receive a new Social Security Number, you should not be able to use the old number anymore.

For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of any credit history under the new number may make more difficult for you to get credit.[13]

48.    Here, the unauthorized access left the cyber criminals with the tools to perform the most thorough identity theft—they have obtained all the essential SPI to mimic the identity of the user. The personal data of Plaintiff and members of the Class stolen in the Data Breach constitutes a dream for hackers and a nightmare for Plaintiff and the Class. Stolen personal data of Plaintiff and members of the Classes represents essentially one-stop shopping for identity thieves.

49.    The FTC has released its updated publication on protecting SPI for businesses, which includes instructions on protecting SPI, properly disposing of SPI, understanding network vulnerabilities, implementing policies to correct security problems, using intrusion detection programs, monitoring data traffic, and having in place a response plan.

50.    General policy reasons support such an approach. A person whose personal information has been compromised may not see any signs of identity theft for years. According

---

[12] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015),http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft, last accessed April 4, 2023.

[13] SSA, *Identity Theft and Your Social Security Number*, SSA Publication No. 05-10064 (Jun. 2018), http://www.ssa.gov/pubs/EN-05-10064.pdf, last accessed April 4, 2023.

to the United States Government Accountability Office ("GAO") Report to Congressional Requesters:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[14]

51.    Companies recognize that SPI is a valuable asset. Indeed, SPI is a valuable commodity.  A "cyber black-market" exists in which criminals openly post stolen Social Security numbers and other SPI on a number of Internet websites. The stolen personal data of Plaintiff and members of the Class has a high value on both legitimate and black markets.

52.    Identity thieves may commit various types of crimes such as immigration fraud, obtaining a driver license or identification card in the victim's name but with another's picture, and/or using the victim's information to obtain a fraudulent tax refund or fraudulent unemployment benefits. The United States government and privacy experts acknowledge that it may take years for identity theft to come to light and be detected.

53.    As noted above, the disclosure of Social Security numbers in particular poses a significant risk. Criminals can, for example, use Social Security numbers to create false bank accounts or file fraudulent tax returns.  Defendant's former and current customers whose Social Security numbers have been compromised now face a real, present, imminent and substantial risk of identity theft and other problems associated with the disclosure of their Social Security number and will need to monitor their credit and tax filings for an indefinite duration.

54.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change

---

[14] *See* https://www.gao.gov/assets/gao-07-737.pdf (June 2007) at 29, last accessed October 4, 2022.

— Social Security number, driver license number or government-issued identification number, name, and date of birth.

55.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[15]

56.     This is even more true for minors, whose Social Security Numbers are particularly valuable.  As one site noted, "The organization added that there is extreme credit value in Social Security numbers that have never been used for financial purposes. It's relatively simple to add a false name, age or address to a Social Security number. After that happens, there is a window for thieves to open illicit credit cards or even sign up for government benefits."[16]

57.     Among other forms of fraud, identity thieves may obtain driver licenses, government benefits, medical services, and housing or even give false information to police.  An individual may not know that his or her driver license was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud, or until the individual attempts to lawfully apply for unemployment and is denied benefits (due to the prior, fraudulent application and award of benefits).

## FACTS SPECIFIC TO PLAINTIFF

58.     On or about April 3, 2023, Plaintiff was notified via a physical letter (dated March 30, 2023) from Defendant that she had been the victim of the Data Breach.

---

[15] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html, last accessed October 4, 2022

[16] https://www.identityguard.com/news/kids-targeted-identity-theft, last accessed September 6, 2022)

59.     In December 2022, Plaintiff was notified by her bank of an unauthorized charge to her checking account. This was succeed by additional unauthorized charges occurring into the first quarter of 2023. This led to her account being closed and the need for her to open a new account. As a result of this, Plaintiff was without access to her funds for an extended period of time, resulting in great financial stress.  In addition, she had to expend a substantial amount of personal time working to resolve and mitigate these issues.

60.     This fraudulent activity has caused great concern and anxiety to Plaintiff.

61.     Additionally, Plaintiff must now be vigilant that her SPI is not further abused by hackers as a result of the Data Breach.  This will require significant additional time and effort on her part.

62.     Plaintiff is aware of no other source from which the theft of her SPI could have come.  She regularly takes steps to safeguard her own SPI in her own control.

## CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this nationwide class action pursuant to Rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all members of the following classes:

All natural persons residing in the United States whose SPI was compromised in the Data Breach announced by Defendants on or about March 30, 2023 (the "Nationwide Class").

64.     Excluded from the Class are all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, Defendant's officers and directors, and all judges assigned to hear any aspect of this litigation and their immediate family members.

65.     Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

66.     **Numerosity**: The Class is so numerous that joinder of all members is impracticable. One security websites has, as of this writing, indicated that the total number of Class Members is approximately 4,882,580.[17] The Class is readily identifiable within records.

67.     **Commonality**: Questions of law and fact common to the Class exist and predominate over any questions affecting only individual members of the Class. These include:

a.     When Defendant actually learned of the Data Breach and whether its response was adequate;

b.     Whether Defendant owed a duty to the Class to exercise due care in collecting, storing, safeguarding and/or obtaining their SPI;

c.     Whether Defendant breached that duty;

d.     Whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of storing the SPI of Plaintiff and members of the Classes;

e.     Whether Defendant acted negligently in connection with the monitoring and/or protection of SPI belonging to Plaintiff and members of the Class;

f.     Whether Defendant knew or should have known that it did not employ reasonable measures to keep the SPI of Plaintiff and members of the Class secure and to prevent loss or misuse of that SPI;

g.     Whether Defendant has adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

h.     Whether Defendant caused Plaintiff's and members of the Class damage;

i.     Whether Defendant violated the law by failing to promptly notify Plaintiff and members of the Class that their SPI had been compromised; and

j.     Whether Plaintiff and the other members of the Class are entitled to credit monitoring and other monetary relief.

---

[17]*See* https://apps.web.maine.gov/online/aeviewer/ME/40/179ab0ce-2c43-4119-ae5a-db766d4be3e0.shtml, last accessed April 4, 2023.

68.    **Typicality**: Plaintiff's claims are typical of those of the other members of the Class because all had their SPI compromised as a result of the Data Breach due to Defendant's misfeasance.

69.    **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's counsel are competent and experienced in litigating privacy-related class actions.

70.    **Superiority and Manageability**:  Under rule 23(b)(3) of the Federal Rules of Civil Procedure, a class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Individual damages for any individual member of the Class are likely to be insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendant's misconduct would go unpunished.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

71.    Class certification is also appropriate under Rule 23(a) and (b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Nationwide Class as a whole and as the California Subclass as a whole.

72.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.    Whether Defendant owed a legal duty to Plaintiff and members of the Classes to exercise due care in collecting, storing, using, and safeguarding their SPI;

b.    Whether Defendant breached a legal duty to Plaintiff and the members of the Class to exercise due care in collecting, storing, using, and safeguarding their SPI;

c.    Whether Defendant failed to comply with their own policies and applicable laws,

regulations, and industry standards relating to data security;

d.     Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

e.     Whether members of the Class are entitled to actual damages, credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendant's wrongful conduct.

## FIRST CLAIM FOR RELIEF
### Breach of Implied Contract
### (By Plaintiff Individually and on Behalf of the Nationwide Class)

73.     Plaintiff hereby re-alleges and incorporates by reference all of the allegations in paragraphs 1 to 72.

74.     When Plaintiff and Class Members provided their SPI to Defendant in exchange for Defendant's services, they entered into implied contracts with Defendant under which—and by mutual assent of the parties—Defendant agreed to take reasonable steps to protect their SPI.

75.     Defendant solicited and invited Plaintiff and Class Members to provide their SPI as part of Defendant's regular business practices and as essential to the services transactions entered into between Defendant on the one hand and Plaintiff and Class Members on the other.  This conduct thus created implied contracts between Plaintiff and Class Members on the one hand, and Defendant on the other hand.  Plaintiff and Class Members accepted Defendant's offers by providing their SPI to Defendant in connection with their purchases from Defendant.

76.     When entering into these implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws, regulations, and industry standards.

77.     Defendant's implied promise to safeguard Plaintiff's and Class Members' SPI is evidenced by a duty to protect and safeguard SPI that Defendant required Plaintiff and Class

Members to provide as a condition of entering into consumer transactions with Defendant.

78.     Plaintiff and Class Members paid money to Defendant to purchase services from Defendant. Plaintiff and Class Members reasonably believed and expected that Defendant would use part of funds received as a result of the purchases to obtain adequate data security.  Defendant failed to do so.

