## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ADRIAN JOHNSON, JEREMIAH GILLS, and YOLANDA JACKSON, individually and on behalf of all others similarly situated, | **Case No.** |
| **Plaintiffs,** | **COMMPLAINT – CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| TMX FINANCE CORPORATE SERVICES, INC., | |
| Defendant. | |

Plaintiffs, Adrian Johnson, Jeremiah Gills, and Yolanda Jackson ("Plaintiffs") individually and on behalf of all others similarly situated, by and through their undersigned counsel, bring this Class Action Complaint against Defendant TMX Finance Corporate Services, Inc. ("TMX" or "Defendant"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge.

## INTRODUCTION

1.    Plaintiffs and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted TMX with sensitive personally identifiable information that was subsequently exposed in a data breach, which TMX publicly disclosed on March 30, 2023 (the "Data Breach" or the "Breach").

1

2.    Plaintiffs' claims arise from TMX's failure to safeguard personally identifying information that was entrusted to it in its capacity as a loan service provider, and its accompanying responsibility to store and transfer that information. TMX failed to secure the sensitive personal information of approximately 4.8 million customers.

3.    TMX is a financial services company that provides loans to consumers, primarily specializing in auto loans. TMX offers consumer credit products under the brands TitleMax, TitleBucks, and InstaLoan. Through the loans offered by each of these brands, TMX solicits and obtains PII of its customers.

4.    TMX, on or about March 30, 2023, acknowledged that at some point during December of 2022, hackers accessed its computer system that it uses to store sensitive personal information for its customers. Plaintiffs' claims arise from TMX's failure to safeguard personally identifying information ("PII") provided by and belonging to its customers, including (without limitation) their name, date of birth, passport number, driver's license number, government identification card number, tax identification number, Social Security number and/or financial account information, and other information such as phone number, address, and email address.

5.    Defendant notified impacted customers, including Plaintiffs, of the Data Breach, stating that: "On February 13, 2023, we detected suspicious activity

on our systems and promptly took steps to investigate the incident. As part of that investigation, global forensic cybersecurity experts were retained. Based on the investigation to date, the earliest known breach of TMX's systems started in early December 2022.  On March 1, 2023, the investigation confirmed that information may have been acquired between February 3, 2023 – February 14, 2023."

6.      TMX acknowledged that PII from its computer system was accessed by unauthorized individuals.  4.8 million individuals were reportedly affected by the Data Breach.

7.      TMX failed to take precautions designed to keep that information secure.

8.      Defendant owed Plaintiffs' and Class Members a duty to take all reasonable and necessary measures to keep the PII TMX collected safe and secure from unauthorized access.  TMX solicited, collected, used, and derived a benefit from the PII, yet Defendant breached its duty by failing to implement or maintain adequate security practices.

9.      The PII Defendant caused or allowed to be exposed can be sold on the dark web.

10.     The sensitive nature of the data exposed through the Data Breach, including Social Security numbers, signifies that Plaintiffs and Class Members have suffered harm.  They are subject to an increased risk of identity theft.

11.    TMX also delayed disclosing and providing notice of the Data Breach to its customers.  It waited despite knowing that hackers accessed its computer system and that sensitive PII was compromised.

12.    As a result of the Data Breach, Plaintiffs' and Class Members' PII has been exposed to criminals for misuse and their customers now face a risk of identity theft.  The threat is heightened where, like here, the PII compromised through the Data Breach included Social Security numbers. Plaintiffs and the Class have suffered and will continue to suffer injuries, as a result of the Data Breach and the accompanying delay in its disclosure, including: financial losses caused by misuse of PII; the loss or diminished value of their PII as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal, medical, and financial information.

13.    Defendant communicates to its customers and potential customers that it will protect the privacy of its customers and maintain security measures to protect PII from unauthorized disclosure.  Nevertheless, Defendant failed to adopt and implement adequate and reasonable measures to ensure that Defendant's current and former customers' PII was safeguarded and failed to take available steps to prevent an unauthorized disclosure of data. The PII of Plaintiff and Class Members was, as a result, compromised and stolen by an unknown and unauthorized third

4

party.  Plaintiff and Class Members have a strong continuing interest in ensuring that their PII is and remains safe and secure.

14.    Plaintiffs bring this action individually and on behalf of a Nationwide Class and Georgia Subclass, of similarly situated individuals against Defendant for: negligence; breach of implied contract; violation of the Georgia Deceptive Practices Act O.C.G.A., §§ 10-1-370, *et. seq*; violation of the Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. §§ 59.1-196 *et seq*.; violation of Alabama Deceptive Trade Practices Laws, Code of Ala. §§ 8-19-1 *et seq*.; and unjust enrichment.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one member of the Class defined below is a citizen of a different state than Defendant, and there are more than 100 putative Class members.

16.    This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District, is registered to conduct business in Georgia, and has sufficient minimum contacts with Georgia.

17.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

18.    Plaintiff Adrian Johnson is a citizen of Alabama and resides in Anniston, Alabama.  Mr. Johnson received a notice of data breach letter – dated March 30, 2023 – from TMX informing him that PII was compromised in the Data Breach.  As a consequence of the Data Breach, Mr. Johnson has been forced to and will continue to invest significant time monitoring his accounts to detect and reduce the consequences of likely identity fraud.  Mr. Johnson is subject to substantial and imminent risk of future harm.

19.    Plaintiff Jeremiah Gills is a citizen of Virginia and resides in Roanoke, Virginia. Mr. Gills received a notice of data breach letter – dated March 30, 2023 – from TMX informing him that PII was compromised in the Data Breach. As a consequence of the Data Breach, Mr. Gills has been forced to and will continue to invest significant time monitoring his accounts to detect and reduce the consequences of likely identity fraud.  Mr. Gills is subject to substantial and imminent risk of future harm.

20.    Plaintiff Yolanda Jackson is a citizen of Georgia and resides in Albany, Georgia. Ms. Jackson received a notice of data breach letter – dated March 30, 2023 – from TMX informing her that PII was compromised in the Data Breach. As a consequence of the Data Breach, Ms. Jackson has been forced to and will continue to invest significant time monitoring her accounts to detect and reduce the

consequences of likely identity fraud. Ms. Jackson is subject to substantial and imminent risk of future harm.

