## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| LAKENDRA MITCHELL, EVELYN FRANCIS, SHAWN WHITE, MURANDA WRIGHT, and FRANCIS ANN WASHINGTON, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>TMX FINANCE LLC and TMX FINANCE CORPORATE SERVICES, INC.,<br><br>    Defendants. | Case No.<br><br><br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiffs Lakendra Mitchell, Evelyn Francis, Shawn White, Muranda Wright, and Francis Ann Washington ("Plaintiffs"), individually, and on behalf of all others similarly situated (collectively, "Class members"), by and through their attorneys, bring this Class Action Complaint against TMX Finance LLC and TMX Finance Corporate Services, Inc. (together, "TMX" or "Defendants") and complain and allege upon personal knowledge as to themselves and information and belief as to all other matters.

## INTRODUCTION

1.     Plaintiffs bring this class action against Defendants for their failure to secure and safeguard their and approximately 4,822,580 other individuals' personally identifiable information ("PII"), including names, dates of birth, passport numbers, driver's license numbers, federal/state identification card numbers, tax identification numbers, Social Security numbers, financial account information, and other information, such as phone numbers, addresses, and email addresses.

2.      TMX Finance LLC is the parent company of TMX Finance Corporate Services, Inc. The TMX family of companies also includes TitleMax, TitleBucks, and Instaloan. These companies all provide loans to consumers, often using vehicle titles as collateral.

3.      Between December of 2022 and February 14, 2023, unauthorized individuals had access to TMX's network systems and acquired the PII of Plaintiffs and Class members between February 3, 2023 and February 14, 2023 (the "Data Breach").

4.      Defendants owed a duty to Plaintiffs and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII against unauthorized access and disclosure. Defendants breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect their PII from unauthorized access and disclosure.

5.      As a result of Defendants' inadequate security and breach of their duties and obligations, the Data Breach occurred, and Plaintiffs' and Class members' PII was accessed and disclosed. This action seeks to remedy these failings and their consequences. Plaintiffs bring this action on behalf of themselves and all persons whose PII was exposed as a result of the Data Breach, which TMX learned of on or about February 13, 2023.

6.      Plaintiffs, on behalf of themselves and all other Class members, assert claims for negligence, negligence per se, breach of implied contract, and unjust enrichment, and seek declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

### Plaintiff Lakendra Mitchell

7.      Plaintiff Lakendra Mitchell is a citizen of the State of Alabama.

8.    Plaintiff Mitchell was required to provide her PII to TMX in connection with seeking, purchasing, or otherwise receiving a loan or other services from a TMX entity.

9.    Based on representations made by TMX, Plaintiff Mitchell believed that TMX had implemented and maintained reasonable security and practices to protect her PII. With this belief in mind, Plaintiff Mitchell provided her PII to TMX in connection with or in exchange for a loan provided by TMX.

10.    In connection with services provided to Plaintiff Mitchell, TMX stores and maintains Plaintiff's PII on its systems, including the system involved in the Data Breach.

11.    Had Plaintiff Mitchell known that TMX does not adequately protect the PII in its possession, she would not have agreed to provide TMX with her PII or used TMX's services.

12.    Plaintiff Mitchell received a letter from TMX notifying her that her PII was exposed in the Data Breach.

13.    Following the Data Breach, Plaintiff Mitchell has experienced a notable uptick in the amount of spam calls she has received, and she is now forced to take time to deal with these calls.

14.    As a result of the Data Breach, Plaintiff Mitchell has had to expend time dealing with the potential ramifications, including checking her financial accounts to ensure that she is not the victim of any fraud or identity theft.

15.    As a direct result of the Data Breach, Plaintiff Mitchell has suffered injury and damages including, inter alia, a substantial and imminent risk of identity theft; the wrongful disclosure and loss of confidentiality of her highly sensitive PII; deprivation of the value of her PII; and overpayment for services that did not include adequate data security.

***Plaintiff Evelyn Francis***

16.     Plaintiff Evelyn Francis is a citizen of the State of Georgia.

17.     Plaintiff Francis was required to provide her PII to TMX in connection with seeking, purchasing, or otherwise receiving a loan or other services from a TMX entity.

