**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVSION**

| | |
|---|---|
| DESARAY MAHONE and LEON DIAZ, *individually and on behalf of all others similarly situated*, | **CASE NO.** ___CV423-102___ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| TMX FINANCE CORPORATE SERVICES, INC. and TMX FINANCE LLC d/b/a "TITLEMAX," "TITLEBUCKS," and "INSTALOAN," | **JURY TRIAL DEMANDED** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Desaray Mahone and Leon Diaz ("Plaintiffs"), on behalf of themselves and all others similarly situated ("Class Members"), bring this Class Action Complaint against TMX Finance Corporate Services, Inc., and TMX Finance LLC d/b/a "Title Max," "TitleBucks," and "InstaLoan" ("Defendants"). Plaintiffs allege, based on their personal knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters, the following:

1.     Defendants are financial services providers that primarily provide short term financial relief. Defendants provide "consumer credit products under the title TitleMax®, TitleBucks®, and InstaLoan® brands. Since 1998, [Defendants] have provided access to credit for consumers who are underserved by traditional lenders. Many of [Defendants'] customers have

1

nowhere else to turn when they suffer short-term financial setbacks like medical emergencies or home repairs, so it is [Defendants'] mission to remain a reliable source of credit and offer customers hope and opportunity."[1]

2.     Plaintiffs bring this class action against Defendants for their failure to properly secure and safeguard Personally Identifiable Information ("PII") including, but not limited to, Plaintiffs' and Class Members' names, dates of birth, passport numbers, driver's license numbers, federal/state identification card numbers, tax identification numbers, Social Security numbers, financial account information, phone numbers, residential addresses, and email addresses (collectively, "Private Information" or "PII").

3.     In the ordinary course of business, Defendants stored and utilized Plaintiffs' and Class Members' Private Information. By obtaining, collecting, using, and deriving a benefit from the Private Information of Plaintiffs and Class Members, Defendants assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. By voluntarily undertaking the collection of this sensitive Private Information, Defendants assumed a duty to use due care to protect that information.

4.     Despite their duties to Plaintiffs and Class Members, Defendants stored their Private Information on a database that was negligently and/or recklessly configured. This misconfiguration allowed files on the database to be accessed without a password or any form of multifactor authentication.

5.     On February 13, 2023, Defendants detected unusual activity on their system and began an investigation (the "Data Breach"). According to Defendants, "as part of that

---

[1] https://www.tmxfinancefamily.com/what-we-do/ (last accessed: April 5, 2023).

investigation, global forensic cybersecurity experts were retained. Based on the investigation to date, the earliest known breach of TMX's systems started in early December 2022. On March 1, 2023, the investigation confirmed that information may have been acquired between February 3, 2023 – February 14, 2023." Thereafter, Defendants claim, they began a review of potentially affected files to determine what information may have been involved in the incident.[2]

6.    At least 4.8 million individuals were affected by the Data Breach.

7.    Plaintiffs bring this class action lawsuit on behalf of themselves and those similarly situated to address Defendants' inadequate safeguarding of Plaintiffs' and Class Members' Private Information that they collected and maintained, and for failing to provide adequate notice to Plaintiffs and other Class Members that their information had been stolen by criminals and listed for sale on the dark web.

8.    Defendants maintained the Private Information in a reckless and negligent manner. In particular, the Private Information was maintained on a database that was not password protected and therefore accessible to any member of the public. Foreseeably, cybercriminals exploited this obvious vulnerability, exfiltrated Plaintiffs' and Class Members' Private Information from the database, and then listed this information for sale on the dark web.

9.    As a result of the Data Breach, Plaintiffs and Class Members suffered ascertainable losses, including but not limited to, a loss of privacy, the loss of the benefit of their bargain, out-of-pocket monetary losses and expenses, the value of their time reasonably incurred to remedy or mitigate the effects of the attack, the diminished value of their Private Information, and the substantial and imminent risk of identity theft. Given the theft of information that is largely static—

---

[2] https://apps.web.maine.gov/online/aeviewer/ME/40/179ab0ce-2c43-4119-ae5a-db766d4be3e0.shtml (last visited: April 5, 2023).

like Social Security numbers—this risk will remain with Plaintiffs and Class Members for the rest of their lives.

10.     Upon information and belief, Plaintiffs' and Class Members' Private Information remains in Defendants' possession. Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and therefore Plaintiffs and Class Members are entitled to injunctive and other equitable relief.

## PARTIES

11.     Plaintiff Desaray Mahone is a Citizen of Alabama residing in Phenix City, Alabama.

12.     Plaintiff Leon Diaz is a Citizen of Texas residing in Houston, Texas.

13.     Defendant TMX Finance Corporate Services, Inc. is a corporation organized under the laws of Delaware, and its United States headquarters, and principal place of business are located at 15 Bull St., Ste. 200, Savannah, Georgia 31401.[3]. Defendant TMX Finance Corporate Services, Inc. is a citizen of the States of Georgia and of Delaware.

