## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

|  |  |
|---|---|
| WHITLEY SMITH and ADAM WHITE, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>          v.<br><br>TMX FINANCE CORPORATE SERVICES, INC. and TMX FINANCE LLC d/b/a "TitleMax," "TitleBucks," and "InstaLoan,"<br><br>      Defendants. | Case No.<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiffs Whitley Smith and Adam White ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendants TMX Finance Corporate Services, Inc. and TMX Finance LLC d/b/a "TitleMax," "TitleBucks," and "InstaLoan" ("Defendants") and allege as follows based on personal knowledge as to their own acts and on investigation conducted by counsel as to all other allegations:

### PARTIES

1.     Plaintiff Whitley Smith is a citizen of Georgia residing in LaGrange, Georgia.

2.     Plaintiff Adam White is a citizen of Tennessee residing in Helenwood, Tennessee.

3.     Defendant TMX Finance Corporate Services, Inc. is a Delaware corporation with its principal place of business at 15 Bull Street, Suite 200, Savannah, Georgia 31401.

4.     Defendant TMX Finance, LLC is a Delaware limited liability company with its principal place of business at 15 Bull Street, Suite 200, Savannah, Georgia 31401.

## JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the proposed Class who are diverse from Defendants, and (4) there are more than 100 proposed Class Members.

6.     This Court has general personal jurisdiction over Defendants because Defendants are residents of this state.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are residents of this district.

## FACTUAL ALLEGATIONS

### I.  Background

8.     Defendants are based in Savannah, Georgia and provide consumer credit products under the TitleMax, TitleBucks, and InstaLoan brands.

9.     As part of Defendants' business, Defendants' customers, like Plaintiffs and Class Members, provided certain Personal Identifying Information ("PII") to Defendants.

10.     As a sophisticated business with an acute interest in maintaining the confidentiality of the PII entrusted to it, Defendants are well-aware of the numerous data breaches that have occurred throughout the United States and their responsibility for safeguarding PII in their possession.

### II.  The Data Breach

11.     On or around March 30, 2023, Defendants sent a letter to Plaintiffs and Class Members to notify them of a data breach to their network resulting in the unauthorized release of

Plaintiffs and Class Members' PII ("Data Breach")[1]:

### What Happened?

On February 13, 2023, we detected suspicious activity on our systems and promptly took steps to investigate the incident. As part of that investigation, global forensic cybersecurity experts were retained. Based on the investigation to date, the earliest known breach of TMX's systems started in early December 2022. On March 1, 2023, the investigation confirmed that information may have been acquired between February 3, 2023 – February 14, 2023. We promptly began a review of potentially affected files to determine what information may have been involved in this incident. We notified the FBI but have not delayed this notification for any law enforcement investigation.

### What Information Was Involved?

The personal information involved may have included your name, date of birth, passport number, driver's license number, federal/state identification card number, tax identification number, social security number and/or financial account information, and other information such as phone number, address, and email address.

### What We Are Doing.

Our investigation is still in progress, but TMX believes the incident has been contained. We continue to monitor our systems for any suspicious activity. We have implemented additional security features, such as additional endpoint protection and monitoring, as well as resetting all employee passwords. We continue to evaluate ways to further enhance the security of our systems.

To help protect your identity, we are offering you complimentary credit monitoring and identity protection services through Experian IdentityWorks[SM] for a period of 12 months. Please see the enclosed Reference Guide for enrollment details and instructions on how to enroll.

12.    The PII compromised in the Data Breach included Plaintiffs and Class Members'

names, dates of birth, passport numbers, driver's license numbers, federal/state identification card

---

[1] https://apps.web.maine.gov/online/aeviewer/ME/40/179ab0ce-2c43-4119-ae5a-db766d4be3e0.shtml

numbers, tax identification numbers, social security numbers and/or financial account information, and other information such as phone numbers, addresses, and email addresses.

13.     Defendants reported that 4,822,580 individuals' PII was compromised in the Data Breach.

14.     Defendants did not state why they were unable to prevent the Data Breach or which security feature failed.

15.     Defendants did not state why they were unable to detect the Data Breach until approximately two months after it began.

