## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | |
|---|---|
| SHENEEQUA CARRINGTON, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>   vs.<br><br>TMX FINANCE CORPORATE SERVICES, INC. and TMX FINANCE LLC d/b/a "TitleMax," "TitleBucks," and "InstaLoan,"<br><br>               Defendants. | <u>Civil Action No.:</u><br><br><br><u>**CLASS ACTION**</u><br><br><br><u>**JURY TRIAL DEMANDED**</u> |

_____/

## CLASS ACTION COMPLAINT

Plaintiff Sheneequa Carrington ("Plaintiff" or "Plaintiff Carrington"), individually and on behalf of all other persons similarly situated, by and through her attorneys, upon personal knowledge as to her own acts and experiences, and upon information and belief as to all other matters, alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this Class Action Complaint against Defendants TMX Finance Corporate Services, Inc. and TMX Finance LLC d/b/a "TitleMax," "TitleBucks," and "InstaLoan," (collectively referred to herein as "TMX," "Defendant, or the "Company") to seek recovery on behalf of herself and over 4 million similarly situated people ("Class Members"), based upon TMX's failure to properly secure and safeguard the sensitive personally identifiable information ("PII") of individuals receiving consumer financing services from TMX and/or its affiliates.

2.      Specifically, TMX failed to properly protect Plaintiff and Class Members' names,

1

addresses, dates of birth, passport numbers, drivers' license numbers, federal/state identification card numbers, tax identification numbers, social security numbers and/or financial account information, and other information including phone numbers, addresses, and email addresses, which was collected by TMX. This information is considered PII because it can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 CFR §200.79.

3.      An unauthorized actor gained access to TMX's computer systems starting in early December 2022 and extending to February 14, 2023. During that period, PII that was stored on TMX's computer systems was accessed and viewed by the unauthorized actor. TMX later determined that the PII accessed and viewed included Plaintiff and Class Members' PII (the "Data Breach"). TMX did not detect the suspicious activity on its systems until February 13, 2023.

4.      As required by state laws across the country, TMX sent templates of the Notice of Data Breach Letter to state attorneys general. Specifically, TMX sent a template of the Notice of Data Breach Letter to the Maine Attorney General and identified that approximately 4,822,580 individuals like Plaintiff had their PII accessed, exfiltrated, and/or compromised on the Data Breach.[1]

5.      The Data Breach occurred because TMX did not implement adequate and reasonable cyber-security procedures and protocols to protect Plaintiff and Class Members' PII. Because TMX's data security protocols and practices were deficient, unauthorized person(s) were able to access, view, and/or exfiltrate Plaintiff and Class Members' PII. Notably, in its March 30, 2023 Notice of Data Breach, TMX acknowledged that it "promptly took steps to investigate the

---

[1] https://apps.web.maine.gov/online/aeviewer/ME/40/179ab0ce-2c43-4119-ae5a-db766d4be3e0.shtml (last accessed April 27, 2023).

incident... [and] implemented additional security features, such as additional endpoint protection and monitoring, as well as resetting all employee passwords."[2]  The fact that TMX enhanced its security features post-Data Breach indicates TMX's cybersecurity measures were inadequate, negligent, and lacking at the time of the Data Breach.

6.    TMX failed to properly safeguard Plaintiff and Class Members' PII. TMX's negligence has caused millions of Class Members harm and puts them at a substantially increased risk of identity fraud, which will negatively impact them for years.

7.    TMX is wholly responsible for this Data Breach through its failure to implement and maintain adequate and reasonable data security safeguards, and failure to comply with industry-standard data security practices and federal and state laws and regulations governing data security and privacy, including security of PII.

8.    TMX failed to timely recognize and detect unauthorized access and use of its systems and failed to timely recognize the substantial amounts of data that had been compromised.

9.    TMX failed to, among other things: (1) timely detect any unauthorized actors had accessed its file servers; (2) notice the massive amounts of data that were compromised and accessed; and (3) take any steps to investigate the red flags that should have warned TMX that its systems were not secure.

10.    Moreover, if TMX properly maintained and monitored its information technology infrastructure and denied access to that infrastructure to all potential threats, TMX would have either prevented the Data Breach altogether or at the very least discovered the invasion sooner.

11.    TMX had numerous statutory, regulatory, and common law duties to Plaintiff and Class Members to keep their PII confidential, safe, secure, and protected from unauthorized

---

[2] *Id.*

3

disclosure or access.

12.    TMX was and remains required to maintain the security and privacy of the PII entrusted to it.  When Plaintiff and Class Members provided their PII, TMX and its agents were required to comply with the obligation to keep Plaintiff's PII secure and safe from unauthorized access, to use this information for business purposes only, and to make only authorized disclosures of this information.

13.    TMX was cognizant of the ever-growing and ever-present threat of cybersecurity attacks.  Despite this awareness, TMX failed to properly safeguard Plaintiff and Class Members' information.  This makes TMX's failure particularly egregious.

14.    By virtue of TMX's business practices, TMX represented to Plaintiff and Class Members that it would protect their PII.

15.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII by entrusting their PII to a company that represented it would protect and safeguard their PII.

16.    Plaintiff and Class Members' PII was accessed and downloaded by one or more unauthorized actors because TMX failed to properly protect the PII of Plaintiff and Class Members.

17.    Because of TMX's failure to properly protect the PII in its possession, Plaintiff and Class Members are now at a significant present and future risk of identity theft, healthcare fraud, financial fraud, and/or other identity-theft or fraud, imminently and for years to come.

18.    TMX's conscious decision to delay notifying Plaintiff and Class Members exacerbated the harm that Plaintiff and Class Members have and will experience.  Moreover, Plaintiff and Class Members were unable to take actions to protect themselves and attempt to

4

mitigate the harm until they received notice.

19.    Plaintiff and Class Members have suffered numerous actual and imminent injuries as a direct result of the Data Breach, including:

     a.  Theft of their PII;

     b.  Costs associated with the detection and prevention of identity theft;

     c.  Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of the Data Breach;

     d.  The emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach;

     e.  The actual and/or imminent injury arising from actual and/or potential fraud and identity theft posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals and made available on the Dark Web;

     f.  Damages to and diminution in value of their personal data;

     g.  Actual damages in the form of the difference in value between the services that should have been delivered and the services that were in fact delivered; and

     h.  The continued risk to their PII, which remains in the possession of TMX, and which is subject to further breaches, so long as TMX fails to undertake appropriate and adequate measures to protect Plaintiff and Class Members' PII.

20.    Plaintiff seeks to remedy these harms and future harms on behalf of herself and all similarly situated persons.

21.    Accordingly, Plaintiff, on behalf of themselves and Class Members, assert a claim for negligence.  Plaintiff and Class Members seek injunctive relief, monetary damages, and all other relief as authorized in equity or by law.

