## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | |
|---|---|
| SAVANNAH KOLSTEDT, on behalf of herself and all others similarly situated,<br><br>         Plaintiff,<br><br>v.<br><br>TMX FINANCE CORPORATE SERVICES, INC., and TMX FINANCE LLC d/b/a "TITLEMAX", "TITLEBUCKS", and "INSTALOAN",<br><br>         Defendants. | Case No.: 4:23-cv-76-RSB-CLR |

### MOTION TO APPOINT ROY E. BARNES, JEAN S. MARTIN, AND BARRETT J. VAHLE AS INTERIM CLASS COUNSEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(g) WITH INCORPORATED MEMORANDUM IN SUPPORT

Roy E. Barnes of The Barnes Law Group, LLC, Jean S. Martin of Morgan & Morgan Complex Litigation Group, and Barrett J. Vahle of Stueve Siegel Hanson LLP (collectively, the "BMV Group") respectfully seek appointment as Interim Co-Lead Class Counsel.

The BMV Group includes a diverse slate of committed lawyers and firms that collectively: (i) filed the first case against Defendants (collectively, "TitleMax") after the data breach; (ii) includes leadership from nearly every major data breach case litigated to date, including *Equifax*, *T-Mobile*, *Capital One*, *Marriott*, *Quest*, *Office of Personnel Management*, *Home Depot*, *Target*, and *Yahoo!*; (iii) engaged TitleMax's counsel and other plaintiffs' counsel to reach consensus on early case management issues; and (iv) have a long and successful history of working cooperatively among themselves and with defense counsel to expeditiously frame cases for litigation, and where possible, early resolution.

Movants propose the following appointments:

-1-

*__Co-Lead Counsel__*:

(1)  Roy E. Barnes – Barnes Law Group, LLC, Marietta, Georgia

(2)  Jean S. Martin – Morgan & Morgan Complex Litigation Group, Tampa, Florida

(3)  Barrett J. Vahle – Stueve Siegel Hanson LLP, Kansas City, Missouri

*__Co-Liaison Counsel:__*

(1)  Mark D. Johnson – Gilbert Harrell Sumerford & Martin, P.C., Brunswick, Georgia

(2)  Kyle G.A. Wallace – Shiver Hamilton Campbell, LLC, Atlanta, Georgia

*__Plaintiffs' Steering Committee__*:

(1)  Stephen R. Basser – Barrack, Rodos & Bacine, San Diego, California

(2)  Lori G. Feldman – George Feldman McDonald, New York, New York

(3)  John Herman – Herman Jones LLP, Atlanta, Georgia

(4)  Adam Polk – Girard Sharp, San Francisco, California

The BMV Group is the product of a vigorous "private ordering" process among several independent groups of counsel that did not initially join in filing the same complaint. Pursuant to the Court's directive, the BMV Group extensively conferred with most of the attorneys who filed cases stemming from the data breach but was unable to build a consensus of the lawyers in the 36 filed cases. The BMV Group understands that other accomplished lawyers are seeking appointment separately. The BMV Group has an extensive, positive working relationship with many other lawyers who have appeared in these cases. Although courts regularly appoint a proposed slate in its entirety (*see, e.g.*, *In re: Syngenta AG MIR162 Corn Litig.*, 2015 WL 13679782 (D. Kan. Feb. 22, 2015), if appointed, the BMV Group would gladly welcome lawyers outside the BMV Group who have filed cases onto their team if the Court found it warranted, and the BMV Group would not hesitate to utilize the talents of other lawyers with filed cases as needed throughout the litigation. Still, the BMV Group

has endeavored to assemble the team that is "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

As discussed below, this proposed slate reflects the diversity of the Bar and the plaintiff class—from the standpoint of gender, age, geography, background, and experience, striving to meet the guidance from the Duke Law's Bolch Judicial Institute:

> [In] appointing a leadership team, courts should be mindful of the benefits of diversity of all types. In particular, the strong repeat player dynamic that has historically existed reduces fresh outlooks and innovative ideas and increases pressure to go along with the group and conform, all of which may negatively impact the plaintiffs whose cases are being pursued in the MDL. At the same time, leadership needs repeat players who understand the ropes. Thus, a balanced team, with diversity of skills, expertise, prior casework and role, and demographics, should be sought.

BOLCH JUDICIAL INSTITUTE, *Guidelines and Best Practices for Large and Mass-Tort MDLs*, at 37 (2nd Ed.), available at https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf (the "Duke Standards").

Further, cognizant of the Court's efficiency concerns, this proposal is also consistent in terms of size and committee roles of previous leadership appointments in prior data breach litigation. *See, e.g.*, *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT (N.D. Ga. Feb. 13, 2015, Doc. 60) (appointing three co-lead counsel, one liaison counsel, and five members of a plaintiffs' steering committee); *Skurauskis v. Nationsbenefit Holdings, LLC*, No. 23-cv-60830-RAR (S.D. Fla. July 26, 2023, Doc. 33) (appointing three co-lead counsel, one liaison counsel, and six members of a plaintiffs' executive committee). The BMV Group therefore submits a proposed order setting forth the responsibilities of the attorneys appointed to leadership, attached hereto as **Exhibit 1**. Moreover, if appointed, the BMV Group requests that the Court enter a case management order setting forth a timekeeping and reporting protocol materially in the form attached as **Exhibit**

**2**.[1] The undersigned have regularly used a timekeeping protocol as a management tool to ensure efficiency and reduce duplication of effort.

