**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| SAVANNAH KOLSTEDT, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>TMX FINANCE CORPORATE SERVICES, INC., and TMX FINANCE LLC d/b/a "TITLEMAX", "TITLEBUCKS", and "INSTALOAN",<br><br>     Defendants. | Case No. 4:23-cv-00076-RSB-CLR |

<u>**MOTION TO APPOINT INTERIM CLASS COUNSEL**</u>

A successful leadership team derives from a diverse group of collaborative individuals, trusting each other to pursue a common goal. For this case, such a team should involve an appropriate balance of counsel who have dedicated their craft to learning the nuances of data privacy complex litigation, as well as those who bring local knowledge and a fresh breath of creativity and modern thinking, combined into a structure which is inclusive without being overly-bloated. For the reasons set forth herein, Plaintiffs in nine of earliest-filed of the twenty-three consolidated cases[1] propose just such a leadership structure[2] for this litigation, as follows:

---

[1]    *Ross v. TMX Finance Corp. Serv.'s, Inc., et al*, No. 23-cv-78; *Domino v. TMX Finance Corp. Serv.'s, Inc.*, No. 23-cv-80; *Ritter v. TMX Finance Corp. Serv.'s, Inc., et al*, No. 23-cv-84; *Oltean v. TMX Finance Corp. Serv.'s, Inc.*, No. 23-cv-85; *Eslinger v. TMX Finance LLC, et al*, No. 23-cv-89; *Millner v. TMX Finance Corp. Serv.'s, Inc.*, No. 23-cv-98; *Jackson v. TMX Finance, LLC, et al*, No. 23-cv-99; and *Mahone v. TMX Finance Corp. Serv.'s, Inc., et al*, No. 23-cv-102.

[2]    The Proposed Team has identified no conflicts of interest.

1. Co-Lead Counsel:

    a. Kelly Iverson, Lynch Carpenter, LLP

    b. MaryBeth Gibson, The Finley Firm, P.C.

    c. Amy Keller, DiCello Levitt LLP

2. Chair of Plaintiffs' Steering Committee: Rebecca Franklin Harris, Franklin Law, LLC

3. Plaintiffs' Steering Committee:

    a. Brian Gudmundson, Zimmerman Reed LLP

    b. James Pizzirusso, Hausfeld LLP

    c. Carl Malmstrom, Wolf Haldenstein Adler Freeman & Herz LLP

    d. Terry Coates, Markovits, Stock & DeMarco, LLC

    e. William B. Federman, Federman & Sherwood

4. Liaison Counsel

    a. Thomas Withers, Withers Law Firm

These attorneys, referred to as the "Proposed Team" throughout this brief, collectively provide decades of data breach experience, with the added benefit of two Savannah-based attorneys and one Atlanta-based attorney. As this Court has noted, geographic consideration is important in that it provides the Proposed Team with the requisite knowledge of the local rules, practices, and governing law within this Circuit, as well as familiarity with Defendants "TMX", who are located in this District. The Proposed Team satisfies the factors present in Rule 23(g), and respectfully submit their application for appointment in this action.

## I.    PROPOSED LEADERSHIP STRUCTURE

Given the size of the data breach incident that gave rise to the wave of litigation consolidated before this Court, the Proposed Team respectfully suggests that a three-person Co-

Lead, Chair of Plaintiffs' Steering Committee (or "PSC"), five-person PSC, and Liaison Counsel, where each member has clearly-defined roles, will effectively and efficiently represent the best interests of the class. This type of leadership structure has been adopted by other Georgia district courts for similar data breach litigation. *See In re Equifax, Inc. Customer Data Sec. Breach Litig.*, MDL 2800 (N.D. Ga.) (ECF No. 678) (then Chief Judge Thrash appointed three Co-Lead Counsel, two Co-Liaison Counsel, and a seven member PSC); *Baker v. ParkMobile, LLC*, No. 21-cv-2182 (N.D. Ga.) (ECF No. 60) (Judge Jones appointed two Co-Lead counsel and an eight member PSC); and *In re Paragard IUD Prod. Liab. Litig.*, No. 1:20-MD-02974-LMM, 2021 WL 2585609, at *1 (N.D. Ga. Feb. 18, 2021) (Judge May appointed two Co-Lead Counsel, Liaison Counsel, a seventeen member PSC, and five member Plaintiffs' Executive Committee); *Miller v. NextGen Healthcare, Inc.*, No. 1:23-cv-02043-TWT (N.D. Ga.) (ECF No. 20) (unopposed leadership motion proposing three Co-Lead Counsel and five member PSC comprised of counsel from competing slates in this litigation).

The Proposed Team has the skillset and ability to litigate this action, and no attorneys have any conflicts of interest that would feather their capacity to do so. As this case involves approximately five million individuals impacted by the data breach—and will certainly involve a broad swath of discovery that includes third-party discovery, depositions, and unique legal issues that will arise given defenses, class issues, and data breach jurisprudence—each member of the Proposed Team will have specific tasks and responsibilities and will be able to draw upon other experienced attorneys at their firms, as necessary, to keep the litigation moving forward. At the same time, each member of the Proposed Team will provide opportunities to younger members of their firms to perform research, assist with preparation for hearings, and participate in the discovery process to ensure that the Proposed Team's work is managed in an efficient way, maximizing

benefit to the class. Keeping in mind the need to avoid duplication, this will allow for younger and diverse attorneys to gain experience and provide meaningful insight from a different perspective. As the Duke Guidelines[3] noted, there is a substantial benefit in increasing opportunities for appropriately-qualified diverse and younger attorneys in large consolidated class litigation, as it "will improve the likelihood of consideration of diverse ideas and perspectives."

