## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | |
|---|---|
| VICTORIA FLORES CORIA,<br><br>             Plaintiff,<br><br>TMX FINANCE CORPORATE SERVICES,<br>INC.,<br><br>            Defendant | Civil Action No.<br><br><br>**COMPLAINT and**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Victoria Flores Coria ("Plaintiff"), individually and as a representative of the class of similarly situated persons, alleges the following against TMX Finance Corporate Services, Inc. ("TMX" or "Defendant") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation by Plaintiffs' counsel and the review of public documents:

### SUMMARY OF THE CASE

1. Plaintiff brings this class action on behalf of a nationwide class against TMX Finance Corporate Services, Inc. ("TMX" or "Defendant") for its failure to properly secure and safeguard the sensitive and confidential personal identifiable information ("PII") of 4,822,580 of its current and former customers ("Class Members") (the "Data Breach").

2. TMX is a financial services company that provides high-cost loans to consumers and "primarily specializes in auto loans."[1]  In application for loans and other financial services offered by TMX, consumers must provide their own sensitive and identifiable information to

---

[1] Menghan Xioa, *High-cost lender TMX Finance data breach affects nearly 5 million customers*, SC MEDIA (Mar. 31, 2023), available at https://www.scmagazine.com/news/breach/high-cost-lender-tmx-finance-databreach- affects-nearly-5-million-customers.

Defendant.  TMX possesses and maintains files containing customers PII.

3.    As TMX acknowledges in its Privacy Policy, TMX is obligated under federal law to implement adequate security measures in order to protect the PII it collects from customers like Plaintiff from unauthorized access and use.

4.    On or about March 30, 2023, TMX and its subsidiaries TitleMax, TitleBucks, and InstaLoan collectively disclosed a data breach that exposed the personal data of 4,822,580 customers.  In a data breach notification letter to impacted individuals, TMX informed the victims that hackers breached its systems as early as December 2022, yet TMX did not detect the breach until February 13, 2023.

5.    After completing an internal investigation on March 1, 2023, TMX discovered that the network intruders had stolen and exfiltrated the client information between February 3rd and 14th, 2023.

6.    The stolen customer PII included a wide array of full names, physical addresses, telephone numbers, email addresses, dates of birth, passport number, driver's license number, federal and state identification card numbers, financial account information and other sensitive information.

7.    Plaintiff brings this lawsuit for TMX's failure to comply with industry standards, common law, and statutory duties to protect its information systems that contain customer PII.

8.    By collecting, using, selling, monitoring, and trafficking Plaintiff's and other Class Members' PII for its economic benefit, and failing to protect it by maintaining inadequate security systems, failing to properly archive the PII, allowing access by third parties and failing to implement sufficient security measure, TMX has hurt Plaintiff and Class Members.

9.    Plaintiff brings this action on behalf of all persons whose PII was compromised as

a result of Defendant's failure to: (i) adequately protect its customers' PII; (ii) warn customers of its inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct constitutes negligence, which proximately caused damages to Plaintiff and Class Members.

10.    TMX disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that its customers' PII was safeguarded; failing to take available steps to prevent unauthorized disclosure of data; failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party.

11.    Alternatively, Defendant has been unjustly enriched. The amounts Plaintiff and Class Members paid for Defendant's goods and services should have been used, partly, to pay for the administrative costs of data management and security, including the proper and safe disposal of Plaintiff's and Class Members' PII. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendant failed to implement the data management and security measures mandated by industry standards.

12.    Plaintiff and Class Members have suffered injury due to Defendant's conduct. These injuries include: (i) lost or diminished value of PII, a form of property that TMX obtained from Plaintiff and Class Members; (ii) increased out-of-pocket expenses associated with identity defense, credit monitoring services and other prevention, detection, and recovery costs stemming

from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) deprivation of rights they possess under the state statutes; (v) the continued and increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII; and (vi) violation of Plaintiff's and Class Members' privacy rights.

