**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

|  |  |
|---|---|
| SAVANNAH KOLSTEDT, et.al., | Civil Action No. 4:23-cv-76-RSB-CLR |
|  Plaintiffs, | |
| v. | **PLAINTIFFS' CONSENT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS AND SUPPORTING MEMORANDUM** |
| TMX FINANCE CORPORTE SERVICES, INC. | |
|  Defendant. | |

Pursuant to Rule 23(e), and subject to Court approval, Plaintiffs Makecia Berry, Sheneequa Carrington, Antonio DeJesus, Tommy Domino, Patsy Eslinger, Evelyn Francis, Dewayne Jackson, Von King, Melvin Nicholas, Jodie Petty, LaPetra Robinson, Edwin Scheide, Joseph Trottier, and Francis Ann Washington (hereinafter "Settlement Class Representatives"), on behalf of themselves and all others similarly situated, respectfully move the Court for preliminary approval of the proposed settlement of this class action under Rule 23 of the Federal Rules of Civil Procedure.

Plaintiffs request that the Court grant the Motion and enter a Preliminary Approval Order: (a) preliminarily certifying the Settlement Class,[1] appointing Settlement Class Representatives for the Settlement Class, and appointing Class Counsel as counsel for the Settlement Class; (b) preliminarily approving the proposed settlement as appearing sufficiently fair, adequate, and reasonable to warrant the issuance of the Class Notice; (c) approving the proposed notice plan as meeting the requirements of Rule 23 and due process; and (d) granting any related relief as

---

[1] Capitalized terms not defined herein are as defined in the Settlement Agreement.

1

described herein. Defendants have reviewed this filing and do not oppose this motion.[2] All definitions herein are the same as in the Settlement Agreement (hereinafter "S.A."), **Exhibit 1**.

## I. PURPOSE

Rule 23(e) identifies the procedure courts must follow to consider and ultimately approve the settlement of an action that will bind class members. First, the parties must provide the court with information about the terms of the settlement sufficient to enable the court to determine whether to give notice of the proposed settlement to the class. Fed. R. Civ. P. 23(e)(1)(A). Notice should only be ordered if the parties provide information showing that the court will likely be able to approve the settlement proposal and certify the class for settlement purposes. *Id.* at 23(e)(1)(B)(i) and (B)(ii). Approval is likely if, after a final hearing, the court can conclude the settlement as proposed is fair, reasonable and adequate. *Id.* at 23(e)(2). Such final approval is dependent upon Plaintiffs showing: A) they and class counsel have adequately represented the class; B) the proposal was negotiated at arm's length; C) the relief to the class is adequate; and D) the proposed settlement treats class members equitably relative to each other. *Id.* at 23(e)(2)(A-D). Thus, for preliminary approval purposes, the court conducts a preliminary evaluation of the fairness and adequacy of the settlement to determine whether there is good reason to schedule a full fairness hearing and order notice of the settlement to the class. *See* Manual for Complex Litigation (Fourth) (hereinafter "Manual") § 21.632, at 320-21. This examination is typically "made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties." *Id.*

---

[2] Defendants do not oppose the relief sought by this Motion for Preliminary Approval (the "Motion") and agree that the Court should grant the Motion. By not opposing this relief, Defendants do not concede the factual basis for any claim and deny liability. The language in this Motion, including the description of proceedings, as well as legal and factual arguments, is Plaintiffs', and Defendants may disagree with certain of those characterizations and descriptions.

## II. BACKGROUND

### A. History of Litigation

In February 2023, TMX Finance Corporate Services, Inc., and TMX Finance LLC (collectively, "Defendants" or "TMX"), detected suspicious activity on its systems and, after investigating the activity, discovered that TMX's systems were breached in early December 2022 and Plaintiffs' and Settlement Class Members' information may have been acquired between February 3, 2023 and February 14, 2023 (the "Data Breach"). S.A. ¶ 1.1; **Exhibit 2,** Joint Declaration of MaryBeth V. Gibson, Kelly Iverson, and Amy Keller ("Joint Decl.") ¶ 1. Thereafter, TMX sent notices of the Data Breach to approximately 4.8 million Settlement Class Members informing them that their information may have been compromised in the Data Breach. Plaintiff Savannah Kolstedt filed a class action complaint against TMX on March 31, 2023. S.A. ¶ 1.2. In the weeks that followed, multiple additional class actions were filed against TMX in this District. Joint Decl. ¶¶ 5-6. The Court consolidated all actions into *Kolstedt et al. v. TMX Finance Corporate Services, Inc.*, Case No. 4:23-cv-076. Joint Decl. ¶ 6. On September 12, 2023, the Court entered an Order appointing Interim Class Counsel. ECF No. 63. Joint Decl. ¶ 7.