79.     Plaintiff and Class Members, on the one hand, and Defendant, on the other hand, mutually intended—as inferred from patients' continued use of Defendant's services—that Defendant would adequately safeguard SPI.  Defendant failed to honor the parties' understanding of these contracts, causing injury to Plaintiff and Class Members.

80.     Plaintiff and Class Members value data security and would not have provided their SPI to Defendant in the absence of Defendant's implied promise to keep the SPI reasonably secure.

81.     Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendant.

82.     Defendant breached its implied contracts with Plaintiff and Class Members by failing to implement reasonable data security measures and permitting the Data Breach to occur.

83.     As a direct and proximate result of Defendant's breaches of the implied contracts, Plaintiff and Class Members sustained damages as alleged herein.

84.     Plaintiff and Class Members are entitled to compensatory, consequential, and other damages suffered as a result of the Data Breach.

85.     Plaintiff and Class Members also are entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide credit monitoring and identity theft insurance to Plaintiff and Nationwide Class members.

**SECOND CLAIM FOR RELIEF**
**Negligence**
**(By Plaintiff Individually and on Behalf of the Class)**

86.     Plaintiff hereby re-alleges and incorporates by reference all of the allegations in paragraphs 1 to 72.

87.     Defendant routinely handles SPI of customers and former customers, such as Plaintiff.

88.     By collecting and storing the SPI of its customers, Defendant owed a duty of care to the individuals whose SPI it collected to use reasonable means to secure and safeguard that SPI.

89.     As a company working in consumer lending, Defendant is aware of that duty of care to the SPI of its customers.

90.     Defendant has full knowledge of the sensitivity of the SPI and the types of harm that Plaintiffs and Class Members could and would suffer if the SPI were wrongfully disclosed.

91.     Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using SPI involved an unreasonable risk of harm to Plaintiffs and Class Members, even if the harm occurred through the criminal acts of a third party.

92.     Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.  This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiff's and Class Members' information in Defendant's possession was adequately secured and protected.

93.     Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Members' SPI.

94.     A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class Members was reasonably foreseeable, particularly in light of Defendant's inadequate

security practices.

95.     Plaintiff and the Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew of should have known of the inherent risks in collecting and storing the SPI of Plaintiff and the Class, the critical importance of providing adequate security of that SPI, and the necessity for encrypting SPI stored on Defendant's systems.

96.     Defendant's own conduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of Plaintiff's and Class Members' SPI, including basic encryption techniques freely available to Defendant.

97.     Plaintiff and the Class Members had no ability to protect their SPI that was in, and possibly remains in, Defendant's possession.

98.     Defendant was in a position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

99.     Defendant had and continues to have a duty to adequately disclose that the SPI of Plaintiff and Class Members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their SPI by third parties.

100.     Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the SPI of Plaintiff and Class Members.

101.     Defendant has admitted that the SPI of Plaintiff and Class Members was purposely

exfiltrated and disclosed to unauthorized third persons as a result of the Data Breach.

102.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the SPI of Plaintiff and Class Members during the time the SPI was within Defendant's possession or control.

103.    Defendant improperly and inadequately safeguarded the SPI of Plaintiff and Class Members in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

104.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect its current and former employees' SPI in the face of increased risk of theft.

105.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of its current and former employees' SPI.

106.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and Class Members the existence and scope of the Data Breach.

107.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class Members, the SPI of Plaintiff and Class Members would not have been compromised.

108.    There is a close causal connection between Defendant's failure to implement security measures to protect the SPI of Plaintiff and Class Members and the harm suffered or risk of imminent harm suffered by Plaintiff and the Class. Plaintiff's and Class Members' SPI was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such SPI by adopting, implementing, and maintaining appropriate security measures.

109.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their SPI is used; (iii) the compromise, publication, and/or theft of their SPI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their SPI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their SPI, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the SPI of its employees and former employees in its possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the SPI compromised as a result of the Data Breach for the remainder of Plaintiff's and Class Members' lives.

110.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their SPI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the SPI in its continued possession.

### THIRD CLAIM FOR RELIEF
### Unjust Enrichment, in the Alternative
### (By Plaintiff Individually and on Behalf of the Nationwide Class)

111.    Plaintiff hereby re-alleges and incorporates by reference all of the allegations in paragraphs 1 to 72.

112.    Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of storing their SPI with Defendant in such a way that saved expense and labor for Defendant.