21.   The March 30, 2023 Data Breach Notification letters Plaintiffs received were identical except with respect to the addressee. A copy of Plaintiff Gills' notice letter is attached as **Exhibit A**.

22.   As a consequence of the Data Breach, Plaintiffs have been forced to and will continue to invest significant time monitoring their accounts to detect and reduce the consequences of likely identity fraud. Plaintiffs are subject to substantial and imminent risk of future harm.

23.   Defendant TMX is a Delaware corporation with a principal place of business located at 15 Bull Street, Suite 200, Savannah, Georgia, 31401. Defendant TMX is a subsidiary of TMX Finance LLC, a California limited liability company. Upon information and belief, TMX operates the brands "TitleMax," "TitleBucks," and "InstaLoan."

## FACTUAL BACKGROUND

**A.    Background**

24.    Defendant is a financial services company that operates a family of companies that provides consumer credit products to consumers.  It is comprised of TitleMax, TitleBucks, and InstaLoan.[1]

25.    TitleMax is self-described as "one of the nation's largest title lending companies,"[2] employing approximately 2,000 people and generating more than $1 billion in annual revenue.  TitleMax states it "helps thousands of people get the cash they need with a title loan, title pawn or now in select states, with a personal loan" and that it "has expanded to over 900 locations spanning 14 states."[3]

26.    Defendant describes TitleBucks as "one of America's largest consumer lending companies,"[4] which has "helped hundreds of thousands of people with getting the cash they need."  TitleBucks states that it has "60 conveniently located TitleBucks stores spanning six states" focusing on providing an exceptional

---

[1] *Terms of Use*, TMX DISCLOSURES https://www.tmxdisclosures.com/tmx-finance-family/terms-of-use-privacy (last visited April 10, 2023).
[2] *About Us*, TITLEMAX https://www.titlemax.com/about-us/ (last visited April 10, 2023).
[3] *Id*.
[4] *About Us*, TITLEBUCK$ https://www.titlebucks.com/about-us / (last visited April 10, 2023).

level of customer service while also making the vehicle title-secured loan/pawn and personal loan process as quick and simple as possible."[5]

27.    Defendant describes InstaLoan as a loan provider which focuses on "providing people with the cash they need."[6]  InstaLoan states that it "makes getting cash easy with our quick and convenient loan approval process."[7]

28.    Defendant's Privacy Policies[8] state: "To protect your personal information from unauthorized access and use, we use security measures that comply with federal law.  These measures include computer and mobile application safeguards and secured files and buildings.  We also maintain physical, electronic and procedural safeguards (i.e., computer virus protection software, firewalls, encryption).  Only authorized employees have access.  Customer access to electronically stored account documents and information is protected via customer-created or customer-specific usernames and passwords."[9]

---

[5] *Id.*

[6] *About Us*, INSTALOAN https://www.instaloan.com/about-us/ (last visited April 10, 2023).

[7] *How It Works*, INSTALOAN https://www.instaloan.com/how-it-works/ (last visited April 10, 2023).

[8] *Privacy Policy*, TITLEMAX https://www.tmxdisclosures.com/titlemax/privacy-policy (last visited April 10, 2023); *Privacy Policy*, TITLEBUCK$ https://www.tmxdisclosures.com/titlebucks/privacy-policy (last visited April 10, 2023); *Privacy Policy,* INSTALOAN https://www.tmxdisclosures.com/instaloan/privacy-policy (last visited April 10, 2023).

[9] *Privacy Policy*, TITLEMAX https://www.tmxdisclosures.com/titlemax/privacy-policy (last visited April 10, 2023).

29.    Plaintiffs, and the Class Members, who sought loan services from Defendant and its family of companies, entrusted Defendant with some of their most sensitive and confidential information, including, without limitation: name, date of birth, passport number, driver's license number, federal/state identification number, tax identification number, Social Security number and/or financial account information, and other information such as phone number, address, and email address.

30.    Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff's and the Class Member's PII from disclosure to third parties.

**B.    The Data Breach**

31.    In December 2022, TMX's laxly secured computer system was hacked and TMX's customers' PII was exposed to an unauthorized third party.[10]  TMX did not begin its investigation of the hack until February 2023.[11]

---

[10]        *Notice       of       Data       Breach*,     TMX      FINANCE https://s3.documentcloud.org/documents/23735720/tmx-finance-sample-copy-of-individual-notice-l01.pdf (last visited April 10, 2023).
[11] *See id*.; *Data Breach Notifications: TMX Finance Corporate Services, Inc.,* OFFICE      OF      THE      MAINE      ATTORNEY      GENERAL https://apps.web.maine.gov/online/aeviewer/ME/40/179ab0ce-2c43-4119-ae5a-db766d4be3e0.shtml (last visited April 10, 2023).

32.    On or around March 30, 2023, Defendant first provided notice of the Data Breach to state attorneys general offices,[12] as well as Plaintiff and the Class Members.  While TMX sought to downplay the damage caused by the breach, it cannot and has not denied that there was unauthorized access to the PII of Plaintiffs and Class members.

33.    On or around March 30, 2023, Defendant sent Plaintiff and Class Members a form "Notice of Data Breach."  Form or sample versions of this letter are available on certain state attorneys general's websites.[13]

34.    The language in the form letter states:

TMX Finance Corporate Services, Inc., on behalf of itself, its parent TMX Finance LLC and its affiliates, many of which operate under the brands "TitleMax," "TitleBucks," and "InstaLoan" (collectively, "TMX"), is writing to inform you of a data breach that may have involved your personal information. TMX takes the privacy and security of your personal information very seriously. This letter

---

[12] *See, e.g.*, *Data Breach Notifications: TMX Finance Corporate Services, Inc.,* OFFICE OF THE MAINE ATTORNEY GENERAL https://apps.web.maine.gov/online/aeviewer/ME/40/179ab0ce-2c43-4119-ae5a-db766d4be3e0.shtml (last visited April 10, 2023); *see also Submitted Breach Notification Sample: TMX Finance Corporate Services, Inc.*, STATE OF CALIFORNIA DEPARTMENT OF JUSTICE https://oag.ca.gov/ecrime/databreach/reports/sb24-564929 (last visited April 10, 2023).