18.     Based on representations made by TMX, Plaintiff Francis believed that TMX had implemented and maintained reasonable security and practices to protect her PII. With this belief in mind, Plaintiff Francis provided her PII to TMX in connection with or in exchange for a loan provided by TMX.

19.     In connection with services provided to Plaintiff Francis, TMX stores and maintains Plaintiff's PII on its systems, including the system involved in the Data Breach.

20.     Had Plaintiff Francis known that TMX does not adequately protect the PII in its possession, she would not have agreed to provide TMX with her PII or used TMX's services.

21.     Plaintiff Francis received a letter from TMX notifying her that her PII was exposed in the Data Breach.

22.     As a direct result of the Data Breach, Plaintiff Francis has suffered injury and damages including, inter alia, a substantial and imminent risk of identity theft; the wrongful disclosure and loss of confidentiality of her highly sensitive PII; deprivation of the value of her PII; and overpayment for services that did not include adequate data security.

***Plaintiff Shawn White***

23.     Plaintiff Shawn White is a citizen of the State of Georgia.

24.     Plaintiff White was required to provide her PII to TMX in connection with seeking, purchasing, or otherwise receiving a loan or other services from a TMX entity.

25.     Based on representations made by TMX, Plaintiff White believed that TMX had

implemented and maintained reasonable security and practices to protect her PII. With this belief in mind, Plaintiff White provided her PII to TMX in connection with or in exchange for a loan provided by TMX.

26.    In connection with services provided to Plaintiff White, TMX stores and maintains Plaintiff's PII on its systems, including the system involved in the Data Breach.

27.    Had Plaintiff White known that TMX does not adequately protect the PII in its possession, she would not have agreed to provide TMX with her PII or used TMX's services.

28.    Plaintiff White received a letter from TMX notifying her that her PII was exposed in the Data Breach.

29.    As a direct result of the Data Breach, Plaintiff White has suffered injury and damages including, inter alia, a substantial and imminent risk of identity theft; the wrongful disclosure and loss of confidentiality of her highly sensitive PII; deprivation of the value of her PII; and overpayment for services that did not include adequate data security.

***Plaintiff Muranda Wright***

30.    Plaintiff Muranda Wright is a citizen of the State of South Carolina.

31.    Plaintiff Wright was required to provide her PII to TMX in connection with seeking, purchasing, or otherwise receiving a loan or other services from a TMX entity.

32.    Based on representations made by TMX, Plaintiff Wright believed that TMX had implemented and maintained reasonable security and practices to protect her PII. With this belief in mind, Plaintiff Wright provided her PII to TMX in connection with or in exchange for a loan provided by TMX.

33.    In connection with services provided to Plaintiff Wright, TMX stores and maintains Plaintiff's PII on its systems, including the system involved in the Data Breach.

34.    Had Plaintiff Wright known that TMX does not adequately protect the PII in its possession, she would not have agreed to provide TMX with her PII or used TMX's services.

35.    Plaintiff Wright received a letter from TMX notifying her that her PII was exposed in the Data Breach.

36.    As a direct result of the Data Breach, Plaintiff Wright has suffered injury and damages including, inter alia, a substantial and imminent risk of identity theft; the wrongful disclosure and loss of confidentiality of her highly sensitive PII; deprivation of the value of her PII; and overpayment for services that did not include adequate data security.

***Plaintiff Francis Ann Washington***

37.    Plaintiff Francis Ann Washington is a citizen of the State of Texas.

38.    Plaintiff Washington was required to provide her PII to TMX in connection with seeking, purchasing, or otherwise receiving a loan or other services from a TMX entity.

39.    Based on representations made by TMX, Plaintiff Washington believed that TMX had implemented and maintained reasonable security and practices to protect her PII. With this belief in mind, Plaintiff Washington provided her PII to TMX in connection with or in exchange for a loan provided by TMX.

40.    In connection with services provided to Plaintiff Washington, TMX stores and maintains Plaintiff's PII on its systems, including the system involved in the Data Breach.

41.    Had Plaintiff Washington known that TMX does not adequately protect the PII in its possession, she would not have agreed to provide TMX with her PII or used TMX's services.