14.     Defendant TMX Finance, LLC is a corporation organized under the laws of Delaware, and its United States headquarters, and principal place of business are located at 15 Bull St., Ste. 200, Savannah, Georgia 31401.[4] Defendant TMX Finance, LLC is a citizen of the States of Georgia and of Delaware.

15.     Defendant TMX Finance, LLC's sole member is TMX Finance Holdings, Inc., a corporation incorporated in Delaware with a principal place of business at 15 Bull St., Ste. 200,

---

[3] https://www.sec.gov/Archives/edgar/data/1511967/000110465913024898/a12-29657_110k.htm (last visited April 5, 2023).
[4] *Id.*

4

Savannah, Georgia 31401.[5] TMX Finance Holdings, Inc. is a citizen of the States of Georgia and of Delaware.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of Class Members exceeds 100, many of whom have different citizenship from Defendants, including Plaintiffs. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

17.     This Court has personal jurisdiction over Defendants because they operate and are headquartered in this District and conduct substantial business in this District. Defendant TMX Finance, LLC's sole member is also headquartered in this District and conducts substantial business in this District.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Moreover, Defendants are based in this District, maintain Plaintiffs' and Class Members' Private Information in this District, and have caused harm to Plaintiffs and Class Members in this District.

## FACTUAL ALLEGATIONS

### Background

19.     In the ordinary course of its business practices, Defendants collect, store, maintain, and use Personally Identifiable Information ("PII") from individuals, including Plaintiffs and Class Members.

---

[5] *Id.*

20.     Defendants agreed to and undertook legal duties to maintain the Private Information of Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws.

21.     Defendants post Privacy Policies on their websites. These Privacy Policies state that, "To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer and mobile application safeguards and secured files and buildings. We also maintain physical, electronic and procedural safeguards (i.e., computer virus protection software, firewalls, encryption). Only authorized employees have access. Customer access to electronically stored account documents and information is protected via customer-created or customer-specific usernames and passwords."[6]

22.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure, and that such an attempt to obtain said information was foreseeable.

23.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

24.     Plaintiffs and Class Members relied on Defendants to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosure of this Private Information.

---

[6] https://www.tmxdisclosures.com/titlemax/privacy-policy;
https://www.tmxdisclosures.com/titlebucks/privacy-policy;
https://www.tmxdisclosures.com/instaloan/privacy-policy.

25.     Plaintiffs and Class Members directly or indirectly entrusted Defendants with sensitive and confidential information, including their Private Information which includes information that is static, meaning it does not change, and can be used to commit myriad financial crimes.

26.     Plaintiffs and Class Members relied on Defendants to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiffs and Class Members demand Defendants safeguard their Private Information.

27.     Defendants had a duty to adopt reasonable measures to protect the Private Information of Plaintiffs and Class Members from involuntary disclosure to third parties.

### *The Data Breach*

28.     On or around March 30, 2023, Defendants dispatched Data Breach Notice Letters to Plaintiffs and Class Members, informing them that Defendants detected suspicious activity on their systems on February 13, 2023. Based on an internal investigation and the investigation of "global forensic cybersecurity experts," Defendants believe that the Data Breach may have begun as early as December 2022, and that from February 3, 2023, through February 14, 2023, unauthorized actors were able to access and acquire sensitive personal information from Defendants' systems.

29.     The Data Breach Notice Letter that Defendants sent to Plaintiffs and Class Members states:

> **What Happened?** On February 13, 2023, we detected suspicious activity on our systems and promptly took steps to investigate the incident. As part of that investigation, global forensic cybersecurity experts were retained. Based on the investigation to date, the earliest known breach of TMX's systems started in early December 2022. On March 1, 2023, the investigation confirmed that information

7

may have been acquired between February 3, 2023 – February 14, 2023. We promptly began a review of potentially affected files to determine what information may have been involved in this incident. We notified the FBI but have not delayed this notification for any law enforcement investigation.

**What Information Was Involved?** The personal information involved may have included your name, date of birth, passport number, driver's license number, federal/state identification card number, tax identification number, social security number and/or financial account information, and other information such as phone number, address, and email address. [7]

30.     Defendants' Data Breach Notice Letter admits that Plaintiffs' and Class Members' Private Information was accessed via an external system data breach without authorization, exfiltrated by cybercriminals, and posted for sale on the internet.[8]

31.     Because Defendants failed to properly protect and safeguard Plaintiffs' and Class Members' Private Information, an unauthorized third party was able to access Defendants' database, and then access and exfiltrate Plaintiffs' and Class Members' Private Information stored on Defendants' database.

32.     Defendants created the risk of the Data Breach by failing to properly configure their database, allowing it to be accessed without a password or any form of multifactor authentication. Defendants knew or should have known this, and as such owed Plaintiffs and Class Members a duty of due care to protect their Private Information.