16.     Defendants did not state why they did not contact individuals about the Data Breach until over one month after the Data Breach occurred.

17.     Defendants failed to prevent the Data Breach because they did not adhere to commonly accepted security standards and failed to detect that their databases were subject to a security breach.

### III.  Plaintiffs' PII Was Compromised in the Data Breach

#### A.  Plaintiff Whitley Smith

18.     Plaintiff Whitley Smith received a letter from Defendants notifying her of the Data Breach and that her PII was compromised.

19.     Plaintiff Whitley Smith had a loan with TitleMax that closed about 2 years ago.

20.     Since the Data Breach, Plaintiff Whitley Smith has been receiving more spam calls and spam texts.

21.     Plaintiff Whitley Smith signed up for Defendants' free credit monitoring service and placed a freeze on her credit reports.

### B.  Plaintiff Adam White

22.     Plaintiff Adam White received a letter from Defendants notifying him of the Data Breach and that his PII was compromised.

23.     Plaintiff Adam White had a loan with TitleMax that closed about 2 years ago.

24.     Since the Data Breach, Plaintiff Adam White has been receiving more spam calls and spam texts.

25.     Plaintiff Adam White erased all of the data on his phone and also purchased a new phone to prevent any further compromise of his PII as a result of the Data Breach.

## IV.  Injuries to Plaintiffs and Class Members

26.     As a direct and proximate result of Defendants' actions and omissions in failing to protect Plaintiffs and Class Members' PII, Plaintiffs and Class Members have been injured.

27.     Plaintiffs and Class Members have been placed at a substantial risk of harm in the form of credit fraud or identity theft and have incurred and will likely incur additional damages, including spending substantial amounts of time monitoring accounts and records, in order to prevent and mitigate credit fraud, identity theft, and financial fraud.

28.     In addition to the irreparable damage that may result from the theft of PII, identity theft victims must spend numerous hours and their own money repairing the impacts caused by a breach. After conducting a study, the Department of Justice's Bureau of Justice Statistics found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[2]

29.     In addition to fraudulent charges and damage to their credit, Plaintiffs and Class Members will spend substantial time and expense (a) monitoring their accounts to identify

---

[2] U.S. Dep't of Justice, *Victims of Identity Theft, 2014* (Nov. 13, 2017), http://www.bjs.gov/content/pub/pdf/vit14.pdf.

fraudulent or suspicious charges; (b) cancelling and reissuing cards; (c) purchasing credit monitoring and identity theft prevention services; (d) attempting to withdraw funds linked to compromised, frozen accounts; (e) removing withdrawal and purchase limits on compromised accounts; (f) communicating with financial institutions to dispute fraudulent charges; (g) resetting automatic billing instructions and changing passwords; (h) freezing and unfreezing credit bureau account information; (i) cancelling and re-setting automatic payments as necessary; and (j) paying late fees and declined payment penalties as a result of failed automatic payments.

30.     Additionally, Plaintiffs and Class Members have suffered or are at increased risk of suffering from, *inter alia*, the loss of the opportunity to control how their PII is used, the diminution in the value or use of their PII, and the loss of privacy.

**V.  Securing PII and Preventing Breaches**

31.     Defendants could have prevented this Data Breach by properly securing and encrypting the PII of Plaintiffs and Class Members. Alternatively, Defendants could have destroyed the data they no longer had a reasonable need to maintain or only stored data in an Internet-accessible environment when there was a reasonable need to do so.

32.     Defendants' negligence in safeguarding the PII of Plaintiffs and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

33.     Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the PII of Plaintiffs and Class Members from being compromised.

34.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[3]

---

[3] 17 C.F.R. § 248.201 (2013).

The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[4]

35.     The ramifications of Defendants' failure to keep secure the PII of Plaintiffs and Class Members are long lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

## VI.  The Value of PII

36.     It is well known that PII, and social security numbers and financial account information in particular, is an invaluable commodity and a frequent target of hackers.