## THE PARTIES

### *Plaintiff Sheneequa Carrington*

22.    Plaintiff Sheneequa Carrington ("Plaintiff Carrington") is a citizen of Clarke County, Virginia.  She received notice that her PII was improperly exposed to unauthorized third parties by TMX.

23.    The Notice of Data Breach dated March 30, 2023, stated that Plaintiff's PII was accessed in the Data Breach, stating:

> **What Happened?** On February 13, 2023, we detected suspicious activity on our systems and promptly took steps to investigate the incident. As part of that investigation, global forensic cybersecurity experts were retained. Based on the investigation to date, the earliest known breach of TMX's systems started in early December 2022. On March 1, 2023, the investigation confirmed that information may have been acquired between February 3, 2023 – February 14, 2023. We promptly began a review of potentially affected files to determine what information may have been involved in this incident. We notified the FBI but have not delayed this notification for any law enforcement investigation.

> **What Information Was Involved?** The personal information involved may have included your name, date of birth, passport number, driver's license number, federal/state identification card number, tax identification number, social security number and/or financial account information, and other information such as phone number, address, and email address.

> **What We Are Doing.** Our investigation is still in progress, but TMX believes the incident has been contained. We continue to monitor our systems for any suspicious activity. We have implemented additional security features, such as additional endpoint protection and monitoring, as well as resetting all employee passwords. We continue to evaluate ways to further enhance the security of our systems.

*Defendant TMX*

24.    Defendant TMX Finance Corporate Services, Inc. is a corporation organized under the laws of Delaware with its principal place of business and headquarters located at 15 Bull Street, Suite 200, Savannah, Georgia 31401.

25.    Defendant TMX Finance, LLC is a corporation organized under the laws of Delaware with its principal place of business and headquarters located at 15 Bull Street, Suite 200, Savannah, Georgia 31401.

26.    The sole member of Defendant TMX Finance, LLC is TMX Finance Holdings, Inc., a corporation incorporated under the laws of Delaware with its principal place of business located at 15 Bull Street, Suite 200, Savannah, George 31401.

## JURISDICTION & VENUE

27.    This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. §1332(d) because this is a class action wherein the amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than 100 members of the proposed class, and at least one Class Member, including Plaintiff Carrington, is a citizen of a different state from TMX to establish minimal diversity.

28.    Defendant TMX Finance Corporate Services, Inc. is a corporation organized under the laws of Delaware, and its headquarters and principal place of business are located at 15 Bull St., Ste. 200, Savannah, Georgia 31401. Defendant TMX Finance Corporate Services, Inc. can be served via its Registered Agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092. Defendant TMX Finance Corporate Services, Inc. is a citizen of the States of Georgia and of Delaware.

29.    Venue is proper in this district under 28 U.S.C. §§1391(b) because TMX operates

7

in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, including TMX collecting and/or storing the PII of Plaintiff and Class Members.

## FACTUAL ALLEGATIONS

*TMX Acquires, Collects, and Maintains Plaintiff and Class Members' PII*

30.     According to its website, TMX "provides consumer credit products under theTitleMax®, TitleBucks®, and InstaLoan® brands. Since 1998, we have provided access to credit for consumers who are underserved by traditional lenders."[3] During the process of providing its services, TMX required Plaintiff and Class Members to provide their highly sensitive PII to TMX.  Plaintiff and Class Members did so.

31.     TMX failed to protect Plaintiff and Class Members' PII because an unauthorized actor accessed Plaintiff and Class Members' PII during the Data Breach without their consent.

32.     By obtaining, collecting, using, and deriving a benefit from Plaintiff and the Class Members' PII, TMX assumed legal and equitable duties to those individuals and knew or should have known that they were responsible for protecting Plaintiff and Class Members' PII from disclosure.  Said differently, by collecting this information, TMX has an obligation to protect PII.

33.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their PII.  TMX was required to keep Plaintiff and Class Members' PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

---

[3] *See* https://www.tmxfinancefamily.com/what-we-do/ (last accessed April 27, 2023).

*The Data Breach*

34.    An unauthorized actor gained access to TMX's systems starting in early December 2022 and through February 14, 2023. During that period, PII that was stored on TMX's computer systems was accessed and viewed by the unauthorized actor. TMX later determined that the PII accessed and viewed included Class Members' PII.

35.    As required by state laws across the country, TMX sent templates of the Notice of Data Breach Letter to state attorneys general. Specifically, sent a template of the Notice of Data Breach Letter to the Maine Attorney General and identified that approximately 4,822,580 individuals like Plaintiff had their PII accessed, exfiltrated, and/or compromised on the Data Breach.

36.    The Data Breach occurred because TMS did not implement adequate and reasonable cyber-security procedures and protocols to protect the PII of Plaintiff and Class Members. Because TMX's data security protocols and practices were deficient, unauthorized person(s) were able to access, view, and/or exfiltrate Plaintiff and Class Members' PII. In its Notice of Data Breach, TMX acknowledged that it "promptly began a review of potentially affected files to determine what information may have been involved in this incident." TMX also acknowledges that after the Data Breach, it "implemented additional security features, such as additional endpoint protection and monitoring, as well as resetting all employee passwords."

37.    The fact that TMX enhanced its security features post-Data Breach indicates TMX's cybersecurity measures were inadequate, negligent, and lacking at the time of the Data Breach.

38.    In its Notice of Data Breach, TMX disclosed that the types of information impacted by the Data Breach include individuals': "name, address, date of birth, passport number, drivers' license number, federal/state identification card number, tax identification

number, social security number and/or financial account information, and other information such as phone number, address, and email address."

39.    Upon information and belief, the data accessed in the Data Breach was then exfiltrated and sold or publicly posted on the internet.

40.    The Notice of Data Breach sent to Class Members offered them a limited time membership in credit monitoring services. This is wholly inadequate because data breach victims and other unauthorized disclosures commonly face multiple years of ongoing identity theft. Indeed, TMX informed Class Members to "remain vigilant against potential identity theft and fraud by carefully reviewing credit reports and account statements to ensure that all activity is valid."

41.    The Notice of Data Breach sent to Class Members also suggested several additional time-consuming steps that Plaintiff and Class Members could take to protect themselves as a result of Data Breach, such as fraud alerts, credit freezes, and/or contacting government authorities.

42.    Based on TMX's urging Plaintiff and Class Members to take these mitigating actions, as well as its decision to provide victims with credit monitoring services, it is abundantly clear that the perils from the Data Breach are real and concrete.