## **ARGUMENT**

The appointment of interim co-lead class counsel is often appropriate prior to class certification to protect the interests of the putative class. *See Annotated Manual for Complex Litigation* (4th ed. 2004) (the "Manual"); *see also* Fed. R. Civ. P. 23(g)(3) (providing for designation of interim class counsel to act on behalf of putative class before determination of class certification). Where more than one applicant seeks appointment as interim class counsel, "the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). In making this determination, the court should consider (i) counsel's work in identifying or investigating potential claims, (ii) counsel's experience in handling class actions and the types of claims involved, (iii) counsel's knowledge of the applicable laws, and (iv) the resources counsel commits to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class" or to the appointment. Fed. R. Civ. P. 23(g)(1)(B)-(C); *see also* Manual § 10.22. To that end, the Court instructed applicants to address related considerations, including leadership skills; conflicts of interest; a proposed plan for litigation, including regarding state law differences; how many members of the respective firms are anticipated to be dedicated to this case; the amount of time the case may take, and the capacity for devoting that much time to it; and the involvement of local counsel given the Defendants' presence in the District. (*See* July 25, 2023 Hr'g Tr., at 37-39).

---

[1] If appointed Co-Lead Counsel, the undersigned intend to collect detailed time and expense reports from all Plaintiffs' counsel on a monthly basis. If the Court so requested, the undersigned would submit to the Court *in camera* summary reports on a quarterly basis.

All of these considerations fully support the BMV Group's application.

I.       *Proposed Interim Class Counsel's Work in Identifying and Investigating Potential Claims*.

The BMV Group's work in identifying and investigating the claims demonstrates that they have and will fairly and adequately represent the proposed class. Notably, a BMV Group law firm filed the first case stemming from the TitleMax data breach. *See Kolstedt v. TMX Fin. Corp. Servs., Inc.*, No. 4:23-cv-00076 (filed Mar. 31, 2023). *See, e.g.*, MOORE'S FED. PRAC. § 23.120(3)(a) (3d. Ed. 2007) ("All other things being equal, when an attorney has performed these or other investigative and analytical tasks [related to drafting a complaint] before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks."); *Reed-Murry v. Centene Corp.*, 2015 WL 9255552, at *2 (N.D. Ga. Dec. 18, 2015) (appointing as interim class counsel the attorneys who filed the first two putative class actions against the same defendant).

The BMV Group has performed the following work in the early stages of the litigation:

a)  Investigated potential legal claims arising from TitleMax's alleged failure to implement adequate cyber-security protections for Plaintiffs' and Class Members' personal identifiable information ("PII");

b)  Analyzed reports and articles describing TitleMax's challenged conduct;

c)  Reviewed TitleMax's websites;

d)  Researched TitleMax's corporate structure and the relationships it has with various entities;

e)  Through the use of a retired FBI agent whose later career was focused on cyber crimes and investigations, identified potential witnesses and gathered information related to the root cause of the breach at issue;

f) Engaged experts used in other data breach litigation to support the liability and damage case against TitleMax;

g) Investigated the nature of the challenged conduct by interviewing consumers affected by the breach to gather the range of repercussions suffered by consumers, and also to select among those consumers potential class representatives;

h) Investigated the adequacy of the individual Plaintiffs to represent the putative class;

i) Drafted and filed separate complaints in this action;

j) Engaged defense counsel to propose consolidation and a preliminary schedule to the Court; and

k) Communicated with one another regarding the most efficient manner to organize counsel.

These investigative efforts reflect a high standard of professionalism, dedication, and thoroughness. All these preliminary steps support Proposed Interim Class Counsel's appointment. *See, e.g.*, *In re Flagstar Dec. 2021 Data Sec. Incident Litig.*, No. 4:22-cv-11385, 2023 WL 3632709, at *2 (E.D. Mich. May 24, 2023) (appointing lead counsel making note that the slate selected had "undertaken an exhaustive investigation" of the data breach, engaged cyber consultants and experts, served in high profile data breach cases, and were able to commit considerable resources to representing the class).

After filing its complaints, the BMV Group demonstrated its experience and leadership gleaned from similar cases in Georgia and nationwide. Given past experience, firm members of the BMV Group promptly coordinated with defense counsel and other plaintiffs' counsel to consolidate and address preliminary scheduling matters. (*See* Doc. 16) (motion to consolidate). To protect the interests of the class while the motion to consolidate was pending, those same lawyers filed a protective motion for certification in compliance with the deadlines set forth in the Local Rules. (*See* Doc. 33) (protective motion for class certification).

II.    *Counsel's Experience in Handling Class Actions and the Types of Claims Involved*.

The second factor is "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(1)(A)(ii). Here, Proposed Interim Class Counsel have substantial experience handling consumer class actions involving data privacy issues and other complex litigation. The firms' attorneys have represented plaintiffs in hundreds of class action lawsuits in state and federal courts throughout the United States. These cases have been litigated across the country against defendants large and small. They have heavily litigated data privacy cases when required, particularly in the Eleventh Circuit. They have taken extensive discovery of fact witnesses and have briefed and argued class certification motions, related motions for summary judgment and *Daubert* motions. Specific to data privacy matters, they have taken depositions of dozens of fact witnesses and experts (taking 52 depositions in the *Capital One* matter alone), and are the only group that has certified classes in three different data privacy cases. *See Schmidt v. Facebook, Inc.*, No. 3:18-cv-05982 (N.D. Cal.) (Mr. Yanchunis helping to achieve (b)(2) certification); *Brown v. Google LLC*, No. 4:20-cv-03664-YGR (N.D. Cal.) ((b)(2) certification); and *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) *vacated in part sub nom. Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023) (trial court's (b)(3) predominance analysis affirmed).

The BMV Group includes lawyers who have served in leadership capacities in nearly every large data breach case to date, as set forth in the below brief biographies and attached firm resumes. This past experience demonstrates the BMV Group's leadership. Taking just one example, the *Equifax* MDL involved the representation of a class of over 140 million individuals, coordination between multiple tracks of litigation (including consumer, financial institution, and securities cases), and coordination of a settlement with two federal agencies and the vast majority of state attorneys general offices. Mr. Barnes served as liaison counsel with the powers of lead counsel and helped lead every

aspect of the landmark litigation; Mr. Vahle's partner served as co-lead counsel and Mr. Vahle was a lead contributor of pleadings, briefing, and settlement documents in the district court and on appeal to the Eleventh Circuit, and managed the time and expense reporting process and the MDL litigation fund. And Ms. Martin's partner served on the *Equifax* steering committee, was chair of the expert committee, and played a crucial role in designing and negotiating the injunctive relief.