In order to maintain efficiency, the Proposed Team will enforce the use of proven methodologies from prior cases to monitor billing, control costs, review assignments, and streamline the case. All attorneys would be required to maintain contemporaneous timekeeping records recorded in one-tenth of an hour and report detailed monthly timekeeping records for review by Co-Lead Counsel. All block-billing will be prohibited and the Proposed Team will appropriately staff this action and communicate effectively to ensure that multiple attorneys are not performing duplicative or unnecessary work.

Each member of the Proposed Team has litigated similar complex data breaches and anticipates that this action may involve multiple years of litigation prior to resolution or final disposition. As explained below, all attorneys that make up the Proposed Team have the experience to manage such a litigation, and have committed, and will commit, the necessary time and resources to move the case forward, as long as it takes, to get the best result for Plaintiffs and the putative class.

One of the hallmarks of success in any complex litigation is the ability to work cooperatively and efficiently with other counsel, in an environment of trust. The Proposed Team's attorneys have a proven record of previous collaborations with each other as well as other

---

[3]    Bolch Judicial Institute, Duke Law School, Guidelines and Best Practices for Large and MassTort MDLs, at 45 (2d ed., Sept. 2018) ("Duke Guidelines"), *available at* https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1004&context=bolch.

plaintiffs' counsel, and expect the same professional cooperation here. Further, the Proposed Team takes pride in its ability to work cooperatively with defense counsel, including attorneys at Alston & Bird who represent Defendant here, to work towards the just, speedy, and inexpensive determinations of actions. Each of the Proposed Team's attorneys has a unique skillset that will advance the prosecution of this litigation, and the Proposed Team looks forward to the opportunity to do so here.

Finally, the Proposed Team has a well-developed repertoire of consultants and experts who have deep experience in a case of this type and have successfully performed work on complex litigation through resolution. The Proposed Team will draw upon these consultants and experts, including those who have already been retained, to put forward the best legal strategy possible for the class.

## II.    THE PROPOSED TEAM'S EXPERIENCE WITH DATA PRIVACY[4]

### A.    Proposed Interim Co-Lead Counsel

Proposed Interim Co-Lead Counsel have litigated cases across the country against defendants of varying sizes. They have routinely served in leadership roles in which cases have been resolved only after in-depth discovery and extensive motion practice, including through class certification. Additionally, Ms. Iverson, Ms. Gibson, and Ms. Keller have participated in the development and application of novel theories applicable to resolution and settlement related to data breach cases. Through their combined decades of experience, Proposed Interim Co-Lead Counsel will ensure that the case is staffed efficiently, resources are dedicated appropriately, and the best case is presented to the Court on behalf of the class.

---

[4]    Resumes for each of the attorneys proposed for a leadership position are attached hereto as **Exhibits A-I**.

### *Kelly Iverson, Lynch Carpenter, LLP*

Kelly Iverson is a partner at Lynch Carpenter and serves as Co-Chair of both the firm's Executive Management and Recruiting Committees. Kelly has been appointed to leadership positions in some of the most complex consumer product liability and data breach cases in the past three years. For example, Kelly was appointed by the Honorable Joy Flowers Conti to serve as Co-Lead Counsel for a team of "highly skilled counsel with diverse backgrounds" in *In re Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Products Litigation* (W.D. Pa.), which the Court stated is "expected to be expansive and present complex issues of fact, science, and law." She was appointed by the Honorable J. Michelle Childs to the Plaintiffs' Steering Committee in *In re Blackbaud, Inc. Customer Data Security Breach Litig.* (D.S.C.), where she works with Amy Keller as an invaluable member of the PSC, deposing experts and developing litigation strategy in a highly-complex data breach class action. Ms. Iverson also serves or served as appointed leadership in *In re Erie Covid-19 Business Interruption Protection Ins. Litig.* (W.D. Pa.) (Co-Lead Counsel); *In re Samsung Customer Data Security Breach Litig.* (D.N.J.) (Plaintiffs' Chair of Liability Experts Committee); *Norfolk Southern Railway Company, Consolidated Train Derailment Litig.* (N.D. Ohio) (Plaintiffs' Steering Committee); *In re Solara Medical Supplies Data Breach Litig.* (S.D. Cal.) (Plaintiffs' Steering Committee).

Ms. Iverson has also litigated cases that generated seminal legal authority in appellate courts. *See, e.g.*, *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121 (3d Cir. 2022) (holding the use of session replay software on websites constitutes an interception under Pennsylvania's wiretap statute); *Van v. LLR, Inc.*, 92 F.3d 1160 (9th Cir. 2020) (finding that customer satisfied Article III standing based on temporary loss of use of her money); *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018) (holding the economic loss doctrine did not apply to negligence claim in data breach class

action). Ms. Iverson is a member of the Sedona Conference Working Group 11 on Data Security and Privacy Liability drafting team revising the Commentary on Application of Attorney-Client Privilege and Work-Product Protection to Documents and Communications Generated in the Cybersecurity Context, and she was a co-author of the class action primer, *Class Actions: The Law of 50 States* (Law Journal Press), Releases 49-51, in which she addressed topics such as attorneys' fees, typicality, adequacy, limited "issue" classes, and representative plaintiff service awards.