13.    As a direct and proximate result of TMX's breach of confidence and failure to protect the PII, Plaintiff and Class Members have been injured by facing ongoing, imminent, impending threats of identity theft crimes, fraud, scams, and other misuses of their PII; ongoing monetary loss and economic harm; loss of value of privacy and confidentiality of the stolen PII; illegal sales of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring; identity theft insurance costs; credit freezes/unfreezes; expenses and time spent on initiating fraud alerts and contacting third parties; decreased credit scores; lost work time and other injuries.  Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that: (1) this is a class action involving more than 1,000 class members; (2) minimal diversity is present because at least one member of the Class, as defined below, is a citizen of a different state than Defendant; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

15.    This Court has personal jurisdiction over Defendant because Defendant is headquartered in Georgia and does business in and throughout Georgia, and the wrongful acts alleged in this Complaint were committed in Georgia, among other venues.  TMX has intentionally availed itself of this jurisdiction by marketing and selling its products and services in Georgia.

16.    Venue is proper in this District under: (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and 28 U.S.C. § 1391(d) because the transactions giving rise to the claims occurred in Savannah, Georgia; and (2) 28 U.S.C. § 1391(b)(3) in that Defendant is subject to personal jurisdiction in this District.

## THE PARTIES

### Plaintiff

17.    Plaintiff is an individual who had her PII compromised in the Data Breach and brings this action on behalf of herself and all those similarly situated across the United States. These allegations regarding Plaintiff are made upon the personal information of Plaintiff as to herself and her experiences.  Because TMX has exclusive but incomplete knowledge of what information was compromised for each individual Class Member, Plaintiff reserves the right to supplement her allegations with additional facts and injuries in the exclusive possession of TMX as they are discovered.

18.    Plaintiff Victoria Flores Coria is a citizen and resident of Houston, Texas and is a current TMX customer who had her PII exfiltrated and compromised in the Data Breach.

19.    Plaintiff Coria was a customer of TMX, where she submitted her PII to TMX, including her name, address, date of birth, and phone number.

20.    TMX notified Plaintiff Coria on or about March 30, 2023 by mail that on February

13, 2023, TMX had "detected suspicious activity on our systems" and learned from forensic cybersecurity experts that "the earliest known breach of TMX's systems started in early December 2022" and data "may have been acquired between February 3, 2023 – February 14, 2023" that affected some of her personally identifiable information.

21.    Plaintiff Coria was informed that the PII acquired by the hackers "may" have included her "name, date of birth, passport number, driver's license number, federal/state identification card number, tax identification number, social security number and/or financial account information, and other information such as phone number, address, and email address."

22.    Ms. Coria was further instructed by the TMX notice of the Data Breach that she would be offered complimentary credit monitoring and identity protection services through Experian IdentityWorks℠ for a period of 12 months.

23.    As a direct and proximate result of the Data Breach, Plaintiff Coria has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, conducting research into the Data Breach; and reviewing credit reports and financial account statements for any indication of actual or attempted identity theft or fraud.  This is valuable time that Plaintiff Coria could have spent on other activities.

24.    Plaintiff Coria is very concerned about identity theft and the consequences of such theft and fraud resulting from the TMX Data Breach.

25.    Plaintiff Coria has and will spend much time and effort responding to the impacts of the TMX Data Breach.  The time spent dealing with the fallout from the Data Breach is time that she otherwise would have spent on other activities.

26.    As a result of the TMX Data Breach, Plaintiff Coria anticipates spending additional time and money on an ongoing basis to attempt to mitigate and address the harms caused by the

Data Breach and will continue to be at increased risk of identity theft and fraud for years to come.

27.    Had Plaintiff Coria known that the PII TMX collected would not be safeguarded and would be at risk of a data breach, she would not have chosen to be a customer of TMX.