The Court entered an Initial Scheduling Order on October 13, 2023. ECF No. 74. On November 29, 2023, Plaintiffs filed their Consolidated Class Action Complaint alleging that Defendants implemented inadequate data security measures and controls, resulting in the Data Breach. ECF No. 82; Joint Decl. ¶ 8. Plaintiffs asserted claims for negligence, negligence *per se*, unjust enrichment, breach of bailment, invasion of privacy/intrusion upon seclusion, declaratory and injunctive relief, and for alleged violations of state consumer protection statutes and statutory claims under Ga. Code Ann. § 13-6-11. *Id.* Around this same time, Plaintiffs' and Defendants' counsel were engaged in discussions about participating in mediation to determine whether the

case could be resolved, and the Parties ultimately participated in a full day of mediation on February 5, 2024 before JAMS mediator Hon. Diane Welsh (Ret.), an expert mediator with significant experience in data breach litigation. ECF No. 93; Joint Decl. ¶¶ 9, 18. In advance of and to facilitate the mediation, the Parties exchanged documents and information subject to Fed. R. Evid. 408. Joint Decl. ¶¶ 9, 18. While the Parties made significant headway at that mediation with respect to the structure of a potential settlement, they did not reach a final resolution at that time. Joint Decl. ¶¶ 9, 19.

On April 23, 2024, Defendants filed a motion seeking to dismiss the claims of Plaintiffs Ryan Carder, Lakendra Mitchell, Sophia Pickens, and Tracy Starling. ECF No. 109; Joint Decl. ¶ 10. Defendants' motion was fully briefed by the parties. *Id.* Also on April 23, 2024, Defendants filed a motion seeking to compel individual arbitration of the claims of Plaintiffs Sonya Albert, Makecia Berry, Sheneequa Carrington, Lana Clark, Victoria Coria, Antonio DeJesus, Leon Diaz, Tommy Domino, Patsy Eslinger, Evelyn Francis, Jeremiah Gills, Dewayne Jackson, Yolanda Jackson, Adrian Johnson, Chaplin Johnson, Von King, Melvin Nicholas, Ebony Millner, Amy Penird, Jodie Petty, LaPetra Robinson, Edwin Scheide, Joseph Trottier, Francis Washington, and Adam White. ECF No. 108. Joint Decl. ¶11. In response, Plaintiffs filed a motion for arbitration related discovery. ECF No. 114. Joint Decl. ¶ 12. Plaintiffs' motion was extensively briefed by the Parties. *Id.*

Throughout the time since mediation, and with the mediation as a foundation for resolution, the Parties continued to engage in extensive discussions about the potential for resolving this litigation. Joint Decl. ¶ 13. Over the course of nine months, the Parties exchanged term sheets and negotiated various provisions of the settlement. *Id.* at ¶ 14. The exchanges and negotiations were hard-fought by both sides. *Id.* at ¶ 19. The Parties eventually reached a settlement in principle

about which they notified the Court on November 12, 2024. ECF No. 140; Joint Decl. ¶ 14. Since that notice, the Parties have worked diligently on drafting, negotiating, and finalizing the Settlement Agreement and its exhibits. *Id*. at ¶ 15. The Parties executed the Settlement Agreement in full on February 24, 2025. *Id*. at ¶ 27.; *See also* Exhibit 1.

### B. Negotiations and Settlement

The Settlement is the result of on-going, and often intense, arm's-length negotiations and hard bargaining. Joint Decl. ¶¶ 17, 19-20, 23. The Parties exchanged written informal discovery including, but not limited to, information about the allegations in the Consolidated Complaint, the class size, the types of data impacted in the Data Breach, and information supporting Plaintiffs' damages allegations. *Id*. at ¶ 9. Through the Rule 408 discovery, the Parties were able to properly assess the strengths and weaknesses of their cases and evaluate damages on a class-wide basis. *Id*. at ¶ 18. The Parties engaged in extensive settlement discussions that included a full-day, in-person mediation session with retired Judge Diane Welsh. *Id*. ¶ 19. After extensive negotiations, including the mediation session and then for months thereafter, the Parties ultimately agreed to the terms of the settlement. Joint Decl. ¶¶ 10-14. This Settlement, if approved, would resolve all claims related to the Data Breach on behalf of the Settlement Class. S.A. ¶¶ 2.32, 2.37. The formal Settlement Agreement was then negotiated in detail over the course of three months and ultimately executed on February 24, 2025. Joint Decl. ¶¶ 23-24. Plaintiffs and Class Counsel strongly believe that this Settlement is fair, reasonable, and adequate, and represents an excellent result for the Settlement Class. *Id*. at ¶ 29. The Settlement Class Representatives now move this Court for entry of a Preliminary Approval Order, consistent with Exhibit E to the Settlement Agreement, granting preliminary approval of the Settlement and providing for notice of the Settlement to be distributed to the Settlement Class.

### C.  Summary of Settlement Terms

The Settlement creates numerous benefits for the Settlement Class, which benefits are designed to compensate them for the harm suffered as a result of the type of data breach of the type that occurred here. The Settlement Class is defined as follows:

> All residents of the United States whose Personal Information was accessed, stolen, impacted, or compromised as a result of the Data Breach as identified in the Class List. Excluded from the Settlement Class are (i) TMX, any Entity in which TMX has a controlling interest, and TMX's officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement.