113.    Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and Class Members. Defendant also benefited from the receipt of Plaintiff's and Class Members' SPI, as this was used by Defendant to facilitate its core functions.

114.    The benefits given by Plaintiff and Class Members to Defendant were to be used by Defendant, in part, to pay for or recoup the administrative costs of reasonable data privacy and security practices and procedures.

115.    As a result of Defendant's conduct, Plaintiff and Class Members suffered actual damages in an amount to be determined at trial.

116.    Under principles of equity and good conscience, Defendant should not be permitted to retain a benefit belonging to Plaintiff and Class Members because Defendant failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiff and Class Members granted to Defendant or were otherwise mandated by federal, state, and local laws and industry standards.

117.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds or benefits it received as a result of the conduct alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all Class Members, requests judgment against the Defendant and the following:

A.    For an Order certifying the Class as defined herein, and appointing Plaintiff and her counsel to represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the Class Members' SPI;

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

      i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

      ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

      iii.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiff and Class Members' personal identifying information;

      iv.    prohibiting Defendant from maintaining Plaintiff's and Class Members' personal identifying information on a cloud-based database (if, in fact, it does so);

v. requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vi. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

vii. requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

viii. requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

ix. requiring Defendant to conduct regular database scanning and securing checks;

x. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xi. requiring Defendant to routinely and continually conduct internal training

and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii.   requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiii.   requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xiv.   requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xv.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

xvi.   for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class,

and to report any deficiencies with compliance of the Court's final

judgment; and

D.      For an award of damages, including actual, nominal, and consequential damages,

        as allowed by law in an amount to be determined;

E.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.      For pre- and postjudgment interest on all amounts awarded; and

G.      Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: April 5, 2023                         Respectfully Submitted,

                                             By: /s/ Rebecca Franklin Harris
                                             Rebecca Franklin Harris
                                             Georgia Bar No. 141350
                                             **FRANKLIN LAW, LLC**
                                             2250 E. Victory Dr., Suite 102
                                             Savannah, GA 31404
                                             Phone: 912.335.3305
                                             Fax: 912.335.3305

                                             James M. Evangelista
                                             Georgia Bar No. 707807
                                             jim@ewlawllc.com
                                             David J. Worley
                                             Georgia Bar No. 776665
                                             dworley@ewlawllc.com
                                             **EVANGELISTA WORLEY, LLC**
                                             500 Sugar Mill Road, Suite 245A
                                             Atlanta, GA 30350
                                             Telephone: (404) 205-8400
                                             Fax: (404)205-8395

                                             Carl V. Malmstrom
                                             (*pro hac vice forthcoming*)
                                             **WOLF HALDENSTEIN ADLER
                                               FREEMAN & HERZ LLC**
                                             111 W. Jackson Blvd., Suite 1700
                                             Chicago, Illinois  60604

Tel: (312) 984-0000
Fax:  (212) 686-0114
malmstrom@whafh.com

*Attorneys for Plaintiff and the Putative*
*Class*

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CLAUDIA OLTEAN, Individually, and on behalf of all others similarly situated | TMX FINANCE CORPORATE SERVICES, INC. |

**(b)** County of Residence of First Listed Plaintiff   Duval County, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Rebecca Franklin Harris, FRANKLIN LAW, LLC
2250 E. Victory Dr., Suite 102
912.335.3305

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
      Plaintiff

☒ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 2  U.S. Government
      Defendant

☒ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical |  |  | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability |  | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine |  |  | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** |  | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
|  | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud |  | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract |  | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice |  | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise |  |  | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
|  |  |  |  | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation |  | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General |  |  |  |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application |  |  |
|  | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions |  |  |
|  |  | ☐ 550 Civil Rights |  |  |  |
|  |  | ☐ 555 Prison Condition |  |  |  |
|  |  | ☐ 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     Another District
     *(specify)*

☐ 6 Multidistrict
     Litigation -
     Transfer

☐ 8 Multidistrict
     Litigation -
     Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(d) - a class action where the amount in controversy exceeds the sum or value of $5,000,000
Brief description of cause:
Breach of Implied Contract; Negligence, Unjust Enrichment, in the Alternative

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION**
  UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
04/05/2023

SIGNATURE OF ATTORNEY OF RECORD
/s/ Jeffrey R. Harris

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b)  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c)  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V.  **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI.  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII.  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.