[13] *See id.*; *Data Breach Notifications: TMX Finance Corporate Services, Inc.,* OFFICE OF THE MAINE ATTORNEY GENERAL https://apps.web.maine.gov/online/aeviewer/ME/40/179ab0ce-2c43-4119-ae5a-db766d4be3e0.shtml (last visited April 10, 2023); *see also Submitted Breach Notification Sample: TMX Finance Corporate Services, Inc.*, STATE OF CALIFORNIA DEPARTMENT OF JUSTICE https://oag.ca.gov/ecrime/databreach/reports/sb24-564929 (last visited April 10, 2023).

provides information about the incident and resources available to help you protect your information.

**What Happened?**

On February 13, 2023, we detected suspicious activity on our systems and promptly took steps to investigate the incident. As part of that investigation, global forensic cybersecurity experts were retained. Based on the investigation to date, the earliest known breach of TMX's systems started in early December 2022. On March 1, 2023, the investigation confirmed that information may have been acquired between February 3, 2023 – February 14, 2023. We promptly began a review of potentially affected files to determine what information may have been involved in this incident. We notified the FBI but have not delayed this notification for any law enforcement investigation.

**What Information Was Involved?**

The personal information involved may have included your name, date of birth, passport number, driver's license number, federal/state identification card number, tax identification number, social security number and/or financial account information, and other information such as phone number, address, and email address.

**What We Are Doing.**

Our investigation is still in progress, but TMX believes the incident has been contained. We continue to monitor our systems for any suspicious activity. We have implemented additional security features, such as additional endpoint protection and monitoring, as well as resetting all employee passwords. We continue to evaluate ways to further enhance the security of our systems. To help protect your identity, we are offering you complimentary credit monitoring and identity protection services through Experian IdentityWorksSM for a period of 12 months. Please see the enclosed Reference Guide for enrollment details and instructions on how to enroll.

35.    Individuals affected by the Data Breach are at risk that their data, which has already been compromised and is susceptible to sale on the dark web, will be used to negatively affect their credit score or, worse, cause monetary losses or other financial harms.

C.    **TMX's Failure to Prevent, Identify and Timely Report the Data Breach.**

36.    TMX admits that unauthorized third persons accessed from its network systems sensitive information about its current and former customers.

37.    TMX failed to take adequate measures to protect its computer and cloud storage systems against unauthorized access.

38.    TMX was not only aware of the importance of protecting the PII that it maintains, as alleged, it flaunted its capability to do so, as evident from TMX's Privacy Policies discussed above in paragraph 28.  The PII that TMX allowed to be exposed in the Data Breach is the type of private information that TMX knew or should have known would be the target of cyberattacks.

39.    Despite its own knowledge and apparent expertise on the subject of cybersecurity, and notwithstanding the FTC's data security principles and practices,[14]  TMX failed to disclose that its systems and security practices were inadequate to reasonably safeguard their customer's sensitive personal information.

---

[14] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION,    Oct.    2016,    https://www.ftc.gov/business-

40.    The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[15]  Immediate notification of a Data Breach is critical so that those impacted can take measures to protects themselves. Despite this guidance, TMX delayed the notification of the Data Breach.

**D.    The Harm Caused by the Data Breach Now and Going Forward.**

41.    Victims of data breaches are susceptible to becoming victims of identity theft.

42.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority," 17 C.F.R. § 248.201(9), and when "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[16]

43.    The type of data that was accessed and compromised here – such as, full name and Social Security number – can be used to perpetrate fraud and identity theft.  Social Security numbers are widely regarded as the most sensitive

---

guidance/resources/protecting-personal-information-guide-business  (last visited April 10, 2023).

[15] *Id.*

[16]    *Prevention and Preparedness*, NEW YORK STATE POLICE, https://troopers.ny.gov/prevention-and-preparedness  (last visited April 10, 2023).

information hackers can access.  Social Security numbers and dates of birth together constitute high risk data.

44.    Plaintiffs and class members face a substantial risk of identity theft given that their Social Security numbers, addresses, dates of birth, and other important PII were compromised in the Data Breach.  Once a Social Security number is stolen, it can be used to identify victims and target them in fraudulent schemes and identity theft.

45.    Stolen PII is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines.  Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

46.    When malicious actors infiltrate companies and copy and exfiltrate the PII that those companies store, that stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.[17]

47.    For example, when the U.S. Department of Justice announced its seizure of AlphaBay in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity.  Other marketplaces, similar to the now-defunct

---

[17] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE, Dec. 28, 2020, https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring (last visited April 10, 2023).

15

AlphaBay, "are awash with [PII] belonging to victims from countries all over the world. One of the key challenges of protecting PII online is its pervasiveness. As data breaches in the news continue to reveal, PII about employees, customers and the public are housed in all kinds of organizations, and the increasing digital transformation of today's businesses only broadens the number of potential sources for hackers to target."[18]

48.    PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[19] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[20]

49.    A compromised or stolen Social Security number cannot be addressed as simply as a stolen credit card. An individual cannot obtain a new Social Security number without significant work. Preventive action to defend against the

---

[18] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR, Apr. 3, 2018, https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/ (last visited April 10, 2023).
[19] *Id.*
[20] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR, Feb. 9, 2015, https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited April 10, 2023).

possibility of misuse of a Social Security number is not permitted; rather, an individual must show evidence of actual, ongoing fraud activity to obtain a new number.  Even then, however, obtaining a new Social Security number may not suffice.  According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[21]

50.    The PII compromised in the Data Breach demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained:  "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10 times on the black market."[22]

51.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of

---

[21]Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR, Feb. 9, 2015, https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft  (last visited April 10, 2023).

[22]  *Experts advise compliance not same as security*, RELIAS MEDIA https://www.reliasmedia.com/articles/134827-experts-advise-compliance-not-same-as-security (Last visited April 10, 2023).

complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[23]

52.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[24]  Defendant did not rapidly report to Plaintiffs and Class members that their PII had been stolen.

53.     TMX offered victims 12 months of free identity protection services through Experian IdentityWorks[SM].  The identity protection services offered by TMX is inadequate. Identity thieves often hold onto personal information in order to commit fraud years after such free programs expire.

54.     As a result of the Data Breach, the PII of Plaintiffs and Class members has been exposed to criminals for misuse.  The injuries suffered by Plaintiffs and Class members, or likely to be suffered thereby as a direct result of Defendant's Data Breach, include: (a) theft of their PII; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this breach; (d) invasion of privacy; (e) the emotional

---

[23]*2019 Internet Crime Report Released*, Federal Bureau of Investigation, https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion. (Last visited April 10, 2023).
[24] *Id.*

distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their PII against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' PII.