42.    Plaintiff Washington received a letter from TMX notifying her that her PII was exposed in the Data Breach.

43.    As a direct result of the Data Breach, Plaintiff Washington has suffered injury and

damages including, inter alia, a substantial and imminent risk of identity theft; the wrongful disclosure and loss of confidentiality of her highly sensitive PII; deprivation of the value of her PII; and overpayment for services that did not include adequate data security.

***Defendants***

44.    Defendant TMX Finance LLC is a company that was formed under the laws of Delaware. TMX Finance LLC's principal place of business is located at 15 Bull Street, Suite 200, Savannah, GA, 31401. Defendant TMX Finance LLC can be served via its Registered Agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE, 19808.

45.    Defendant TMX Finance Corporate Services, Inc. is a corporation that was formed under the laws of Delaware. TMX Finance Corporate Services, Inc.'s principal place of business is located at 15 Bull Street, Suite 200, Savannah, GA, 31401. Defendant TMX Finance Corporate Services, Inc. can be served via its Registered Agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

## JURISDICTION AND VENUE

46.    The Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(d)(2), because (a) there are 100 or more Class members, (b) at least one Class member is a citizen of a state that is diverse from Defendants' citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

47.    This Court has personal jurisdiction over Defendants because Defendants both have their principal place of business in Georgia.

48.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendants' principal place of business is located in Chatham County, Georgia, and a substantial part of the events giving rise to Plaintiffs' claims arose in this District.

## FACTUAL ALLEGATIONS

### *Overview of Defendants*

49.    TMX "provides consumer credit products under the TitleMax®, TitleBucks®, and InstaLoan® brands."[1] TMX companies provide loans to consumers, often using vehicle titles as collateral. TMX has "1,100 store locations in 15 states" and claims to be "an industry leader throughout the Southeast, Southwest, and Midwest."[2]

50.    In the regular course of their business, Defendants collect and maintain the PII of their clients and their clients' customers.

51.    TitleMax, TitleBucks, and InstaLoan's websites all contain privacy policies (together, the "Privacy Policy") that are substantially similar which all state:

> To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer and mobile application safeguards and secured files and buildings. We also maintain physical, electronic and procedural safeguards (i.e., computer virus protection software, firewalls, encryption). Only authorized employees have access. Customer access to electronically stored account documents and information is protected via customer-created or customer-specific usernames and passwords.[3]

52.    Plaintiffs and Class members are, or were, customers of a TMX company and entrusted TMX with their PII.

### *The Data Breach*

53.    Between December of 2022 and February 14, 2023, unauthorized individuals had

---

[1] *What We Do*, TMX FINANCE, https://www.tmxfinancefamily.com/what-we-do/ (last accessed Apr. 11, 2023).
[2] *Id.*
[3] *See* https://www.tmxdisclosures.com/titlemax/privacy-policy;
https://www.tmxdisclosures.com/titlebucks/privacy-policy;
https://www.tmxdisclosures.com/instaloan/privacy-policy (last accessed Apr. 11, 2023).

access to TMX's network systems. [4] Those unauthorized individuals acquired the PII of Plaintiffs and Class members between February 3, 2023 and February 14, 2023.[5] TMX discovered the Data Breach on February 13, 2023.[6]

54.     TMX did not begin to notify government agencies or the public about the Data Breach until a month and a half after the discovery of the breach, on or about March 30, 2023. Thus, Plaintiffs' and Class members' PII was in the hands of cybercriminals for a month and a half before they were warned that the Data Breach may have affected this information.

55.     The notice that TMX sent to those affected by the Data Breach states the information that was disclosed included a person's "name, date of birth, passport number, driver's license number, federal/state identification card number, tax identification number, social security number and/or financial account information, and other information such as phone number, address, and email address."[7]

### *Defendants Knew that Criminals Target PII*

56.     At all relevant times, Defendants knew, or should have known, that the PII that they collected was a target for malicious actors. Despite such knowledge, Defendants failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiffs' and Class members' PII from cyber-attacks that Defendants should have anticipated and guarded against.