33.     The unencrypted Private Information of Plaintiffs and Class Members has already been listed for sale on the internet. In addition, unencrypted Private Information may fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiffs and Class Members. In turn, unauthorized individuals can easily access

---

[7] https://apps.web.maine.gov/online/aeviewer/ME/40/179ab0ce-2c43-4119-ae5a-db766d4be3e0.shtml (last visited April 5, 2023).

[8] *See id.*

the Private Information of Plaintiffs and Class Members.

*Named Plaintiffs Experience*

34.    Plaintiffs Mahone and Diaz are cautious people and are therefore very careful about sharing their sensitive Private Information. As a result, they have never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Plaintiffs Mahone and Diaz store any documents containing their sensitive PII in a safe and secure location or they destroy the documents.

35.    Plaintiffs Mahone and Diaz only allowed Defendants to maintain, store, and use their Private Information because they believed that Defendants would use basic security measures to protect their Private Information, such as requiring passwords and multifactor authentication to access databases storing their Private Information. As a result, Plaintiffs' Private Information was within the possession and control of Defendants at the time of the Data Breach.

36.    Defendants sent Plaintiffs and Class Members a letter from Defendants dated March 30, 2023, informing them of the Data Breach. This letter stated that:

> **What Information was Involved?** The personal information involved may have included your name, date of birth, passport number, driver's license number, federal/state identification card number, tax identification number, social security number and/or financial account information, and other information such as phone number, address, and email address.

37.    In the instant that their Private Information was accessed and obtained by a third-party without their consent or authorization, Plaintiffs Mahone and Diaz suffered injury from a loss of privacy.

38.    Plaintiffs Mahone and Diaz have been further injured by the damages to and diminution in value of their Private Information—a form of intangible property that Plaintiffs Mahone and Diaz entrusted to Defendants. This information has inherent value that Plaintiffs

Mahone and Diaz and Class Members were deprived of when their Private Information was placed on a publicly accessible database, exfiltrated by cybercriminals, and, upon information and belief, later placed for sale on the dark web.

39.    Plaintiffs Mahone and Diaz's Personal Information has already been sold by cybercriminals. The actions of unauthorized criminal third parties have detrimentally impacted Plaintiffs' life as a whole, and specifically caused great financial strain on them as a direct result of the Data Breach.

40.    The Data Breach has also caused Plaintiffs Mahone and Diaz to suffer imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from their Private Information being placed in the hands of criminals.

41.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiffs to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring their accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

42.    Defendants acknowledge the risk posed to Plaintiffs and their Private Information. Indeed, Defendants have offered a 12-month identity theft protection service.

43.    The substantial risk of imminent harm and loss of privacy have both caused Plaintiffs Mahone and Diaz to suffer stress, fear, and anxiety.

44.    Plaintiffs have a continuing interest in ensuring that Plaintiffs' Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

10

### *The Data Breach was Foreseeable*

45.     Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the finance industry preceding the date of the breach.

46.     In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[9]

47.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack.[10]

48.     Generally, "[c]ybercriminals choose their targets based on two conditions – maximum impact and maximum profit . . . [f]inancial institutions perfectly meet these conditions because they store highly valuable data, and their digital transformation efforts are creating greater opportunities for cyber attackers to access that data."[11]

49.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendants.

### *Value of PII*

50.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, a single victim's personal information can be sold at a price ranging from

---

[9] See 2021 Data Breach Annual Report (ITRC, Jan. 2022) (available at https://notified.idtheftcenter.org/s/), at 6.

[10] FBI, Secret Service Warn of Targeted, Law360 (Nov.18,2019), https://www.law360.com/articles/1220974/fbisecret-service-warn-of-targeted-ransomware.

[11] Edward Kost, 10 Biggest Data Breach in Finance [Updated August 2022], UpGuard, (Mar. 2, 2023), https://www.upguard.com/blog/biggest-data-breaches-financial-services.

$40 to $200, and bank details have a price range of $50 to $200.[12] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[13] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[14]

51.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts.

52.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information … [is] worth more than 10x on the black market."[15]

53.    Moreover, there may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[16]

---

[12] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Mar. 25, 2023).

[13] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed Mar. 25, 2023).

[14] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed Mar. 25, 2023).

[15] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Mar. 25, 2023).

[16] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last accessed Aug. 23, 2021).

54.     At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiffs and Class Members and the foreseeable consequences that would occur if Defendants' data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

55.     Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

56.     Defendants were, or should have been, fully aware of the unique type and the significant volume of data on Defendants' network and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

57.     The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the PII of Plaintiffs and Class Members.

58.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure.

59.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

60.     Plaintiffs and Class Members relied on Defendants to implement and follow adequate data security policies and protocols, to keep their Private Information confidential and securely maintained, to use such Private Information solely for business purposes, and to prevent

13

the unauthorized disclosures of the Private Information.