37.     According to Javelin Strategy & Research, in 2017 alone over 16.7 million individuals were affected by identity theft, causing $16.8 billion to be stolen.[5]

38.     People place a high value not only on their PII, but also on the privacy of that data. This is because identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.[6]

39.     People are particularly concerned with protecting the privacy of their financial account information and social security numbers, which are the "secret sauce" that is "as good as your DNA to hackers."[7] There are long-term consequences to data breach victims whose social

---

[4] *Id*.
[5] Javelin Strategy & Research, *Identity Fraud Hits All Time High With 16.7 Million U.S. Victims in 2017, According to New Javelin Strategy & Research Study* (Feb. 6, 2018), https://www.javelinstrategy.com/press-release/identity-fraud-hits-all-time-high-167-million-us-victims-2017-according-new-javelin.
[6] Identity Theft Resource Center, *Identity Theft: The Aftermath 2017*, https://www.ftc.gov/system/files/documents/public_comments/2017/10/00004-141444.pdf.
[7] Cameron Huddleston, *How to Protect Your Kids From the Anthem Data Breach*, Kiplinger, (Feb. 10, 2015), https://www.kiplinger.com/article/credit/T048-C011-S001-how-to-protect-your-kids-from-the-anthem-data-brea.html.

security numbers are taken and used by hackers. Even if they know their social security numbers have been accessed, Plaintiffs and Class Members cannot obtain new numbers unless they become a victim of social security number misuse. Even then, the Social Security Administration has warned that "a new number probably won't solve all [] problems . . . and won't guarantee . . . a fresh start."[8]

40.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[9] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[10] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[11]

41.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you

---

[8] Social Security Admin., *Identity Theft and Your Social Security Number*, at 6-7, https://www.ssa.gov/pubs/EN-05-10064.pdf.
[9] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.
[10] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.
[11] *In the Dark*, VPNOverview, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/.

never bought. Someone illegally using your Social Security number
and assuming your identity can cause a lot of problems.[12]

42.    What is more, it is no easy task to change or cancel a stolen Social Security number.

An individual cannot obtain a new Social Security number without significant paperwork and

evidence of actual misuse. In other words, preventive action to defend against the possibility of

misuse of a Social Security number is not permitted; an individual must show evidence of actual,

ongoing fraud activity to obtain a new number.

43.    Even then, a new Social Security number may not be effective. According to Julie

Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the

new number very quickly to the old number, so all of that old bad information is quickly inherited

into the new Social Security number."[13]

44.    Based on the foregoing, the information compromised in the Data Breach is

significantly more valuable than the loss of, for example, credit card information in a retailer data

breach because, there, victims can cancel or close credit and debit card accounts. The information

compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to

change.

45.    This data demands a much higher price on the black market. Martin Walter, senior

director at cybersecurity firm RedSeal, explained, "Compared to credit card information,

personally identifiable information and Social Security numbers are worth more than 10x on the

black market."[14]

---

[12] Social Security Administration, *Identity Theft and Your Social Security Number*, https://www.ssa.gov/pubs/EN-05-10064.pdf.

[13] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft.

[14] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

46.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

47.     The fraudulent activity resulting from the Data Breach may not come to light for years.

48.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[15]

49.     At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiffs and Class Members, including Social Security numbers, and of the foreseeable consequences that would occur if their data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

50.     Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiffs and Class Members are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

51.     Defendants were, or should have been, fully aware of the unique type and the significant volume of data contained in the PII that Defendants stored unencrypted, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

---

[15] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

52.    The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the PII of Plaintiffs and Class Members.

**VII.  Industry Standards for Data Security**

53.    In light of the numerous high-profile data breaches targeting companies like Target, Neiman Marcus, eBay, Anthem, Deloitte, Equifax, Marriott, T-Mobile, and Capital One, Defendants are, or reasonably should have been, aware of the importance of safeguarding PII, as well as of the foreseeable consequences of its systems being breached.