43.    Despite the publicly available knowledge of the continued compromises of PII, TMX's approach to maintaining the privacy of Plaintiff and Class Members' PII was inadequate, unreasonable, negligent, and reckless. This is evidenced by TMX's acknowledgement that additional steps are being taken to further enhance its existing security measures. TMX's statement admits that at the time of the Data Breach, TMX's technical and cybersecurity

capabilities were inadequate, which in turn, caused the Data Breach and the divulgence of Plaintiff and Class Members' PII.

44.    To prevent and detect cyber-attacks and/or ransomware attacks TMX could and should have implemented, as recommended by the United States Government, the following measures:

- An awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scanning of all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Firewalls configured to block access to known malicious IP addresses.

- Patching of operating systems, software, and firmware on devices, including considering use of a centralized patch management system.

- Anti-virus and anti-malware programs set to conduct regular scans automatically.

- Management over the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Access control configurations—including file, directory, and network share permissions—with the principle of the least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email, including considering using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Disabling Remote Desktop protocol (RDP) if it is not being used.

- Application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Executing operating system environments or specific programs in a virtualized environment.

- Categorization of data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

45.    To prevent and detect cyber-attacks TMX could and should have followed the recommendations of the United States Cybersecurity & Infrastructure Security Agency, which called for the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks....

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know.  Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email).  Pay attention to the website addresses you click on, as well as those you enter yourself.  Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)....

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**.  Check a website's security to ensure the information you submit is encrypted before you provide it....

- **Verify email senders**.  If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly.  Do not click on any links in the email.  If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**.  Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques.  You can find information about known phishing attacks on the Anti-Phishing Working Group website.  You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic.... [4]

46.    To prevent and detect cyber-attacks or ransomware attacks TMX could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

### Secure internet-facing assets

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

### Thoroughly investigate and remediate alerts

- Prioritize and treat commodity malware infections as potential full compromise;

### Include IT Pros in security discussions

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

### Build credential hygiene

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

### Apply principle of least-privilege

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events;

### Harden infrastructure

- Use Windows Defender Firewall

---

[4]    *See* Cybersecurity Advisory, Ransomware Activity Targeting the Healthcare and Public Sector, https://www.cisa.gov/news-events/cybersecurity-advisories/aa20-302a (last accessed April 27, 2023).

- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].

47.     Given that TMX was storing the PII of Plaintiff and Class Members, TMX could and should have implemented all the above measures to prevent and detect ransomware attacks. *See* also *Cybersecurity Advisory, Ransomware Activity Targeting the Healthcare and Public Sector*, https://www.cisa.gov/news-events/cybersecurity-advisories/aa20-302a (last accessed April 27, 2023).

48.     The occurrence of the Data Breach indicates that TMX failed to adequately implement one or more of the above measures to prevent ransomware attacks. The failure to implement some or all the above measures resulted in the data breach and the exposure of over 4.2 million Class Members' PII. Moreover, based on TMX's notification to the Maine Attorney General, TMX failed to encrypt the PII on its network and systems, which was negligent in and of itself.

***Social Security Numbers Are Particularly Valuable***

49.     TMX's Notice of Data Breach admits that Plaintiff and Class Members' Social Security numbers were included in the Data Breach.

50.     Social Security numbers are among the worst kind of PII to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that

someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[5]

51.    It is incredibly difficult to change a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

52.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number, driver's license number, name, and date of birth.

53.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

54.    There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure

---

[5]    Social Security Administration, *Identity Theft and Your Social Security Number*, https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited April 27, 2023).

the harm resulting from data breaches cannot necessarily rule out all future harm.[6]

55.    At all relevant times, TMX knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members, including Social Security numbers and dates of birth, and of the foreseeable consequences that would occur if TMX's data security system and network was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

56.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.  The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

57.    TMX was, or should have been, fully aware of the unique type and the significant volume of data on TMX's server(s) and thus the significant number of individuals who would be harmed by the exposure of unencrypted data.

58.    According to the FTC, identity theft wreaks havoc on consumers' finances, credit history, and reputation and can take time, money, and patience to resolve.[7]  Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank and finance fraud.[8]

59.    The physical, emotional, and social toll suffered (in addition to the financial toll)

---

[6] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf (last accessed April 27, 2023).

[7] *See Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (Apr. 2013), https://www.justice.gov/usao-wdmi/file/764151/download (last visited April 27, 2023).

[8] *See id.* The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. §603.2(a).  The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 16 C.F.R. §603.2(b)

by identity theft victims cannot be understated.[9] "A 2016 Identity Theft Resource Center survey of identity theft victims sheds light on the prevalence of this emotional suffering caused by identity theft: 74 percent of respondents reported feeling stressed[,] 69 percent reported feelings of fear related to personal financial safety[,] 60 percent reported anxiety[,] 42 percent reported fearing for the financial security of family members[, and] 8 percent reported feeling suicidal."[10]

60.    More recently, the FTC released an updated publication on protecting PII for businesses, which includes instructions on protecting PII, properly disposing of PII, understanding network vulnerabilities, implementing policies to correct security problems, using intrusion detection programs, monitoring data traffic, and having in place a response plan.

61.    The FTC has brought enforcement actions against businesses for failing to protect consumers' PII. The FTC has done this by treating a failure to employ reasonable measures to protect against unauthorized access to PII as a violation of the FTC Act, 15 U.S.C. §45.

62.    The United States government and privacy experts acknowledge that it may take much time for identity theft to come to light and be detected because identity thieves may wait years before using the stolen data.

63.    Because the information TMX allowed to be compromised and taken is of such a durable and permanent quality (*i.e.*, name, date of birth, address, Social Security number, and driver's license number, among others), the harms to Plaintiff and the Class will continue and increase, and Plaintiff and the Class will continue to be at substantial risk for further imminent and future harm.

---

[9]    Alison Grace Johansen, *4 Lasting Effects of Identity Theft*, NortonLifeLock (Mar. 13, 2018), https://www.lifelock.com/learn-identity-theft-resources-lasting-effects-of-identity-theft.html (last visited April 27, 2023).
[10]    *Id.* (citing *Identity Theft: The Aftermath 2016*™, Identity Theft Resource Center (2016) https://www.idtheftcenter.org/images/page-docs/AftermathFinal_2016.pdf).

64.     Plaintiff and Class Members have suffered real and tangible losses, including but not limited to, the loss in the inherent value of their PII, the loss of their time as they have had to spend additional time monitoring accounts and activity, and additional economic loss to mitigate the costs of injuries realized as a result of discovery in this case.

65.     Despite TMX's failure to protect Plaintiff and Class Members' PII and the resulting harm TMX has only offered to provide Plaintiff and Class Members with one year of credit monitoring.