Each proposed co-lead has been at the leading edge of developments of data breach law, providing the BMV Group a great depth of knowledge and experience in data breach cases that will be brought to bear for the benefit of the class here. Relevant experience of each proposed member of the BMV Group is set forth below, with a compendium of their firms' resumes attached as **Exhibit 3**.

     **A.**     **Proposed Co-Lead Counsel (Listed Alphabetically)**

***Roy E. Barnes***: Roy E. Barnes is the founding member of Barnes Law Group, LLC. Practicing for more than 50 years, Mr. Barnes appears in over 340 reported cases. He has appeared as counsel in nearly 50 reported decisions related to class actions, with one of his first nationally prominent successful class action lawsuits being against Fleet Finance in the early 1990s.

Mr. Barnes has been appointed to leadership in numerous state and nationwide class actions, including in data breach cases. Most recently, he was appointed class counsel in the *Equifax* data breach litigation, No. 1:17-md-02800-TWT (N.D. Ga.), one of the largest MDLs ever in terms of affected individuals. He also served as co-liaison and class counsel in the *Home Depot* data breach MDL, and as co-lead counsel in *Arby's*. All three of those data breach cases involved close collaboration with other law firms requesting co-leadership in the group.

Recently, the firm has been representing the State of Georgia as special outside counsel in the opioid litigation against various pharmaceutical manufacturers and distributors. *See State of Georgia v. Teva Pharm., et al.*, Superior Court of Gwinnett County, CAFN 19-A-00060-2. Thus far those cases have yielded hundreds of millions of dollars in settlement funds for the State's benefit.

Mr. Barnes's decades-long political career provided extensive experience in consensus-building. Having served in both the House and Senate of the Georgia General Assembly over the course of 1974 to 1998, Mr. Barnes was then elected and served as Georgia's 80th Governor from 1999 to 2003. In 2003, he was awarded the John F. Kennedy Profile in Courage Award for leading the effort to make the Confederate battle emblem less prominent on the state flag. If selected, Mr. Barnes and his firm will commit the necessary talent, resources, and leadership to bear in this case, as they have in others.

***Jean S. Martin***: For the majority of her legal career, Jean Martin has concentrated her practice on complex litigation, including consumer protection and catastrophic personal injury. For the last five years, her primary focus has been litigating data privacy class actions. Ms. Martin is often an integral behind-the-scenes player, supporting her law partner, John Yanchunis, who has had leadership roles in some of the largest class action lawsuits in history, including *In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19-md-2915-AJT (E.D. Va.), and *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal.). In this capacity, Ms. Martin has had primary responsibility over key aspects of data privacy class actions including writing briefs, coordinating document review, negotiating ESI orders, taking and defending technical depositions, overseeing the development of principal expert testimony, and arguing *Daubert* motions.

Ms. Martin has significant leadership experience in her own right. Recently she served as co-lead in *In re Morgan Stanley Data Sec. Litig.*, 1:20-cv-05914 (S.D.N.Y.), which resulted in a $60 million common fund settlement for 15 million class members. The settlement she negotiated is novel and creative in that Morgan Stanley committed to pay for a third party to renew efforts to locate and recover additional IT devices at issue and the settlement secured financial account monitoring services for the entire class for 10 years. At the final approval hearing, the judge remarked that plaintiffs were represented by "first-rate lawyers," noting that "on a per capita basis,

the settlement award exceeds the value of prior class settlements in data and security breach cases."

Ms. Martin also recently finished her service as co-lead in *In re Ambry Genetics Data Breach Litig.*, No. 8:20-cv-00791-CJC (C.D. Cal.), which resulted in a settlement valued in excess of $20 million for a class of approximately 230,000 patients. In the final approval order, the District Court judge highlighted the "excellent result . . . achieved for the class," especially after facing multiple motions to dismiss, including one dismissal of plaintiffs' complaint in its entirety.

In a case in which she serves as interim co-lead counsel, Ms. Martin argued a motion for class certification which resulted in the first order in the country granting Rule 23(b)(3) certification in a consumer payment card data breach. *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021), *vacated in part sub nom. Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023). Ms. Martin argued the motion for class certification and the appeal before the Eleventh Circuit. The appellate court found standing for Ms. Martin's client and embraced the presented damages model, remanding the case for further predominance inquiry given the district court's modification of the class definition.

Ms. Martin has heavily litigated, conducted significant discovery, and briefed essentially every aspect of a data and technology class case, including deposing corporate representatives and officers, and technical and damages witnesses and experts. She has wrestled with and surmounted issues of Article III standing, jurisdiction, class certification, and damage models. This work led to Law360 recognizing Ms. Martin as an MVP in the area of cybersecurity and data privacy last year. She was also recently named one of National Law Journal's Class Action / Mass Tort Litigation Trailblazers of 2023.

Ms. Martin has the support of a hardworking team, whose biographies are highlighted in the attached exhibit, and firm, Morgan and Morgan, which has dedicated and will continue to dedicate the resources to prosecute this case with the care the putative class deserves. With several matters

presently moving through the settlement approval process, Ms. Martin has the time and capacity to commit to actively leading this case.

**Barrett J. Vahle**: Mr. Vahle is a partner at Stueve Siegel Hanson LLP, a 30-lawyer firm in Kansas City, Missouri that represents plaintiffs of all types in litigation nationwide. Mr. Vahle's experience in leading large data breach class actions includes serving as co-lead counsel for the consumer plaintiffs in *In re The Home Depot, Inc. Consumer Data Sec. Data Breach Litig.*, No. 1:14-md-02583 (N.D. Ga.), where, with Barnes Law Group and Morgan & Morgan, he led all aspects of the case, argued the motion to dismiss, and shepherded the class settlement, on behalf of 56 million consumers, through approval and administration. Mr. Vahle also served as lead counsel and settlement class counsel in a case involving phishing of employee W-2 information in *Hapka v. CareCentrix*, No. 2:16-cv-2372-CM (D. Kan.), where, after defeating a motion to dismiss, Mr. Vahle negotiated a unique settlement including cash payments for instances of tax fraud. *See also, e.g.*, *Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-1050, 2021 WL 6750844, at *1 (E.D. Va. Nov. 19, 2021) (Mr. Vahle was appointed lead and settlement class counsel; approving nationwide settlement for 3 million insurance subscribers).