Additionally, Ms. Iverson will have the ability to draw from attorneys in her firm that are well-versed in data privacy matters. Lynch Carpenter has obtained co-lead counsel appointments in many of the largest and most well-known data privacy cases: *In re Wawa, Inc. Data Security Litig.*, 2:19-cv-6019 (E.D. Pa.) (representing payment card issuers as co-lead counsel; preliminary approval pending of settlement providing up to $37.5 million in monetary relief); *In re Home Depot Customer Data Sec. Breach Litig.*, MDL 2583 (N.D. Ga.) (financial institution track; final approval of class settlement of $27 million); *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, MDL 2800 (N.D. Ga.) (financial institution track; final approval of class settlement of $7.75 million plus injunctive relief); *First Choice Federal Credit Union v. The Wendy's Company et al*, 2:16-cv-0506, (W.D. Pa.) (financial institution track; final approval of class settlement of $50 million); and *In re TikTok, Inc., Consumer Privacy Litig.*, MDL 2948 (N.D. Ill.) (co-lead counsel; final approval of class settlement providing $92 million in monetary relief for the class), as well as court-appointed leadership roles in numerous other major privacy and data breach cases: *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL 2522 (D. Minn.) (appointed to the Executive Committee managing the litigation on behalf of all plaintiffs (consumers, financial institution, and shareholders). The case was ultimately settled for $10 million (for consumers) and $39 million (for financial institutions)); *Dittman v. UPMC*, No. GD-14-003285 (Pa. Ct. Com. Pl.) (multimillion

dollar settlement reached and approved after remand from the Pennsylvania Supreme Court); *In re Vizio, Inc. Consumer Privacy Litig.*, MDL 2693 (C.D. Cal.) (consumer privacy breach, steering committee; $17 million settlement); and *In re: Ashley Madison Customer Data Sec. Breach Litig.*, 15-md-02669 (E.D. Mo.) (consumer data breach, executive committee; $11.2 million settlement).

### *MaryBeth V. Gibson, The Finley Firm, P.C. (Atlanta, GA):*

MaryBeth Gibson is a Partner in The Finley Firm's Atlanta Office where she leads the Data Privacy Practice. She has practiced law in Georgia for over thirty years. Ms. Gibson specializes in class actions involving complex civil litigation, including data privacy litigation, data breach and misuse, consumer fraud, and business torts. Ms. Gibson has been appointed to leadership positions in a number of data breaches in various industries, including health care, financial and retail. Notably, Ms. Gibson serves with Ms. Keller on PSC in *In re Marriott International Customer Data Breach Security Litigation,* where the Court certified Rule 23(b)(3) damages classes and Rule 23(c)(4) issues classes. Ms. Gibson has extensive experience litigating data breach cases in the Northern District of Georgia and has been involved personally with the development of data privacy law in this jurisdiction with respect to pleading and briefing standing, concrete harm and damages. Working collaboratively with her proposed co-leads and PSC, her experience in this specific jurisdiction will aid in streamlining the litigation with respect to unique legal issues and discovery matters. Ms. Gibson also has worked collegially with defense counsel in prior data breaches, which will prove to be beneficial in this matter.

Ms. Gibson has been appointed to leadership positions in several large notable data breach matters. For example, in *Kleeberg v. St. Joseph's/Candler Health System, Inc.,* No. STCV21-01638, she was appointed Interim Co-Lead Class Counsel by Honorable Elizabeth Coolidge. In *Sherwood v. Horizon Actuarial Services, LLC*, No. 22-01495, she was appointed Interim Co-Lead

of Consumer Plaintiffs' Steering Committee by Judge Eleanor L. Ross of the Northern District of Georgia. Counsel in that case have since reached a settlement in principle. In *Baker v. ParkMobile, LLC*, No. 21-cv-02182, she was appointed Interim Co-Lead of Consumer Plaintiffs' Steering Committee by United States District Judge Steve C. Jones of the Northern District of Georgia. In *Tracy v. Elekta, Inc.*, No. 21-cv-02851, she was appointed Interim Liaison Counsel for Plaintiffs by United States District Judge Steven D. Grimberg of the Northern District of Georgia. Additionally, in the above-mentioned *Marriott Data Breach* case, she was individually appointed by Judge Paul W. Grimm (ret.) of the District of Maryland to the Plaintiffs' Steering Committee for the Consumer Track (where Ms. Gibson serves on the Deposition Committee, Third-Party Discovery Committee, Chair of the Fact Development Committee and most recently, the Appellate Committee). In the nationwide *In re Equifax, Inc., Customer Data Security Breach Litigation*, MDL No. 2800, she was appointed by United States District Judge Thomas W. Thrash of the Northern District of Georgia as Co-Liaison Counsel representing Financial Institution Plaintiffs and the Third-Party Discovery Committee. In *In re The Home Depot, Inc., Customer Data Security Breach Litigation*, MDL No. 2583, co-lead counsel moved to appoint Ms. Gibson to the PSC in recognition of the high-quality work and effort she contributed during the pendency of the proceeding a year after the court's initial appointment order. Judge Thomas W. Thrash of the Northern District of Georgia appointed Ms. Gibson to the Plaintiffs' Steering Committee representing Financial Institutions by Order dated February 17, 2015. Ms. Gibson also served as Co-Chair of the Third-Party Discovery Committee.

Ms. Gibson is routinely retained to act as Special Counsel to law firms throughout the United States to assist in complex civil litigation and provide trusted advice on complex discovery matters involving ESI, records retention, preservation strategies and compliance with legal

process. She serves as Chair for the Consumer Privacy/Data Breach Litigation Group for the American Association for Justice and serves as Co-Chair of the Georgia State Bar e-Discovery and Use of Technology Section. Ms. Gibson contributes as a member of the Sedona Conference Working Group 1, where she serves on drafting teams for Electronic Document Retention and Production, Rule 34 Specificity of Requests, and Privilege Logs. As a member of Working Group 11 on Data Security and Privacy, she serves on brainstorming groups for Liability on Data Security and Privacy in Healthcare and Exploring Greater Efficiencies in Data Breach and Privacy Class Action Litigation. In addition to her experience with legal issues routinely raised by defendants in data breach cases, Ms. Gibson has a deep understanding of and experience with evolving electronic and digital discovery, including that which is unique to data breach litigation. She is well versed in the applicable rules and the various available methods of search, production format, and discovery prioritization, recognizing that each litigation requires dialogue with counsel for the defendants and third parties to ensure that the best solutions are applied uniquely and efficiently to each case.