**Defendant**

28.    TMX Finance Corporate Services, Inc. ("TMX" or "Defendant") is a Delaware corporation with its principal place of business located at 15 Bull Street, Suite 200, Savannah, Georgia 31401.   Corporate and Store Operations, Human Resources, Talent Acquisition and Recruiting, Marketing, Legal and Compliance and Corporate Communications are located in Savannah.   Additional Corporate and Store Operations, Accounting, Product Development, Training and Development, Information Technology, Video Production and the Contact Center is located in Carrollton, Texas.

29.    TMX is a subsidiary of TMX Finance LLC, a California limited liability company.

30.    TMX provides consumer credit products under the brands "TitleMax," "TitleBucks," and "InstaLoan."   TMX provides access to credit for consumers who are underserved by traditional lenders and has 1,100 "store" locations in 15 states.

31.    TitleMax is a car title loans service and one of the nation's largest title lending companies, which currently has over 1,000 stores in 14 states and 4,000 employees.

32.    TitleBucks is a title lending company with more than 60 locations in 6 states.

33.    InstaLoan is a fast-approval personal loan service for those with bad credit with 30 locations in Florida.

34.    TMX operates a web portal for its customers' accounts.

https://login.microsoftonline.com/02cb30ec-252c-4e0a-9747-d022223af0bb/saml2?sso_reload=true

<u>**TMX'S COLLECTION OF CUSTOMERS' PII**</u>
<u>**FOR TMX ACCOUNTS**</u>

35.    TMX collects personally identifiable information from its customers and makes the

following disclosure on its website:

**PRIVACY AND COLLECTING INFORMATION**

The Company may collect and store personally identifiable information about you if you voluntarily submit such information to the Company via this Site. Personally identifiable information may include your name, email address, physical address and other information that specifically identifies you. The Company may use any personal information you supply through this Site in accordance with applicable law.

The Company may also automatically collect (through cookies, described below, and other methods) and store aggregate or anonymous information about user contact with and use of the Site. This information, which does not identify individual consumers, is used by the Company for its business purposes, which may include offering products or services, research, marketing or analyzing market trends, and other purposes consistent with applicable laws. Examples of this type of information include demographic information, the type of Internet browser you are using, the length of time you spent on the Site, the domain name of the web site from which you linked to our Site, system configuration and settings and your browsing habits on and usage of the Site. Non-personally identifiable information may also include personally identifiable information that has been aggregated so that no one individual is specifically identifiable (such as, how many users in a particular city access the Site).

**Use of Information in Connection with Application for Credit**

If you submit an application for credit or credit services via this Site or a product site you link to from this Site, you understand and agree that we may obtain a consumer credit report in connection with your application and in connection with any updates, renewals, refinances or extensions of any credit or credit services as a result of your application. If you ask, you will be informed whether or not such a report was obtained and, if so, the name and address of the agency that furnished the report. You also understand and agree that we may investigate your credit, employment and financial status and value of your collateral with third parties, which may include credit bureaus and other non-traditional sources of data in connection with the review of your application or collection of any extension of credit or credit services made to you as a result of this application or for other legitimate purposes related to such transactions.

**TMX'S MINIMAL AND DELAYED DISCLOSURE OF THE DATA BREACH**

36.    On or about March 30, 2023, TMX and its subsidiaries TitleMax, TitleBucks, and InstaLoan collectively disclosed a data breach that exposed the personal data of 4,822,580 customers.  In a data breach notification letter to impacted individuals, TMX informed the victims that hackers breached its systems as early as December 2022, yet TMX did not detect the breach until February 13, 2023.

37.    After completing an internal investigation on March 1, 2023, TMX discovered that the network intruders had stolen and exfiltrated the client information between February 3rd and 14th, 2023.

38.    The stolen customer PII included an exceptionally wide array of full names, physical addresses, telephone numbers, email addresses, dates of birth, passport number, driver's license number, federal and state identification card numbers, financial account information and other sensitive information.