S.A. ¶ 2.37. The Settlement Class includes approximately 4.8 million individuals nationwide. *Id.*; Joint Decl. ¶ 29.

### 1.  Settlement Benefits for Settlement Class Members

The Settlement provides for Settlement Class Members to make a claim for monetary recovery for both undocumented and documented harms suffered as a result of the Data Breach. Additionally, any Settlement Class Member that does not submit an Approved Claim for monetary recovery and has debt with TMX Finance LLC's subsidiaries ("TMX Subsidiaries") will automatically receive a one-time credit of $20 applied to any outstanding balance owed to TMX Subsidiaries as reflected in the Settlement Class Members' accounts. S.A. ¶ 5.2; Joint Decl. ¶ 33.[3] As part of the Settlement, TMX also agreed to implement or maintain certain data security enhancements.

#### a.  *Undocumented Losses or Harm.*

Settlement Class Members can submit a claim for $ 35.00 (thirty-five dollars) for any losses

---

[3] According to Defendants, the named Defendant entities are not lenders; all debt that would be subject to the Settlement Agreement is held by subsidiaries of TMX Finance LLC. *See* S.A. ¶ 20.1.

or harms they believe are fairly traceable to the Data Breach, including, but not limited to, for time spent remedying issues related to the Data Breach, harms related to loss of Personal Information related to the Data Breach, emotional distress, and/or other alleged losses or harm related to the Data Breach. S.A. ¶ 5.1.1; S.A., Exhibit C; Joint Decl. ¶ 31. No documentation of such losses or harm is required for a Settlement Class Member to claim this benefit, so long as the Settlement Class Member affirms their belief that they suffered any loss or harm as a result of the Data Breach. *Id.* TMX's obligation to pay claims for Undocumented Losses or Harm is subject to an aggregate cap of $4,500,000.00 (four million five hundred thousand dollars). *Id.* If the aggregate total of claims for Undocumented Losses or Harm is less than $4,500,000.00 (four million five hundred thousand dollars), then TMX shall pay that aggregate total amount of Approved Claims for Undocumented Losses or Harm that is less than $4,500,000.00 (four million five hundred thousand dollars). *Id.* If the aggregate total of claims for undocumented losses or harm exceeds $4,500,000.00 (four million five hundred thousand dollars), there will be a *pro rata* reduction such that the total amount paid does not exceed $4,500,000.00 (four million five hundred thousand dollars). *Id.*

### b. *Documented Out-of-Pocket Losses.*

Settlement Class Members may submit claims for up to $500.00 (five hundred dollars) for documented monetary loss(es) that is fairly traceable to the Data Breach and that has not already been reimbursed, including, but not limited to: (i) out-of-pocket costs, expenses, losses, or other charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of a Settlement Class Member's Personal Information; (ii) out-of-pocket costs incurred after the Data Breach was disclosed associated with changing accounts or engaging in other mitigative conduct including, but not limited to, notary, fax, postage, copying, mileage, and long-

distance telephone charges; (iii) out-of-pocket professional fees incurred to address the Data Breach; and (iv) out-of-pocket purchases of credit monitoring or other mitigative services after the Data Breach was disclosed, through the date of the Settlement Class Member's Claim submission. S.A. ¶ 5.1.2; Joint Decl. ¶ 32. TMX's obligation to pay claims for Documented Out-of-Pocket Losses is subject to an aggregate cap of $2,000,000.00 (two million dollars). *Id.* If the aggregate total of claims for Documented Out-of-Pocket Losses is *less than* $2,000,000.00 (two million dollars), then TMX shall pay that aggregate total amount of Approved Claims for Documented Out-of-Pocket Losses that is less than $2,000,000.00 (two million dollars). *Id.* If the aggregate total of claims for Documented Out-of-Pocket Losses exceeds $2,000,000.00 (two million dollars), there will be a *pro rata* reduction such that the total amount paid is $2,000,000.00 (two million dollars). *Id.*

### c. Debt Reduction for Settlement Class Members Who Do not Submit an Approved Claim.

All Settlement Class Members who do not submit an Approved Claim under Section 5.1 for Undocumented Losses or Harm or Documented Out-of-Pocket Losses will automatically receive a one-time credit of $20.00 (twenty dollars) applied to any outstanding balance owed to TMX subsidiaries as reflected in the Settlement Class Members' accounts. S.A. ¶ 5.2; Joint Decl. ¶ 33. If a Settlement Class member owes less than $20.00 (twenty dollars), the one-time reduction will be in an amount equal to the balance such that the Settlement Class Member's account will be reduced to $0.00 (zero). *Id.* While the benefit provided herein is a dollar-for-dollar reduction to debt in the aforementioned amounts, no cash payment will be made in connection with this benefit. This benefit is not subject to a monetary cap. TMX represents and warrants that it has the authority and ability to enter into this debt reduction agreement on behalf of the TMX Subsidiaries and can provide, or cause its subsidiaries to provide, the debt reduction benefit to Settlement Class

Members. *Id.* In the event that a Settlement Class Member's debt is reduced to zero ($0.00) pursuant to the Settlement, TMX Finance LLC's subsidiaries shall take reasonable steps to return the vehicle title in their possession to the Settlement Class Member in the ordinary course of business. S.A. ¶ 5.4; Joint Decl. ¶ 35.