55.    In addition to a remedy for economic harm, Plaintiffs and Class members maintain an interest in ensuring that their PII is secure, remains secure, and is not subject to further misappropriation and theft.

56.    Defendant disregarded the rights of Plaintiffs and Class members by (a) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (b) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiffs' and Class members' PII; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data

19

Breach for an unreasonable duration of time; and (e) failing to provide Plaintiffs and Class members prompt and accurate notice of the Data Breach.

57.     The actual and adverse effects to Plaintiffs and Class members, including the imminent, immediate and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly and/or proximately caused by Defendant's wrongful actions and/or inaction and the resulting Data Breach require Plaintiffs and Class members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiffs and other Class members have suffered, and will continue to suffer, such damages for the foreseeable future.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of the following Nationwide Class:

> All persons in the United States whose personal information was compromised in the data breach publicly announced by TMX in March 2023 (the "Class").

59.     Plaintiff Jackson also seeks certification of a Georgia Subclass, defined as follows:

> All Georgia residents whose personal information was compromised in the Data Breach publicly announced by TMX in March of 2023 (the "Georgia Subclass").

60.    Plaintiff Gills also seeks certification of a Virginia Subclass, defined as follows:

> All Virginia residents whose personal information was compromised in the Data Breach publicly announced by TMX in March of 2023 (the "Virginia Subclass").

61.    Plaintiff Johnson also seeks certification of an Alabama Subclass, defined as follows:

> All Alabama residents whose personal information was compromised in the Data Breach publicly announced by TMX in March of 2023 (the "Alabama Subclass").

62.    Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

63.    Plaintiffs reserve the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

64.    This action may be certified as a class action under Federal Rule of Civil Procedure 23 because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

65. <u>Numerosity (Rule 23(a)(1))</u>: The Class is so numerous that joinder of all Class members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, Plaintiffs estimate that the Class is comprised of millions of Class members. The Class is sufficiently numerous to warrant certification.

66. <u>Typicality of Claims (Rule 23(a)(3))</u>: Plaintiffs' claims are typical of those of other Class Members because they all had their PII compromised as a result of the Data Breach. Plaintiffs are members of the Class and their claims are typical of the claims of the members of the Class. The harm suffered by Plaintiffs is similar to that suffered by all other Class members that was caused by the same misconduct by Defendant.

67. <u>Adequacy of Representation (Rule 23(a)(4))</u>: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have no interests antagonistic to, nor in conflict with, the Class. Plaintiffs have retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

68. <u>Superiority (Rule 23(b)(3))</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class members is relatively small, the expense and burden of individual litigation make it impossible for

individual Class members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

69.     Predominant Common Questions (Rule 23(a)(2)): The claims of all Class members present common questions of law or fact, which predominate over any questions affecting only individual Class members, including:

a.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

b.   Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

c.   Whether Defendant's storage of Class Member's PII was done in a negligent manner;

d.   Whether Defendant had a duty to protect and safeguard Plaintiffs' and Class Members' PII;

e.   Whether Defendant's conduct was negligent;

f.   Whether Defendant's conduct violated Plaintiffs' and Class Members' privacy;

23

g.  Whether Defendant's conduct violated the statutes as set forth herein;

h.  Whether Defendant took sufficient steps to secure its customers' PII;

i.  Whether Defendant was unjustly enriched;

j.  The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Class are entitled.

70.  Information concerning Defendant's policies is available from Defendant's records.

71.  Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

72.  The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant.  Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

73.  Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

74.     Given that Defendant has not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiffs and All Class Members)

75.     Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1 through 74 as if fully set forth herein.

76.     Plaintiffs bring this claim individually and on behalf of the Class members.

77.     Defendant knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

78.     Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiffs' and Class Members' PII.

79.     Defendant had, and continues to have, a duty to timely disclose that Plaintiffs' and Class Members' PII within its possession was compromised and precisely the type(s) of information that were compromised.

80.     Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards, applicable standards of

care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected its customers' PII.

81.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its customers. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

82.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

83.    Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' PII.

84.    The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

     a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

     b. Failing to adequately monitor the security of its networks and systems; and

c. Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

85.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiffs and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII within Defendant's possession.

86.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiffs and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' PII.

87.    Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiffs and Class Members that the PII within Defendant's possession might have been compromised and precisely the type of information compromised.

88.    It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiffs and Class Members' PII would result in injury to Plaintiffs and Class Members.  Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

89.    It was foreseeable that the failure to adequately safeguard Plaintiffs' and Class Members' PII would result in injuries to Plaintiffs and Class Members.

90.    Defendant's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' PII to be compromised.

91.    But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiffs and Class members, their PII would not have been compromised.

92.    As a result of Defendant's failure to timely notify Plaintiffs and Class Members that their PII had been compromised, Plaintiffs and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

93.    As a result of Defendant's negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiffs and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

## COUNT II
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiffs and All Class Members)

94.    Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1 through 74  as if fully set forth herein.

95.    Plaintiffs and the Class provided and entrusted their PII to Defendant. Plaintiffs and the Class provided their PII to Defendant, either directly or indirectly through Defendant's clients, as part of Defendant's regular business practices.

96.    In so doing, Plaintiffs and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Class if their data had been breached and compromised or stolen, in return for the business services provided by Defendant.  Implied in these exchanges was a promise by Defendant to ensure that the PII of Plaintiffs and Class members in its possession was secure.

97.    Pursuant to these implied contracts, Plaintiffs and Class members provided Defendant with their PII in order for Defendant to provide services, for which Defendant is compensated.  In exchange, Defendant agreed to, among other things, and Plaintiffs understood that Defendant would: (1) provide services to Plaintiffs and Class members; (2) take reasonable measures to protect the security and confidentiality of Plaintiffs' and Class members' PII; and (3) protect Plaintiffs'

and Class members PII in compliance with federal and state laws and regulations and industry standards.

98.    Implied in these exchanges was a promise by Defendant to ensure the PII of Plaintiffs and Class members in its possession was only used to provide the agreed-upon reasons, and that Defendant would take adequate measures to protect Plaintiffs' and Class members' PII.