---

[4] *See TMX Finance Corporate Services Data Breach Notice to Consumers*, OFF. OF THE VERMONT ATT'Y GEN., https://ago.vermont.gov/document/2023-03-30-tmx-finance-corporate-services-data-breach-notice-consumers (last accessed Apr. 11, 2023).
[5] *Id.*
[6] *Id.*
[7] *Id.*

57.    It is well known among companies that store sensitive personally identifying information that sensitive information—such as the Social Security numbers ("SSNs") and financial information stolen in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[8]

58.    PII is a valuable property right.[9] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[10] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[11] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

59.    As a result of their real and significant value, identity thieves and other cyber criminals have openly posted credit card numbers, SSNs, PII, and other sensitive information directly on various Internet websites making the information publicly available. This information

---

[8] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019, 8:05 A.M.), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.
[9] *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"),
https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.
[10] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD ILIBRARY (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.
[11] IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, IAB.COM (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

from various breaches, including the information exposed in the Data Breach, can be readily aggregated and become more valuable to thieves and more damaging to victims.

60.    Consumers place a high value on the privacy of that data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[12]

61.    Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

### Theft of PII Has Grave and Lasting Consequences for Victims

62.    Theft of PII is serious. The FTC warns consumers that identity thieves use PII to receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[13]

63.    Identity thieves use personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[14] According to Experian, one of the

---

[12] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

[13] *See* Federal Trade Commission, *What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER INFORMATION, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Apr. 11, 2023).

[14] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. § 1022.3(h). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license

largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[15]

64.     With access to an individual's PII, criminals can do more than just empty a victim's bank account—they can also commit all manner of fraud, including: opening utility accounts using the victim's identity; file a fraudulent tax return using the victim's information; or even give the victim's personal information to police during an arrest.[16]

65.     Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[17]

66.     Theft of SSNs also creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of her SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

---

or identification number, alien registration number, government passport number, employer or taxpayer identification number." 12 C.F.R. § 1022.3(g).

[15] *See* Susan Henson, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN, https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/ (last accessed Apr. 11, 2023).

[16] *See* Federal Trade Commission, *Warning Signs of Identity Theft*, IDENTITYTHEFT.GOV https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed Apr. 11, 2023).

[17] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/ (last accessed Apr. 11, 2023).

67.    Due to the highly sensitive nature of SSNs, theft of SSNs in combination with other PII (*e.g.*, name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. TIME quotes data security researcher Tom Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[18]

68.    There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[19]

69.    It is within this context that Plaintiffs and Class members must now live with the knowledge that their PII is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black market.

### *Damages Sustained by Plaintiffs and the Other Class Members*

70.    Plaintiffs and Class members have suffered injury and damages, including, but not limited to: (i) a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; (v) lost time

---

[18] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (August 5, 2019),
https://time.com/5643643/capital-one-equifax-data-breach-social-security/.
[19] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019),
http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face; and (vi) overpayment for the services that were received without adequate data security.

## CLASS ACTION ALLEGATIONS

71.     This action is brought and may be properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23.

72.     Plaintiffs bring this action on behalf of themselves and all members of the following Class of similarly situated persons:

> All persons whose personally identifiable information was accessed in the Data Breach by unauthorized persons, including all who were sent a notice of the Data Breach

73.     Excluded from the Class are TMX Finance LLC and TMX Finance Corporate Services, Inc. and their affiliates, parents, subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge(s).

74.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

75.     The members of the Class are so numerous that joinder of all Class members in a single proceeding would be impracticable. TMX reported to the Maine Attorney General that approximately 4,822,580 persons' information was exposed in the Data Breach.[20]

---

[20] *Data Breach Notifications*, OFF. OF THE MAINE ATT'Y GEN.,
https://apps.web.maine.gov/online/aeviewer/ME/40/179ab0ce-2c43-4119-ae5a-db766d4be3e0.shtml (last accessed Apr. 11, 2023).

76.     Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

      a.   Whether Defendants had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiffs' and Class members' PII from unauthorized access and disclosure;

      b.   Whether Defendants failed to exercise reasonable care to secure and safeguard Plaintiffs' and Class members' PII;

      c.   Whether an implied contract existed between Class members and Defendants, providing that Defendants would implement and maintain reasonable security measures to protect and secure Class members' PII from unauthorized access and disclosure;

      d.   Whether Defendants breached their duties to protect Plaintiffs' and Class members' PII; and

      e.   Whether Plaintiffs and Class members are entitled to damages and the measure of such damages and relief.