***Defendants Failed to Properly Protect Plaintiffs' and Class Members' Private Information***

61.     Defendants could have prevented this Data Breach by properly securing and encrypting the systems containing the Private Information of Plaintiffs and Class Members. Alternatively, Defendants could have destroyed the data, especially for individuals with whom it had not had a relationship for a period of time.

62.     Defendants' negligence in safeguarding the PII of Plaintiffs and Class Members is exacerbated by the repeated warnings and alerts directed to companies like Defendants' to protect and secure sensitive data they possess.

63.     Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the PII of Plaintiffs and Class Members from being compromised.

64.     To prevent and detect unauthorized cyber-attacks, Defendants could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.
- Configure firewalls to block access to known malicious IP addresses.
- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.
- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted

via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.
- Consider disabling Remote Desktop protocol (RDP) if it is not being used.
- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.
- Execute operating system environments or specific programs in a virtualized environment.
- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[17]

65.    To prevent and detect cyber-attacks, including the cyber-attack that resulted in the

Data Breach, Defendants could and should have implemented, as recommended by the Microsoft

Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates;
- Use threat and vulnerability management;
- Perform regular audits; and
- remove privileged credentials.

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely.

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords.

**Apply principle of least-privilege**

---

[17] *See* How to Protect Your Networks from RANSOMWARE, at 3, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited Aug. 23, 2021).

- Monitor for adversarial activities;
- Hunt for brute force attempts;
- Monitor for cleanup of Event Logs; and
- Analyze logon events.

66.     Given that Defendants were storing the PII of Plaintiffs and Class Members, Defendants could and should have implemented all the above measures to prevent and detect cyberattacks. Instead, Defendants failed to implement basic security measures, like password protection, encryption, or multifactor authentication.

### Defendants Failed to Comply with FTC Guidelines

67.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making.

68.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[18]

69.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords

---

[18] Protecting Personal Information: A Guide for Business, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

70.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect PII, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions clarify the measures businesses take to meet their data security obligations.

71.     Defendants failed to properly implement basic data security practices, such as making a database storing Private Information available to the public without the use of a password or multifactor authentication.

72.     Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

73.     Defendants were always fully aware of their obligation to protect the PII of Plaintiffs and Class members. Defendants were also aware of the significant repercussions that would result from their failure to do so.

### *Defendants failed to Comply with Industry Standards*

74.     As shown above, experts studying cyber security routinely identify companies in the finance industry as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

75.     Several best practices have been identified that at a minimum should be

implemented by service providers like Defendants, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multifactor authentication; backup data; and limiting which employees can access sensitive data.

76.    Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

77.    The foregoing frameworks are existing and applicable industry standards in the finance industry, and Defendants failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

### As a Result of Defendants' Failure to Safeguard Private Information, Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft and Have Experienced Substantial Harm.

78.    Plaintiffs and Class Members have suffered injury from the access to, and misuse of, their PII that can be directly traced to Defendants.

79.    The ramifications of Defendants' failure to keep Plaintiffs' and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security number, driver's license number, date of birth, and/or other information, without permission, to commit fraud or other crimes.

80.    The FTC defines identity theft as "a fraud committed or attempted using the

identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

81.    According to experts, one out of four data breach notification recipients become a victim of identity fraud.

82.    As a result of Defendants' failure to prevent—and to timely detect—the Data Breach, Plaintiffs and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

    a.    The loss of the opportunity to control how their PII is used;

    b.    The diminution in value of their PII;

    c.    The compromise and continuing publication of their PII;

    d.    Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.    Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.    Delay in receipt of tax refund monies;

    g.    Unauthorized use of stolen PII; and

    h.    The continued risk to their PII, which remains in the possession of Defendants and is subject to further breaches so long as Defendants fails to undertake the

appropriate measures to protect the PII in their possession.

83.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims.[19]

84.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good." Defendants did not rapidly report to Plaintiffs and the Class that their PII had been stolen, and in fact did not notify Plaintiffs for five months.[20]

85.     Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

86.     In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims have to spend a considerable time repairing the damage caused by the theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

87.     Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiffs and the Class will need to be remain vigilant against unauthorized data use for years or even decades to come.

---

[19] Available at 2019_IC3Report.pdf (last visited Apr. 4, 2023).
[20] *Id.*

88.    According to the FTC, unauthorized PII disclosures are extremely damaging to consumers' finances, credit history and reputation, and can take time, money and patience to resolve the fallout.[21]  The FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

89.    Defendants' failure to properly notify Plaintiffs and Class Members of the Data Breach exacerbated Plaintiffs' and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

### Plaintiffs' and Class Members' Damages

90.    To date, Defendants have done little to provide Plaintiffs and Class Members with relief for the damages they have suffered as a result of the Data Breach, including, but not limited to, the costs and loss of time they incurred because of the Data Breach. Defendants have only offered 12 months of inadequate identity monitoring services, despite Plaintiffs and Class Members being at risk of identity theft and fraud for the remainder of their lifetimes.