54.    Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

      a.    Maintaining a secure firewall configuration;

      b.    Monitoring for suspicious or irregular traffic to servers;

      c.    Monitoring for suspicious credentials used to access servers;

      d.    Monitoring for suspicious or irregular activity by known users;

      e.    Monitoring for suspicious or unknown users;

      f.    Monitoring for suspicious or irregular server requests;

      g.    Monitoring for server requests for PII;

      h.    Monitoring for server requests from VPNs; and

      i.    Monitoring for server requests from Tor exit nodes.

55. The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[16] and protection of PII[17] which includes basic security standards applicable to all types of businesses.

56. The FTC recommends that businesses:

a. Identify all connections to the computers where you store sensitive information.

b. Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

c. Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

d. Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e. Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hacker attacks.

f. Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

g. Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

---

[16] Start with Security: A Guide for Business, FTC (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.
[17] Protecting Personal Information: A Guide for Business, FTC (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting personalinformation.pdf.

h.    Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i.    Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

57.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.[18]

58.    Because Defendants were entrusted with PII, they had, and have, a duty to keep the PII secure.

59.    Plaintiffs and Class Members reasonably expect that when their PII is provided to a sophisticated business for a specific purpose, that business will safeguard their PII and use it only for that purpose.

60.    Nonetheless, Defendants failed to prevent the Data Breach. Had Defendants properly maintained and adequately protected their systems, they could have prevented the Data Breach.

## **CLASS ACTION ALLEGATIONS**

61.    This action is brought as a class action pursuant to Fed. R. Civ. P. 23.

---

[18] Federal Trade Commission, *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-security-enforcement.

62.     The proposed Class is defined as follows:

**Nationwide Class:** All persons whose PII was maintained on Defendants' servers that were compromised in the Data Breach.

63.     The proposed Class excludes the following: Defendants, their affiliates, and their current and former employees, officers and directors, and the Judge assigned to this case.

64.     The proposed Class definition may be modified, changed, or expanded based upon discovery and further investigation.

65.     *Numerosity*: The proposed Class is so numerous that joinder of all members is impracticable, evidenced by the large number of individuals presently known to have been injured by Defendants' conduct. The proposed Class is ascertainable by records in the possession of Defendants or third parties.

66.     *Commonality*: Questions of law or fact common to the proposed Class include, without limitation:

a.      Whether Defendants owed a duty or duties to Plaintiffs and Class Members to exercise due care in collecting, storing, safeguarding, and obtaining their PII;

b.      Whether Defendants breached that duty or those duties;

c.      Whether Defendants failed to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of records to protect against known and anticipated threats to security;

d.      Whether the security provided by Defendants was satisfactory to protect PII as compared to industry standards;

e.      Whether Defendants misrepresented or failed to provide adequate information regarding the type of security practices used;

f.      Whether Defendants knew or should have known that they did not employ reasonable measures to keep Plaintiffs and Class Members' PII secure and prevent loss or misuse of that PII;

g.  Whether Defendants acted negligently in connection with the monitoring and protecting of Plaintiffs' and Class Members' PII;

h.  Whether Defendants' conduct was intentional, willful, or negligent;

i.  Whether Plaintiffs and Class Members suffered damages as a result of Defendants' conduct, omissions, or misrepresentations; and

j.  Whether Plaintiffs and Class Members are entitled to injunctive, declarative, and monetary relief as a result of Defendants' conduct.

67.  *Typicality*: Plaintiffs' claims are typical of the claims of proposed Class Members. Plaintiffs and proposed Class Members were injured and suffered damages in substantially the same manner, have the same claims against Defendants relating to the same course of conduct, and are entitled to relief under the same legal theories.

68.  *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the proposed Class and have no interests antagonistic to those of the proposed Class. Plaintiffs' counsel are experienced in the prosecution of complex class actions, including actions with issues, claims, and defenses similar to the present case.

69.  *Predominance and superiority*: Questions of law or fact common to proposed Class Members predominate over any questions affecting individual members. A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all members of the proposed Class is impracticable and the amount at issue for each proposed Class Member would not justify the cost of litigating individual claims. Should individual proposed Class Members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary

15

adjudication, economies of scale and comprehensive supervision by a single court. There are no known difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

70.    Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(3).