66.     As a result of the TMX's failure to prevent the Data Breach, Plaintiff and Class Members have suffered, will suffer, or are at increased risk of suffering:

    a.   The compromise, publication, theft and/or unauthorized use of their PII;

    b.   Unauthorized use and misuse of their PII;

    c.   The loss of the opportunity to control how their PII are used;

    d.   Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

    e.   Lost opportunity costs and lost wages and time associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

    f.   The imminent and certain impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

    g.   The continued risk to their PII that is subject to further breaches so long as TMX fails to undertake appropriate measures to protect the PII in TMX's possession; and

    h.   Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

67.    In addition to a remedy for the economic harm, Plaintiff and the Class maintain an undeniable and continuing interest in ensuring that their PII that remains in the possession of TMX is secure, remains secure, and is not subject to further theft.

***Plaintiff Sheneequa Carrington's Experience***

68.    Plaintiff Sheneequa Carrington was required to provide and did provide her PII in connection with obtaining services provided by TMX. The PII included, but was not limited to, her name, date of birth, passport number, driver's license number, federal/state identification card number, tax identification number, social security number and/or financial account information, and other information such as phone number, address, and email address. The Notice of Data Breach admits that Class Members' PII was accessed in the Data Breach. (Tab A)

69.    As a result of the Data Breach, Plaintiff is at a substantial present risk and will continue to be at an increased risk of identity theft and fraud for years to come. In fact, Plaintiff has already experienced fraudulent activity indicating that a criminal is setting up a fake identity in her name. For example, attempts have been made to fraudulently log into her Venmo account. Since the Data Breach, she has also been listed as having a residence in Miami, although she has never lived there and has always resided in Virginia. These suspicious activities suggest a criminal is setting up a fake identity in her name. In addition, she has also received an unusual letter from Capital One stating that she owed them money. When she called the telephone number provided on the letter to discuss the matter with Capital One, she left a message, but no one returned her call.

70.    Plaintiff typically takes measures to protect her PII and is very careful about sharing her PII.

71.     Plaintiff stores any documents containing her PII in a safe and secure location. She diligently chooses unique usernames and passwords for her online accounts.

72.     As a result of the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. She has been spending time dealing with fraudulent activity in her accounts and identity theft attempts and is also in the process of freezing her credit with the major credit reporting agencies.

73.     As a result of the Data Breach, Plaintiff must monitor her accounts and credit scores and has sustained emotional distress. Plaintiff will need to spend additional time and effort opening new accounts. Because of the Data Breach, Plaintiff will have time taken from other obligations.

74.     Plaintiff also suffered actual injury in the form of damages to and diminution in the value of her PII—a form of intangible property that he entrusted to TMX for the purpose of obtaining services from TMX, which was compromised in and as a result of the Data Breach.

75.     Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

76.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially her Social Security, driver's license, and tax identification numbers, being placed in the hands of criminals.

77.     As a result of the Data Breach, Plaintiff is at a substantial present risk and will continue to be at an increased risk of identity theft and fraud for years to come. To date, TMX failed to either adequately protect Plaintiff and Class Members or to compensate them for their injuries sustained in this Data Breach. The offer of identity monitoring services for a limited number of months is wholly insufficient to cover the current and future harm.

78.    As a result of the Data Breach, Plaintiff is at a substantial present risk and will continue to be at an increased risk of identity theft and fraud for years to come.

***TMX Violated the FTC Act***

79.    Section 5 of the Federal Trade Commission Act ("FTC"), 15 U.S.C. §45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as TMX, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of TMX duty in this regard.

80.    TMX violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. TMX's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class. Violations of Section 5 of the FTC Act are negligence *per se* under state common law.

## CLASS ACTION ALLEGATIONS

81.    Pursuant to the provisions of Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4), Plaintiff seeks to bring this class action on behalf of herself and a nationwide class (the "Nationwide Class") defined as follows:

> **All persons whose PII was accessed and/or acquired in the data incident that is the subject of the March 30, 2023 Notice of Data Breach.**

82.    Excluded from the Class are TMX; officers, directors, and employees of TMX; any entity in which TMX has a controlling interest, is a parent or subsidiary, or which is controlled by TMX; and the affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assigns of TMX. Also excluded are the Judges and Court personnel in this case and any members of their immediate families.

83.     Plaintiff reserves the right to modify and/or amend the Nationwide Class, including, but not limited to, creating additional subclasses, as necessary.

84.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

85.     All Class Members are readily ascertainable in that TMX has access to addresses and other contact information for all Class Members, which can be used for providing notice to Class Members.

86.     ***Numerosity***. Consistent with Fed. R. Civ. P. 23(a)(1), the Nationwide Class is so numerous that joinder of all members is impracticable. Upon information and belief, it is in excess of 4.2 million.

87.     ***Commonality and Predominance***. Consistent with Fed. R. Civ. P. 23(a)(2) and (b)(3), this action involves common questions of law and fact that predominate over any questions that may affect only individual Class Members. Such common questions include:

a.   whether TMX engaged in the wrongful conduct alleged in this Complaint;

b.   whether TMX's conduct was unfair, unconscionable, and/or unlawful;

c.   whether TMX failed to implement and maintain adequate and reasonable systems and security procedures and practices to protect Plaintiff and Class Members' PII;

d.   whether TMX owed a duty to Plaintiff and Class Members to adequately protect their PII and to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

e.   whether TMX breached its duties to protect the PII of Plaintiff and Class Members by failing to provide adequate data security and failing to provide appropriate and adequate notice of the Data Breach to Plaintiff and Class Members;

f.   whether TMX's conduct was negligent;

22

g.  whether TMX knew or should have known that its computer systems were vulnerable to being compromised;

h.  whether TMX's conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach of its systems, resulting in the loss of Plaintiff and Class Members' PII;

i.  whether TMX wrongfully or unlawfully failed to inform Plaintiff and Class Members that it did not maintain data security practices adequate to reasonably safeguard Plaintiff and Class Members' PII;

j.  whether Plaintiff and Class Members suffered injury, including ascertainable losses, as a result of TMX's conduct (or failure to act);

k.  whether Plaintiff and Class Members are entitled to recover damages; and

l.  whether Plaintiff and Class Members are entitled to declaratory relief and equitable relief, including injunctive relief, restitution, disgorgement, and/or other equitable relief.

88.  *Typicality*.  Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiff' claims are typical of the claims of other Class Members in that Plaintiff, like all Class Members, had their personal data compromised, breached, and stolen in the Data Breach.  Plaintiff and all Class Members were injured through the misconduct of TMX and assert the same claims for relief.