Since 2017, Mr. Vahle has devoted the majority of his practice to litigating the *Equifax*, *Capital One*, and *T-Mobile* data breach MDLs with his partner Norman Siegel, who was appointed co-lead counsel in each of those matters. In *Equifax*, Mr. Vahle was the primary drafter of the lengthy consolidated complaint and the successful opposition to Equifax's motion to dismiss. In *Capital One*, Mr. Vahle led his firm's offensive discovery efforts, took more than 50 depositions along with Ms. Martin's firm; developed and defended damages expert opinions that had never been presented in a prior data breach case; and argued extensive *Daubert* motions at the class certification stage. In all three cases—which ultimately resulted in the three largest settlements to date in data breach litigation—Mr. Vahle was and continues to be a key part of the settlement and administration team.

This experience makes Mr. Vahle intimately familiar with the legal issues that are likely to be at the forefront of this litigation. Stueve Siegel's legal work in this field includes achieving groundbreaking opinions at the trial and appellate court level that have helped develop the law in this emerging area. Examples include the firm's work in securing favorable motion to dismiss orders in the *Target* data breach litigation, which served as the foundation for orders in subsequent data breach litigation including *Home Depot*, *Equifax*, *Capital One*, and *Marriott*. In *Marriott*, Stueve Siegel played a key role in drafting the consolidated complaint, opposing the motion to dismiss, and briefing the successful motion for class certification, then helped lead the defense of that decision on appeal. *See In re: Marriott International Inc., Customer Data Security Breach Litig.*, MDL No. 19-md-2879, 341 F.R.D. 128 (D. Md. 2022) (23(f) appeal pending). At the appellate level, Stueve Siegel obtained favorable opinions from the Eleventh Circuit in *Equifax*, 999 F.3d 1247 (11th Cir. 2021); the Fourth Circuit in *Hutton v. Nat'l Bd. of Exam'rs in Optometry*, 892 F.3d 613 (4th Cir. 2018) (reversing the district court's dismissal of the case for lack of Article III standing); and the Third Circuit in *Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3d Cir. 2022) (reversing dismissal of data breach class action for lack of Article III standing to sue and clarifying the contours of "injury" based on the threat of future harm).

Mr. Vahle and Stueve Siegel have the experience and resources needed to serve the putative class and the Court. The firm has worked opposite TitleMax's counsel in several matters and anticipates a continued collegial and professional relationship here. Mr. Vahle is presently appointed lead class counsel in a single active matter—a privacy case pending in the Northern District of California. *See Lundy v. Meta Platforms, Inc.*, No. 3:18-cv-6793-JD (N.D. Cal.). He and his firm are fully available and committed to pursuing this case with whatever resources it requires.

**B.**    <u>Proposed Co-Liaison Counsel</u>.

Appointment of liaison counsel can, as here, be useful in cases where multiple actions are being coordinated and not all counsel are located in the forum. In such cases, liaison counsel can serve as a local point of contact between the Court and counsel, and otherwise assist in prosecuting the litigation consistent with the local rules of practice. *See, e.g.*, Manual § 10.221.

*Mark D. Johnson*: Mark Johnson of Gilbert, Harrell, Sumerford & Martin, P.C. ("Gilbert Harrell") is well-suited to perform liaison duties here. Gilbert Harrell is an over 125-year-old local firm, with a long history of providing high quality legal services. Mr. Johnson is a seasoned trial attorney and has been a litigation partner with Gilbert Harrell for nearly thirty years, practicing all the while in the Southern District where he has handled countless cases. In addition to his strong ties to the community and the local bar, Mr. Johnson also has relationships with other counsel in the case, including Mr. Herman of Herman Jones LLP, dating back to being young associates together at King & Spalding.

*Kyle G.A. Wallace*: Kyle G.A. Wallace is a partner at Shiver Hamilton Campbell, LLC, a firm founded in 2011 by accomplished trial attorneys Jeff Shiver and Alan Hamilton. Mr. Wallace is a class action attorney who is a former Assistant United States Attorney in the District. He has maintained a regular practice in the District since leaving the U.S. Attorney's Office. Mr. Wallace currently serves as a member of the law and briefing committee in the massive Philips CPAP MDL litigation pending in the Western District of Pennsylvania.

Prior to joining Shiver Hamilton Campbell, Mr. Wallace was a partner at Alston & Bird, a leading international law firm where he spent 12 years defending large companies in consumer class actions, business torts, insurance bad faith, and other high-stakes litigation in courts across the country, including federal multidistrict litigation. Mr. Wallace was the firmwide co-leader of the

appellate practice. Other professional experience includes his service as a federal judicial clerk to Judge R. Lanier Anderson, III of the Eleventh Circuit.

In 2015, Governor Nathan Deal appointed Mr. Wallace to serve on the Georgia Appellate Jurisdiction Review Commission. Mr. Wallace was the co-drafter of the Georgia Appellate Jurisdiction Reform Act of 2016, the most substantial change to Georgia's appellate courts in over 100 years. The Act increased the size of both the Court of Appeals and Supreme Court and modernized the jurisdictional split between the two courts to allow the Supreme Court to operate more exclusively as a certiorari court.

Shiver Hamilton has offices in both Atlanta and this District. Shiver Hamilton focuses its practice on serious personal injury and products liability cases, and with the addition of Mr. Wallace in 2020, consumer class actions and mass torts. Mr. Wallace and his firm are fully available and committed to pursuing this case with whatever resources it requires.