### *Amy Keller, DiCello Levitt LLP*

As Managing Partner of DiCello Levitt LLP's Chicago office, where she also chairs the firm's Privacy, Cybersecurity, and Technology litigation practice, Ms. Keller primarily focuses her practice on data breach litigation and consumer protection. Recognized as one of the "new faces leading MDLs,"[5] she has a significant amount of experience leading consumer and technology cases.

---

[5]     Amanda Bronstad, These are the new faces leading MDLs. And they aren't all men, Law.com (July 6, 2020), https://www.law.com/2020/07/06/there-are-new-faces-leading-mdls-and-they-arent-all-men/.

Ms. Keller began practicing law in 2008, dedicating her work to consumer protection issues. Since founding DiCello Levitt's technology practice group, she has been appointed to lead five, separate data breach MDLs. In 2018, she was appointed by Chief Judge Thomas Thrash of the United States District Court for the Northern District of Georgia to serve as co-lead counsel in the a nationwide data breach case, where, as the youngest woman ever appointed to lead a nationwide class action, she helped to secure the largest data breach settlement in history— resulting in as much as $505.5 million in cash relief and $1 billion in required security upgrades by the company. *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 17-md-02800, ECF No. 739-1 (N.D. Ga.). In 2019, she was appointed co-lead counsel in two other data breach cases, *In re Marriott International, Inc. Customer Data Sec. Breach Litig.*, No. 19-md-02879-PWG (D. Md.), where she recently presented oral argument before the Fourth Circuit Court of Appeals defending the district court's order granting class certification, and *In re American Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-md-02904 (MCA)(MAH) (D.N.J.), where she recently worked to secure a $6.5 million settlement against one defendant on behalf of consumers who received treatment from a medical provider.

She is presently leading the *In re LastPass Data Security Incident Litigation*, No. 22-cv-12047-PBS (D. Mass.), where her co-counsel have also been appointed to the Plaintiffs' Executive Committee. And she helped her team achieve significant victories—defeating three, separate motions to dismiss—after being appointed by Judge J. Michelle Childs of the United States District Court for the District of South Carolina (prior to her elevation to the United States Court of Appeals for the District of Columbia) in a data breach case against Blackbaud, a service provider and cloud-storage company for thousands of not-for-profit entities, schools, and hospitals across the country. *In re Blackbaud, Inc. Customer Data Security Breach Litig.*, No. 20-mn-02972 (D.S.C.). The team,

which was formed with the goal of providing opportunities to MDL newcomers, women, and people of color, was heralded as the "most diverse leadership team ever."[6] Ms. Keller approaches her practice the same way, ensuring that work in her cases is distributed to colleagues in an equitable way so that those who have less MDL experience can learn and be an active part of the litigation.  In 2022, Ms. Keller was named one of *Crain's* "40 Under 40" for her work promoting and advancing diversity in the practice of law.[7]

Chambers and Partners ranks the leading lawyers and law firms across the world. In 2023, Chambers and Partners ranked Ms. Keller (for a second year in a row) as one of only sixteen attorneys (and one of only three plaintiff's attorneys) in the country in "Privacy and Data Security: Litigation." As a result of her and her team's hard work, Ms. Keller's firm's technology practice group has been recognized as Practice Group of the Year by *Law360* an unprecedented three years in a row (in 2020, 2021, and 2022), and by the *National Law Journal* in 2020 and 2022. Individually, Ms. Keller has been highlighted by Lawdragon in 2023 as one of its "500 Leading Plaintiff Consumer Lawyers" and as a 2023 "Litigation Star" in the Plaintiff Class Action section by Benchmark Litigation. Ms. Keller was elected to the American Law Institute in 2020, the leading independent organization in the United States producing scholarly work to clarify, modernize, and otherwise improve the law, and she was also selected that same year to the Steering Committee of the Sedona Conference's Working Group 11, focusing on issues of cybersecurity and privacy. In 2022, at age 39, Ms. Keller was invited by the Federal Judicial Center as one of

---

[6]    Amanda Bronstad, MDL Judge Taps 'Most Diverse Leadership Team Ever' in Data Breach Class Action, Law.com (Mar. 3, 2021), https://www.law.com/nationallawjournal/2021/03/03/south-carolina-mdl-judge-taps-most-diverse-leadership-team-ever-in-data-breach-class-action/.

[7]    Amy Keller, Crain's 40 Under Forty, Class of 2022, https://www.chicagobusiness.com/40-under-40/40-under-40-amy-keller.

only three plaintiffs' lawyers to speak with judges, professors, and defense counsel concerning necessary updates to *The Manual for Complex Litigation (Fourth)*, where she discussed her experience litigating MDL cases and proposed changes to the *Manual*.

Ms. Keller will also have assistance from the significant resources of her firm, which has offices across the county in six different cities, plus a dedicated in-house focus group and mock jury practice, which was employed by her firm prior to winning an historic $102.6 million verdict in a class action trial late last year.[8] Without the need to hire outside jury consultants, Ms. Keller's firm can save the class significant resources in any recovery. Finally, with a dedicated Privacy, Technology, and Cybersecurity practice group, the Proposed Team can draw on the resources of Ms. Keller's firm, which created the precedent on the valuation of consumer data in privacy litigation. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020).

### B.    Proposed Chair of Plaintiffs' Steering Committee

### *Rebecca Harris, Franklin Law, LLC*

Rebecca Franklin Harris is a trial lawyer specializing in complex, high-exposure cases. She has litigated cases against some of the world's largest corporations including major automotive manufactures, tire manufactures, aviation companies and commercial air carriers, pharmaceutical manufactures, pharmaceutical distributors, national railway corporations, and media production companies.