39.    TMX's carefully worked statement did not disclose how the intruders gained access to its network; what date within the month of December 2022 the intruder gained access; whether ransomware was used in the attack; how the breach was discovered; what kind of "suspicious activity on our systems" was involved in the discovery of the breach; what systems were affected; whether the intruder was able to traverse the entire network; why it took at least a month and a half and possible two and a half months to discover the breach; why it took almost a month to disclose the breach; the number of years of data involved; what forensic firm was being used; whether TMX networks had known vulnerabilities that were not remediated; whether TMX networks had adequate password protection, patch management programs, firewalls, segmentation, maintenance, vulnerability assessments, penetration tests, checks for malicious

activity, encryption, data security and event management tools, data security budgets, staffs and policies and third party audits and certifications; and whether TMX ever purged the data of older customers.

40.    Not only was the disclosure inexcusably late, it also was unconscionably vague and transparently self-serving.  Instead of providing detailed information that consumers could utilize to protect themselves, TMX merely stated that the data breach "may" have affected customers' PII such as name, contact and demographic information, and date of birth.

## INJURY TO THE PLAINTIFF AND CLASS MEMBERS

41.    Plaintiff and each and every Class Member has suffered actual injury and one or more concrete (real and not abstract), imminent and particularized injuries described above as a direct and proximate result of TMX's known deficient data security and failure to protect their PII, as well as its concealment of the same, that allowed unauthorized access to Plaintiff's and the Class Members' PII.

42.    Had TMX disclosed that it disregarded its duty to protect Plaintiff's and Class Members' PHI, or otherwise had insufficient security measures to safeguard and protect Plaintiff's and Class Members' PII from unauthorized access, Plaintiff and Class Members would have taken this into account in making their decisions and would not have used TMX's lending and title services.  Plaintiff and Class Members would have engaged with and used a competing provider, which would have protected Plaintiff's and Class Members' PII.

43.    In addition to actual, present, concrete, and current injuries described above, Plaintiff and each and every Class Member has suffered, and will continue to suffer in the future, perpetual emotional distress, worry, other emotional or psychological harm, and well-founded fear that additional, realistic, objectively-reasonable, threatened, impending, sufficiently imminent

harm, and substantial and perpetual risk of harm, caused by the Data Breach in the form of identity theft or fraud will occur in the future.

44.    Plaintiff and the Class Members have invested, and will continue in perpetuity to invest, time and money into precautionary measures that *could*, but may not successfully, mitigate the potential misuse of their data.

45.    The Data Breach was the product of an intentional criminal act to gain access to the data.  It was the result of a sophisticated, intentional, and malicious attack by professional cybercriminal hackers and was not the result of an accidental disclosure of a TMX employee.  Thus, there is increased and substantial risk that the victims will experience identity theft or fraud that is sufficiently imminent.

46.    The type of data and nature of the information stolen in the Data Breach, such as Social Security numbers, birth dates, financial information, and names, are more likely to be used to perpetrate identity theft or fraud and create a risk of identity theft or fraud.

47.    The concreteness of the injury included traditional harms such as monetary harm recognized as a basis for a lawsuit in American courts.

48.    The Dark Web is a platform that facilitates criminal activity worldwide and functions as an underground black market for the sale of illegal products such as drugs, weapons, counterfeit money, and sensitive stolen data.  The likelihood is high that the data exfiltrated from TMX will be sold on the Dark Web.

## DATA BREACHES LEAD TO IDENTITY THEFT

49.    Plaintiff and other Class Members have been injured by the disclosure of their PII in the Data Breach.

50.    The United States Government Accountability Office noted in a June 2007 report

on Data Breaches ("GAO Report") that identity thieves use identifying data such as Social Security Numbers to open financial accounts, receive government benefits and incur charges and credit in a person's name.[2]  As the GAO Report states, this type of identity theft is the most harmful because it often takes some time for the victim to become aware of the theft, and the theft can impact the victim's credit rating adversely.