### d. *Information Security Enhancements.*

In response to the Data Breach and the Action, TMX has further enhanced its data security infrastructure. S.A. ¶ 6.1; Joint Decl. ¶ 36. For a period of at least three (3) years following the execution of this Agreement, TMX agrees to: (1) require user passwords to be changed at least every six months; (2) ensure all default passwords are changed to follow password policies; (3) perform annual, mandatory training for all employees related to information security and ensuring the security and protection of Personal Information; (4) configure critical business systems to alert on unsuccessful administration account logins; (5) deploy multi-factor authentication wherever a user seeks to log on to the systems or equivalent mitigating controls; (6) ensure least privilege and separation of duties is enforced on all access to critical business systems; and (7) encrypt information contained in the core transactional databases, as defined by TMX's security documentation. *Id.* The actual costs for the implementation and maintenance of Security Enhancements will be paid separately by TMX apart from payment for any of the settlement benefits described in Section 5. *Id.*

### 2. Settlement Benefits for Settlement Class Representatives

In exchange for the Settlement Class Representative Released Claims, which provide for a general release of claims, as well as the mutual covenant not to sue, all Settlement Class Representatives to the extent they have an outstanding balance owed as reflected in the Settlement

Class Members' accounts with TMX, its affiliates, or its subsidiaries, will have their debt reduced to $0.00 (zero dollars). S.A. ¶ 5.3; Joint Decl. ¶ 34. The aggregate total of such debt reduction for all Settlement Class Representatives shall be limited to $200,000.00 (two hundred thousand dollars). *Id.*[4] TMX has confirmed its authority and ability to enter into this debt reduction agreement on behalf of the TMX Subsidiaries and can provide, or cause its subsidiaries to provide, the debt reduction benefit to Settlement Class Representatives as addressed in the Settlement Agreement. S.A. ¶ 5.3. In the event that a Settlement Class Representative's debt is reduced to $0.00 (zero dollars) pursuant to the Settlement, TMX Finance LLC's subsidiaries shall take reasonable steps to return the vehicle title in their possession to the Settlement Class Member in the ordinary course of business. S.A. ¶ 5.4; Joint Decl. ¶ 35.

### 3. Scope of the Releases

In exchange for the consideration in Section 1 *supra*, Settlement Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendants and certain related entities from claims arising from or related to the Data Breach at issue in this litigation. S.A. ¶¶ 2.32-2.34; 12.1. The scope of the release is defined as follows:

> Any and all claims (including, without limitation, any and all common law, equitable, and statutory claims arising under the laws of any jurisdiction, including those arising under state and/or federal laws of the United States), defenses, demands, actions, causes of action, losses, rights, offsets, setoffs, suits, remedies, damages, lawsuits, costs, attorneys' fees, expenses, or liabilities of any kind whatsoever, in law or in equity, for any relief whatsoever, including monetary sanctions or damages for contempt, injunctive or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, penalties, interest, attorneys' fees, costs, or expenses, whether known or unknown (including Unknown Claims (defined below)), suspected or unsuspected, existing or potential, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that in any way concern, arise out of, or relate to the Data Breach, any

---

[4] The current debt of all Settlement Class Representatives is approximately $25,661.36. Joint Decl. ¶ 34.

factual, legal, or other allegations in the Consolidated Complaint, and/or any theories of recovery that were, or could have been, raised at any point in the Action that in any way concern, arise out of, or relate to the Data Breach.

S.A. ¶ 2.32.

The Released Claims also include the release of Unknown Claims. S.A. ¶¶ 2.32, 2.45.

In addition, in exchange for the consideration in both Sections 1 and 2 *supra*, to the extent their debt is reduced to $0.00 (zero dollars) as a result of the Debt Reduction in Section 2, Settlement Class Representatives will generally release Defendants and certain related entities. S.A. ¶¶ 2.40; 12.2.

### 4. The Notice and Settlement Administration Plans

Under the Settlement Agreement, and subject to Court approval, Simpluris was selected and agreed upon by the Parties to be the Settlement Administrator. Joint Decl. ¶ 57. Simpluris has experience in class action settlement notice and administration, including with data breach class actions, and has been retained by the Parties to carry out the Notice Plan, claims administration, and all other tasks relating to settlement administration. *Id.* at ¶¶ 55-61; S.A. ¶ 2.35; *see also* Declaration of Shelby Alvey of Simpluris ("Simpluris Decl."), at S.A. Exhibit D. All fees, costs, and expenses relating to or arising out of the Notice Plan and administering the Settlement shall be paid by TMX to Simpluris separate and apart from the Settlement Benefits. S.A. ¶¶ 2.2, 7.2; Joint Decl. ¶ 37.