99.    A material term of this contract is a covenant by Defendant that it would take reasonable efforts to safeguard that information. Defendant breached this covenant by allowing Plaintiffs' and Class members' PII to be accessed in the Data Breach.

100.    Indeed, implicit in the agreement between Defendant and its customers was the obligation that both parties would maintain information confidentially and securely.

101.    These exchanges constituted an agreement and meeting of the minds between the parties: Plaintiffs and Class members would provide their PII in exchange for services by Defendant. These agreements were made by Plaintiffs and Class members as Defendant's customers.

102.    When the parties entered into an agreement, mutual assent occurred. Plaintiffs and Class members would not have disclosed their PII to Defendant but for the prospect of utilizing Defendant's services.    Conversely, Defendant

presumably would not have taken Plaintiffs' and Class members' PII if it did not

intend to provide Plaintiffs and Class members with its services.

103.    Defendant was therefore required to reasonably safeguard and protect

the PII of Plaintiffs and Class members from unauthorized disclosure and/or use.

104.    Plaintiffs and Class Members accepted Defendant's offer of services

and fully performed their obligations under the implied contract with Defendant by

providing their PII, directly or indirectly, to Defendant, among other obligations.

105.    Plaintiffs and Class Members would not have entrusted their PII to

Defendant in the absence of their implied contracts with Defendant and would have

instead retained the opportunity to control their PII.

106.    Defendant breached the implied contracts with Plaintiffs and Class

members by failing to reasonably safeguard and protect Plaintiffs' and Class

Members' PII.

107.    Defendant's failure to implement adequate measures to protect the PII

of Plaintiffs and Class Members violated the purpose of the agreement between the

parties.

108.    Instead of spending adequate financial resources to safeguard

Plaintiffs' and Class Members' PII, which Plaintiffs and Class Members were

required to provide to Defendant, Defendant instead used that money for other

purposes, thereby breaching its implied contracts it had with Plaintiffs and Class

members.

109.    As a proximate and direct result of Defendant's breaches of its implied

contracts with Plaintiffs and Class Members, Plaintiffs and the Class Members

suffered damages as described in detail above.

<u>COUNT III</u>
**VIOLATION OF THE GEORGIA DECEPTIVE PRACTICES ACT**
**O.C.G.A. §§ 10-1-370,** *et seq***.**
**(On Behalf of Plaintiff Jackson and the Georgia Subclass)**

110.    Plaintiff Jackson re-alleges and incorporates each and every factual

allegation contained in paragraphs 1 through 74 as if fully set forth herein.

111.    Defendant, Plaintiff Jackson, and the Georgia Subclass members are

"persons" within the meaning of the Georgia Deceptive Trade Practices Act

("Georgia DTPA"), O.C.G.A. § 10- 1-370(5).

112.    The Georgia DTPA states the following at O.C.G.A. § 10-1-372:

(a) A person engages in a deceptive trade practice when, in the course
of his business, vocation, or occupation, he: . . . (5) Represents that
goods or services have . . . characteristics, . . . uses, [or] benefits . . .
that they do not have; . . . (7) Represents that goods or services are of a
particular standard, quality, or grade . . . if they are of another; . . . [or]
(12) Engages in any other conduct which similarly creates a likelihood
of confusion or of misunderstanding.

113.    Defendant engaged in deceptive trade practices in violation of

O.C.G.A. § 10-1- 372(a)(5), (7), and (12) by, among other things:

(a) Omitting and concealing the material fact that it did not employ reasonable measures to secure consumers' PII; and

(b) Making implied or implicit representations that its data security practices were sufficient to protect consumers' PII. Defendant acquired consumers' PII during the loan process.

114.   In doing so, Defendant made implied or implicit representations that its data security practices were sufficient to protect consumers' PII.  By virtue of accepting Plaintiffs' PII during the loan process, Defendant implicitly represented that its data security processes were sufficient to safeguard the PII.

115.   The Georgia DTPA states that "[i]n order to prevail in an action under this part, a complainant need not prove . . . actual confusion or misunderstanding." O.C.G.A. § 10-1- 372(b).

116.   The Georgia DTPA further states: "A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable.  Proof of monetary damage, loss of profits, or intent to deceive is not required." O.C.G.A. § 10-1-373(a).

117.   While Defendant provided notice of the Date Breach, Defendant has not provided sufficient details regarding the full scope of the Data Breach or any details related to the remedial measures that it has taken to improve and more fully

safeguard Plaintiffs' and Georgia Subclass Members' data from future compromise. As a result, Plaintiff Jackson, Georgia Subclass Members, and Defendant's customers remain uninformed and confused as to the adequacy of Defendant's data security and Defendant's ability to protect the PII entrusted to it. Without adequate improvements, Plaintiff Jackson and Georgia Subclass Members data remains at an unreasonable risk for future compromise.

118. Moreover, Defendant, through its omissions, and Notice of Data Security Breach continues to represent and imply that its data security measures are adequate to protect the PII of Plaintiff Jackson and the Georgia Subclass. Such continued representations and implications, without disclosure of the fully scope of the Data Breach or remedial enhancements, place Plaintiffs Jackson and Georgia Subclass Members at a future risk of harm, as Plaintiff Jackson, Georgia Subclass Members, and Defendant's clients are not fully informed as to whether Defendant's data security measures have been improved since the Data Breach. By all available measures, Defendant's data systems have not been adequately improved, and Plaintiff Jackson and Georgia Subclass Members remain at an unreasonable risk from future cyberattacks.

119. Plaintiff Jackson and the Georgia Subclass, therefore, are entitled to the injunctive relief sought herein because, among other things, Defendant continues to retain their PII, future cyber-attacks targeting the same data are foreseeable, and

Defendant has not provided sufficient notice identifying any remedial measures that will protect the data from future attack. Moreover, absent injunctive relief, Defendant will continue to misrepresent and imply that its data systems are adequate to protect the PII of Plaintiff Jackson and the Georgia Subclass from future cyberattacks without providing any firm details or basis to support these representations.

120.  The Georgia DTPA states that the "court, in its discretion, may award attorney's fees to the prevailing party if . . . [t]he party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive." O.C.G.A. § 10-1-373(b)(2). Defendant willfully engaged in deceptive trade practices knowing them to be deceptive. Defendant knew or should have known that its data security practices were deficient. This is true because, among other things, Defendant was aware that entities responsible for collecting and maintaining large amounts of PII, including Social Security numbers and financial information, are frequent targets of sophisticated cyberattacks. Defendant knew or should have known that its data security practices were insufficient to guard against those attacks.