77.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

78.     Plaintiffs' claims are typical of the claims of the Class. Plaintiffs, like all proposed members of the Class, had their PII compromised in the Data Breach. Plaintiffs and Class members were injured by the same wrongful acts, practices, and omissions committed by Defendants, as

described herein. Plaintiffs' claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

79.     Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs are adequate representatives of the Class in that they have no interests adverse to, or that conflict with, the Class she seeks to represent. Plaintiffs have retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

80.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress from Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**CAUSES OF ACTION**

**COUNT I**
**NEGLIGENCE**

81.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

82.    Defendants owed a duty to Plaintiffs and Class members to exercise reasonable care in safeguarding and protecting their PII in their possession, custody, or control.

83.    Defendants knew or should have known the risks of collecting and storing Plaintiffs' and Class members' PII and the importance of maintaining secure systems. Defendants knew or should have known of the many data breaches that targeted companies that stored PII in recent years.

84.    Given the nature of Defendants' business, the sensitivity and value of the PII they maintain, and the resources at their disposal, Defendants should have identified the vulnerabilities to their systems and prevented the Data Breach from occurring.

85.    Defendants breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiffs and Class members' PII by failing to design, adopt, implement, control, direct, oversee,' manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it—including Plaintiffs' and Class members' PII.

86.    It was reasonably foreseeable to Defendants that their failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiffs' and Class members' PII to unauthorized individuals.

87.    But for Defendants' negligent conduct or breach of the above-described duties owed to Plaintiffs and Class members, their PII would not have been compromised.

88.     As a result of Defendants' above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiffs and Class members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face; and (vi) overpayment for the services that were received without adequate data security.

<u>**COUNT II**</u>
**NEGLIGENCE PER SE**

89.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

90.     Defendants' duties arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by business, such as Defendants, of failing to employ reasonable measures to protect and secure PII/PHI.

91.     Defendants' violation of Section 5 of the FTCA constitutes negligence per se.

92.     Plaintiffs and Class members are within the class of persons that Section 5 of the FTCA was intended to protect.

93.     The harm occurring as a result of the Data Breach is the type of harm Section 5 of the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and

avoid unfair practices or deceptive practices, caused the same type of harm that has been suffered by Plaintiffs and Class members as a result of the Data Brach.

94.    It was reasonably foreseeable to Defendants that their failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiffs' and Class members' PII to unauthorized individuals.

95.    The injury and harm that Plaintiffs and Class members suffered was the direct and proximate result of Defendants' violations of Section 5 of the FTCA. Plaintiffs and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face; and (vi) overpayment for the services that were received without adequate data security.

<u>**COUNT III**</u>
**BREACH OF IMPLIED CONTRACT**

96.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

97.    In connection with the dealings Plaintiffs and Class Members had with Defendants, Plaintiffs and Class members entered into implied contracts with Defendants.

98.    Pursuant to these implied contracts, Plaintiffs and Class members provided Defendants with their PII, directly or indirectly, in order for Defendants to provide services. In exchange, Defendants agreed to, among other things, and Plaintiffs and Class members understood that Defendants would: (1) provide services to Plaintiffs and Class member; (2) take reasonable measures to protect the security and confidentiality of Plaintiffs' and Class members' PII; and (3) protect Plaintiffs' and Class members' PII in compliance with federal and state laws and regulations and industry standards.

99.    The protection of PII was a material term of the implied contracts between Plaintiffs and Class members, on the one hand, and Defendants, on the other hand. Indeed, Defendants were clear in their privacy policies, and Plaintiffs understood, that Defendants supposedly respect and are committed to protecting customer privacy.

100.    Had Plaintiffs and Class members known that Defendants would not adequately protect their customers' and former customers' PII, they would not have provided Defendants with their PII.

101.    Plaintiffs and Class members performed their obligations under the implied contracts when they provided Defendants with their PII, either directly or indirectly.