91.    The 12 months of credit monitoring offered to persons whose Private Information was compromised is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud. What's more, Defendants place the burden squarely on Plaintiffs and Class Members by requiring them to expend time signing up for that service, as opposed to

---

[21] *See* Taking Charge, What to Do If Your Identity is Stolen, FTC, at 3 (2012), https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-do-if-your-identity-stolen (last visited October 10, 2022).

automatically enrolling all victims of this Data Breach.

92.    Plaintiffs and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

93.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

94.    Plaintiffs and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

95.    Plaintiffs and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiffs and Class Members.

96.    Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

97.    Defendants' delay in noticing affected persons of the theft of their Private Information prevented early mitigation efforts and compounded the harm.

98.    Plaintiffs and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out- of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

      a.  Reviewing and monitoring financial and other sensitive accounts and finding

fraudulent insurance claims, loans, and/or government benefits claims;

b. Purchasing credit monitoring and identity theft prevention;

c. Placing "freezes" and "alerts" with reporting agencies;

d. Spending time on the phone with or at financial institutions and/or government agencies to dispute unauthorized and fraudulent activity in their name;

e. Contacting financial institutions and closing or modifying financial accounts; and

f. Closely reviewing and monitoring Social Security number, bank accounts, and credit reports for unauthorized activity for years to come.

99.     Moreover, Plaintiffs and Class Members have an interest in ensuring that their Personally Identifiable Information, which is believed to remain in the possession of Defendants, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing this Private Information is not accessible online and that access to such data is encrypted and password protected.

100.    Defendants acknowledge the harm caused to Plaintiffs and Class Members because they have offered a complimentary 12-month credit monitoring program *via* Experian IdentityWorks. [22]

## **CLASS ACTION ALLEGATIONS**

101.    Plaintiffs bring this nationwide class action on behalf of themselves and on behalf of others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

---

[22] https://apps.web.maine.gov/online/aeviewer/ME/40/179ab0ce-2c43-4119-ae5a-db766d4be3e0.shtml (last visited April 5, 2023).

102.    The Nationwide Class that Plaintiffs seek to represent is defined as follows:

All persons whose Personally Identifiable Information was actually or potentially accessed or acquired during the Data Breach event that is the subject of the Data Breach Notice Letter that Defendants published to Plaintiffs and other Class Members on or around March 30, 2023 (the "Class").

103.    Excluded from the Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

104.    Plaintiffs reserve the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

105.    <u>Numerosity</u>, Fed R. Civ. P. 23(a)(1): Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are certainly tens of thousands, and possibly in excess of 4,800,000 individuals whose Private Information was improperly accessed in the Data Breach, and each Class is apparently identifiable within Defendants' records.

106.    <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

    a.    Whether and to what extent Defendants had a duty to protect the Private Information of Plaintiffs and Class Members;

    b.    Whether Defendants had duties not to disclose the Private Information of Plaintiffs and Class Members to unauthorized third parties;

24

c.  Whether Defendants failed to adequately safeguard the Private Information of Plaintiffs and Class Members;

d.  Whether and when Defendants actually learned of the Data Breach;

e.  Whether Defendants adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

f.  Whether Defendants violated the law by failing to promptly notify Plaintiffs and Class Members that their PII had been compromised;

g.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.  Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

i.  Whether Plaintiffs and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendants' wrongful conduct;

j.  Whether Plaintiffs and Class Members are entitled to restitution as a result of Defendants' wrongful conduct; and

k.  Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

107.  <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendants' misfeasance.

108.  <u>Policies Generally Applicable to the Class,</u> Fed. R. Civ. P. 23(b)(2): This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on

Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

109.    <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of Class Members in that Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiffs have suffered are typical of other Class Members. Plaintiffs have also retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

110.    <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

111.    The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm

the limited resources of each individual Class Member with superior financial and legal resources;
the costs of individual suits could unreasonably consume the amounts that would be recovered;
proof of a common course of conduct to which Plaintiffs were exposed is representative of that
experienced by the Class and will establish the right of each Class Member to recover on the cause
of action alleged; and individual actions would create a risk of inconsistent results and would be
unnecessary and duplicative of this litigation.

112.    The litigation of the claims brought herein is manageable. Defendants' uniform
conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class
Members demonstrates that there would be no significant manageability problems with
prosecuting this lawsuit as a class action.

113.    Adequate notice can be given to Class Members directly using information
maintained in Defendants' records.

114.    Unless a Class-wide injunction is issued, Defendants may continue in their failure
to properly secure the Private Information of Class Members, Defendants may continue to refuse
to provide proper notification to Class Members regarding the Data Breach, and Defendants may
continue to act unlawfully as set forth in this Complaint.

115.    Further, Defendants have acted or refused to act on grounds generally applicable to
the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to
Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil
Procedure.