71.    Defendants have acted, and refused to act, on grounds generally applicable to the proposed Class, thereby making appropriate final equitable relief with respect to the proposed Class as a whole.

72.    Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(2).

## CAUSES OF ACTION

### COUNT I

### NEGLIGENCE
### (on behalf of the Class)

73.    All preceding paragraphs are incorporated herein by reference as though fully set forth herein.

74.    Defendants owed a duty of care to Plaintiffs and Class Members to use reasonable means to secure and safeguard the entrusted PII, to prevent its unauthorized access and disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems. These common law duties existed because Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiffs and Class Members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, but Defendants knew that it was more likely than not Plaintiffs and Class Members would be harmed by such exposure of their PII.

75.     Defendants' duties to use reasonable security measures also arose as a result of the special relationship that existed between Defendants, on the one hand, and Plaintiffs and Class Members, on the other hand. The special relationship arose because Plaintiffs and Class Members entrusted Defendants with their PII, Defendants accepted and held the PII, and Defendants represented that the PII would be kept secure pursuant to their data security policies. Defendants alone could have ensured that their data security systems and practices were sufficient to prevent or minimize the data breach.

76.     Defendants' duties to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII. Various FTC publications and data security breach orders further form the basis of Defendants' duties. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

77.     Defendants' violations of Section 5 of the FTC Act constitute negligence per se.

78.     Defendants breached the aforementioned duties when they failed to use security practices that would protect the PII provided to them by Plaintiffs and Class Members, thus resulting in unauthorized third-party access to the Plaintiffs and Class Members' PII.

79.     Defendants further breached the aforementioned duties by failing to design, adopt, implement, control, manage, monitor, update, and audit their processes, controls, policies, procedures, and protocols to comply with the applicable laws and safeguard and protect Plaintiffs and Class Members' PII within their possession, custody, and control.

80.     As a direct and proximate cause of failing to use appropriate security practices, Plaintiffs and Class Members' PII was disseminated and made available to unauthorized third parties.

81.     Defendants admitted that Plaintiffs and Class Members' PII was wrongfully disclosed as a result of the breach.

82.     The breach caused direct and substantial damages to Plaintiffs and Class Members, as well as the possibility of future and imminent harm through the dissemination of their PII and the greatly enhanced risk of credit fraud or identity theft.

83.     By engaging in the forgoing acts and omissions, Defendants committed the common law tort of negligence. For all the reasons stated above, Defendants' conduct was negligent and departed from reasonable standards of care including by, but not limited to: failing to adequately protect the PII; failing to conduct regular security audits; and failing to provide adequate and appropriate supervision of persons having access to Plaintiffs and Class Members' PII.

84.     But for Defendants' wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, their PII would not have been compromised.

85.     Neither Plaintiffs nor the Class contributed to the breach or subsequent misuse of their PII as described in this Complaint. As a direct and proximate result of Defendants' actions and inactions, Plaintiffs and Class Members have been put at an increased risk of credit fraud or identity theft, and Defendants have an obligation to mitigate damages by providing adequate credit and identity monitoring services. Defendants are liable to Plaintiffs and Class Members for the reasonable costs of future credit and identity monitoring services for a reasonable period of time, substantially in excess of one year. Defendants are also liable to Plaintiffs and Class Members to

the extent that they have directly sustained damages as a result of identity theft or other unauthorized use of their PII, including the amount of time Plaintiffs and Class Members have spent and will continue to spend as a result of Defendants' negligence. Defendants are also liable to Plaintiffs and Class Members to the extent their PII has been diminished in value because Plaintiffs and Class Members no longer control their PII and to whom it is disseminated.

## COUNT II

### INVASION OF PRIVACY
### (on behalf of the Class)

86.    All preceding paragraphs are incorporated herein by reference as though fully set forth herein.

87.    Plaintiffs and Class Members have objective reasonable expectations of solitude and seclusion in their personal and private information and the confidentiality of the content of PII.