89.  *Adequacy*.  Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff and her counsel will fairly and adequately protect the interests of the Class.  Plaintiff is a member of the Class she seeks to represent; is committed to pursuing this matter against TMX to obtain relief for the Class; and has no interests that are antagonistic to, or in conflict with, the interests of other Class Members. Plaintiff retained counsel who are competent and experienced in litigating class actions and complex litigation, including privacy litigation of this kind.  Plaintiff and her counsel intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

90.  *Superiority*.  Consistent with Fed. R. Civ. P. 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal

litigation. Moreover, absent a class action, most Class Members would find the cost of litigating their claims prohibitively high and would therefore have no effective remedy, so that in the absence of class treatment, TMX's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Plaintiff and Class Members have been harmed by TMX's wrongful conduct and/or action. Litigating this action as a class action will reduce the possibility of repetitious litigation relating to TMX's conduct and/or inaction. Plaintiff knows of no difficulties that would be encountered in this litigation that would preclude its maintenance as a class action.

91.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the common questions of law or fact predominate over any questions affecting individual Class Members, a class action is superior to other available methods for the fair and efficient adjudication of this controversy, and the requirements of Rule 23(a) are met.

92.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1), in that the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for TMX. In contrast, the conduct of this action as a class action conserves judicial resources and the parties' resources and protects the rights of each Class Member. Specifically, injunctive relief could be entered in multiple cases, but the ordered relief may vary, causing TMX to have to choose between differing means of upgrading its data security infrastructure and choosing the court order with which to comply. Class action status is also warranted because prosecution of separate actions by Class Members would create the risk of adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially

impair or impede their ability to protect their interests.

93.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because TMX, through its uniform conduct, acted or failed and refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole. Moreover, TMX continues to maintain its inadequate security practices, retain possession of Plaintiff and Class Members' PII, and has not been forced to change its practices or to relinquish PII by nature of other civil suits or government enforcement actions, thus making injunctive relief a live issue and appropriate to the Class as a whole.

94.    Particular issues are also appropriate for certification under Fed. R. Civ. P. 23(c)(4) because the claims present particular, common issues, the resolution of which would materially advance the resolution of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

    a.  whether Plaintiff and Class Members' PII was accessed, compromised, or stolen in the Data Breach;

    b.  whether TMX owed a legal duty to Plaintiff and the Class Members;

    c.  whether TMX failed to take adequate and reasonable steps to safeguard the PII of Plaintiff and Class Members;

    d.  whether TMX failed to adequately monitor its data security systems;

    e.  whether TMX failed to comply with applicable laws, regulations, and industry standards relating to data security;

    f.  whether TMX knew or should have known that it did not employ adequate and reasonable measures to keep Plaintiff and Class members' PII secure; and

    g.  whether TMX's adherence to FTC data security obligations, industry standards, and measures recommended by data security experts would have reasonably prevented the Data Breach.

## COUNT I
### Negligence
### (On Behalf of Plaintiff and the Nationwide Class)

95.     Plaintiff repeats and re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 94.

96.     Plaintiff brings this claim on behalf of herself and the Nationwide Class.

97.     TMX required Plaintiff and Class Members to submit sensitive personal information, including their PII, to obtain TMX's services.  TMX collected, stored, used, and benefited from the non-public PII of Plaintiff and Class Members in the provision of providing services to Plaintiff and Class Members.

98.     Plaintiff and Class Members entrusted TMX with their PII and TMX was fully cognizant of the value and importance of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed.

99.     TMX negligently created a dangerous situation by failing to take adequate and reasonable steps to safeguard Plaintiff and Class Members' sensitive PII from unauthorized release or theft.

100.     TMX owed an independent duty to Plaintiff and Class Members to exercise reasonable care in obtaining, securing, deleting, protecting, and safeguarding the sensitive PII, and preventing the PII from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

101.     TMX was required to prevent foreseeable harm to Plaintiff and Class Members. Accordingly, TMX had a duty to take adequate and reasonable steps to safeguard their sensitive PII from unauthorized release or theft.  TMX's duties, included, but were not limited to: (1) designing, maintaining, and testing its data security systems, data storage architecture, and data

security protocols to ensure Plaintiff and Class Members' PII in its possession was adequately secured and protected; (2) implementing processes that would detect an unauthorized breach of its security systems and data storage architecture in a timely and adequate manner; (3) timely acting on all warnings and alerts, including public information, regarding its security vulnerabilities and potential compromise of the PII of Plaintiff and Class Members; and (4) maintaining data security measurers consistent with industry standards and applicable federal and state laws and other requirements, including, *inter alia*, Section Five of the Federal Trade Commission Act. 15 U.S.C. § 45.

102.    TMX owed a common law duty to prevent foreseeable harm to Plaintiff and Class Members.  The duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices of TMX in its collection, storage, and use of PII from Plaintiff and Class Members.  It was foreseeable that Plaintiff and Class Members would be harmed by the failure to protect their PII because malicious actors routinely attempt to steal such information for use in nefarious purposes.

103.    TMX's obligation to use adequate and reasonable security measures also arose because TMX collected, stored, and used the PII of Plaintiff and Class Members for the procurement and provision of healthcare services.

104.    Additionally, the policy of preventing future harm weighs in favor of finding TMX had a duty towards Plaintiff and Class Members.

105.    TMX also owed a duty to timely disclose the material fact that its computer systems and data security practices and protocols were inadequate to safeguard users' personal, health, and financial data from theft.

106.    The injuries suffered by Plaintiff and Class Members were proximately and directly

caused by TMX's failure to follow reasonable, industry standard security measures to protect Plaintiff and Class Members' PII.

107.    When individuals have their personal information stolen, they are at substantial risk for imminent identity theft, and need to take additional steps to protect themselves, including, for example, buying credit monitoring services and purchasing or obtaining credit reports to protect themselves from identity theft.

108.    If TMX had implemented the requisite, industry-standard security measures and exercised adequate and reasonable care, data thieves would not have been able to take the PII of Plaintiff and Class Members.

109.    TMX breached these duties through the conduct alleged here in this Complaint by, including without limitation, failing to protect the PII in its possession; failing to maintain adequate computer systems and allowing unauthorized access to and exfiltration of Plaintiff and Class Members' PII; failing to disclose the material fact that TMX's computer systems and data security practices were inadequate to safeguard the PII in its possession from theft; and failing to disclose in a timely and accurate manner to Plaintiff and Class Members the material fact of the Data Breach.

110.    But for TMX's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PII would not have been compromised. And, as a direct and proximate result of TMX's failure to exercise adequate and reasonable care and use commercially adequate and reasonable security measures, the PII of Plaintiff and Class Members was accessed by ill-intentioned individuals who could and will use the information to commit identity or financial fraud. Plaintiff and Class Members face the imminent, certainly impending, and substantially heightened risk of identity theft, fraud, and further misuse of their personal data.