C.     **Proposed Plaintiffs' Steering Committee.**

*Stephen Basser*: Stephen R. Basser is a partner with Barrack, Rodos & Bacine, ("Barrack"), with offices in San Diego, California, New York, and Philadelphia. Barrack is a highly experienced plaintiffs' class action law firm that has secured class action recoveries collectively exceeding $15 billion. Barrack can and will commit significant financial resources and staffing towards the vigorous prosecution of this litigation. Barrack is experienced in major high-stakes class actions arising from corporate misconduct, deceptive practices, misrepresentations, and violations of personal privacy rights.

Mr. Basser was a co-lead counsel in *In re McKesson HBOC, Inc., Sec. Litig.*, Master File No. 5:99-cv-20743 (J. Whyte) (N.D. Ca.), (settlement of $1.0425 billion), and was lead and first chair trial counsel in *In re Apollo Group, Inc. Sec. Litig.*, Master File No. 2:04-cv-2147 (Teilborg, J.) (D. Ariz.) (jury verdict securing a $145 million recovery for class members). He has served or is serving

on Executive Committees in data privacy breach related lawsuits including *In re Lincare Holdings Data Breach Litig.*, No. 8:22-cv-01472 (M.D. Fla.); *In re Forefront Dermatology Data Breach Litig.*, No. 1:21-cv-00887 (E.D. Wis.), and *In re Shields Health Care Group Data Breach Litig.*, No. 1:22-cv-10901 (D. Mass.), and represented plaintiffs in *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633-SI (D. Or.), *In re T-Mobile Customer Data Breach Litig.*, 4:21-md-03019-BCW (W.D. Mo.), and significantly, *In re Anthem Health Data Breach Litig.*, 5:15-md-02617-LHK (N.D. Cal.), where he was instrumental in identifying and developing cyber-expert witnesses and the supporting expert presentation. Mr. Basser is also co-counsel for plaintiffs in privacy breach litigation in *In re Advocate Aurora Health Pixel Litig.*, No. 2:22-cv-01253 (E.D. Wis.); *In re Group Health Privacy Litig.*, No. 0:23-cv-00267 (D. Minn.); and *In re TikTok In-App Browser Privacy Litig.*, MDL No. 3067 (N.D. Ill.). Mr. Basser was also the firm's lead attorney in several "*Senior Annuities Sales and Marketing Practices*" consumer and RICO class actions in federal district courts in California from 2004 through 2015 against major insurance companies selling annuity products targeting senior citizens, achieving settlements collectively securing benefits for class members valued at between $552 million and $1.273 billion. (*See generally* abbreviated Barrack firm resume).

**Lori G. Feldman**: Lori G. Feldman is a Member of George Feldman McDonald, PLLC. *See* GFM Resume at 4-6. Ms. Feldman filed a lawsuit on behalf of Plaintiff Carrington (No. 4:23-cv-121) along with John C. Bell of The Bell Firm. Mr. Bell, who has been an accomplished class action litigator for decades in this District (*see* generally Declaration of John Bell, attached as **Exhibit 4**), fully supports the BMV Group..

Ms. Feldman has extensive experience in class actions, including those cases involving privacy, data breach, and consumer protection, as well as other complex litigation. She is the Chair of GFM's Class Action Practice Group and the Managing Partner of the Firm's New York office. She has successfully litigated class actions against some of the largest and most well-funded corporate

defendants in the nation, including but not limited to: Amazon.com, General Electric Co., Gilead Sciences, Century Link, Washington Mutual, Wawa, and Morgan Stanley. (*See* GFM resume at 5-6).

Ms. Feldman has been appointed to serve in many leadership roles, including in class actions involving breaches of class member privacy and data. *See, e.g.*, *In re Shields Health Care Group, Inc.*, No. 1:22-cv-10901-PBS (D. Mass.) (Co-Lead Counsel); *Chandra Tate v. EyeMed Vision Care, LLC*, No. 1:21-cv-00036 (S.D. Ohio) (Co-Lead Counsel); *Skurauskis v. NationsBenefits Holdings, LLC*, No. Case 0:23-cv-60830-RAR (S.D. Fl.) (Plaintiffs' Executive Committee member); *Hollandsworth v. Highmark Health*, No. 2:23-cv-00376 (W.D. Penn.) (Executive Committee member); *see also In Re Meta Pixel Tax Filing Cases*, No. 3:22-cv-07557-SI (N.D. Cal.) (Co-Chair of Plaintiff's Steering Committee in privacy breach case); *In re Morgan Stanley Data Sec. Litig.*, No. 1:20-cv-05014-MKV (S.D.N.Y.) (Executive Committee Member); *In re: Canon Data Breach Litig.*, No. 1:20-cv-06239-AMD-SJB (E.D.N.Y.) (Executive Committee Member); *In re Lakeview Loan Servicing Litig.*, No. 1:22-cv-20955-DPG (S.D. Fla.) (Plaintiffs' Discovery Committee Member); *In re Wawa, Inc. Data Sec. Litig.*, No. 2:19-cv-06019-GEKP (E.D. Pa.) (Pleadings Committee Member). (*See* GFM Resume at 5-6). She has also participated in litigating significant class actions in federal courts in Georgia. *See, e.g.*, *In re Beazer Homes U.S.A., Inc. Sec. Litig.*, Master File No. 1:07-cv-725-CC (N.D. Ga. 2009) ($30.5 million settlement).

**John Herman**: Mr. Herman has spent his career handling complex technology disputes going back to his first ten years of practice in the Atlanta office of King & Spalding. Mr. Herman has built a team of technology-savvy attorneys and staff to work on cases such as this one, whose experience will serve the prospective class well.

Herman Jones LLP has had leadership positions in a number of significant technology matters. These cases include, *In re Google Digital Advert. Antitrust Litig.*, MDL No. 1:21-md-03010-PKC (S.D.N.Y.) (Herman Jones filed first antitrust suit against Google for its ad technology monopoly);

and *In re Amazon.com, Inc. S'holder Derivative Litig.*, Lead Case No. 2:22-cv-00559-JCC (W.D. Wash.) (John Herman appointed co-lead counsel in shareholder derivative case arising out of biometric privacy matters).