Mrs. Harris has significant experience in preparing a large case for trial. This expertise includes everything from understanding the nuances of e-discovery, complex expert preparation, working with opposing counsel to minimize unnecessary court involvement, and preparing

---

[8]    General Motors Hit With $102.6 Million Jury Verdict in Class Action Over Defective Engines (Oct. 4, 2022), https://www.businesswire.com/news/home/20221004006189/en/General-Motors-Hit-With-102.6-Million-Jury-Verdict-in-Class-Action-Over-Defective-Engines.

sophisticated legal briefing. The vast majority of her cases have allowed her to work alongside accomplished law firms, including other law firms representing Parties in this case. In doing so, she has developed the skills not only to conduct the day-to-day activities required in ongoing cases herself, but also to oversee and manage teams in all aspects of litigation and trial.

Mrs. Harris resides in Chatham County. Her diverse experiences and leadership skills, combined with her understanding of the local rules and this Court's expectations for this litigation, will allow her to successfully chair the group of experienced lawyers proposed for the Plaintiffs' Steering Committee as well as work cooperatively with Defense counsel as this case proceeds through discovery, motions, settlement negotiations, and trial.

As Chair of the PSC, Mrs. Harris will use her considerable experience litigating cases in this District to assist Co-Lead Counsel in staffing considerations, distribution of work, and ensuring compliance with all Court orders.

### C.    Proposed Plaintiffs' Steering Committee

A small PSC in this case will allow Interim Co-Lead Counsel to effectuate a proactive litigation strategy, ensuring that each PSC member is charged with specific knowledge of the case and litigation tasks. Ensuring that PSC members have specific roles will not only eliminate duplication, but it will also ensure that tasks are completed, and each PSC member has "ownership" of the case.

In order to assign and monitor work and in an effort to avoid duplication of efforts of Plaintiffs' counsel, if selected, Ms. Iverson, Ms. Gibson, and Ms. Keller will oversee a committee structure staffed and chaired by members of the PSC, and will coordinate litigation strategy, direct and review work to ensure that it is consistent with the overall litigation strategy, and establish a protocol to ensure that work product is shared in an efficient manner. Based upon their expertise,

Proposed Interim Co-Lead Counsel submit that "teams" within the PSC, staffed and chaired by members of the PSC, are the most efficient way to litigate data breach cases, and avoid "litigation by jump ball" and siloing. To that end, teams established for Law and Briefing, Offensive Discovery, Defensive Discovery, Third-Party Discovery, Fact Development, and Experts will ensure that the case proceeds quickly and efficiently.

### *Brian Gudmundson, Zimmerman Reed LLP*

Brian Gudmundson has led and litigated numerous data breach actions on behalf of both consumers and financial institutions. Mr. Gudmundson's firm, Zimmerman Reed, served as lead counsel in the groundbreaking *Target Data Breach* action on behalf of financial institutions, and he co-led the *Sonic Data Breach* action, both of which resulted in certification of plaintiff classes and ultimate settlements. Mr. Gudmundson has also led and served in leadership roles in numerous other data breach actions, in which the plaintiffs litigated the merits extensively and ultimately obtained favorable settlements for the plaintiff classes. Due to his extensive work on data breach cases, and knowledge regarding the types of discovery necessary to achieve class certification, Mr. Gudmundson will lead Offensive Discovery efforts, including negotiation of various protocols on discovery and electronically-stored information, protective orders, and the development of evidence necessary to prove the case through documents and deposition testimony.

### *James Pizzirusso, Hausfeld LLP*

James Pizzirusso is chair of Hausfeld's Data Breach and Consumer Protection practice groups, and a nationally-renowned data breach and cybersecurity lawyer. In 2023, Chambers and Partners ranked Mr. Pizzirusso (for the third year in a row) as one of only sixteen attorneys (and one of only three plaintiff attorneys) in the country in "Privacy and Data Security: Litigation" and

his firm was the only Plaintiffs' firm in the country to receive a Band 1 ranking in the category of Privacy & Data Security: Litigation, Nationwide (for the second year in a row). *Law360* also recognized Hausfeld as "2021 Practice Group of the Year" in Cybersecurity & Privacy. Additionally, in 2021, Mr. Pizzirusso was personally named as one of *Law360*'s "Cybersecurity & Privacy MVPs" (the only plaintiffs' attorney to receive that distinction). In 2020, the *National Law Journal* recognized Mr. Pizzirusso as a "Washington Trailblazer" for his role in data breach and privacy matters. Numerous federal courts have appointed Mr. Pizzirusso to leadership positions in data breach and other class cases. In the Northern District of Georgia, this Court previously entrusted Mr. Pizzirusso with leadership positions in the aforementioned *Equifax Data Breach* case (on both Plaintiffs' Steering Committee and Settlement Committee) as well as the previously-mentioned *Home Depot Data Breach* case (Chair of the Financial Institution PSC). Judge Totenberg appointed Mr. Pizzirusso as a Co-Lead Counsel in *In re Arby's Rest. Group, Inc. Data Security Litig.*, No. 1:17-cv-514-AT (N.D. Ga.). Mr. Pizzirusso will head up the Team's Law and Briefing efforts, which will involve drafting the consolidated amended complaint with input from Discovery, Expert, and Fact Development Teams, research and briefing related to Defendants' anticipated motion to dismiss and briefing related to class certification.

### Carl Malmstrom, *Wolf Haldenstein Adler Freeman & Herz LLC*

Carl Malmstrom is Of Counsel to Wolf Haldenstein Adler Freeman & Herz LLC, where he heads the firm's Chicago office. He has been class counsel, co-lead counsel, or on the Plaintiff's Steering Committee for more than a dozen data breach cases, as well as having had substantial roles in more than a dozen more. He is also well-versed in handling plaintiffs' side discovery and case coordination, currently overseeing plaintiffs' issues and discovery among End Payor Plaintiffs in *In re Packaged Seafood Products Antitrust Litigation*, Case No. 3:15-md-2670 (S.D.