51.    In addition, the GAO Report states that victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records" and their "good name."[3]

52.    Identity theft victims are often required to spend many hours and large amounts of money repairing the impact to their credit.  Identity thieves use stolen personal information such as social security numbers ("SSNs") for various crimes, including credit card fraud, phone or utilities fraud, and/or bank/finance fraud.

53.    There may be a time lag between when PII is stolen and when it is used.  According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, *stolen data may be held for up to a year or more before being used to commit identity theft*.  Further, once stolen data have been sold or posted on the Web, *fraudulent use of that information may continue for years*. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[4]

54.    With access to an individual's PII, criminals can do more than just empty a victim's bank account—they can also commit all manner of fraud, including: obtaining a driver's license

---

[2]    *See* PERSONAL INFORMATION: DATA BREACHES ARE FREQUENT, BUT EVIDENCE OF RESULTING IDENTITY THEFT IS LIMITED; HOWEVER, THE FULL EXTENT IS UNKNOWN (June 2007), United States Government Accountability office, available at httsp://www.gao.gov/new.items/d07737.pdf.

[3]    *Id*. at 2, 9.

[4]    *Id*. at 29 (emphasis supplied).

or official identification card in the victim's name but with the thief's picture; using the victim's name and SSN to obtain government benefits; or, filing a fraudulent tax return using the victim's information.  Identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name.  Identity thieves may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[5]

55.    PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen credit card numbers, SSNs, and other PII directly on various Internet websites making the information publicly available.

## CLASS ALLEGATIONS

56.    Under Rule 23, Plaintiff brings this case as a class action on behalf of a Class, defined as follows:

> All persons in the United States whose PII was  maintained  on  the  TMX systems  that  were compromised as a result of the breach announced by TMX  on  or around March 30, 2023.

57.    Excluded from the Class are the following individuals and/or entities:

> Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

---

[5] *See Federal Trade Commission,* WARNING SIGNS OF IDENTIFY THEFT, *available at* https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft.

58.     Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

59.     Numerosity, Rule 23(a)(1): The Class are so numerous that joinder of all members is impracticable.  Defendant has identified thousands of customers whose PII may have been improperly accessed in the Data Breach, and the Class are apparently identifiable within Defendant's records.

60.     On information and belief, the Class has more than 1,000 members. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

61.     Commonality, Rule 23(a)(2) and (b)(3): Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members.  These include, but are not limited to, the following:

a.     Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

b.     Whether Defendant had duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

c.     Whether Defendant had duties not to use the PII of Plaintiff and Class Members for non-business purposes;

d.     Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

e.     Whether and when Defendant learned of the Data Breach;

f.     Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

14

g.     Whether Defendant violated their common law duties to Plaintiff and Class Members by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h.     Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.     Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.     Whether Plaintiff and Class Members are entitled to actual damages and/or punitive damages as a result of Defendant's wrongful conduct;

k.     Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct;

l.     Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach;

m.     Whether Defendant's data security systems before the Data Breach met the requirements of laws;

n.     Whether Defendant's data security systems before the Data Breach met industry standards;

o.     Whether Plaintiff's and other Class Members' PII was compromised in the Data Breach; and

p.     Whether Plaintiff's and other Class Members are entitled to damages as a result of Defendant's conduct.

62.     Typicality, Rule 23(a)(3): Plaintiff's claims are typical of those of other Class

15

Members because all had their PII compromised as a result of the Data Breach, because of Defendant's misfeasance. Plaintiff suffered the same injury as Class Members—*i.e.*, upon information and belief, Plaintiff's PII was compromised in the Data Breach.

63.    Ascertainability: The Class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Class. The Class and Subclass consist of individuals who provided their PII to TMX. Class Membership can be determined using TMX's records and investigation.

64.    Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate for the Class as a whole. Defendant's policies challenged here apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct related to the Class as a whole, not on facts or law applicable only to Plaintiff.