Simpluris shall perform the functions specified in the Settlement Agreement and any functions specified in the Notice Plan after Court approval. S.A. ¶ 7.1; Joint Decl. ¶¶ 59-62; S.A. Exhibit D. Within ten (10) days after the Court's entry of a Preliminary Approval Order, TMX shall provide to the Settlement Administrator a "Class List" of the approximately 4.8 million individuals in the United States whose information was accessed, stolen, impacted, or

compromised as a result of the Data Breach as identified in TMX's notification files. S.A. ¶¶ 2.10, 8.1.

The Settlement Administrator will give notice to Settlement Class Members by first-class mail, email, and through a settlement website. The parties have reached agreement on the form of the proposed notices and Claim Form. *See* S.A., Exhibits A-C. For Settlement Class Members that submit their Claim Form online, they can select to receive their payment by certain electronic means or by check. *Id.* Simpluris shall establish and maintain the Settlement Website which will contain relevant documents, including the Long Form Notice; Claim Form (which shall include a summary of the Parties' respective litigation positions, the general terms of the Settlement, instructions for how to object or opt-out of the Settlement, the process and instructions for making Settlement Claims, and the date, time, and place of the Final Approval Hearing); the Consolidated Complaint; the Settlement Agreement; Plaintiffs' Motion for Preliminary Approval of the Settlement; the Preliminary Approval Order; and, once filed, Class Counsel's motion for attorneys' fees and expenses and Motion for Final Approval. S.A. ¶¶ 2.41, 7.1.4; Joint Decl. ¶ 59. The Settlement Website shall also include a toll-free telephone number, email address, and mailing address through which Settlement Class Members may contact the Settlement Administrator. *Id.* Simpluris will also be responsible to account for all the claims made and exclusions requested, determining validity of claims and eligibility of Settlement Class Members, and disbursing funds from the Qualified Settlement Fund directly to Settlement Class Members. S.A. ¶¶ 7.1.1-7.1.2.

### 5. Attorneys' Fees and Expenses

Any Attorneys' Fees and Expenses approved by the Court will be paid separately by TMX. Joint Decl. ¶ 46. Class Counsel will separately seek an award of attorneys' fees and expenses of not more than $5,750,000.00 (five million seven hundred fifty thousand dollars) in combined

Attorneys' Fees and Expenses. *Id.*; S.A. ¶¶ 2.5, 16.1. Plaintiffs' request for Attorneys' Fees and Expenses will be filed at least fourteen (14) days before the Objection Deadline. Joint Decl. ¶ 47; S.A. ¶16.1.

## III.    LEGAL STANDARD

Under Fed. R. Civ. P. 23(e), a class action may be settled only with court approval, which requires the court to find the settlement "fair, reasonable, and adequate." *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021); *see also McGaffin v. Argos USA, LLC*, No. 4:16-cv-104, 2020 WL 1493929, at *2 (S.D. Ga. Mar. 24, 2020). Fed. R. Civ. P. 23(e) provides three steps for the approval of a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate. *See generally* Fed. R. Civ. P. 23(e). Courts in this Circuit have held that first the Court must conduct a preliminary review to determine whether the proposed class settlement "is within the range of possible approval." *Fresco v. Auto Data Direct, Inc.*, No. 03–61063–CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 11, 2007) (internal citations omitted); *see also* Manual for Complex Litigation (Third) § 30.41 (1995). This involves both preliminary certification of the class and an initial assessment of the proposed settlement. *Id.* Plaintiffs request that the Court preliminarily approve the proposed Settlement, the first step in approving a class action settlement in accordance with Fed. R. Civ. P. 23(e).

During the preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." Manual for Complex Litigation (Fourth), § 21.662 (2012). There is a strong

judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Generally, a large amount of discretion is afforded to courts in approving class action settlements, and the Eleventh Circuit has held the "degree of deference to a decision approving a class action settlement makes sense . . . [s]ettlements resolve differences and bring parties together for a common resolution." *In re Equifax*, 999 F.3d at 1273 (internal citations omitted).

## IV.    ARGUMENT

### A.  Certification of the Settlement Class is Appropriate.

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For the Court to certify a class, Plaintiffs must satisfy all of the requirements of Rule 23(a) and one of the requirements of Rule 23(b). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). Here, Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3), which provides that certification is appropriate when common question of law or fact for plaintiffs' claims predominate over any individual issues and a showing that the class action mechanism is the superior method for efficiently handling the case. Fed. R. Civ. P. 23(b)(3). As discussed below, these requirements are met here for settlement purposes.

#### 1.  Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). "[T]o demonstrate numerosity, "plaintiffs need not prove that joinder is impossible; rather, plaintiffs 'need only show

that it would be extremely difficult or inconvenient to join all members of the class.'" *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 554 (N.D. Ga. 2007), quoting *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1384 (N.D. Ga. 1997). Here, the joinder of 4.8 million Settlement Class Members would certainly be impracticable, and, thus, the numerosity element is satisfied.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The claims turn on whether TMX's security environment was adequate to protect Settlement Class Members' Personal Information. Resolution of that inquiry revolves around evidence that does not vary from Settlement Class Member to Settlement Class Member, and for purposes of settlement can be fairly resolved for all Settlement Class Members at once. Courts in this circuit have previously addressed this requirement in the context of cybersecurity incident class actions and found it satisfied. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL 256132, at *11 (N.D. Ga. Mar. 17, 2020), citing *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding that multiple common issues center on the defendant's conduct, satisfying the commonality requirement).