121.  The Georgia DTPA states that "[c]osts shall be allowed to the prevailing party unless the court otherwise directs." O.C.G.A. § 10-1-373(b). Plaintiff Jackson and the Georgia Subclass are entitled to recover their costs of pursuing this litigation.

35

122.   As a result of Defendant's deceptive acts and practices, Plaintiff Jackson and the Georgia Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and non-monetary damages, as alleged herein.

123.   As a further result of Defendant's deceptive acts and practices, Plaintiff Jackson and the Georgia Subclass are at future risk of injury as a result of Defendant's misrepresentations as to its data security practices and the lack of information Defendant has provided regarding any enhancements to its data security.

124.   Plaintiff Jackson and the Georgia Subclass seek all monetary and non-monetary relief allowed by the Georgia DTPA, including injunctive relief and attorneys' fees.

## COUNT IV
## VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT ("VCPA") , Va. Code Ann. §§ 59.1-196 *et seq.* (On Behalf of Plaintiff Gills and Virginia Subclass Members)

125.   Plaintiff Gills re-alleges and incorporates each and every factual allegation contained in paragraphs 1 through 74 as if fully set forth herein.

126.   Plaintiff Gills and the Virginia Subclass bring this claim on behalf of the Virginia Subclass against Defendant for violation of the Virginia Consumer Protection Act of 1977, Va. Code Ann. §§ 59.1-196, *et seq.*

127.   Defendant, Plaintiff Gills, and the Virginia Subclass members are "[p]erson[s] within the meaning of Va. Code Ann. §59.1-198.

36

128.   Defendant is a "supplier," as defined by Virginia Code § 59.1-198.

129.   Defendant engaged in the complained-of conduct in connection with "consumer" transactions" with regard to "goods" and "services," as defined by Va. Code Ann. § 59.1-198.  Defendant advertised, offered, or sold goods or services used primarily for personal, family or household purposes.

130.   Defendant engaged in deceptive acts and practices by using deception, fraud, false pretense, false promise, and misrepresentation in connection with consumer transactions, including:

> a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Gills and the Virginia Subclass' PII, which was a direct and proximate cause of the Data Breach;
>
> b. Failing to identify foreseeable security and privacy risks, and remediate identified security and privacy risks, which was a direct and proximate cause of the Data Breach;
>
> c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Gills' and the Virginia Subclass' PII and Class Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;
>
> d. Misrepresenting that it would protect the privacy and confidentiality of to protect Plaintiff Gills' and the Virginia Subclass' PII, including by implementing and maintaining reasonable security measures;
>
> e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of to protect Plaintiff Gills' and the Virginia Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure and protect Plaintiff Gills', the Virginia Subclass', and the Virginia Members' PII, and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Gills' and the Virginia Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

131.   Defendant intended to mislead Plaintiff Gills and the Virginia Subclass and induce them to rely on its misrepresentations and omissions.

132.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff Gills and the Virginia Class Members, about the adequacy of Defendant's computer and data security and the quality of the Defendant's brand.

133.   Had Defendant disclosed to Plaintiff Gills and the Virginia Class Members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant received, maintained, and compiled the PII of Plaintiff Gills and the Virginia Class Members as part of the services Defendant provided without advising Plaintiff Gills and the Virginia Class Members that Defendant's data security practices were insufficient to maintain the safety and confidentiality of their PII. Accordingly, Plaintiff Gills and the Virginia Class Members acted reasonably in

relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

134.   Defendant had a duty to disclose these facts due to the circumstances of this case and the sensitivity and extensivity of the PII in its possession.   In addition, such a duty is implied by law due to the nature of the relationship between consumers and Defendant, because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendant. Defendant's duty to disclose also arose from its:

      a.    Possession of exclusive knowledge regarding the security of the data in its systems;

      b.    Active concealment of the state of its security; and/or

      c.    Incomplete representations about the security and integrity of its computer and data systems, while purposefully withholding material facts from Plaintiff Gills and the Virginia Class Members that contradicted these representations.

135.   The above-described deceptive acts and practices also violated the following provisions of VA Code § 59.1-200(A):

      a. Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;

b. Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; and

c. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell them upon the terms advertised.

136.    Defendant acted intentionally, knowingly, and maliciously to violate Virginia's Consumer Protection Act, and recklessly disregarded Plaintiff Gills and the Virginia Subclass' rights.  Past breaches in the financial services industries put it on notice that its security and privacy protections were inadequate.

137.    As a direct result of Defendant's deceptive acts or practices, Plaintiff Gills and the Virginia Subclass have been injured and are entitled to damages in an amount to be proven at trial.  Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach investigating the nature of the Data Breach not fully disclosed by Defendant, reviewing bank statements, payment card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit

scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

138.  Defendant's violations present a continuing risk to Plaintiff Gills and the Virginia Subclass as well as to the general public.

139.  Plaintiff Gills and the Virginia Subclass seek all monetary and non-monetary relief allowed by law, including actual damages; statutory damages in the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation; restitution, injunctive relief; punitive damages; and attorneys' fees and costs.

<u>COUNT V</u>
**VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES LAWS**
**Code of Ala. §§ 8-19-1 *et seq.***
**(On Behalf of Plaintiff Johnson and Alabama Subclass Members)**

140.  Plaintiff Johnson and the Alabama Subclass re-allege and incorporate re-allege each and every factual allegation contained in paragraphs 1 through 74 as if fully set forth herein.

141.  Plaintiff Johnson brings this claim individually and on behalf of the members of the Alabama Subclass.

142.  Defendant, Plaintiff Johnson and the Alabama Subclass members are "persons" within the meaning of the Alabama Deceptive Trade Practices Act ("Alabama DTPA") Ala. Code § 8-19-3(5).

41

143.   Plaintiff Johnson and the Alabama Subclass are "persons" within the meaning of Ala. Code § 8-19-3(2).

144.   Defendant's loan services are "services" within the meaning of Ala. Code § 8- 19-3(13).

145.   Defendant was and is engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

146.   The Alabama DTPA declares several specific actions to be unlawful, including: "Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce."  Ala. Code § 8-19-5.