102.    Defendants breached their obligations under their implied contracts with Plaintiffs and Class members in failing to implement and maintain reasonable security measures to protect and secure their PII and in failing to implement and maintain security protocols and procedures to protect Plaintiffs' and Class members' PII in a manner that complies with applicable laws, regulations, and industry standards.

103.    Defendants' breach of their obligations of the implied contracts with Plaintiffs and Class members directly resulted in the Data Breach and the injuries that Plaintiffs and all other Class members have suffered from the Data Breach.

104.    Plaintiffs and all other Class members were damaged by Defendants' breach of implied contracts because: (i) they paid—directly or indirectly—for data security protection they did not receive; (ii) they face a substantially increased and imminent risk of identity theft—a risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII has been breached; (v) they were deprived of the value of their PII, for which there is a well-established national and international market; and (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

## COUNT IV
## UNJUST ENRICHMENT

105.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

106.    This claim is pleaded in the alternative to the breach of implied contract claim.

107.    Plaintiffs and Class members conferred a monetary benefit upon Defendants in the form of monies paid for services to TMX.

108.    Defendants accepted or had knowledge of the benefits conferred upon them by Plaintiffs and Class members. Defendants also benefitted from the receipt of Plaintiffs' and Class members' PII, as this was used in providing loans or other services.

109.    As a result of Defendants' conduct, Plaintiffs and Class members suffered actual damages in an amount equal to the difference in value between their payments made with

reasonable data privacy and security practices and procedures that Plaintiffs and Class members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

110.    Defendants should not be permitted to retain the money belonging to Plaintiffs and Class members because Defendants failed to adequately implement the data privacy and security procedures for themselves that Plaintiffs and Class members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

111.    Defendants should be compelled to provide for the benefit of Plaintiffs and Class members all unlawful proceeds received by it as a result of the conduct and Data Breach alleged herein.

## **PRAYER FOR RELIEF**

Plaintiffs, individually, and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in her favor and against Defendants as follows:

A.    Certifying the Class as requested herein, designating Plaintiffs as Class representatives, and appointing Plaintiffs' counsel as Class Counsel;

B.    Awarding Plaintiffs and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C.    Awarding Plaintiffs and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiffs, on behalf of themselves and the Class, seek appropriate injunctive relief designed to prevent Defendants from experiencing another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

D.      Awarding Plaintiffs and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E.      Awarding Plaintiffs and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F.      Awarding Plaintiffs and the Class such other favorable relief as allowable under law.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

Dated: April 13, 2023                                        Respectfully submitted,

*/s/ Rebecca Franklin Harris*
Rebecca Franklin Harris
Georgia Bar No. 141350
rebecca@franklinlawllc.com
**FRANKLIN LAW, LLC**
2250 E. Victory Dr., Suite 102
Savannah, GA 31404
Phone: 912.335.3305
Fax: 912.335.3305

James M. Evangelista
Georgia Bar No. 707807
jim@ewlawllc.com
**EVANGELISTA WORLEY, LLC**
500 Sugar Mill Road, Suite 245A
Atlanta, GA 30350
Telephone: (404) 205-8400
Fax: (404)205-8395

Ben Barnow*
Anthony L. Parkhill*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Tel: 312.621.2000
Fax: 312.641.5504

b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

*pro hac vice forthcoming

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Lakendra Mitchell, Evelyn Francis, Shawn White, Muranda Wright, and Francis Ann Washington | TMX Finance LLC and TMX Finance Corporate Services, Inc. |

**(b)** County of Residence of First Listed Plaintiff    Bullock County, Alabama
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Chatham County, Georgia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Rebecca Franklin Harris, FRANKLIN LAW, LLC
2250 E. Victory Drive, Suite 102
Savannah, GA 31404  (912)335.3305

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question
*(U.S. Government Not a Party)*

☒ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☒ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332(d)

Brief description of cause:
Class action relating to a data breach of Defendants' network system which exposed personal info. of customers

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE William T. Moore Jr.

DOCKET NUMBER 23-cv-00076

DATE
04/13/2023

SIGNATURE OF ATTORNEY OF RECORD
/s/ Rebecca Franklin Harris

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdiction be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.