116.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification
because such claims present only particular, common issues, the resolution of which would
advance the disposition of this matter and the parties' interests therein. Such particular issues

include, but are not limited to:

    a.   Whether Defendants owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

    b.   Whether Defendants breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

    c.   Whether Defendants failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

    d.   Whether an implied contract existed between Defendants on the one hand, and Plaintiffs and Class Members on the other, and the terms of that implied contract;

    e.   Whether Defendants breached the implied contract;

    f.   Whether Defendants adequately and accurately informed Plaintiffs and Class Members that their Private Information had been compromised;

    g.   Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    h.   Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendants' wrongful conduct.

### CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiffs and the Nationwide Class)**

117.    Plaintiffs and the Class repeat the allegations contained in paragraphs 1-116 as if fully set forth herein.

118.    As a condition of applying for and receiving their loans from Defendants, Defendants' current and former customers were obligated to provide and entrust Defendants with PII, including their name, birthdate, address, Social Security number, and information provided in connection with a loan application, loan modification, or other items regarding loan servicing.

119.    Plaintiffs and the Class entrusted Defendants with their Private Information.

120.    Plaintiffs and the Class entrusted their Private Information to Defendants on the premise and with the understanding that Defendants would safeguard their information, use their information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

121.    Defendants have full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and the Class could and would suffer if the Private Information were wrongfully disclosed.

122.    Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiffs and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

123.    By accepting, storing, and maintaining Plaintiffs' and Class Members' Private Information, Defendants undertook a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendants' security protocols to ensure that the Private Information of Plaintiffs and Class Members in Defendants' possession was adequately secured and protected.

124.    By accepting, storing, and maintaining Plaintiffs' and Class Members' Private Information, Defendants also had a duty to exercise appropriate clearinghouse practices to remove Private Information they were no longer required to retain pursuant to regulations.

125.    By accepting, storing, and maintaining Plaintiffs' and Class Members' Private Information, Defendants also had a duty to have procedures in place to detect and prevent the improper access and misuse of the Private Information of Plaintiffs and the Class.

126.    Defendants' duty to use reasonable security measures arose as a result of the special relationship that existed between Defendants and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendants with their confidential Private Information, a necessary part of obtaining services from Defendants.

127.    Defendants were subject to an "independent duty," untethered to any contract between Defendants and Plaintiff or the Class.

128.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Class was reasonably foreseeable, due to the nature of Defendants' industry, and particularly in light of Defendants' inadequate security practices.

129.    Plaintiffs and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendants knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiffs and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendants' systems.

130.    Defendants' own conduct created a foreseeable risk of harm to Plaintiffs and the Class. Defendants' misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendants' misconduct also included their decisions not to comply with industry standards for the safekeeping of the Private Information of Plaintiffs and the Class, including basic encryption techniques freely available to Defendants.

131.    Defendants knew or should have known that Plaintiffs' and Class Members' Private Information was stored on their database and were or should have been aware of the extreme risks associated with failing to properly safeguard Plaintiffs' and Class Members' Private Information.

132.    Despite being aware of the likelihood that Defendants' databases were vulnerable,

not secure, and likely to be attacked by cybercriminals, Defendants failed to correct, update, or upgrade their security protections, thus causing the Data Breach.

133.    Plaintiffs and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendants' possession.

134.    Defendants were in the best position to protect against the harm suffered by Plaintiffs and the Class as a result of the Data Breach.

135.    Defendants had and continue to have a duty to adequately disclose that the Private Information of Plaintiffs and the Class within Defendants' possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Info by third parties.

136.    Defendants had a duty to employ proper procedures to prevent the unauthorized dissemination of the Private Information of Plaintiffs and the Class.

137.    Defendants have admitted that the Private Information of Plaintiffs and Class Members was disclosed due to Defendants' "technical security configuration issue," and thus also accessed and exfiltrated by unauthorized third persons as a result of the Data Breach.

138.    Defendants improperly and inadequately safeguarded the Private Information of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

139.    Defendants, through their actions and/or omissions, unlawfully breached their duties to Plaintiffs and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Private Information of Plaintiffs and the Class during the time the Private Information was within Defendants' possession or control.

140.    Defendants failed to heed industry warnings and alerts to provide adequate safeguards to protect the Private Information of Plaintiffs and the Class in the face of increased risk of theft.

141.    Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiffs and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of Private Information.

142.    Defendants breached their duty to exercise appropriate clearinghouse practices by failing to remove Private Information they were no longer required to retain pursuant to regulations.

143.    Defendants, through their actions and/or omissions, unlawfully breached their duty to adequately and timely disclose to Plaintiffs and the Class the existence and scope of the Data Breach.

144.    But for Defendants' wrongful and negligent breach of duties owed to Plaintiffs and the Nationwide Class, the Private Information of Plaintiffs and the Class would not have been compromised.

145.    Said differently, if Defendants had properly prevented a "technical security configuration," then the Data Breach would not have occurred, and Plaintiffs' and Class Members' Private Information would have been appropriately safeguarded.