88.    Defendants invaded Plaintiffs and Class Members' right to privacy by allowing the unauthorized access to their PII and by negligently maintaining the confidentiality of Plaintiffs and Class Members' PII, as set forth above.

89.    The intrusion was offensive and objectionable to Plaintiffs, the Class, and to a reasonable person of ordinary sensibilities in that Plaintiffs and Class Members' PII was disclosed without prior written authorization from Plaintiffs and Class Members.

90.    The intrusion was into a place or thing which was private and is entitled to be private, in that Plaintiffs and Class Members provided and disclosed their PII to Defendants privately with an intention that the PII would be kept confidential and protected from unauthorized disclosure. Plaintiffs and Class Members were reasonable to believe that such information would be kept private and would not be disclosed without their written authorization.

91.     As a direct and proximate result of Defendants' above acts, Plaintiffs and Class Members' PII was viewed, distributed, and used by persons without prior written authorization and Plaintiffs and Class Members suffered damages as described herein.

92.     Defendants are guilty of oppression, fraud, or malice by permitting the unauthorized disclosure of Plaintiffs and Class Members' PII with a willful and conscious disregard of their right to privacy.

93.     Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause Plaintiffs and Class Members great and irreparable injury in that the PII maintained by Defendants can be viewed, printed, distributed, and used by unauthorized persons. Plaintiffs and Class Members have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiffs and Class Members, and Defendants may freely treat Plaintiffs and Class Members' PII with sub-standard and insufficient protections.

## COUNT III

### BREACH OF IMPLIED CONTRACT
### (on behalf of the Class)

94.     All preceding paragraphs are incorporated herein by reference as though fully set forth herein.

95.     Defendants invited Plaintiffs and Class Members to provide their PII to Defendants. As consideration for the benefits Defendants were to administer, Plaintiffs and Class Members provided their PII to Defendants. When Plaintiffs and Class Members provided their PII to Defendants, they entered into implied contracts by which Defendants agreed to protect their PII and only use it solely to conduct business. As part of the offer, Defendants would safeguard the PII using reasonable or industry-standard means.

96.     Accordingly, Plaintiffs and Class Members accepted Defendants' offer to conduct business and provided Defendants their PII.

97.     Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendants. However, Defendants breached the implied contracts by failing to safeguard Plaintiffs and Class Members' PII.

98.     The losses and damages Plaintiffs and Class Members sustained that are described herein were the direct and proximate result of Defendants' breaches of their implied contracts with them.

99.     Defendants' conduct as alleged herein also violated the implied covenant of good faith and fair dealing inherent in every contract, and they are liable to Plaintiffs and Class Members for associated damages and specific performance.

## <u>COUNT IV</u>

### BREACH OF FIDUCIARY DUTY
**(on behalf of the Class)**

100.     All preceding paragraphs are incorporated herein by reference as though fully set forth herein.

101.     As alleged above, Plaintiffs and Class Members had agreements with Defendants, both express and implied, that required Defendants to keep their PII confidential.

102.     The parties had a fiduciary relationship of trust and confidence such that Plaintiffs and Class Members relied and depended on Defendants to securely maintain their highly sensitive PII, and Defendants had a duty of care to safeguard Plaintiffs and Class Members' PII.

103.     Defendants breached that confidence by disclosing Plaintiffs and Class Members' PII without their authorization and for unnecessary purposes.

104.    As a result of the data breach, Plaintiffs and Class Members suffered damages that were attributable to Defendants' failure to maintain confidence in their PII.

## COUNT V

### UNJUST ENRICHMENT
### (on behalf of the Class)

105.    All preceding paragraphs are incorporated herein by reference as though fully set forth herein.

106.    Plaintiffs and Class Members have an interest, both equitable and legal, in their PII that was conferred upon, collected by, and maintained by Defendants and that was ultimately compromised in the data breach.

107.    Defendants, by way of their acts and omissions, knowingly and deliberately enriched themselves by saving the costs they reasonably should have expended on security measures to secure Plaintiffs and Class Members' PII.