111.    There is a temporal and close causal connection between TMX's failure to implement security measures to protect the PII collected from Class Members and the harm suffered, or risk of imminent harm suffered, by Plaintiff and Class Members.

112.    It was foreseeable that TMX's failure to exercise reasonable care to safeguard the PII in its possession or control would lead to one or more types of injury to Plaintiff and Class Members. The Data Breach was also foreseeable given the known, high frequency of cyberattacks and data breaches in the healthcare industry.

113.    Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. TMX knew of or should have known of the inherent risks in collecting and storing PII, the critical importance of providing adequate security of PII, the current cyber scams being perpetrated on PII, and that it had inadequate protocols, including security protocols in place to secure the PII of Plaintiff and Class Members.

114.    TMX's own conduct created the foreseeable risk of harm to Plaintiff and Class Members. TMX's misconduct included its failure to take the steps and opportunities to prevent the Data Breach and its failure to comply with industry standards for the safekeeping and encrypted authorized disclosure of the PII of Plaintiff and Class Members.

115.    Plaintiff and Class Members have no ability to protect their PII that was and is in TMX's possession. TMX alone was, and is in, a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

116.    As a direct and proximate result of TMX's negligence as alleged above, Plaintiff and Class Members have suffered, will suffer, or are at increased risk of suffering:

    a.    The compromise, publication, theft and/or unauthorized use of their PII;

    b.    Unauthorized use and misuse of their PII;

    c.   The loss of the opportunity to control how their PII are used;

    d.   Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

    e.   Lost opportunity costs and lost wages and time associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

    f.   The imminent and certain impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

    g.   The continued risk to their PII that is subject to further breaches so long as TMX fails to undertake appropriate measures to protect the PII in TMX's possession; and

    h.   Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

117.    Pursuant to the FTC Act, 15 U.S.C. §45, TMX had a duty to provide fair and adequate computer systems and data security measures to safeguard the PII of Plaintiff and Class Members.

118.    The FTC Act prohibits "unfair . . . practices in or affecting commerce," which the FTC has interpreted to include businesses' failure to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of TMX's duty in this regard. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

119.    TMX solicited, gathered, and stored PII of Plaintiff and Class Members to facilitate transactions that affect commerce.

120.    TMX's violation of the FTC Act (and similar state statutes) constitutes negligence and negligence *per se*.

121.    Plaintiff and Class Members are within the class of persons that the FTC Act (and similar state statutes) were intended to protect.

122.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act (and similar state statutes), seeks to prevent. The FTC has pursued enforcement actions against businesses which, as a result of their failure to employ adequate and reasonable data security measures, caused the same harm as that suffered by Plaintiff and Class Members.

123.    As a direct and proximate result of TMX's violations of the above-mentioned statutes (and similar state statutes), Plaintiff and Class Members have suffered, and continue to suffer, damages arising from the Data Breach as described herein and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff, individually and on behalf 7of the proposed Class, respectfully requests the following relief:

a.    An order certifying this case as a class action on behalf of the Class, defined above, appointing Plaintiff as Class representative and appointing the undersigned counsel as Class counsel;

b.    A mandatory injunction directing TMX to adequately safeguard Plaintiff and the Class's PII by implementing improved security procedures and measures as outlined above;

c.    An award of other declaratory, injunctive, and equitable relief as is necessary to

protect the interests of Plaintiff and Class Members;

d.      An award of restitution and compensatory, consequential, and general damages to Plaintiff and Class Members, including nominal damages as allowed by law in an amount to be determined at trial or by this Court;

e.      An award of actual or statutory damages to Plaintiff and Class Members in an amount to be determined at trial or by this Court;

f.      An award of reasonable litigation expenses and costs and attorneys' fees to the extent allowed by law;

g.      An award to Plaintiff and Class Members of pre- and post-judgment interest, to the extent allowable; and

h.      Award of such other and further relief as equity and justice may require.

### JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

DATED:  May 2, 2023               **THE BELL FIRM**

*s/ John C. Bell, Jr.*
John C. Bell, Jr. (Ga. Bar No. 048600)
Pamela S. James (Ga. Bar No. 389015)
PO Box 1547
Augusta, GA  30903-1547
(706) 722-2014
john@bellfirm.net
pam@bellfirm.net

32

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman (*pro hac vice* forthcoming)
102 Half Moon Bay Drive
Croton-on-Hudson, New York  10520
Telephone: (917) 983-9321
Fax: (888) 421-4173
*lfeldman@ 4-Justice.com*
*eservice@4-Justice.com*

**GEORGE FELDMAN MCDONALD, PLLC**
David J. George (*pro hac vice* forthcoming)
Brittany L. Brown (*pro hac vice* forthcoming)
9897 Lake Worth Drive, Suite 302
Lake Worth, Florida 33467
Telephone: (561) 232-6002
Fax: (888) 421-4173
*dgeorge@4-Justice.com*
*bbrown@ 4-Justice.com*
*eservice@4-Justice.com*

*Counsel for Plaintiff and the Putative Class*

# Tab A



FAMILY OF COMPANIES

TitleMax  TitleBucks  InstaLoan

Return Mail Processing
PO Box 989
Suwanee, GA  30924

SH1 [Barcode]
SHENEEQUA CARRINGTON
308 CONLER DR
BERRYVILLE, VA  22611-4476

[Barcode]

March 30, 2023

## NOTICE OF DATA BREACH

Dear Sheneequa Carrington:

TMX Finance Corporate Services, Inc., on behalf of itself, its parent TMX Finance LLC and its affiliates, many of which operate under the brands "TitleMax," "TitleBucks," and "InstaLoan" (collectively, "TMX"), is writing to inform you of a data breach that may have involved your personal information. TMX takes the privacy and security of your personal information very seriously. This letter provides information about the incident and resources available to help you protect your information.

**What Happened?** On February 13, 2023, we detected suspicious activity on our systems and promptly took steps to investigate the incident. As part of that investigation, global forensic cybersecurity experts were retained. Based on the investigation to date, the earliest known breach of TMX's systems started in early December 2022. On March 1, 2023, the investigation confirmed that information may have been acquired between February 3, 2023 - February 14, 2023. We promptly began a review of potentially affected files to determine what information may have been involved in this incident. We notified the FBI but have not delayed this notification for any law enforcement investigation.

**What Information Was Involved?** The personal information involved may have included your name, date of birth, passport number, driver's license number, federal/state identification card number, tax identification number, social security number and/or financial account information, and other information such as phone number, address, and email address.

**What We Are Doing.** Our investigation is still in progress, but TMX believes the incident has been contained. We continue to monitor our systems for any suspicious activity. We have implemented additional security features, such as additional endpoint protection and monitoring, as well as resetting all employee passwords. We continue to evaluate ways to further enhance the security of our systems.

To help protect your identity, we are offering you complimentary credit monitoring and identity protection services through Experian IdentityWorks℠ for a period of 12 months. Please see the enclosed Reference Guide for enrollment details and instructions on how to enroll.

**What You Can Do.** In addition to enrolling in complimentary credit monitoring and identity protection services, the Reference Guide includes additional information on general steps you can take to monitor and protect your personal information. We encourage you to remain vigilant against potential identity theft and fraud by carefully reviewing credit reports and account statements to ensure that all activity is valid.

**For More Information.** We sincerely regret any inconvenience or concern caused by this incident. If you have further questions or concerns, or would like an alternative to enrolling online, please call 800-642-6976 toll-free Monday through Friday from 8 am - 10 pm Central, or Saturday and Sunday from 10 am - 7 pm Central (excluding major U.S. holidays). Be prepared to provide your engagement number B087587.

Sincerely,

Ted Helgesen
COO and President
TMX



Engagement # B087587

## Reference Guide

**Enroll in Free Credit Monitoring and Identity Protection Services:**

To help protect your identity, we are offering free access to Experian IdentityWorks℠ for 12-months

This product provides you with superior identity detection and resolution of identity theft. To start monitoring your personal information, please follow the steps below

- Ensure that you enroll by **July 31, 2023** (Your code will not work after this date.)
- Visit the Experian IdentityWorks website to enroll: https://www.experianidworks.com/credit
- Provide your activation code: **MSMP9W6M6**

If you have questions about the product, need assistance with Identity Restoration that arose as a result of this incident, or would like an alternative to enrolling in Experian IdentityWorks online, please contact Experian's customer care team at 800-632-6976 by **July 31, 2023**. Be prepared to provide engagement number B087587 as proof of eligibility for the Identity Restoration services by Experian

ADDITIONAL DETAILS REGARDING YOUR 12-MONTH EXPERIAN IDENTITYWORKS MEMBERSHIP

A credit card is not required for enrollment in Experian IdentityWorks. You can contact Experian immediately regarding any fraud issues, and have access to the following features once you enroll in Experian IdentityWorks

- Experian credit report at signup: See what information is associated with your credit file. Daily credit reports are available for online members only.*
- Credit Monitoring: Actively monitors Experian file for indicators of fraud
- Identity Restoration: Identity Restoration specialists are immediately available to help you address credit and non-credit related fraud
- Experian IdentityWorks ExtendCARE™: You receive the same high-level of Identity Restoration support even after your Experian IdentityWorks membership has expired
- $1 Million Identity Theft Insurance**: Provides coverage for certain costs and unauthorized electronic fund transfers

**Review Your Account Statements and Notify Law Enforcement of Suspicious Activity:** Carefully review account statements and credit reports to ensure that all of your account activity is valid. Report any questionable charges promptly to the financial institution or company with which the account is maintained. You also should promptly report any fraudulent activity or any suspected incidence of identity theft to proper law enforcement authorities, your state attorney general, and/or the Federal Trade Commission (FTC).

**Order Your Free Credit Report:** To order your free annual credit report, visit www.annualcreditreport.com, call toll-free at 1-877-322-8228, or complete the Annual Credit Report Request Form (available at www.annualcreditreport.com) and mail it to Annual Credit Report Request Service, P.O. Box 105281, Atlanta, GA, 30348-5281. You also can contact one or more of the following three national consumer reporting agencies.

- **Equifax:** P.O. Box 740241, Atlanta, GA 30374, 1-800-525-6285, https://www.equifax.com/personal/credit-report-services
- **Experian:** P.O. Box 9532, Allen, TX 75013, 1-888-397-3742, www.experian.com/help
- **TransUnion:** P.O. Box 2000, Chester, PA 19016, 1-800-916-8800, www.transunion.com/credit-help

When you receive your credit reports, review them carefully. Look for accounts or creditor inquiries that you did not initiate or do not recognize. If you see anything you do not understand, call the consumer reporting agency at the telephone number on the report

* Offline members will be eligible to call for additional reports quarterly after enrolling
** The Identity Theft Insurance is underwritten and administered by American Bankers Insurance Company of Florida, an Assurant company Please refer to the actual policies for terms, conditions, and exclusions of coverage. Coverage may not be available in all jurisdictions

Engagement # B087587

**Consider Placing a Fraud Alert on Your Credit Report:** You have the right to place an initial or extended "fraud alert" on your credit report at no cost. An initial fraud alert lasts 1 year and can be renewed as many times as desired. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting seven years. To place a fraud alert on your credit report, contact any one of the consumer reporting agencies listed below. The agency you contact will then contact the other two credit agencies.

* **Equifax Information Services:** P.O. Box 105069, Atlanta, GA 30348-5069, 1-800-525-6285, or by visiting https://www.equifax.com/personal/credit-report-services/credit-fraud-alerts/
* **Experian Fraud Alert:** P.O. Box 9554, Allen, TX 75013-9554, 1-888-397-3742, or by visiting https://www.experian.com/fraud/center.html
* **TransUnion:** P.O. Box 2000 Chester, PA 19016-2000, 1-800-916-8800, or by visiting https://www.transunion.com/fraud-alerts

**Request a Security Freeze:** You have the right to put a security freeze on your credit file at no cost. A security freeze will ensure potential creditors and other third parties are unable to access your credit report without your consent to lift the freeze. As a result, a security freeze may interfere with or delay approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit. Unlike a fraud alert, you must separately place a security freeze on your credit file with each consumer reporting agency. Pursuant to federal law, you cannot be charged to place or lift a security freeze.

In order to request a security freeze, you will need to provide some or all of the following information to the consumer reporting agency, depending on whether you do so online, by phone, or by mail:

1. Full name (including middle initial as well as Jr., Sr., II, III, etc.);
2. Social Security number;
3. Date of birth;
4. If you have moved in the past five (5) years, the addresses where you have lived over the prior five years;
5. Proof of current address, such as a current utility bill, telephone bill, rental agreement, or deed;
6. A legible photocopy of a government issued identification card (state driver's license or ID card, military identification, etc.);
7. Social Security Card, pay stub, or W2;
8. If you are a victim of identity theft, include a copy of either the police report, investigative report, or complaint to a law enforcement agency concerning identity theft.

Should you wish to place a security freeze, please contact the three major consumer reporting agencies listed below:

| Equifax Security Freeze | Experian Security Freeze | TransUnion Security Freeze |
|---|---|---|
| P.O. Box 105788 | P.O. Box 9554 | P.O. Box 160 |
| Atlanta, GA 30348-5788 | Allen, TX 75013 | Woodlyn, PA 19094 |
| 1-888-298-0045 | 1-888-397-3742 | 1-800-916-8800 |
| https://www.equifax.com/personal/credit-report-services/ | https://www.experian.com/freeze/center.html | https://www.transunion.com/credit-freeze |

After receiving your freeze request, each credit bureau will provide you with a unique PIN or password and information on how you can remove the freeze in the future. Keep the PIN or password in a safe place as you will need it if you choose to lift the freeze. A freeze remains in place until you ask the consumer reporting agency to temporarily lift it or remove it altogether. If the request is made online or via phone, a credit bureau must lift the credit freeze within an hour. If the request is made by mail, then the bureau must lift the freeze no later than three business days after receiving your request.

**Additional Information:** You can obtain information from the consumer reporting agencies, the FTC, or from your respective state Attorney General about fraud alerts, security freezes, and steps you can take toward preventing identity theft. You can contact the FTC to learn more about how to protect yourself from becoming a victim of identity theft at: Federal Trade Commission, Consumer Response Center, 600 Pennsylvania Avenue, NW, Washington, DC 20580, 1-877-IDTHEFT (438-4338) and TTY 1-866-653-4261, www.identitytheft.gov/. The FTC also encourages those who discover that their information has been misused to file a complaint with them. You can obtain further information on how to file such a complaint by way of the contact information listed above. You have the right to file a police report if you ever experience identity theft or fraud.

TMX Finance LLC: TMX Finance LLC, located at 15 Bull Street, Suite 200 Savannah, GA 31401 can be reached at 888-185-3629.

**California Residents:** Visit the California Office of Privacy Protection (www.oag.ca.gov/privacy) for additional information on protection against identity theft.

**Maryland Residents:** You may also obtain information about preventing and avoiding identity theft from the Maryland Office of the Attorney General. Maryland Office of the Attorney General, Consumer Protection Division, 200 St. Paul Place, Baltimore, MD 21202, (410) 528-8662 or (410) 576-6491, or visit http://www.marylandattorneygeneral.gov/

**New York Residents:** You may also contact the following state agencies for information regarding security breach response and identity theft prevention and protection information: New York Attorney General Consumer Frauds & Protection Bureau, (800) 771-7755, https://www.ag.ny.gov and/or New York Department of State's Division of Consumer Protection, (800) 697-1220, https://www.dos.ny.gov

**North Carolina Residents:** You may also obtain information about preventing and avoiding identity theft from the North Carolina Attorney General's Office. North Carolina Department of Justice, Consumer Protection Division, 9001 Mail Service Center, Raleigh, NC 27699-9001, (919) 716-6000, www.ncdoj.gov

**Oregon Residents:** State laws advise you to report any suspected identity theft to law enforcement, as well as the Federal Trade Commission. Contact information for the Oregon Department of Justice is as follows: Oregon Department of Justice, 1162 Court Street NE, Salem, OR 97301-4096, (877) 877-9392, www.doj.state.or.us

**Rhode Island Residents:** You have a right to file or obtain a police report related to this incident. You may also obtain information about preventing and avoiding identity theft from the Rhode Island Office of the Attorney General. Rhode Island Office of the Attorney General Consumer Protection Division, 150 South Main Street, Providence, RI, 02903, (401) 274-4400, www.riag.ri.gov There are approximately 52 Rhode Island residents impacted by this incident.

**All US Residents:** Identity Theft Clearinghouse, Federal Trade Commission, 600 Pennsylvania Avenue, NW Washington, DC 20580, www.consumer.gov/idtheft, 1-877-IDTHEFT (438-4338), TTY: 1-866-653-4261 https://www.consumerfinance.gov/consumer-tools/credit-reports-and-scores/

**You also have certain rights under the Fair Credit Reporting Act (FCRA):** These rights include to know what is in your file, to dispute incomplete or inaccurate information, to have consumer reporting agencies correct or delete inaccurate, incomplete, or unverifiable information, as well as other rights. For more information about the FCRA, and your rights pursuant to the FCRA, please visit https://files.consumerfinance.gov/f/201504_cfpb_summary_your-rights-under-fcra.pdf

NOTICE: This correspondence is sent only for informational purposes and/or for the purpose of compliance with the loan documents and/or applicable law. You may be afforded certain protections under the United States Bankruptcy Code. By this correspondence, we are not attempting to collect a debt, impose personal liability, or in any way violate the provisions of the United States Bankruptcy Code. For any questions related to the bankruptcy, please contact your bankruptcy attorney.

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Sheneequa Carrington, Individually and
on Behalf of all Others Similarly Situated

**(b)** County of Residence of First Listed Plaintiff   Clark County, VA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
See Attached

## DEFENDANTS

TMX Finance Corporate Services, Inc. and TMX Finance LLC d/b/a
"TitleMax," "TitleBucks," and "Instaloan,"

County of Residence of First Listed Defendant   Chatham County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
        Plaintiff

☐ 3  Federal Question
        *(U.S. Government Not a Party)*

☐ 2  U.S. Government
        Defendant

☒ 4  Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | | Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
        Proceeding

☐ 2 Removed from
        State Court

☐ 3 Remanded from
        Appellate Court

☐ 4 Reinstated or
        Reopened

☐ 5 Transferred from
        Another District
        *(specify)*

☐ 6 Multidistrict
        Litigation -
        Transfer

☐ 8 Multidistrict
        Litigation -
        Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C.  1332(d)

Brief description of cause:
Suit for damages flowing from release of sensitive identifiable information

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
    UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
05/02/2023

SIGNATURE OF ATTORNEY OF RECORD
*John Bell*

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

**Counsel List**

**THE BELL FIRM**
John C. Bell, Jr. (Ga. Bar No. 048600)
Pamela S. James (Ga. Bar No. 389015)
PO Box 1547
Augusta, GA  30903-1547
(706) 722-2014
john@bellfirm.net
pam@bellfirm.net

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman (*pro hac vice* forthcoming)
102 Half Moon Bay Drive
Croton-on-Hudson, New York  10520
Telephone: (917) 983-9321
Fax: (888) 421-4173
*lfeldman@ 4-Justice.com*
*eservice@4-Justice.com*

**GEORGE FELDMAN MCDONALD, PLLC**
David J. George (*pro hac vice* forthcoming)
Brittany L. Brown (*pro hac vice* forthcoming)
9897 Lake Worth Drive, Suite 302
Lake Worth, Florida 33467
Telephone: (561) 232-6002
Fax: (888) 421-4173
*dgeorge@4-Justice.com*
*bbrown@ 4-Justice.com*
*eservice@4-Justice.com*