**Adam Polk**: Girard Sharp is a plaintiffs' law firm based in California that has gained a reputation for professional excellence and a respectful, collaborative approach to legal practice. The firm is supporting the BMV Group in recognition of their significant experience in data breach litigation as well as their closer geographic proximity to this Court. Girard Sharp's own credentials, including in major privacy cases, speak for themselves. The firm is lead counsel for 21.5 million federal government employees whose private information was hacked and taken from U.S. Office of Personnel Management databases, and in that capacity worked alongside other BMV Group members, who also represent plaintiffs in that litigation. *See In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, MDL No. 2664 (D.D.C.). After the district court dismissed the Privacy Act claims for lack of standing and failure to state a claim, Girard Sharp obtained a complete reversal on appeal. *See* 928 F.3d 42 (D.C. Cir. 2019). On remand, despite the immunity that limits recovery against the government to pecuniary loss, *see FAA v. Cooper*, 566 U.S. 284 (2012), and despite the breach reportedly having been perpetrated by a foreign state actor, Girard Sharp negotiated a $63 million settlement that will compensate victims who suffered a financial loss as a result of the hack, delivering minimum payments of $700.

Girard Sharp likewise served as co-lead counsel for Sony Pictures employees whose sensitive information was compromised and publicly disclosed reportedly by North Korean intelligence operatives in retaliation for the parody film *The Interview*. *See Corona v. Sony Pictures Entm't, Inc.*, No. 14-9600 (C.D. Cal.). Girard Sharp took the lead in negotiating a class settlement that served as a model for future data breach settlements, providing: (1) a non-reversionary settlement fund; (2) the

defendant's implementation of more robust data security defenses; and (3) extended identity theft protection services for the victims.

Reflecting its national practice, Girard Sharp also served alongside the BMV Group on the consumer plaintiffs' executive committee in *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, MDL No. 2583 (N.D. Ga.).

In addition to specializing in class actions, like proposed Co-Lead Counsel, Girard Sharp regularly takes cases to trial. The firm has tried two cases to juries in the Northern District of California in the past three years—one a first-of-its-kind case against the manufacturer of a cryogenic storage tank, resulting in judgment of nearly $15,000,000 for five potential parents who lost frozen eggs or embryos in the tank failure; and the other a case in the JUUL e-cigarette MDL against Altria, which settled after the conclusion of plaintiffs' case for $235,000,000. *See In re Pacific Fertility Ctr. Litig.*, No. 3:18-cv-01586 (N.D. Cal.); *San Francisco Unified Sch. Dist. v. Juul Labs Inc., et al.*, No. 3:19-cv-08177 (N.D. Cal.).

**III.    *The BMV Group's Knowledge of the Applicable Law*.**

Proposed Interim Class Counsel have hard-earned experience with the applicable law. As set forth above, the BMV Group, and their respective law firms, have a long track record of successfully litigating large-scale consumer and complex actions, particularly nationwide data breach cases. As recent examples, Morgan & Morgan obtained from the Eleventh Circuit a favorable class certification ruling in a data breach case—the first appellate decision to embrace a class-wide damages methodology in these cases. *See Brinker*, *supra*. Morgan & Morgan have also obtained two other favorable opinions from the Eleventh Circuit on issues of Georgia law in two separate data breach cases pending in the Northern District of Georgia. *See, e.g., Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213 (11th Cir. 2023) (finding a duty under Georgia law to protect employee data); *Sheffler v. Americold Realty Tr.*, No. 22-11789, 2023 WL 3918491, at *2 (11th Cir. June 9, 2023) (overturning

the denial of a post-dismissal motion for leave to file an amended complaint). Further, counsel in the BMV Group have successfully settled—and defended on appeal—nationwide classes in Georgia federal courts, including in the *Equifax*, *Home Depot*, and *Arby's* data breach cases.

Here, consistent with their experience, the BMV Group's complaints assert a number of common law claims and statutory claims. Although it may be premature to fully discuss case strategy, given Georgia's choice of law principles, the BMV Group believes that a nationwide negligence class is a viable option. *See, e.g.*, *In re Equifax, Inc.*, 362 F. Supp. 3d 1295, 1312 (N.D. Ga. 2019) (discussing application of Georgia's choice of law rules in nationwide data breach) (citing inter alia *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 677 (N.D. Ga. 2003)). The same may be true for application of Georgia consumer protection laws. *See In re Arby's Rest. Grp. Inc. Litig.*, No. 1:17-CV-0514-AT, 2018 WL 2128441, at *18 (N.D. Ga. Mar. 5, 2018) (declining to adopt argument that only Georgia residents had standing under Georgia Fair Business Practices Act), and *Monopoli v. Mercedes-Benz USA, LLC*, No. 1:21-cv-01353-SDG, 2022 U.S. Dist. LEXIS 24353, at *14 (N.D. Ga. Feb. 10, 2022) (noting importance of location in Georgia where "customer information that was protected and maintained" for choice of law analysis).

Of course, the BMV Group will be prepared to pursue other options to protect the interests of the putative class members. For example, the BMV Group includes the only firm who represents a named California plaintiff, adding a unique CCPA claim. *See Clark v. TMX Fin. Corp. Servs., Inc.*, No. 4:23-cv-168 (S.D. Ga.). The CCPA creates a private right of action for "violation of the duty to implement and maintain reasonable security procedures" and provides for statutory damages of the greater of between $100 and $750, or actual damages, to consumers whose rights under the law were invaded. Cal. Civ. Code § 1798.150. Thus, even California Class members who have not yet suffered actual damages are entitled to the minimum statutory damage payment of $100 per violation. *See, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL

3568394, at *4-6 (D.S.C. Aug. 12, 2021) (sustaining CCPA claims). The BMV Group will ensure adequate representation of California Class members, consistent with the Court's comments at the July 25, 2023 conference. July 25, 2023 Hr'g Tr. at 38:23-39:5. Where warranted, members of the BMV Group have pursued and obtained such relief for state subclasses. *See, e.g.*, *In re T-Mobile Customer Data Breach Litig.*, 4:21-md-03019-BCW, Doc. 235 (W.D. Mo. June 29, 2023) (finally approving as part of $350 million class settlement additional compensation for California subclass members with claims arising under CCPA).

As such, the BMV Group has the proven capacity to navigate the intersection of the substantive laws at issue here and the requirements for class certification under Fed. R. Civ. P. 23.

On a different but no less important note, the BMV Group contains proposed co-liaison counsel who have a wealth of experience practicing before the Court, and who are knowledgeable about the Court's rules, practices, and expectations. As set forth above, Mr. Johnson is an attorney in this District well-known for both his professionalism and legal skill and ability. Mr. Wallace is both an accomplished class action attorney and a former Assistant United States Attorney in this District, and he has maintained a regular practice here since leaving the U.S. Attorney's Office.  Both attorneys have substantial experience in significant and complex litigation and their firms, Gilbert Harrell and Shiver Hamilton, have the resources and ability to serve the plaintiffs in this consolidated proceeding. The BMV Group expects its co-liaisons to: communicate with the Court concerning scheduling and other administrative matters, maintain a service list, receive and distribute as appropriate documents that are not filed electronically, have shared responsibility overseeing the case, and be active in the decision-making process throughout the case. Additionally, the BMV group has the support of John C. Bell, Jr., and the BMV Group intends to draw upon his great experience in the District.

Relatedly, the BMV Group would welcome the involvement of other local attorneys who may be submitting applications for leadership positions separate from the BMV Group. Members of the

BMV Group have enjoyed long-standing productive professional relationships with several such local counsel and their firms. By way of example only, the Barnes Law Group has worked intensively with Ms. Harris and Franklin Law, LLC as Special Outside Counsel representing the State of Georgia in its opioid litigation. Further, the Barnes Law Group has a long history of working with the law firm of Gillen, Withers & Lake. Similarly, Paul W. Painter, III has an established reputation as a leader of the federal bar and as an effective trial attorney. The BMV has full confidence in the abilities of such local attorneys to assist in overseeing this litigation, and would be delighted to pursue this case with them.

IV.     ***The BMV Group Will Commit the Resources Needed to Represent the Class and Ensure the Effective and Efficient Resolution of This Litigation.***

Rule 23(g)(1)(A)(iv) instructs the Court to consider the resources that counsel will commit to representing the class. The BMV Group has the resources necessary to prosecute and finance a case of this magnitude, as demonstrated by successfully prosecuting other data breach cases involving much larger proposed classes. The Group's law firms are responsible for achieving some of the largest class action recoveries in some of the most complex, document-intensive, and high-profile data breach class actions. Practically speaking, that past success ensures that the Group will have access to sufficient resources to achieve a favorable result for the class. At the same time, all counsel are cognizant of the need to control costs, having diligently done so in the other complex litigation they have led.

The BMV Group is hesitant to speculate regarding how much time it could take to pursue this case to completion. There may be motion practice and appeals regarding arbitration, defenses raised under Fed. R. Civ. P. 12, discovery disputes, class certification, expert witness testimony, and summary judgment. There may be extensive discovery related to these issues. All this might take years before the case is ready for trial. However, the BMV Group has a track record of pushing similar cases diligently, often with positive resolutions relatively early in the case. For example, members of

the BMV Group helped achieve a class settlement in the *Equifax* MDL shortly after the commencement of discovery. The *T-Mobile* MDL was also resolved relatively quickly. By contrast, *Capital One* was defended primarily by King & Spalding in the Eastern District of Virginia, often known as the "rocket docket." There, intensive pretrial litigation—from motions to dismiss, fact discovery, expert disclosure and discovery, *Daubert* and class certification briefing and argument, summary judgment briefing and argument, and a legal question certified to, but not accepted by, the Virginia Supreme Court—spanned approximately 19 months. The BMV group has the experience and resources to handle any procedural scenario presented in this case, up through a jury trial and appeals.

**V.        *Other Factors Support the BMV Group*.**

The Court has also requested information regarding conflicts of interest. The BMV Group does not presently foresee conflicts between its Group and TitleMax, or fundamental conflicts among members of the putative plaintiff class. In discharging its duties of adequate representation pursuant to Fed. R. Civ. P. 23(a)(4), the BMV Group would diligently seek to protect against any conflicts that may arise.

Additionally, the BMV Group already has a proven history of successfully working together in other data breach cases both in Georgia and across the country. Together, the firms have achieved significant successes on behalf of consumers in a wide range of consumer class actions, including *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 2522 (D. Minn.); *In re The Home Depot, Inc. Consumer Data Sec. Data Breach Litig.*, No. 1:14-md-02583-TWT (N.D. Ga.); *In re Arby's Restaurant Group, Inc. Data Sec. Litig.*, Nos. 1:17-cv-514 and 1:17-cv-1035 (N.D. Ga.); *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 1:17-md-2800-TWT (N.D. Ga.). This track record weighs heavily in favor of appointing the group, in its entirety, to lead this litigation. *See generally* Duke Standards, Best Practice 4C(iii), at 53 ("The [presiding] judge may take into account whether counsel applying for leadership roles have worked together in other cases, their ability to collaborate

in the past divide work, avoid duplication, and manage costs."); *see* Manual § 10.22 (citing attorneys'
ability to "work cooperatively with opposing counsel and the court").

The BMV Group also has a good working relationship with the lawyers at Alston & Bird, who
are defending TitleMax. Lawyers in the BMV Group have litigated against Alston & Bird attorneys
in significant matters, including, *e.g.*, *T-Mobile* and *Jackson v. Wendy's International, LLC*, No. 6:16-
cv-210-PGB (M.D. Fla.). Further, proposed co-liaison counsel Mr. Wallace is a former partner at
Alston & Bird, having specifically practiced for many years with TitleMax's counsel of record.[2] These
relationships further support the selection of the BMV Group slate in its entirety. *See generally* Duke
Standards, Best Practice 4C(i), at 43 ("The [presiding] judge should be mindful of the importance of
harmony among the leadership team, and the leadership team and both the court and opposing
counsel.").

<u>**CONCLUSION**</u>

For the reasons set forth above, the BMV Group respectively requests that the Court appoint
them as Interim Class Counsel. A proposed order is attached as **Exhibit 1**.

Respectfully submitted, this 15th day of August, 2023.

| | | |
|---|---|---|
| */s/ Roy E. Barnes* | */s/ Barrett J. Vahle* | */s/ Jean S. Martin* |
| Roy E. Barnes**, Georgia Bar No. 039000 | Norman E. Siegel* | Jean S. Martin*,** |
| John R. Bevis, Georgia Bar No. 056110 | Barrett J. Vahle*,** | John A. Yanchunis * |
| J. Cameron Tribble, Georgia Bar No. 754759 | Tanner J. Edwards* | **MORGAN & MORGAN COMPLEX BUSINESS GROUP** |
| **BARNES LAW GROUP, LLC** | Brandi S. Spates* | 201 N. Franklin Street, 7th Floor |
| 31 Atlanta Street | **STUEVE SIEGEL HANSON LLP** | Tampa, FL 33602 |
| Marietta, GA 30060 | 460 Nichols Road, Suite 200 | Telephone: (813) 559-4908 |
| Telephone:  770-227-7375 | Kansas City, Missouri 64112 | E-Mail: jeanmartin@forthepeople.com |
| E-Mail: | Telephone: (816) 714-7100 | E-Mail: jyanchunis@forthepeople.com |
| roy@barneslawgroup.com | E-Mail: siegel@stuevesiegel.com | *Admitted Pro Hac Vice* |
| | E-Mail: vahle@stuevesiegel.com | ** *Proposed Co-Lead Counsel for Plaintiff* |
| | E-Mail: tanner@stuevesiegel.com | |
| | E-Mail: spates@stuevesiegel.com | |

---

[2] There are no conflicts arising out of Mr. Wallace's time at Alston & Bird, as he has never represented
TitleMax, has never done any work on TitleMax's behalf, never gained any information about TitleMax while
working at Alston & Bird, and in fact, is unaware of Alston & Bird representing TitleMax during his tenure
there.

| | | |
|---|---|---|
| E-Mail: bevis@barneslawgroup.com E-Mail: ctribble@barneslawgroup.com **\*\* Proposed Co-Lead Counsel for Plaintiff** | *\*Admitted Pro Hac Vice* **\*\*Proposed Co-Lead Counsel for Plaintiff** | |
| */s/ Mark D. Johnson* Mark D. Johnson, Georgia Bar No. 395041 **GILBERT HARRELL SUMERFORD & MARTIN, P.C.** 777 Gloucester Street, Suite 200 Brunswick, GA 31520 Telephone: (912) 265-6700 E-Mail: mjohnson@ghsmlaw.com **\*\*Proposed Plaintiffs' Co-Liaison Counsel** | */s/ Kyle G.A. Wallace* Jeff P. Shiver, Georgia Bar No. 001303 Kyle G. A. Wallace\*\*, Georgia Bar No. 734167 **SHIVER HAMILTON CAMBELL, LLC** 3490 Piedmont Road, Suite 640 Atlanta, GA 30305 Telephone: (404) 593-0020 E-Mail: jeff@shiverhamilton.com E-Mail: kwallace@shiverhamilton.com **\*\*Proposed Plaintiffs' Co-Liaison Counsel** | */s/ Stephen R. Basser* Stephen R. Basser\*,\*\* Samuel R. Ward\* **BARRACK, RODOS & BACINE** 600 West Broadway, Suite 900 San Diego, CA 92101 Telephone: (619) 230-0800 Facsimile: (619) 230-1874 E-Mail: sbasser@barrack.com E-Mail: sward@barrack.com *\*Admitted Pro Hac Vice* **\*\*Proposed Plaintiffs' Steering Committee** |
| */s/ Lori G. Feldman* Lori G. Feldman\*,\*\* **GEORGE FELDMAN MCDONALD, PLLC** 102 Half Moon Bay Drive Croton-on-Hudson, New York 10520 Telephone: (917) 983-9321 E-Mail: lfeldman@4-Justice.com E-Mail: eservice@4-Justice.com *\*Admitted Pro Hac Vice* **\*\*Proposed Plaintiffs' Steering Committee** | */s/ John C. Herman* John C. Herman\*\*, Georgia Bar No. 348370 Candace N. Smith, Georgia Bar No. 654910 **HERMAN JONES LLP** 3424 Peachtree Road, NE, Suite 1650 Atlanta, GA 30326 Telephone: (404) 504-6500 E-Mail: jherman@hermanjones.com E-Mail: csmith@hermanjones.com **\*\*Proposed Plaintiffs' Steering Committee** | */s/ Adam E. Polk* Adam E. Polk\*,\*\* Jordan Elias\* Simon Grille\* **GIRARD SHARP LLP** 601 California Street, Suite 1400 San Francisco, CA 94108 Telephone: (415) 981-4800 E-Mail: apolk@girardsharp.com E-Mail: jelias@girardsharp.com E-Mail: sgrille@girardsharp.com *\*Admitted Pro Hac Vice* **\*\*Proposed Plaintiffs' Steering Committee** |

## CERTIFICATE OF SERVICE

I, Roy E. Barnes, hereby certify that a copy of the foregoing was filed using this Court's

CM/ECF service, which will send notification of such filing to all counsel of record.

Dated: August 15, 2023                  Respectfully submitted,

**_/s/ Roy E. Barnes_**
Roy E. Barnes, Georgia Bar No. 039000

**BARNES LAW GROUP, LLC**
E-Mail: roy@barneslawgroup.com