Cal.), a massive and long-running MDL with almost 70 named plaintiffs among the end-payor consumers. Mr. Malmstrom will contribute extensively to Fact Development and Experts, including authoring a White Paper explaining the breach, scope and extent of the breach, and what was compromised, which will be used throughout discovery and case management. He will liaise with the Discovery and Expert teams, as well as Law and Briefing, to create "master document" of supporting evidence to build the case against TMX. Further, he will work with Plaintiffs' experts to ensure that Plaintiffs' theory of liability is correct, and that appropriate damages proposals are presented to the Court.

### *William Federman, Federman & Sherwood*

Over his 42-year legal career, William B. Federman, founder and managing partner of Federman & Sherwood, has exemplified professionalism, skill, and dedication in his law practice. Mr. Federman has been appointed as lead counsel, co-lead counsel, and as a member of the steering committee in dozens of complex data breach class actions across the nation, including the *Home Depot Data Breach* litigation; *In re: Brinker Data Incident Litig.*, No. 18-cv-00686-J-32MCR (M.D. Fla.), *In re Solara Medical Supplies Data Breach Litig.*, No. 19-cv-02284-H-KSC (S.D. Cal.), *In re: Sonic Corp. Customer Data Breach Litig.*, No. 17-md-02807-JSG (N.D. Ohio), and *In re: Mednax Services, Inc., Customer Data Security Breach*, No. 21-md-02994-RAR (S.D. Fla.). Mr. Federman excels in all aspects of discovery, including conducting depositions of Defendants, employees, and experts, as well as preparing and defending depositions for the plaintiffs. Mr. Federman's skillful discovery management coupled with his proven track record of success will serve plaintiffs and the proposed class well.

Mr. Federman will contribute extensively to Third-Party Discovery, including conducting interviews and researching other sources for facts helpful to prove Plaintiffs' case, identifying

individuals for interviews regarding the data breach, developing a protocol for interviews of former employees, if necessary, identifying third parties with potential responsive documents and drafting document preservation subpoenas, and drafting production subpoenas and reviewing third-party documents and responsive materials.

### *Terence Coates, Stock & DeMarco, LLC*

Terence Coates and the law firm Markovits, Stock & DeMarco, LLC have extensive experience litigating class action cases including certifying a Civil RICO class action earlier this year. *Compound Property Management LLC v. Build Realty, Inc.*, 343 F.R.D. 378 (S.D. Ohio 2023). Additionally, Mr. Coates has substantial experience serving as class counsel for plaintiffs and mediating favorable resolutions of data privacy class action including, *John v. Advocate Aurora Health, Inc.*, No. 22-CV-1253-JPS (E.D. Wis.) (co-lead class counsel for $12,225,000 data privacy settlement); *Tucker v. Marietta Area Health Care, Inc.*, No. 22-cv-00185 (S.D. Ohio) (class counsel for a $1.75 million data breach class action settlement); *Vansickle v. C.R. England*, No. 22-cv-00374 (D. Utah) (class counsel in data breach class action settlement in principle); *Migliaccio v. Parker Hannifin Corp.*, No. 22-CV-00835 (N.D. Ohio) (co-lead counsel for a $1.75 million data breach class action settlement); *Sherwood v. Horizon Actuarial Services, LLC*, No. 1:22-cv-1495 (N.D. Ga.) (court-appointed interim class counsel in a data breach class action settlement in principle); *Abrams v. Savannah College of Art & Design*, No. 22-CV-04297 (N.D. Ga.) (class counsel for preliminarily-approved data breach class action settlement); *Lutz v. Electromed, Inc.*, No. 21-cv-02198 (D. Minn.) (class counsel for an $825,000 data breach class action settlement). Given his extensive experience handling class action cases, Mr. Coates is well qualified to serve as a member of the Plaintiffs' Steering Committee in this matter.

Mr. Coates will lead the Team's Defensive Discovery efforts, including drafting preservation memoranda to supplement any previous correspondence sent out by retaining law firms, drafting intake form "questionnaires" to ensure that any consolidated complaint have the best representation by named Plaintiffs with standing to pursue claims, and coordinating and answering discovery, preparing Plaintiffs for their depositions, and assisting Law and Briefing with case strategy related to Plaintiffs' discovery.

### D.     Proposed Liaison Counsel

#### *Thomas Withers, Withers Law Firm*

Mr. Withers frequently appears before this Court capably handling complex litigation. In addition to his seasoned professionalism, Mr. Withers was appointed Liaison Counsel in the *In re Novastar Home Mortgage* MDL before then-Chief Judge Moore. He also participated in the *Equifax* and *Home Depot* data breach matters in the Northern District of Georgia. Mr. Withers is well-versed in the local rules of the Southern District of Georgia and the Court's specific instructions and forms. He has extensive experience in this District and is familiar with its nuances, practices and procedures. If appointed, Mr. Withers will routinely interact with Court personnel (as necessary) and work with Interim Co-Lead Counsel to develop a Time and Expense Protocol and Time and Expense Reporting charts, utilizing coding in charts for tasks.[9] He will aid in preliminary review of Time and Expense Reports and prepare explanation of work for Proposed Interim Co-Lead Counsel's review and sign-off. Mr. Withers will also prepare and send time and billing reports and summaries to Court for *in-camera* review.

---

[9]     As part of this Protocol, Proposed Interim Co-Lead Counsel suggest that time be recorded contemporaneously with the work performed, with detailed descriptions of the work (not block-billed), submitted to Interim Co-Lead Counsel on the 15th of each month for work performed the month prior. "Read and review" entries, while necessary to remain updated about the litigation, would be a non-billable duty for each member of the PSC.

Further, Mr. Withers will develop an internal website for PSC members to share work product, keeping security concerns in mind, and a secure listserv including all attorneys on the PSC to ensure transparency and communication keeping all members up to date on the litigation. Understanding that information and strategy must be kept confidential to the PSC, Mr. Withers would also create a second, secure listserv to include all PSC and non-lead law firms not serving on the PSC and firms not in leadership to issue routine updates on the status of litigation.

## III.    RULE 23(g) FACTORS

Federal Rule of Civil Procedure 23(g) provides that a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." *Daniels v. Delta Air Lines, Inc*., No. 1:20-CV-01664-ELR, 2020 WL 12948052, at *1 (N.D. Ga. Nov. 3, 2020) (quoting Fed. R. Civ. P. 23(g)(3)); *see also Bedont v. Horizon Actuarial Servs., LLC*, No. 1:22-CV-01565-ELR, 2022 WL 3702117, at *2 (N.D. Ga. May 12, 2022) (same). "[S]election of interim lead counsel facilitates 'efficiency and economy without jeopardizing fairness to the parties.'" *Delta Air Lines*, 2020 WL 12948052, at *1 (quoting *In re: Disposable Contact Lens Antitrust.*, No. 3:15-MD-2626-J-20JRK, 2015 WL 10818781, at *1 (M.D. Fla. Oct. 7, 2015) (citing Manual for Complex Litigation (Fourth) § 10.22 (2004) (the "Manual")). "The designation of interim class counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Delta Air Lines*, 2020 WL 12948052, at *1 (quoting *In re: Disposable Contact Lens*, 2015 WL 10818781, at *1 (citing Manual § 21.11)).

Factors relevant to the appointment of counsel include: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in

handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" *Delta Air Lines*, 2020 WL 12948052, at *1 (quoting Fed. R. Civ. P. 23(g)(1)(A)). "The Court's task is 'to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable.'" *Horizon*, 2022 WL 3702117, at *2 (citing Manual § 10.22).

### A.    The Proposed Team Has Thoroughly Investigated the Claims.

While no one factor under Federal Rule of Civil Procedure 23(g)(1) "should necessarily be determinative," Advisory Committee Notes (2003), the investigative and analytical efforts of counsel can be a deciding factor:

> In a case with a plaintiff class, the process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken. All other things being equal, when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks.

Moore's Federal Practice (Third) § 23.120(3)(a).

Here, the Proposed Team's thorough work in identifying and investigating the claims in this case demonstrates that they have and will continue to fairly and adequately represent the proposed Class. The Proposed Team has devoted substantial resources towards developing the claims that have been filed against TMX. For example, the Proposed Team has performed (and continue to perform) the following work on behalf of Plaintiffs and Class Members:

- Researched, investigated potential legal claims arising from Defendants' alleged failure to properly secure and safeguard personally identifiable information ("PII"), comply with industry standards to protect information systems that contain PII, and provide adequate notice when PII was allegedly unlawfully disclosed and compromised on behalf of each respective plaintiff and proposed class members;

- Reviewed and analyzed numerous news articles describing Defendants' challenged conduct and how the data breach occurred;

- Reviewed and analyzed Defendants' publicly-disclosed policies, practices, and procedures for obtaining, collecting, and storing PII;

- Researched Defendants' corporate structures;

- Researched Defendants' relationships with each other and with various, third-party entities;

- Reviewed and analyzed articles on the value of PII and the effects of its unauthorized disclosure;

- Reviewed and analyzed Federal Trade Commission's guidelines relating to the implementation of reasonable data security practices;

- Investigated the nature of the challenged conduct at issue by interviewing numerous individuals affected by the data breach;

- Reviewed and analyzed comments and statements by Defendants related to the challenged conduct at issue;

- Investigated the adequacy of the named Plaintiffs to represent the putative class;

- Drafted and filed complaints in this District after conducting thorough interviews of the Plaintiffs and investigating different theories regarding Article III standing related to their alleged harm;

- Retained leading experts to aid in analysis of breach and damages modeling;

- Interviewed additional experts retained in prior breach cases to discuss damages theories; and

- Communicated with one another regarding the most efficient manner to organize counsel.[10]

---

[10] Unfortunately, the meet and confer process in this case did not result in an agreement regarding appointment; however, each member of the Proposed Team has worked with other plaintiffs' counsel in this litigation in a number of other data breach cases and has enjoyed positive working relationships with each of them.

As evidenced from the firm resumes attached to this brief, the Proposed Team has the resources and experience necessary to successfully litigate this action. The Proposed Team is made up of attorneys from well-funded and well-staffed firms and have represented plaintiffs in some of the largest class actions in the country with history of successful results through innovative and novel approaches to this ever-evolving litigation. They are willing and able to commit to this litigation process regardless of its length or complexity. As explained in more detail above, they have a proven track record of devoting time and financial resources to the full prosecution of similar types of actions, and they are prepared to do so in this case as well.

Because the Proposed Team performed important work that has already inured to the benefit of the proposed class, and because they are prepared to commit substantial resources to this case, the first factor of the Rule 23(g) analysis weighs heavily in favor of their appointment.

### B. The Proposed Team's attorneys are experienced in litigating complex cases, including data privacy litigation, and are familiar with the applicable law.

The second and third factors the Court must consider are "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," Fed. R. Civ. P. 23(g)(1)(A)(ii), and, relatedly, "counsel's knowledge of the applicable law." Fed. R. Civ. P. 23(g)(1)(A)(iii). Here, the Proposed Team has substantial experience handling class actions and other complex litigation, including successful experience litigating and settling cases on behalf of millions of individuals in some of the largest data breach class actions in the country. Collectively, as well as singularly, as demonstrated above and in the Proposed Team's resumes attached as **Exhibits A-I**, the Proposed Team and their firms have deep class action experience and knowledge of the applicable law, have been certified as class counsel by many federal courts, and possess the skills to represent the proposed class in this action. Class counsel also have extensive experience in mediating some of the largest and most complex MDLs, and have built positive working

relationships with opposing counsel "across the aisle" in some of the hardest-fought litigation in the country.

### C.     The Proposed Team will commit all necessary resources to the Class and will draw upon and coordinate the work of other Plaintiffs' counsel, consistent with the needs of the litigation.

The final Fed. R. Civ. P. 23(g) factor, which concerns the resources counsel will commit to the case, also strongly supports the appointment of the Proposed Team. Members of the Proposed Team are well-established, multi-office firms with deep rosters of attorneys and staff available to work on this case. As their firm resumes and counsels' experience further indicate, the Proposed Team's attorneys have long track records of securing sizeable recoveries, ensuring that they have the resources to see this litigation through to its conclusion, including trial.

As interim class counsel, the Proposed Team will continue to commit the same resources and effort to this case as they have committed to their other, successful class action litigations, and are committed to working cooperatively and efficiently for the benefit of the class.[11]

### D.     Appointing counsel who can "relate to the class."

Another factor that the undersigned counsel respectfully request the Court consider is representation. As courts have begun to recognize, faith in the judicial system—and in class actions in particular—depends on representation.

> Unlike most civil litigation, where individual and corporate clients hire counsel of their choosing, federal courts appoint counsel for class action lawsuits without input from class members. These appointed attorneys then decide, with again little to no input from class members, what remedies to pursue and settlements to accept on behalf of the class. Although courts are required to appoint the attorneys best able to adequately and fairly represent the interest of *all* class members, few courts

---

[11]     Here, in addition to their own work, they can—as needed, draw upon the skills and talents of other plaintiffs' counsel who have filed complaints in this consolidated action. The Proposed Team has coordinated and collaborated with those same counsel in other similar complex litigation and will continue to do so in managing all work to ensure efficiencies.

consider counsel's ability to relate to class members, particularly class members with different backgrounds, demographics, or life experiences.[12]

The TMX data breach, given the nature of TitleMax's business, impacts primarily individuals with limited access to banks due to poor or no credit.[13] Appointing counsel who understand the challenges of obtaining credit—or even housing—is paramount to ensuring that the class is adequately represented, and their life experiences considered. The Proposed Team is comprised of individuals from families who have faced housing insecurity, have only recently purchased their first home, are first-generation college graduates, and are from working-class backgrounds. Understanding the challenges that the class in *this* case faces, through these life experiences, will only inure to the benefit of class members. Accordingly, the Proposed Team requests that the Court consider this factor in its analysis.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court appoint the Proposed Team as Interim Class Counsel. A proposed order is submitted herewith.

Respectfully submitted this 15th day of August, 2023.

/s/ Thomas A. Withers
Thomas A. Withers
Georgia Bar No. 772250
**Withers Law Firm, P.C.**
8 East Liberty Street
Savannah, GA 31401
Tel. 912.447.8400
twithers@witherslawfirmpc.com

*Proposed Liaison Counsel*

---

[12]    Alissa del Riego, Driving Diverse Representation of Diverse Classes, 56 U. Mich. J. L. Ref. 67, 71 (2022).

[13]    Alicia Hope, Consumer Lender TMX Finance Suffers a Data Breach Impacting Millions, CPO Magazine (Apr. 7, 2023), https://www.cpomagazine.com/cyber-security/consumer-lender-tmx-finance-suffers-a-data-breach-impacting-millions/.

MaryBeth V. Gibson
Georgia Bar No. 725843
**The Finley Firm, P.C.**
3535 Piedmont Road
Bldg. 14, Ste. 230
Atlanta, GA 30305
Tel. 404.320.9979
mgibson@thefinleyfirm.com

Kelly Iverson
*Pro Hac Vice*
**Lynch Carpenter, LLP**
1133 Penn Avenue
5th Floor
Pittsburg, PA 15222
Tel. 412.322.9243
kelly@lcllp.com

Amy Keller
*Pro Hac Vice Application Filed*
**DiCello Levitt LLP**
Ten North Dearborn Street
Sixth Floor
Chicago, IL 60602
Tel. 312.214.7900
akeller@dicellolevitt.com

*Proposed Interim Co-Lead Counsel*

Rebecca Franklin Harris
Georgia Bar No. 141350
**Franklin Law, LLC**
2250 East Victory Drive
Suite 102
Savannah, GA 31404
Tel. 912.335.3305
rebecca@franklinlawllc.com

Brian C. Gudmundson
*Pro Hac Vice*
**Zimmerman Reed LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel. 612.341.0400
brian.gudmundson@
zimmreed.com

James J. Pizzirusso
*Pro Hac Vice*
**Hausfeld LLP**
888 16th Street, NW
Suite 300
Washington, D.C. 20006
Tel. 202.540.7200
jpizzirusso@hausfeld.com

Carl Malmstrom
*Pro Hac Vice*
**Wolf Haldenstein Adler Freeman & Herz LLP**
111 W. Jackson Blvd.
Suite 1700
Chicago, IL 60604
Tel. 312.984.0000
malmstrom@whafh.com

Terence Coates
*Pro Hac Vice*
**Markovits, Stock & DeMarco, LLC**
119 East Court Street
Suite 530
Cincinnati, OH 45202
Tel. 513.651.3700
tcoates@msdlegal.com

William B. Federman
*Pro Hac Vice*
**Federman & Sherwood**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Tel. 405.235.1560
wbf@federmanlaw.com

*Proposed Plaintiffs' Steering Committee*

## CERTIFICATE OF SERVICE

I, Thomas A. Withers, hereby certify that I filed a copy of the foregoing using this Court's CM/ECF service, which will send notification of such filing to all counsel of record this 15th day of August 2023.

*/s/ Thomas A. Withers*
Thomas A. Withers