65.    Adequacy, Rule 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including data breach class actions. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have interests contrary to or that conflict with those of the proposed Class. Plaintiff seeks no relief antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages she has suffered are typical of other Class Members.

66.    Defendant has engaged in a common course of conduct toward Plaintiff and other

16

Class Members. The common issues arising from this conduct that affect Plaintiff and Class Members predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

67. Superiority and Manageability, Rule 23(b)(3): A class action is the superior method for this controversy's fair and efficient adjudication. In this regard, the Class Members' interests in individually controlling the prosecution of separate actions are low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendant. Concentrating this litigation in this forum is desirable to avoid burdening the courts with individual lawsuits. Individualized litigation presents a potential for inconsistent or contradictory judgments, and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case. By contrast, the class action procedure here will have no management difficulties. Defendant's records and the records available publicly will easily identify the Class Members. The same common documents and testimony will be used to prove the Plaintiff's claims and the Class Members' claims.

68. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device an exceptionally efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would gain an unconscionable advantage since they could exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary

and duplicative of this litigation.

69.     The litigation of the claims brought here is manageable.  Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members establishes that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

70.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

71.     A class action is appropriate under Rule 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to Class Members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class Members.

72.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests.  These particular issues include, but are not limited to:

a.     Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

b.     Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

c.     Whether Defendant breached its own policies and applicable laws, regulations, and industry standards relating to data security;

d.     Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

e.     Whether Defendant breached their implied contract with Plaintiff and Class

Members to adequately secure and protect Plaintiff's and Class Members' PII;

f.      Whether Defendant adequately, and accurately informed Plaintiff and Class Members that their PII had been compromised;

g.      Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

h.      Whether Class Members are entitled to actual damages, statutory damages, injunctive relief, and/or punitive damages as a result of Defendant's wrongful conduct.

## CLAIMS FOR RELIEF

## COUNT I

### Negligence
### (On Behalf of Plaintiff and the Nationwide Class)

73.      Plaintiff re-alleges and incorporates all of the allegations contained in the preceding paragraphs.

74.      To access features of the devices, application or service that Plaintiff and Class Members purchased, TMX required Plaintiff and Class Members to submit certain PII, including their names, dates of birth, email addresses and mailing addresses.

75.      Plaintiff and the Class Members entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

76.      By collecting and storing this PII and using it for commercial gain, TMX has both a duty to care to use reasonable means to secure and safeguard this PII to prevent disclosure and guard against theft of the PII.

77.      Defendant knows of the sensitivity of the PII and the types of harm that Plaintiff

and Class Members could and would suffer if the PII were wrongfully disclosed.

78.     Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using their customers' PII involved an unreasonable risk of harm to Plaintiff and Class Members, even if the harm occurred through the criminal acts of a third party.

79.     Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.   This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiff's and Class Members' information in Defendant's possession was adequately secured and protected.

80.     Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Members' PII.

81.     Defendant's duty of care arose as a result of, among other things, the special relationship that existed between TMX and its customers.  Defendant was in a position to ensure that the PII of Plaintiff and Class Members was secure and that it was safeguarding and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

82.     Defendant was subject to an "independent duty," untethered to any contract between TMX and Plaintiff or Class Members.

83.     A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class Members was reasonably foreseeable, particularly given Defendant's inadequate security practices and previous breach incidents involving TMX customers' PII.

84.     Plaintiff and the Class Members were the foreseeable and probable victims of any

inadequate security practices and procedures.  Defendant should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class Members, the importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendant's systems.

85.    Defendant's conduct created a foreseeable risk of harm to Plaintiff and Class Members.  Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth here.  Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of Plaintiff's and Class Members' PII, including basic encryption techniques freely available to Defendant.

86.    Plaintiff and the Class Members could not protect their PII that was in, and possibly remains in, Defendant's possession.

87.    Defendant could protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

88.    Defendant had and continues to have a duty to adequately disclose that the PII of Plaintiff and Class Members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when.   Such notice was necessary to allow Plaintiff and the Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

89.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiff and Class Members.

90.    Defendant has admitted that the PII of Plaintiff and Class Members was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

91.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to implement industry protocols and exercise reasonable

care in protecting and safeguarding the PII of Plaintiff and Class Members during the time the PII was within Defendant's possession or control.

92.    Defendant improperly and inadequately safeguarded the PII of Plaintiff and Class Members in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

93.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect customers' PII in the face of increased risk of theft.

94.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures to detect and prevent dissemination of its customers' PII.

95.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and Class Members the existence and scope of the Data Breach.

96.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class Members, the PII of Plaintiff and Class Members would not have been compromised.

97.    There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and Class Members and the harm suffered or risk of imminent harm suffered by Plaintiff and the Class.  Plaintiff's and Class Members' PII was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

98.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or

theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of customers in their continued possession; (viii) future costs in terms of time, effort, and money to be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the rest of the lives of Plaintiff and Class Members; and (ix) the diminished value of Defendant's goods and services they received.

99.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

### COUNT II

**Invasion of Privacy**
**(On Behalf of Plaintiff and the Nationwide Class)**

100.    Plaintiff re-alleges and incorporates all of the allegations contained in the preceding paragraphs.

101.    Plaintiff and Class Members had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

102.    Defendant owed a duty to its customers, including Plaintiff and Class Members, to

keep their PII contained as a part thereof, confidential.

103.    Defendant failed to protect and released to unknown and unauthorized third parties the PII of Plaintiff and Class Members.

104.    Defendant allowed unauthorized and unknown third parties access to and examination of the PII of Plaintiff and Class Members, through Defendant's failure to protect the PII.

105.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiff and Class Members is highly offensive to a reasonable person.

106.    The intrusion was into a place or thing, which was private and is entitled to be private.  Plaintiff and Class Members disclosed their PII to Defendant as part of their use of Defendant's services, but privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure.  Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

107.    The Data Breach at the hands of Defendant constitutes intentional interference with Plaintiff and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

108.    Defendant acted with a knowing state of mind when it permitted the Data Breach to occur because it was with knowledge that its information security practices were inadequate and insufficient.

109.    Because Defendant acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and Class Members.

110.    As a proximate result of the above acts and omissions of Defendant, the PII of Plaintiff and Class Members was disclosed to third parties without authorization, causing Plaintiff and Class Members to suffer damages.

111.    Unless enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the PII maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Class.

## COUNT III

### Negligence *Per Se*
### (On Behalf of Plaintiff and the Nationwide Class)

112.    Plaintiff re-alleges and incorporates all of the allegations contained in the preceding paragraphs.

113.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant's, of failing to use reasonable measures to protect PII.  The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

114.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards.  Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored, and the foreseeable consequences of the Data Breach for companies of Defendant's magnitude, including, specifically, the immense damages that would result to Plaintiff and Class Members due to the valuable nature of the PII at issue—including social security numbers.

115.    Defendant's violations of Section 5 of the FTC Act constitute negligence *per se*.

116.    Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

117.    The harm that resulted from the Data Breach is the type of harm the FTC Act was intended to guard against.  The FTC has pursued enforcement actions against businesses, which, due to their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class Members.

118.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to, (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of customers and former customers in its continued possession; (viii) future costs in terms of time, effort, and money to be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the rest of the lives of Plaintiff and Class Members; and (ix) the diminished value of Defendant's goods and services they received.

119.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and

Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT IV

**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

120.    Plaintiff re-alleges and incorporates all of the allegations contained in the preceding paragraphs.

121.    Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they purchased goods and services from Defendant and provided Defendant with their PII.  In exchange, Plaintiff and Class Members should have received from Defendant the goods and services that were the subject of the transactions and should have been entitled to have Defendant protect their PII with adequate data security.

122.    Defendant knew that Plaintiff and Class Members conferred a benefit on Defendant and accepted and have accepted or retained that benefit.  Defendant profited from the purchases and used the PII of Plaintiff and Class Members for business purposes.

123.    The amounts Plaintiff and Class Members paid for Defendant's goods and services should have been used, in part, to pay for the administrative costs of data management and security, including the proper and safe disposal of Plaintiff's and Class Members' PII.

124.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement the data management and security measures that are mandated by industry standards.

125.    Defendant failed to secure the PII of Plaintiff and Class Members and thus did not provide full compensation for the benefit Plaintiff and Class Members provided.

126.     Defendant acquired the PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

127.     If Plaintiff and Class Members knew that Defendant would not secure their PII using adequate security, they would not have made purchases or developed a financial relationship with Defendant.

128.     Plaintiff and Class Members have no adequate remedy at law.

129.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to, (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of customers and former customers in its continued possession; (viii) future costs in terms of time, effort, and money to be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the rest of the lives of Plaintiff and Class Members; and (ix) the diminished value of Defendant's goods and services they received.

130.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including,

but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

131.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from Plaintiff and Class Members.  In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's goods and services.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff and Class Members demand judgment as follows:

A.    Certification of the action as a Class Action pursuant to Federal Rule of Civil Procedure 23 and appointment of Plaintiff as Class Representative and her counsel of record as Class Counsel;

B.    That the acts alleged above be adjudged and decreed to constitute negligence, negligence per se, invasion of privacy and unjust enrichment;

C.    A judgment against Defendant for the damages sustained by Plaintiff and the Class defined here, and for any additional damages, penalties, and other monetary relief provided by applicable law;

D.    By awarding Plaintiff and Class Members pre-judgment and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after service of the Complaint;

E.    The costs of this suit, including reasonable attorney fees; and

F.    Any other relief that the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff, individually and on behalf of all those similarly situated, requests a jury trial,

under Federal Rule of Civil Procedure 38, on all claims so triable.

Dated: April 10, 2023                          Respectfully submitted,

                                               */s/ Seth Diamond*
                                               Seth Diamond
                                               Georgia Bar No 220393
                                               **MORGAN & MORGAN**
                                               200 Stephenson Avenue, Suite 200
                                               Savannah, GA 31405
                                               Tel: (912) 443-1006
                                               Email: SDiamond@forthepeople.com

                                               Linda P. Nussbaum
                                               **NUSSBAUM LAW GROUP, P.C.**
                                               1211 Avenue of the Americas, 40th Floor
                                               New York, NY 10036-8718
                                               Tel: (917) 438-9189
                                               Email: lnussbaum@nussbaumpc.com

                                               Michael E. Criden
                                               **CRIDEN & LOVE, P.A.**
                                               7301 SW 57th Court, Suite 515
                                               South Miami, FL 33143
                                               Tel: (305) 357-9000
                                               Email:  mcriden@cridenlove.com

                                               *Counsel for Plaintiff and the*
                                               *Proposed Class*

JS 44   (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Victoria Flores Coria

**(b)** County of Residence of First Listed Plaintiff   Harris County, TX
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Seth Diamond, Morgan & Morgan, 200 Stephenson Ave., Suite 200, Savannah, GA 31405  (912) 442-1006

## DEFENDANTS
TMX Finance Corprate Services, Inc.

County of Residence of First Listed Defendant   Chatham County, GA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☒ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☒ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding   ☐ 2   Removed from State Court   ☐ 3   Remanded from Appellate Court   ☐ 4   Reinstated or Reopened   ☐ 5   Transferred from Another District *(specify)*   ☐ 6   Multidistrict Litigation - Transfer   ☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332(d)
Brief description of cause:
Negligence, negligence per se, invasion of privacy and other causes of action for data security breach.

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.   DEMAND $   CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE   William T. Moore, Jr.   DOCKET NUMBER   4:23-cv-00076-WTM-CLR

DATE
04/10/2023

SIGNATURE OF ATTORNEY OF RECORD
/s/ Seth Diamond

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44
### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.