### 3. Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. In the *Equifax* MDL, Judge Thrash found that the typicality requirement had been met as "[t]he claims are also based on the same overarching legal theory that [Defendant] failed in its common-law duty to protect their personal information." *In re Equifax*, 2020 WL 256132, at *12.

Here, the claims all involve TMX's conduct toward the Settlement Class Members, and the Settlement Class Representatives' claims and the Class's claims are based on the same legal theories making the Settlement Class Representatives' typical of those of the claims of the Settlement Class.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For this analysis, courts consider: "(1) whether [the class representatives] have interests antagonistic to the interests of other class members; and (2) whether the proposed class counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall*, 258 F.R.D. at 555. Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 594.

The Settlement Class Representatives have no conflicts with the Settlement Class and have participated actively in the case. Joint Decl. ¶ 64. Moreover, Class Counsel have significant experience in handling data privacy class actions like this one. *Id.*, at ¶¶ 49-56.

### 5. Certification under Rule 23(b)(3) is appropriate.

Plaintiffs seek to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. Rule 23(b)(3) requires that "questions of law or fact common to

class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Equifax*, 999 F.3d at 1275. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, making a showing of manageability at trial not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial.").

### a. *Common Questions of Law and Fact Predominate.*

For purpose of settlement, the common factual and legal questions all cut to the issues at the heart of this litigation. *See Klay v. Humana, Inc*., 382 F.3d 1241, 1264 (11th Cir. 2004) ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met."). Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Settlement Class Member. As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied for purposes of this settlement.

### b. *A Class is the Superior Method of Adjudicating this Case.*

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied for the purpose of this settlement. *See* Fed. R. Civ. P. 23(b)(3). A superiority analysis pursuant to rule

17

23(b)(3) involves an examination of "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010) (internal quotation omitted). The focus is on the efficiency of the class method. *In re Equifax*, 2020 WL 256132 at *14. The Agreement provides Settlement Class Members with certain relief and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Member to object to it or to request exclusion. Joint Decl. ¶ 43. Moreover, there is no indication that Settlement Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources required to prosecute such an action. *See Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017) (describing "the ways in which the high likelihood of a low per-class-member recovery militates in favor of class adjudication").

Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Settlement Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620.

Thus, the Court may certify the Settlement Class for settlement under Rule 23(b)(3).

**B.  The Proposed Settlement Satisfies the Standard for Preliminary Approval.**

After it has been determined that certification of the Settlement Class is appropriate, the Court must then determine whether the Settlement Agreement is worthy of preliminary approval of providing notice to the class. Courts in this Circuit have held that preliminary approval is appropriate "where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (internal quotations omitted). Other courts have looked to the *Bennett* factors to determine whether preliminary approval is appropriate. The *Bennett* factors include,

> (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.

*Columbus Drywall*, 258 F.R.D. at 558-59, quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Settlement warrants preliminary approval under each approach.

### 1. The proposed Settlement was reached after serious, informed, and arm's-length negotiations.

First, arm's-length negotiations conducted by competent counsel with the assistance of a third-party mediator support finding that the settlement is fair. *See Cole v. Stateserv Med. of Fla., LLC*, No. 8:17-cv-829, 2018 WL 3860263, at *2 (M.D. Fla. June 19, 2018). In this case, the Settlement was the result of intensive, arm's-length negotiations between attorneys with  vast experience handling data breach class action cases under the guidance of an experienced mediator through a full day of in-person mediation and numerous additional conferences amongst counsel. Joint Decl. ¶¶ 17-25. Settlement negotiations were ongoing while the case was intensely litigated and took place over the course of an entire year. *Id.* There is no  evidence that  any collusion or illegality existed during settlement negotiations. *Id.* ¶ 26. Class Counsel support

the Settlement as fair and reasonable, and all certify that it was reached at arm's length. *Id*. ¶¶ 17, 28.

###### 2. The proposed Settlement falls within the range of reasonableness and has no obvious deficiencies and, thus, warrants issuance of notice and a hearing on final approval of settlement.

Although Plaintiffs believe that the claims asserted in the Class Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendants poses significant risks that make any recovery for the Settlement Class uncertain. The Settlement's fairness is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. Despite the risks involved with further litigation, the Settlement Agreement provides outstanding benefits as Settlement Class Members can claim a cash payment of up to $35.00 (thirty-five dollars) per Class Member with little effort and can claim up to an additional $500.00 (five hundred dollars) by providing documentation. Joint Decl. ¶¶ 31-32. Additionally, any Settlement Class Members that do not file a claim and have debt with TMX Subsidiaries, will automatically receive up to $20.00 (twenty dollars) in debt reduction. *Id*., ¶ 33. All Settlement Class Members further benefit by the data security enhancements committed to by TMX as part of this Settlement. *Id.*, 36. There are no grounds to doubt the fairness of the Settlement or other obvious deficiencies.

###### 3. The *Bennett* factors support preliminary approval.

Although typically a consideration at the final approval stage, here, the *Bennett* factors still point towards preliminary approval. *First*, the benefits of settlement outweigh the risk of trial. Here, Settlement Class Members can elect a cash payment of $35.00 (thirty-five dollars) per Class Member and may also submit a claim for up to $500.00 (five hundred dollars) for documented out-of-pocket losses. Joint Decl. ¶¶ 31-32. And, for those Settlement Class Members that do nothing

for whatever reason upon receiving the claims notice, they will automatically receive a one-time credit of $20.00 (twenty dollars) applied to any outstanding balance owed to TMX Subsidiaries. *Id.*, ¶ 33. It was important to Class Counsel to try to obtain a benefit for Settlement Class Members as a result of the Settlement even if they do not act upon receipt of the claims notice. *Id.*  The Settlement Class will also receive the benefit of information security enhancements implemented by TMX, another important piece negotiated by Class Counsel to protect Settlement Class Members into the future. Joint Decl. ¶ 36. As Judge Thrash noted when approving the *Equifax* settlement, "[Defendant] would likely renew its arguments under Georgia law that it has no legal duty to safeguard personal information, arguments that were strengthened following the Supreme Court of Georgia's decisions in *Georgia Dep't of Labor v. McConnell*, 828 S.E.2d 352 (Ga. 2019)." *In re Equifax*, 2020 WL 256132, at *7. Here, TMX would likely assert the same argument, and, although Plaintiffs believe they have strong arguments to counter these potential arguments, the Settlement's benefits outweigh the risk of trial.

*Second* and *third*, the Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. The second and third *Bennett* factors are often considered together. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlement falls within the range of fair recoveries. *Columbus Drywall*, 258 F.R.D. at 559. Here, Settlement Class Members have the ability to claim a cash payment of $35.00 (thirty-five dollars) per Settlement Class Member for any harm or losses related to the Data Breach without any required documentation and may also submit a claim for up to $500 (five hundred dollars) for documented monetary losses fairly

traceable to the Data Breach. S.A. ¶¶ 5.1.1, 5.1.2; Joint Decl. ¶¶ 31-32. And, if they do nothing, Settlement Class Members will receive a one-time credit of $20.00 (twenty dollars) applied to an outstanding balance owed to TMX. S.A. ¶ 5.2; Joint Decl. ¶ 33.

*Fourth,* continued litigation would be lengthy and expensive. As discussed in the first prong of the *Bennett* factors, data breach litigation is often difficult and complex, particularly in Georgia. A settlement here is beneficial to all parties, including the Court. *Woodward v. NOR–AM Chem. Co.*, No. Civ-94-0870, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996) ("Complex litigation . . . 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'"), quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493.

*Fifth*, there has not been any opposition to the Settlement. This factor is better considered after notice has been provided to Settlement Class Members and they are given the opportunity to object. *See Columbus Drywall*, 258 F.R.D. at 561. Thus, at this point, this factor should not weigh heavily in the analysis.

*Sixth*, despite resolving at an early stage, Plaintiffs have sufficient information to evaluate the merits and negotiate a fair, adequate, and reasonable settlement. Courts have approved settlements at early stages of the litigation. *See, e.g., Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) (affirming approval of settlement with little discovery); *see also Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) (holding that early settlements are to be encouraged, and, accordingly, only some reasonable amount of discovery is required to determine the fairness of the settlement). The case has been thoroughly investigated by Class Counsel experienced in data breach litigation. Defendants filed a Motion to Dismiss, which was fully briefed by the Parties. Joint Decl. ¶ 10. Defendants also filed a Motion to Compel Arbitration and

Dismiss, or, Alternatively, Stay Action Pending Arbitration. *Id.*, ¶ 11. In response, Plaintiffs filed a Motion for Discovery Related to Defendants' Motion to Compel Arbitration, which was fully briefed by the Parties. *Id.*, ¶ 12. Moreover, Counsel's exchange of Rule 408 discovery has ensured a fair, reasonable, and adequate settlement worthy of preliminary approval. *Id.*, ¶ 9.

Accordingly, the Court should find that the proposed Settlement is fair, reasonable, and adequately protects the interests of the proposed Class.

### C. The Court Should Appoint the Proposed Settlement Class Representatives, Class Counsel, and Settlement Administrator.

Settlement Class Representatives seek to be appointed to serve as representatives for the Class. As discussed above, Settlement Class Representatives have cooperated with Class Counsel, assisted in the preparation of the Complaints and other filings, responded to inquiries from Class Counsel, and provided information and documents to Class Counsel. Settlement Class Representatives were available for discussion regarding resolution of the case. Moreover, Settlement Class Representatives are committed to continuing to vigorously prosecute this case, including overseeing the Notice Plan, and defending the Settlement Agreement against any objectors, all the way through the Court's final approval. Because they are adequate representatives, the Court should appoint the Settlement Class Representatives as representatives for the Settlement Class. Additionally, for the reasons previously discussed with respect to adequacy of representation, the Court should designate MaryBeth V. Gibson of Gibson Consumer Law Group, LLC, Kelly K. Iverson of Lynch Carpenter, LLP, and Amy Keller of DiCello Levitt LLP as Settlement Class Counsel.

Finally, the Parties have agreed that Simpluris, Inc. shall act as Settlement Administrator. Simpluris and its principals have a long history of successful settlement administrations in class actions. Simpluris Decl. ¶ 3.

**D.  The Proposed Form and Manner of Notice to the Class is Reasonable and Should be Approved.**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notice Plan set forth in the Settlement Agreement provides the best notice practicable under the circumstances. The Parties negotiated the form of the Notice with the aid of a professional notice provider, Simpluris. *See* S.A., Exhibits A and B.  The Notice will be disseminated to all persons who fall within the definition of the Class. TMX shall provide the Settlement Administrator with available contact information for Settlement Class Members, *i.e.*, the Class List.  As set forth in and consistent with the Notice Plan, notice of the Settlement will be provided by a single postcard via U.S. mail (where the Class List contains postal address information) and otherwise via email.  A reminder notice to Settlement Class Members who have yet to submit claims shall be sent via email as set forth in the Notice Plan.  In addition, Simpluris will administer the Settlement Website and toll-free number providing important and up-to-date information about the Settlement. Simpluris Decl. at ¶¶ 4-12.

Moreover, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed Notice Plan satisfies the requirements of Rule 23(h)(1), as it

notifies Settlement Class Members that Class Counsel will apply to the Court for attorneys' fees and expenses of not more than $5,750,000.00 (five million seven hundred fifty thousand dollars). Additionally, the fee motion will be posted on the Settlement Website upon filing. The Notice Plan complies with Fed. R. Civ. P. 23 and due process because, among other things, it informs Settlement Class Members of: (1) the nature of the action; (2) the essential terms of the Settlement, including the definition of the Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that Settlement Class Members may make an appearance through counsel; (5) information regarding the payment of proposed Class Counsel fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the Notice Plan and Notice are designed to be the best practicable under the circumstances, apprise Settlement Class Members of the pendency of the action, and give them an opportunity to object or exclude themselves from the Settlement. *See Agnone v. Camden Cnty.*, No. 2:14-cv-00024-LGW-BKE, 2019 WL 1368634, at *9 (S.D. Ga. Mar. 26, 2019) (finding class notice mailed directly to settlement class members was the best practicable and satisfied concerns of due process). Thus, the Notice Plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

### E.  The Court Should Approve a Settlement Schedule

Plaintiffs request that the Court set a settlement schedule that would include, *inter alia*, deadlines for notice to Settlement Class Members; for Settlement Class Members to object to the Settlement, to opt out of the Settlement, and to make claims under the Settlement; and for the filing of papers in support of final approval and in support of attorneys' fees and expenses. A proposed schedule is included in the proposed Preliminary Approval Order which is attached to

the Settlement Agreement as Exhibit E. The Court will determine through the Final Approval Hearing whether the Settlement should be approved.

<u>**CONCLUSION**</u>

For these reasons, Plaintiffs and Class Counsel respectfully ask the Court to enter an Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

Respectfully submitted this 27th day of February, 2025.

*/s/ Rebecca Franklin Harris*
Rebecca Franklin Harris
Georgia Bar No. 141350
**Franklin Law, LLC**
2250 East Victory Drive
Suite 102
Savannah, Georgia 31404
Tel. 912.335.3305
rebecca@franklinlawllc.com

*Interim Chair of Plaintiffs' Steering Committee*

*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson
Georgia Bar No. 725843
**Gibson Consumer Law Group, LLC**
4279 Roswell Road
Suite 208-108
Atlanta, GA 30342
Telephone: (678) 642-2503
marybeth@gibsonconsumerlawgroup.com

*/s/ Kelly Iverson*
Kelly Iverson
*Pro Hac Vice*
**Lynch Carpenter, LLP**
1133 Penn Avenue
5th Floor
Pittsburgh, Pennsylvania 15222
Tel. 412.322.9243
kelly@lcllp.com

*/s/ Amy Keller*
Amy Keller

*Pro Hac Vice*
**DiCello Levitt LLP**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
Tel. 312.214.7900
akeller@dicellolevitt.com

***Interim Co-Lead Counsel***

Thomas A. Withers
Georgia Bar No. 772250
**Withers Law Firm, P.C.**
8 East Liberty Street
Savannah, GA 31401
Tel. 912.447.8400
twithers@witherslawfirmpc.com

***Interim Liaison Counsel***

## CERTIFICATE OF SERVICE

I certify that on February 27, 2025, I caused the foregoing to be served upon counsel of record by and through the Court's CM/ECF system.

*/s/ Rebecca Franklin Harris*
Rebecca Franklin Harris
Georgia Bar No. 141350
**Franklin Law, LLC**