147.   Defendant participated in unfair or deceptive trade practices that violated the Alabama DTPA as alleged throughout the Complaint.

> a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Johnson and the Alabama Subclass PII, which was a direct and proximate cause of the Data Breach;
>
> b.    Failing to identify foreseeable security and privacy risks, and remediate identified security and privacy risks, which was a direct and proximate cause of the Data Breach;
>
> c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Johnson and the Alabama Subclass' PII and Class Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;
>
> d.    Misrepresenting that it would protect the privacy and confidentiality of to protect Plaintiff Johnson and the Alabama

Subclass's PII, including by implementing and maintaining reasonable security measures;

e.      Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of to protect Plaintiff Johnson and the Alabama Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.       Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure to protect Plaintiff Johnson and the Alabama Subclass' PII; and

g.      Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of to protect Plaintiff Johnson and the Alabama Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

148.   Defendant intended to mislead Plaintiff Johnson and the Alabama Subclass and induce them to rely on its misrepresentations and omissions. and induce them to rely on its misrepresentations and omissions.

149.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff Johnson and the Alabama Subclass, about the adequacy of Defendant's computer and data security and the quality of the Defendant's brand.

150.   Defendant knew or should have known that its conduct violated the Alabama DTPA.

151.   Plaintiff Johnson and the Alabama Subclass reasonably relied on Defendant's omissions of material facts when utilizing Defendant's services.

152.   Had Plaintiff Johnson and the Alabama Subclass known that as a result of utilizing Defendant's services, their PII would be revealed to hackers or other third parties, Plaintiff Johnson and the Alabama Subclass would not have utilized Defendant's services, or would have paid less for them.  Plaintiff and the Alabama Subclass did not receive the benefit of their bargain as a result of Defendant's misconduct.

153.   Plaintiff Johnson and the Alabama Subclass suffered injury in fact to a legally protected interest.   As a direct result of Defendant's deceptive acts or practices, Plaintiff Johnson and the Alabama Subclass have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach investigating the nature of the Data Breach not fully disclosed by Defendant, reviewing bank statements, payment card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit

of their bargains and overcharges for services; and other economic and non-economic harm.

154.   Plaintiff Johnson and the Alabama Subclass seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Alabama DTPA.

## COUNT VI
## UNJUST ENRICHMENT
### (On behalf of Plaintiffs and All Class Members)

155.   Plaintiffs incorporate the above factual allegations as if fully set forth herein.

156.   This claim is pleaded in the alternative to the breach of implied contractual duty claim.

157.   Plaintiffs and Class Members conferred a benefit upon Defendant by using Defendant's services.

158.   Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff.  Defendant also benefited from the receipt of Plaintiffs' PII, as this was used for Defendant administer its services to Plaintiffs and the Class.

159.   Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs' services and their PII because Defendant failed to adequately protect their PII. Plaintiffs and the proposed Class

would not have provided their PII to Defendant or utilized its services had they known Defendant would not adequately protect their PII.

160.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order determining that this action is properly brought as a class action and certifying Plaintiffs as the representative of the Class and his counsel as Class Counsel;

(b)    For an order declaring the Defendant's conduct violates the laws referenced herein;

(c)    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(d)    For damages in amounts to be determined by the Court and/or jury;

(e)    An award of statutory damages or penalties to the extent available;

(f)    For pre-judgment interest on all amounts awarded;

(g)    For an order of restitution and all other forms of monetary relief; and

(h)    Such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of all issues so triable.


Dated: April 12, 2023                    Respectfully submitted,

                                          By: s/ *Mark D. Johnson*
                                          Mark D. Johnson (Ga. Bar No. 395041)

                                          **GILBERT, HARRELL, SUMERFORD & MARTIN, P.C.**
                                          777 Gloucester Street, Suite 200
                                          Post Office Box 190
                                          Brunswick, Georgia 31521
                                          Telephone: (912) 265-6700
                                          Facsimile: (912) 264-0244
                                          Email: mjohnson@ghsmlaw.com

                                          John C. Herman (Ga. Bar No. 347370)*
                                          Candace N. Smith (Ga. Bar No. 654910)*
                                          **HERMAN JONES LLP**
                                          3424 Peachtree Road NE
                                          Suite 1650
                                          Atlanta, Georgia 30326
                                          Telephone: (404) 504-6500
                                          Email: jherman@hermanjones.com
                                          Email: csmith@hermanjones.com

Mark S. Reich*
Courtney E. Maccarone*
**LEVI & KORSINSKY, LLP**
55 Broadway
4th Floor, Suite #427
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: cmaccarone@zlk.com

*Counsel for Plaintiffs*

*pro hac vice* forthcoming

# EXHIBIT A



**TMX** FINANCE    FAMILY OF COMPANIES
**TITLEMAX**  **TITLEBUCKS**

Return Mail Processing
PO Box 999
Suwanee, GA 30024

597 1 183917 ****************AUTO**ALL FOR AADC 240

JEREMIAH GILLS

րել։ ||||լ⸳||լ|լ⸳||⸳|||⸳ր⸳||ր⸳ր||⸳||ր|⸳||⸳|||⸳|⸳||ր⸳|⸳|ր⸳||||⸳|ր|⸳|||

March 30, 2023

## <u>NOTICE OF DATA BREACH</u>

Dear Jeremiah Gills

TMX Finance Corporate Services, Inc., on behalf of itself, its parent TMX Finance LLC and its affiliates, many of which operate under the brands "TitleMax," "TitleBucks," and "InstaLoan" (collectively, "TMX"), is writing to inform you of a data breach that may have involved your personal information. TMX takes the privacy and security of your personal information very seriously. This letter provides information about the incident and resources available to help you protect your information.

**What Happened?** On February 13, 2023, we detected suspicious activity on our systems and promptly took steps to investigate the incident. As part of that investigation, global forensic cybersecurity experts were retained. Based on the investigation to date, the earliest known breach of TMX's systems started in early December 2022. On March 1, 2023, the investigation confirmed that information may have been acquired between February 3, 2023 – February 14, 2023. We promptly began a review of potentially affected files to determine what information may have been involved in this incident. We notified the FBI but have not delayed this notification for any law enforcement investigation.

**What Information Was Involved?** The personal information involved may have included your name, date of birth, passport number, driver's license number, federal/state identification card number, tax identification number, social security number and/or financial account information, and other information such as phone number, address, and email address.

**What We Are Doing.** Our investigation is still in progress, but TMX believes the incident has been contained. We continue to monitor our systems for any suspicious activity. We have implemented additional security features, such as additional endpoint protection and monitoring, as well as resetting all employee passwords. We continue to evaluate ways to further enhance the security of our systems.

To help protect your identity, we are offering you complimentary credit monitoring and identity protection services through Experian IdentityWorks[SM] for a period of 12 months. Please see the enclosed Reference Guide for enrollment details and instructions on how to enroll.

**What You Can Do.** In addition to enrolling in complimentary credit monitoring and identity protection services, the Reference Guide includes additional information on general steps you can take to monitor and protect your personal information. We encourage you to remain vigilant against potential identity theft and fraud by carefully reviewing credit reports and account statements to ensure that all activity is valid.

**For More Information.** We sincerely regret any inconvenience or concern caused by this incident. If you have further questions or concerns, or would like an alternative to enrolling online, please call 800-632-6976 toll-free Monday through Friday from 8 am – 10 pm Central, or Saturday and Sunday from 10 am – 7 pm Central (excluding major U.S. holidays). Be prepared to provide your engagement number **B087587.**

Sincerely

Ted Helgesen
COO and President
TMX

Engagement # B087587



JS 44   (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| ADRIAN JOHNSON, JEREMIAH GILLS, and YOLANDA JACKSON, | TMX FINANCE CORPORATE SERVICES, INC., |

| | |
|---|---|
| **(b)**   County of Residence of First Listed Plaintiff    Calhoun Co., AL<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant    Chatham Co., GA<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
| **(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*<br>Gilbert, Harrell, Sumerford & Martin, P.C., 777 Gloucester Street, Suite 200, P.O. 190, Brunswick, GA 31521, (912) 265-6700 | Attorneys *(If Known)* |

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government
  Plaintiff
- ☐ 2   U.S. Government
  Defendant
- ☐ 3   Federal Question
  *(U.S. Government Not a Party)*
- ☒ 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>    & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>    Student Loans<br>    (Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br>    of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>    Liability<br>☐ 320 Assault, Libel &<br>    Slander<br>☐ 330 Federal Employers'<br>    Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>    Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>    Product Liability<br>☐ 360 Other Personal<br>    Injury<br>☐ 362 Personal Injury -<br>    Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>    Product Liability<br>☐ 367 Health Care/<br>    Pharmaceutical<br>    Personal Injury<br>    Product Liability<br>☐ 368 Asbestos Personal<br>    Injury Product<br>    Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>    Property Damage<br>☐ 385 Property Damage<br>    Product Liability | ☐ 625 Drug Related Seizure<br>    of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>    28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated<br>    New Drug Application<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC<br>    3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>    Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 485 Telephone Consumer<br>    Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br>    Exchange<br>☒ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>    Accommodations<br>☐ 445 Amer. w/Disabilities -<br>    Employment<br>☐ 446 Amer. w/Disabilities -<br>    Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br>    Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>    Conditions of<br>    Confinement | **LABOR**<br>☐ 710 Fair Labor Standards<br>    Act<br>☐ 720 Labor/Management<br>    Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>    Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br>    Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br>    Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>    or Defendant)<br>☐ 871 IRS—Third Party<br>    26 USC 7609 | ☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>    Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure<br>    Act/Review or Appeal of<br>    Agency Decision<br>☐ 950 Constitutionality of<br>    State Statutes |

## V.  ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original
  Proceeding
- ☐ 2   Removed from
  State Court
- ☐ 3   Remanded from
  Appellate Court
- ☐ 4   Reinstated or
  Reopened
- ☐ 5   Transferred from
  Another District
  *(specify)*
- ☐ 6   Multidistrict
  Litigation -
  Transfer
- ☐ 8   Multidistrict
  Litigation -
  Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:
Data Breach;Failure to safeguard personally identifying information ("PII");Failure to provide timely/adequate notice

## VII.  REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   SEE ATTACHED ADDENDUM          DOCKET NUMBER

DATE
04/12/2023

SIGNATURE OF ATTORNEY OF RECORD
/s/ Mark D. Johnson

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

## VIII. RELATED CASE(S) IF ANY
## ADDENDUM

| Case Name | Case No. | Jurisdiction | Judge |
|---|---|---|---|
| Kolstedt v. TMX Finance Corporate Services, Inc. | 4:23-cv-00076 | S.D. Ga. | William T. Moore, Jr |
| Ross v. TMX Finance Corporate Services, Inc. and TMX Finance LLC d/b/a "TitleMax," "TitleBucks," and "InstaLoan" | 4:23-cv-00078 | S.D. Ga. | R. Stan Baker |
| Domino v. TMX Finance Corporate Services, Inc. | 4:23-cv-00080 | S.D. Ga. | William T. Moore, Jr |
| Pickens v. TMX Finance Corporate Services, Inc. | 4:23-cv-00081 | S.D. Ga. | R. Stan Baker |
| Trottier v. TMX Finance Corporate Services, Inc. | 4:23-cv-00083 | S.D. Ga. | William T. Moore, Jr |
| Ritter v. TMX FINANCE CORPORATE SERVICES, INC. and TMX FINANCE LLC d/b/a "TITLEMAX," "TITLEBUCKS," and "INSTALOAN" | 4:23-cv-00084 | S.D. Ga. | William T. Moore, Jr |
| Oltean v. TMX Finance Corporate Services, Inc. | 4:23-cv-00085 | S.D. Ga. | William T. Moore, Jr |
| Carder v. TMX FINANCE CORPORATE SERVICES, INC. AND TMX FINANCE, LLC | 4:23-cv-00088 | S.D. Ga. | William T. Moore, Jr |
| Eslinger v. TMX Finance LLC and TMX Finance Corporate Services, Inc. | 4:23-cv-00089 | S.D. Ga. | R. Stan Baker |
| Rodriguez v. TMX FINANCE CORPORATE SERVICES, INC. and TMX FINANCE LLC d/b/a/ "TITLEMAX," "TITLEBUCKS," and "INSTALOAN" | 4:23-cv-00093 | S.D. Ga. | R. Stan Baker |
| Coria v. TMX FINANCE CORPORATE SERVICES, INC. | 4:23-cv-00094 | S.D. Ga. | R. Stan Baker |