146.    Plaintiffs and Class Members suffered an injury when their Private Information was accessed by unknown third parties.

147.    There is a close causal connection between Defendants' failure to implement security measures to protect the Private Information of Plaintiffs and the Class and the harm, and increased risk of imminent harm, suffered by Plaintiffs and the Nationwide Class.

32

148.    The Private Information of Plaintiffs and Class Members was lost and accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

149.    As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to, the following: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information of Plaintiffs and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Class.

150.    As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

151.   Additionally, as a direct and proximate result of Defendants' negligence Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information in their continued possession.

152.   As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class are entitled to recover actual, consequential, and nominal damages.

### COUNT II
### NEGLIGENCE PER SE
### (On behalf of Plaintiffs and the Nationwide Class)

153.   Plaintiffs and the Class repeat the allegations contained in paragraphs 1-116 as if fully set forth herein.

154.   Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

155.   Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class.

156.   Defendants' violation of Section 5 of the FTC Act constitutes negligence *per se*.

157.   Plaintiffs and the Class are within the class of persons that the FTC Act was intended to protect.

34

158.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

159.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of Plaintiffs and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Class.

160.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

161.    Additionally, as a direct and proximate result of Defendants' negligence *per se*, Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII in their continued possession.

162.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiffs and the Class are entitled to recover actual, consequential, and nominal damages.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiffs and the Class)**

163.    Plaintiffs and the Class repeat the allegations contained in paragraphs 1-116 as if fully set forth herein.

164.    Plaintiffs and Class Members were required to provide Defendants with their Private Information.

165.    By Plaintiffs and Class Members providing their Private Information, and by Defendants accepting this Private Information, the parties mutually assented to implied contracts. These implied contracts included an implicit agreement and understanding that (1) Defendants would adequately safeguard Plaintiffs' and Class Members' Private Information from foreseeable threats, (2) that Defendants would delete the information of Plaintiffs and Class Members once it no longer had a legitimate need; and (3) that Defendants would provide Plaintiffs and Class Members with notice within a reasonable amount of time after suffering a data breach.

166.    Defendants provided consideration by providing its services, while Plaintiffs and Class Members provided consideration by providing valuable property—i.e., their Private Information. Defendants benefitted from the receipt of this Private Information by increasing profit

from additional business.

167.    Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendants.

168.    Defendants materially breached their implied contracts with Plaintiffs and Class Members when they (1) placed their Private Information on a publicly available database that could (and later was) accessed by members of the public on the internet without a password or multifactor authentication and (2) waited an unreasonably long time to notify them of the Data Breach. It is common sense that Plaintiffs and Class Members would not have provided Defendants with their Private Information had they known that Defendants would not implement basic data security measures or that it would wait several months to notify them of a data breach involving their Private Information.

169.    Defendants' breaches of contract have caused Plaintiffs and Class Members to suffer damages from the lost benefit of their bargain, out of pocket monetary losses and expenses, loss of time, and diminution of the value of their Private Information.

170.    As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiffs and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

<u>**COUNT IV**</u>
**UNJUST ENRICHMENT**
**(On behalf of Plaintiffs and the Class)**

171.    Plaintiffs and the Class repeat the allegations contained in paragraphs 1-116 as if fully set forth herein.

172.    Plaintiffs and Class Members conferred a monetary benefit on Defendants, by providing Defendants with their valuable Private Information.

173.    Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Private Information.

174.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants instead calculated to avoid their data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

175.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the monetary value of the benefit belonging to Plaintiffs and Class Members, because Defendants failed to implement appropriate data management and security measures that are mandated by industry standards.

176.    Defendants acquired the monetary benefit and PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

177.    If Plaintiffs and Class Members knew that Defendants had not secured their PII, they would not have agreed to provide their PII to Defendants.

178.    Plaintiffs and Class Members have no adequate remedy at law.

179.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class

Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Private Information is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Private Information in their continued possession and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

180.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

181.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received from them.

**COUNT V**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(On behalf of Plaintiffs and the Class)**

182.    Plaintiffs and the Class repeat the allegations contained paragraphs 1-116 as if fully set forth herein.

183.    Plaintiffs pursue this claim under the Federal Declaratory Judgment Act, 28 U.S.C.

§ 2201.

184.    Defendants owe a duty of care to Plaintiffs and Class Members that require it to adequately secure Plaintiff's and Class Members' Private Information.

185.    Defendants failed to fulfill their duty of care to safeguard Plaintiffs' and Class Members' Private Information.

186.    As described above, actual harm has arisen in the wake of the Data Breach regarding Defendants' contractual obligations and duties of care to provide security measures to Plaintiffs and Class Members. Further, Plaintiffs and Class Members are at risk of additional or further harm due to the exposure of their Private Information and Defendants' failure to address the security failings that led to such exposure.

187.    There is no reason to believe that Defendants' employee training and security measures are any more adequate now than they were before the breach to meet Defendants' contractual obligations and legal duties.

188.    Plaintiffs, therefore, seeks a declaration (1) that Defendants' existing data security measures do not comply with their contractual obligations and duties of care to provide adequate data security, and (2) that to comply with their contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to, the following:

    a.    Ordering that Defendants engage internal security personnel to conduct testing, including audits on Defendants' systems, on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

    b.    Ordering that Defendants engage third-party security auditors and internal

personnel to run automated security monitoring;

c.   Ordering that Defendants audit, test, and train their security personnel and employees regarding any new or modified data security policies and procedures;

d.   Ordering that Defendants purge, delete, and destroy, in a reasonably secure manner, any Private Information not necessary for their provision of services;

e.   Ordering that Defendants conduct regular database scanning and security checks; and

f.   Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel and employees how to safely share and maintain highly sensitive personal information, including but not limited to, Plaintiffs and Class Members' Personally Information.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment as follows:

A. Certify this case as a Class Action pursuant Federal Rule of Civil Procedure 23;

B. Appoint Plaintiffs as the Class Representatives and the undersigned as Class Counsel;

C. Order appropriate compensatory, injunctive, declaratory, punitive, and nominal relief to Plaintiffs and Class Members under the applicable law;

D. Award Plaintiffs an appropriate Class Representative Service Award for their prosecution of this matter on behalf of all Class Members;

E. Award Plaintiffs and the Class pre-judgment and/or post-judgment interest as prescribed by law;

F. Award reasonable attorneys' fees and costs in accordance with O.C.G.A. § 13-6-11 and as permitted by law; and

G. Enter other and further such relief as the Court deems to be both just and fair.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand that this matter be tried before a jury.

Date: April 14, 2023.                    Respectfully Submitted,


<u>/s/ Amy C. Daugherty</u>
Amy C. Daugherty
Georgia Bar No. 429299
MaryBeth V. Gibson*
Georgia Bar No. 725843
N. Nickolas Jackson*
Georgia Bar No. 841433
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road
Building 14, Suite 230
Atlanta, GA 30305
Telephone: (404) 320-9979
Facsimile: (404) 320-9978
adaugherty@thefinleyfirm.com
mgibson@thefinleyfirm.com
njackson@thefinleyfirm.com

James J. Pizzirusso*
**HAUSFELD LLP**
1700 K St. N.W., Suite 650
Washington, DC 20006
Tel: 202-540-7200
jpizzirusso@hausfeld.com

Steven M. Nathan*
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY  10004
Tel: 646-357-1194
snathan@hausfeld.com

Amy E. Keller*
James A. Ulwick*
**DICELLO LEVITT LLC**
Ten North Dearborn Street
Sixth Floor

Chicago, Illinois 60602
Tel: 312-241-7900
akeller@dicellolevitt.com
julwick@dicellolevitt.com

*Pro Hac Vice forthcoming*

*Counsel for Plaintiff and Putative Class*

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DESARAY MAHONE and LEON DIAZ, individually and on behalf of all others similarly situated,

**(b)** County of Residence of First Listed Plaintiff    Russell County, Alabama
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Amy C. Daugherty & MaryBeth V. Gibson THE FINLEY FIRM, P.C. 3535 Piedmont Road Building 14, Suite 230 Atlanta, GA 30305 T: (404) 320-9979

## DEFENDANTS

TMX FINANCE CORPORATE SERVICES, INC. and TMX FINANCE LLC d/b/a "TITLEMAX," "TITLEBUCKS," and " INSTALOAN,"

County of Residence of First Listed Defendant    Chatham
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U.S. Government Plaintiff
- ❏ 2  U.S. Government Defendant
- ❏ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation ❏ 470 Racketeer Influenced and |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ❏ 840 Trademark | Corrupt Organizations |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 190 Other Contract | ❏x360 Other Personal Injury | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 485 Telephone Consumer Protection Act |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 490 Cable/Sat TV |
| ❏ 196 Franchise | | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) ❏ 864 SSID Title XVI | ❏ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | ❏ 865 RSI (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | ❏ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ❏ 891 Agricultural Acts ❏ 893 Environmental Matters |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 895 Freedom of Information Act |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 896 Arbitration |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | ❏ 899 Administrative Procedure Act/Review or Appeal of |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** ❏ 540 Mandamus & Other | ❏ 462 Naturalization Application | | ❏ 950 Constitutionality of State Statutes |
| | ❏ 448 Education | ❏ 550 Civil Rights ❏ 555 Prison Condition ❏ 560 Civil Detainee - Conditions of Confinement | ❏ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation - Transfer
- ❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. Sec. 1332(d)(2)(A)

Brief description of cause:
This is a class action for data breach due to the Defendants' failure to safeguard Plaintiff's private information

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
$100,000,000

CHECK YES only if demanded in complaint:

**JURY DEMAND:**    ☒ Yes    ❏No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE    4/14/2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____