108.    Defendants also understood and appreciated that the PII pertaining to Plaintiffs and Class Members was private and confidential and its value depended upon Defendants maintaining the privacy and confidentiality of that PII.

109.    Instead of providing for a reasonable level of security that would have prevented the breach—as is common practice among companies entrusted with such PII—Defendants instead consciously and opportunistically calculated to increase their own profits at the expense of Plaintiffs and Class Members. Nevertheless, Defendants continued to obtain the benefits conferred on it by Plaintiffs and Class Members. The benefits conferred upon, received, and enjoyed by Defendants were not conferred gratuitously, and it would be inequitable and unjust for Defendants to retain these benefits.

110.     Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result. As a result of Defendants' decision to profit rather than provide requisite security, and the resulting breach disclosing Plaintiffs and Class Members' PII, Plaintiffs and Class Members suffered and continue to suffer considerable injuries in the forms of, *inter alia,* attempted identity theft, time and expenses mitigating harms, diminished value of PII, loss of privacy, and increased risk of harm.

111.     Thus, Defendants engaged in opportunistic conduct in spite of their duties to Plaintiffs and Class Members, wherein they profited from interference with Plaintiffs and Class Members' legally protected interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendants to retain the benefits they derived as a consequence of their conduct.

112.     Accordingly, Plaintiffs and the Class respectfully request that this Court award relief in the form of restitution or disgorgement in the amount of the benefit conferred on Defendants as a result of their wrongful conduct, including specifically, the amounts that Defendants should have spent to provide reasonable and adequate data security to protect Plaintiffs and Class Members' PII, and compensatory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for a judgment as follows:

a.     For an order certifying the proposed Class, appointing Plaintiffs as Class Representative, and appointing the law firms representing Plaintiffs as counsel for the Class;

b.     For compensatory and punitive and treble damages in an amount to be determined at trial;

c.     Payment of costs and expenses of suit herein incurred;

d.     Both pre-and post-judgment interest on any amounts awarded;

e.     Payment of reasonable attorneys' fees and expert fees;

23

f.      Such other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiffs demand trial by jury.

Dated: April 19, 2023                              Respectfully submitted,

*/s/ Kyle G.A. Wallace*
Jeff P. Shiver
Georgia Bar No. 001303
Kyle G.A. Wallace
Georgia Bar No. 734167
**SHIVER HAMILTON
CAMPBELL, LLC**
3490 Piedmont Road, Suite 640
Atlanta, GA 30305
Phone: (404) 593-002
jeff@shiverhamilton.com
kwallace@shiverhamilton.com

Charles E. Schaffer *
Nicholas J. Elia *
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
cschaffer@lfsblaw.com
nelia@lfsblaw.com

Jeffrey S. Goldenberg *
Todd B. Naylor *
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Phone: (513) 345-8291
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com

*Counsel for Plaintiffs and Proposed Class*

*\* Pro hac vice forthcoming*

JS 44 (Rev. 08/18)  **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
WHITLEY SMITH and ADAM WHITE,
individually and on behalf of all others similarly situated,

**(b)** County of Residence of First Listed Plaintiff   Troup County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kyle G.A. Wallace and Jeff P. Shiver, Shiver Hamilton Campbell, LLC
3490 Piedmont Rd, Suite 640, Atlanta, GA 30305, (404) 593-0020

**DEFENDANTS**
TMX FINANCE CORPORATE SERVICES, INC. and TMX FINANCE
LLC d/b/a "TitleMax," "TitleBucks," and "InstaLoan,"

County of Residence of First Listed Defendant   Chatham County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*   Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. section 1332(d)(2)(A)
Brief description of cause:
Data breach class action asserting tort, contract, and other claims for harm suffered by Plaintiff and the class.

**VII. REQUESTED IN COMPLAINT:**
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*
JUDGE  Stan Baker (cases re same data breach)   DOCKET NUMBER  e.g., 4:23-cv-76 (and others)

DATE  04/19/2023
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE