## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

|  |  |
|---|---|
| SAVANNAH KOLSTEDT, *et al.*, individually and on behalf of all others similarly situated, | Case No. 4:23-cv-00076-RSB-CLR |
| Plaintiffs, | Hon. R. Stan Baker |
| v. | |
| TMX FINANCE CORPORATE SERVICES, INC., TMX FINANCE LLC d/b/a "TitleMax" d/b/a "TitleBucks" d/b/a "InstaLoan," | |
| Defendants. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FINAL CERTIFICATION OF SETTLEMENT CLASS AND SUPPORTING MEMORANDUM

## INTRODUCTION

Plaintiffs[1] respectfully move for Final Approval of the Settlement pursuant to Rule 23(e), which will resolve all claims against Defendants TMX Finance Corporate Services, Inc. and TMX Finance LLC (collectively, "Defendants" or "TMX"). In support of their Motion, Plaintiffs rely on the Settlement Agreement and attachments, (ECF No. 156-1) ("S.A."), Plaintiffs' Supplemental Consent Motion for Preliminary Approval of Class Action Settlement and Preliminary Certification of Settlement Class and Supporting Memorandum (ECF No. 156), the Joint Declaration of Plaintiffs' Interim Co-Lead Counsel Supporting Consent Motion for Preliminary Approval of Class Action Settlement (ECF No. 156-2) ("Joint Decl."), Plaintiffs' Motion for Attorneys' Fees and Expenses and Supporting Memorandum (ECF No. 162),  Class Counsel's Declaration in Support of Plaintiffs' Motion for an Award of Reasonable Attorneys' Fees and Expenses (ECF No. 162-1) ("Fee Decl."), the Joint Declaration of Co-Lead Counsel in Support of Final Approval attached as Exhibit 1 ("Joint Decl." or "**Ex. 1**"), and the Declaration of Shelby Alvey, Simpluris, Inc., attached as Exhibit 2 ("Simpluris Decl." or "**Ex. 2**")**.**

Final Approval should be granted because the Settlement provides substantial relief for the Settlement Class. The Settlement provides for up to $4,500,000 to Settlement Class Members for Undocumented Losses or Harm fairly traceable to the Data Breach and up to $2,000,000 to Settlement Class Members for Documented Out-of-Pocket Losses fairly traceable to the Data Breach. Additionally, the Settlement provides for debt reduction for Settlement Class Members who have an outstanding balance owed to TMX Finance LLC's subsidiaries. Finally, the Settlement provides that TMX will continue its enhanced data security infrastructure for at least

---

[1] Unless otherwise defined herein, all capitalized terms have the same definitions as those set forth in the proposed Settlement Agreement.

three years following the execution of this Agreement. The Settlement's terms are well within the range of reasonableness and granting Final Approval is consistent with applicable law.

Pursuant to the Court's Preliminary Approval Order, ECF No. 157, Notice was sent to Settlement Class Members under the Notice Program set forth in the Settlement Agreement and in the Settlement Administrator's declaration in support of preliminary approval. ECF No. 156-1 at 76–79. The Notice results are overwhelmingly positive. To date, zero members of the Settlement Class have objected to the Settlement, and only twenty-six have opted-out. *See* Ex. 2, ¶¶ 19-20.

As detailed below, the Settlement easily satisfies all the criteria for Final Approval. Accordingly, Plaintiffs respectfully request entry of a Final Approval Order: (1) granting Final Approval to the Settlement; (2) finally certifying the Settlement Class, for settlement purposes, pursuant to Federal Rule of Civil Procedure 23; (3) finally appointing Plaintiffs as Settlement Class Representatives; (4) finally appointing MaryBeth V. Gibson of Gibson Consumer Law Group, LLC, Kelly K. Iverson of Lynch Carpenter, LLP, and Amy Keller of DiCello Levitt LLP as Class Counsel for the Settlement Class; and (5) entering Final Judgment dismissing the Action with prejudice and reserving jurisdiction over the Settlement's implementation.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    History of Litigation

For the sake of brevity, Plaintiffs incorporate by reference the History of Litigation set forth in their Supplemental Consent Motion for Preliminary Approval of Class Action Settlement and Preliminary Certification of Settlement Class and Supporting Memorandum at ECF No. 156, 3–5 and the Joint Decl. ¶¶ 1–16; *see also* Fee Decl. ¶¶ 1-28, 61-64.

## II.    Negotiations and Settlement

The Settlement is the result of protracted arm's-length negotiations and hard bargaining, including a full-day in-person mediation session with retired Judge Diane Welsh. Joint Decl. ¶¶ 17-28; Fee Decl. ¶¶ 17-28. The Parties thoroughly understood the strengths and weaknesses of the claims in this Action, having exchanged voluminous informal discovery, including, but not limited to, information about the allegations in the Complaint, the purported arbitration agreements, the class size, the types of data impacted in the Data Breach and information supporting Plaintiffs' damages allegations.  Ex. 1 ¶ 25. Through the settlement discovery process, Plaintiffs were able to properly evaluate damages on a class-wide basis. Ex. 1 ¶¶ 25-26. After extensive litigation and negotiations, during the mediation session and then for several months thereafter, the Parties agreed to the terms of the settlement. Fee Decl. ¶¶ 17-28. The Settlement in principle was then negotiated in detail resulting in the thorough Settlement Agreement. Fee Decl. ¶¶ 23-24. This Settlement, if approved, would resolve all claims related to the Data Breach on behalf of the Settlement Class. S.A. § 10. Plaintiffs and Class Counsel strongly believe that this Settlement is fair, reasonable, and adequate, and represents an excellent result for the Settlement Class. Ex. 1 ¶¶ 24-27.

## III.    Summary of Settlement Terms

### A.    Proposed Settlement Class

The proposed Settlement Class that the Court preliminarily certified is defined as:

All residents of the United States whose Personal Information was accessed, stolen, impacted, or compromised as a result of the Data Breach as identified in the Class List. Excluded from the Settlement Class are (i) TMX, any Entity in which TMX has a controlling interest, and TMX's officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement.

3

**B.    Settlement Benefits**

**1.    Cash Payment for Undocumented Losses**

Each Settlement Class Member may elect to take a cash payment of $35 from the Settlement Fund for Undocumented Losses or Harm related to the Data Breach. S.A. ¶ 5.1.1. Settlement Class Members can elect to receive a cash payment by submitting the Claim Form that was mailed or emailed to them and is available on the Settlement Website, www.TMXDataSecuritySettlement.com. Ex. 1 ¶ 21. The Settlement provides for up to $4,500,000 to Settlement Class Members for Undocumented Losses or Harm. S.A. ¶ 5.1.1. Payment to each Settlement Class Member who elects to take the Undocumented Losses or Harm cash payment is capped at $35 pro rata per class member if the aggregate total of claims for Undocumented Losses or Harm exceeds $4,500,000. S.A. ¶ 5.1.1.

**2.    Cash Payment for Documented Out-of-Pocket Losses**

Each Settlement Class Member may elect to take a cash payment of up to $500 from the Settlement Fund for Documented Out-of-Pocket Losses related to the Data Breach. S.A. ¶ 5.1.2. Settlement Class Members can elect to receive a cash payment by submitting the Claim Form that was mailed or emailed to them and is available on the Settlement Website. Ex. 1 ¶ 21. The Settlement provides for up to $2,000,000 to Settlement Class Members for Documented Out-of-Pocket Losses. S.A. ¶ 5.1.2. Payment to each Settlement Class Member who elects to take the Documented Out-of-Pocket Losses cash payment is capped at $500 pro rata per class member if the aggregate total of claims for Documented Out-of-Pocket Losses exceeds $2,000,000. S.A. ¶ 5.1.2.

### 3. Debt Reduction for Settlement Class Members

At the end of the Claims Deadline, any Settlement Class Members who did not submit an Approved Claim under Section 5.1 for Undocumented Losses or Harm or Documented Out-of-Pocket Losses will automatically receive a one-time credit of up to $20 applied to an outstanding balance owed to TMX Finance LLC's subsidiaries. S.A. ¶ 5.2. No cash payment will be made in connection with this benefit. *Id.* This benefit is not subject to a monetary cap. *Id.*

### 4. Debt Reduction for Settlement Class Representatives

Settlement Class Representatives with outstanding balances will have their debt reduced to zero, subject to a $200,000 aggregate cap for all representatives, with pro rata reduction if necessary. S.A. § 5.3.

### 5. Information Security Enhancements

TMX has agreed to implement and maintain specified data security measures for at least three years, including password policies, employee training, multi-factor authentication, least privilege access, and encryption of core transactional databases. S.A. ¶ 6.1. The costs of these enhancements are separate from the settlement fund. *Id.*

### C. Scope of the Release

In exchange for the consideration outlined above and in the Agreement, Settlement Class Members who have not timely and validly excluded themselves from the Settlement will, subject to Final Approval, be deemed to have released Defendants from claims arising from or related to the Data Breach at issue in this Action. S.A. ¶ 12.1, Joint Decl. ¶ 39.

### D. Attorneys' Fees and Expenses

The Parties did not discuss the payment of attorneys' fees, costs, or expenses—other than that TMX would pay reasonable attorneys' fees, costs, and expenses, as may be agreed upon by

TMX and Class Counsel or as ordered by the Court—until after the substantive terms of the settlement had been agreed upon. Joint Decl. ¶ 45. On June 23, 2025, Class Counsel sought an inclusive Attorneys' Fees and Expenses award of $5,750,000, which amounts to 13.5% of the total settlement value ($42,500,000), to be paid separately to Class Counsel by TMX. ECF No. 162, 2. As of June 23, 2025, Plaintiffs have incurred expenses in the amount of $52,238.24. *Id.*

## IV.  The Notice Program, As Implemented, Satisfies Due Process and Rule 23.

Following the issuance of the Court's Preliminary Approval Order, the Settlement Administrator completed the Notice Plan set forth in the Agreement. *See* Ex. 2, ¶¶ 8-16. The Notice Plan was designed to reach as many Settlement Class Members as possible. The Notice Plan included the required description of the material Settlement terms; the Opt-Out Deadline for Settlement Class Members to opt-out of the Settlement Class; the Objection Deadline by which Settlement Class Members may object to the Settlement; the Claims Deadline by which Settlement Class Members may submit claims for cash awards; the Final Approval Hearing date and time; and the Settlement Website address at which Settlement Class Members could access the Long Notice, Settlement Agreement, Claim Form, and other related documents and information. *Id.*; Simpluris Decl. Exhibits B and C.

Pursuant to the Agreement, Simpluris was provided with the Class List to provide Settlement Class Members with direct notice. Ex. 2, ¶ 8. The Class List contained the names and email addresses of 4,887,014 Settlement Class Members. *Id.* Simpluris reviewed the data contained in the Class List, identifying and removing invalid or duplicate mailing records. *Id.* ¶ 9. This final class list contained the mailing addresses of 4,439,465 Settlement Class Members. *Id.* In addition to mailing addresses, Simpluris also received the emails of 420,286 Settlement Class Members from TMX. *Id.* ¶ 8.  Thereafter, on May 8, 2025, Simpluris implemented the Notice

Plan, disseminating Short Notices via mail to 4,439,465 potential Settlement Class Members. *Id.* ¶ 11. Of these, 869,545 Short Notices were returned as undeliverable. *Id.* ¶ 12. Simpluris updated addresses and remailed Short Notices to 561,386 potential Settlement Class Members. *Id.* In total, only 6.3% were undeliverable via mail to potential Settlement Class Members. *Id.*

On May 8, 2025, Simpluris also disseminated Short Notices via email to 420,286 potential Settlement Class Members. *Id.* ¶ 13. Of these, 76,942 email notices bounced back as undeliverable. *Id.* ¶ 14. Of these 76,942, Simpluris successfully delivered an additional 2,546 emails. *Id.* Simpluris also sent supplemental email notices on May 14, 2025, May 21, 2025, and June 17, 2025, to potential Settlement Class Members whose notice had bounced back. *Id.* Simpluris sent a final reminder email notice on June 30, 2025, to 6,195,062 email addresses. *Id.* ¶ 15.

Further, on May 8, 2025, Simpluris established an informational Settlement Website, www.TMXDataSecuritySettlement.com, allowing Settlement Class Members to obtain detailed information about the Action, the Settlement, and to review important documents, including the Long Notice, Settlement Agreement, Claim Form, and other case related documents. *Id.* ¶ 17. Also on May, 8, 2025, the Settlement Administrator established a toll-free telephone number (1-833-296-0855) to allow Settlement Class Members to call for additional information and/or request copies of the Short Notice, Long Notice, and paper Claim Form, as well as the Agreement. *Id.* ¶ 18. This automated phone system is available 24 hours per day, 7 days per week. *Id.*

The deadline to submit an objection or to opt out of Settlement occurred on July 7, 2025. *Id.* ¶¶ 20, 22. To date, zero Settlement Class Members have objected to the Settlement and only twenty-six Settlement Class Members have submitted requests for exclusion. *Id.* ¶¶ 21, 23. Reminder notices were sent on June 30, 2025, and the Claims Deadline does not expire until August 6, 2025.  As of July 25, 2025, Simpluris had received 43,503 Claim Form submissions. *Id.*

¶ 24. Importantly, individuals who maintain a balance with Defendants *do not* have to submit a Claim Form in order to receive Settlement benefits; their debt will automatically be reduced by $20.  This number will be calculated at the end of the claims period. Id. ¶19.

As a result of the Notice Plan, at least 98.9% of the identifiable Settlement Class Members received direct Notice of the Settlement. Ex. 2, ¶ 16. The Notice here was the best notice practicable under the circumstances and fully complied with all requirements of due process and Rule 23.  Accordingly, the Court should find that the Settlement Class was provided the best notice practicable under the circumstances, and that the Notice Plan, as implemented, satisfies the requirements of due process and Rule 23. *See, e.g.*, *Henderson v. Emory Univ.*, No. 1:16-CV-02920-CAP, 2020 WL 9848975, at *3 (N.D. Ga. Nov. 4, 2020).

## ARGUMENT

## I.     The Settlement Should be Finally Approved as Fair, Adequate, and Reasonable

A class action may only be settled with court approval. Fed. R. Civ. P. 23(e)(2). Approval of a class action settlement is proper upon a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). "A settlement is fair, reasonable and adequate when the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1344 (S.D. Fla. 2011) (citation omitted). A court's analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *Cotter v. Checkers Drive-In Restaurants, Inc.*, No. 8:19-CV-1386-VMC-CPT, 2021 WL 3773414, at *7 (M.D. Fla. Aug. 25, 2021) (citation omitted). "The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Id.*

In analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e), courts in this circuit look to six factors (the "*Bennett* factors") identified by the Eleventh Circuit:

> (1) the likelihood of success at trial;
> (2) the range of possible recovery;
> (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable;
> (4) the complexity, expense and duration of litigation;
> (5) the substance and amount of opposition to the settlement; and
> (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984).  Additionally, Federal Rule of Civil Procedure 23(e)(2) requires the Court to "consider[] whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Burrow v. Forjas Taurus S.A.*, No. 16-21606-CIV, 2019 WL 4247284, at *7 (S.D. Fla. Sept. 6, 2019) (noting the *Bennett* factors are analogous with those identified by Rule 23(e)(2)).[2] A review of these factors supports the conclusion that the Settlement is fair, reasonable, and adequate, and should be finally approved.

---

[2] Plaintiffs have incorporated the considerations of Fed. R. Civ. P. 23(e)(2) as part of their discussion of the *Bennett* factors.

A.    **The Settlement is Fair, Reasonable, and Adequate Because it Satisfies the** ***Bennett*** **Factors**

1.    **Plaintiffs Faced Meaningful Obstacles to Success**

In analyzing the first *Bennett* factor, "[t]he likelihood of success on the merits is weighed against the amount and form or relief contained in the settlement." *Berman*, 2019 WL 6163798, at *4 (citation omitted). A critical factor in assessing whether the class is made better off by settling is the probability of success if the case were tried. *Home Depot*, 2016 WL 6902351, at *5. Where success at trial is uncertain, this factor weighs in favor of final approval. *Cotter*, 2021 WL 3773414, at *8 ("The uncertainty of recovery suggests that the Settlement Agreement is a better alternative for Plaintiffs and the class versus continued litigation.").

Although Plaintiffs believe that the claims asserted in the Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendants poses significant risks that make any recovery for the Settlement Class uncertain. Plaintiffs here, as in any complex class action, faced risks in establishing liability and damages on a class-wide basis in their pending class certification motion; prevailing on Defendant's pending motion to compel arbitration; prevailing on any appeals; and prevailing at trial. If Plaintiffs did not prevail on any of these issues, they faced the risk of recovering nothing for themselves and the Settlement Class. *See Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result.").

Importantly, this Settlement was negotiated and achieved while caselaw related to data breaches was developing.   Recently, the Eleventh Circuit vacated and remanded a class certification opinion in one of the first cases to be certified to proceed to trial as a class action. *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023), *cert. denied sub nom. Brinker*

*Int'l, Inc. v. Steinmetz*, 144 S. Ct. 1457 (2024).  On remand, the Court denied class certification. *Theus v. Brinker Int'l, Inc.*, No. 18-cv-00686, 2025 WL 1786346 (M.D. Fla. June 27, 2025).  In another case involving class action waivers, which are included in the purported arbitration agreements in this case, the Fourth Circuit recently reversed a class certification opinion. *Maldini, et al. v. Marriott Int'l, Inc., et al*, 140 F.4th 123 (4th Cir. 2025).  These results occurred only after years of litigation, calling into question whether class members may achieve any relief at all. While Plaintiffs believe that they have valid and unique arguments concerning the facts of this case, one cannot ignore the significant developing precedent that would present hurdles for the named Plaintiffs.

This developing precedent makes it very difficult to determine what Plaintiffs and Class Members would have achieved had the case proceeded to trial; no nationwide class action data breach case has proceeded to trial in the federal court system.  Instead, most of the cases have either settled, or been dismissed entirely after years of litigation.  *See In re Blackbaud Inc. Customer Data Security Breach Litig.*, No. 20-mn-02972, ECF No. 566 (D.S.C. June 10, 2025) (case ultimately resolved individually for named plaintiffs after five years of litigation, briefing on summary judgment, and after the district court denied Plaintiffs' two class certification motions); *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA, 2022 WL 18107626, at *1 (E.D. Va. Sept. 13, 2022) (finally approving settlement of $190 million for  a class of 98 million individuals impacted in a data breach); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021) (affirming in relevant part settlement of a nationwide class action after several years of litigation for $505.5 million for 147 million individuals).  But using the automatic debt relief as a benchmark ($20, the lowest amount available under the Settlement), this settlement provides relief on the higher end of other data breach settlements.  *See Katz-Lacabe*

*v. Oracle Am., Inc.*, No. 3:22-CV-04792-RS, 2024 WL 4804974, at *3 (N.D. Cal. Nov. 15, 2024),

*appeal dismissed,* No. 24-7650, 2025 WL 1703624 (9th Cir. Apr. 3, 2025) (favorably noting that

the settlement would provide $25 in compensation to valid claimants); *Kostka v. Dickey's Barbecue*

*Restaurants, Inc.*, No. 3:20-CV-03424-K, 2022 WL 16821685, at *12 (N.D. Tex. Oct. 14, 2022),

*report and recommendation adopted*, No. 3:20-CV-03424-K, 2022 WL 16821665 (N.D. Tex. Nov.

8, 2022) (finding that $2,350,000 for 725,000 class members (or $3.24 per person) is "in line with

if not better than what any proposed plaintiff could have expected coming into the litigation" and

"surpasses the settlements approved" in other, major data breach cases).

### 2.    The Benefits Provided by the Settlement Are Fair Adequate and Reasonable Compared to the Range of Possible Recoveries

The second and third *Bennett* factors are often considered together. *See Burrows v.*

*Purchasing Power, LLC,* No. 1:12-CV-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013).

"The range of potential recovery 'spans from a finding of non-liability through varying levels of

injunctive relief,' in addition to any monetary benefits to class members." *Home Depot*, 2016 WL

6902351, at *6 (citation omitted). "In determining whether a settlement is fair in light of the

potential range of recovery, the Court is guided by the important maxim [ ] that the fact that a

proposed settlement amounts to only a fraction of the potential recovery does not mean the

settlement is unfair or inadequate." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1250 (S.D.

Fla. 2016) (citation omitted). "It is important that the Court weigh the benefits Class members will

receive from the settlement against the risks of moving forward and recovering nothing." *Id.*

As discussed above, the Settlement's fairness is underscored by consideration of the

obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as

the expense and likely duration of continuing litigation through trial and likely appeals. *See In re*

*Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1348 (S.D. Fla. 2011) ("Had [defendant]

attempted to enforce, and succeeded in enforcing, its arbitration provision, the value of this case would have been significantly reduced."). Despite the risks involved with further litigation, the Settlement provides outstanding benefits as Settlement Class Members can file claims for up to $535 cash per class member. The Settlement also accomplishes Class Counsel's goal of delivering relief to all Settlement Class members, even those that do not file a claim. Joint Decl. ¶ 33. Class members who take no action will automatically receive up to $20 in debt reduction and will benefit from the investments Defendants are making to enhance data security.

These benefits compare favorably to those frequently approved in other class action settlements in data breach actions like this one. *See Barr v. Drizly, LLC*, No. 1:20-CV-11492, 2021 WL 5149982 (D. Mass. Nov. 4, 2021) (approving settlement that allowed class members to receive pro rata cash payment of $14 and pro rata credit up to $1.99 that could be used for future orders from defendant); *In re Zappos Security Breach Litig.*, No. 12-cv-00325, 2019 WL 12026706, at *2 (D. Nev. Dec. 23, 2019) (approving settlement that provided a 10% coupon for future purchases from defendant). If this case proceeded to trial, Plaintiffs' and Settlement Class Members' actual damages would range from the costs of providing credit monitoring to damages for fraud and identity theft. Given the reasonableness of the Settlement when weighed against the risks of continued litigation and the generous recovery compared to other settlements, the Settlement is well within the range of reasonableness warranting final approval.

### 3.    The Settlement Will Avoid Years of Complex and Expensive Litigation

Fourth, under this factor, the Court "consider[s] the vagaries of litigation and compare[s] the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Berman v. Gen. Motors LLC*, No. 2:18-CV-14371, 2019 WL 6163798, at *6 (S.D. Fla. Nov. 18, 2019) (citation omitted). "The law favors

compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations." *Id.* (citation omitted). "Complex litigation . . . 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'" *Woodward v. NOR-AM Chem. Co.*, No. Civ-94-0870, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996) (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)). Here, continued litigation would entail a lengthy and expensive legal battle that may result in no relief or substantially delayed relief to the Settlement Class. *See Cotter*, 2021 WL 3773414, at *9 (recognizing that the issues raised in data breach cases are complex and the law is ever evolving). Had the parties not reached a settlement, both parties faced risks in the pending motions to dismiss and to compel arbitration, and in anticipated motions for class certification and summary judgment, with the unsuccessful party likely to file appeals on any of these decisions. Furthermore, if the litigation continued, the parties would be required to continue to retain costly experts to perform data analyses and to present those analyses in expert reports at trial.

In contrast, the Settlement avoids this outcome; ends the litigation; saves the parties and Court considerable time, effort, and money; and provides immediate and substantial relief to the Settlement Class. *See, e.g.*, *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *6 (N.D. Ga. Aug. 23, 2016) ("The guaranteed and immediate recovery for the Settlement Class made available by this Settlement far outweighs the mere possibility of future relief after lengthy and expensive litigation."). For these reasons, this factor weighs in favor of final approval.

### 4. The Opinions of Class Counsel, the Plaintiffs, and Absent Settlement Class Members Favor Final Approval

Fifth, the fairness of the Settlement is enthusiastically endorsed by experienced Class Counsel and supported by the Settlement Class Representatives. Joint Decl. ¶ 28. This is strong evidence that the Settlement is fair, reasonable, and adequate. *Morgan*, 301 F. Supp. 3d at 1251 ("The endorsement of well-informed, experienced class action attorneys is strong support for the final approval of a settlement."); *Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe that these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement.").

Moreover, no Settlement Class Member have objected to the Settlement and only twenty-six have opted out, demonstrating support of the Settlement from the approximately 4,800,000-member Settlement Class as a whole. *See, e.g.*, *Home Depot*, 2016 WL 6902351, at *4 (that the number of objectors amounts to an "infinitesimal percentage" of the class indicates "strong support for the settlement" and weighs strongly in favor of final approval."); *In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11320088, at *10 (S.D. Fla. Aug. 2, 2013) ("[T]he Court also finds it telling that, of over 27,490 members of the Settlement Class, only two members of the Settlement Class have requested to be excluded from, and no Settlement Class Members have objected to the Settlement.").

### 5. The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment Regarding the Litigation and the Settlement

The sixth *Bennett* factor considers "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *Checking Acct.*, 830 F. Supp. 2d at 1348 (citation omitted).

"At the same time, '[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations.'" *Id.* (citation omitted).

The parties have engaged in extensive informal discovery including, *inter alia*, extensive document production and written discovery, which provided the information Class Counsel needed to objectively evaluate the strengths and weaknesses of Plaintiffs' and Settlement Class Members' claims. Joint Decl. ¶ 18–28. Additionally, mediation provided the information Class Counsel needed to objectively evaluate the strengths and weaknesses of Plaintiffs' and Settlement Class Members' claims. *Id.* ¶ 19. At its current stage, the litigation is ripe for settlement, as Class Counsel developed ample information and performed analyses from which "to determine the probability of . . . success on the merits, the possible range of recovery, and the likely expense and duration of the litigation." *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988); *see also Cotter*, 2021 WL 3773414, at *9 (similar). For these reasons, this factor favors final approval. Upon its Preliminary Approval Order on March 25, 2025, this Court stayed and suspended all other claims against TMX pending the Final Approval hearing and issuance of the Final Approval Order and Judgment. ECF No. 157 ¶ 24. If Final Approval is not granted, Plaintiffs will be forced to continue litigating the issue of whether they are bound by enforceable arbitration clauses, as Defendants allege. TMX's success in compelling individual arbitration will depend on whether Defendants can provide they have a binding contract for arbitration with Plaintiffs and/or whether Plaintiffs can prove the existence of recognized contract defense. *See* 9 U.S.C. § 2 (arbitration agreement enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract"). Given the risks and expenses of continued litigation, including that Plaintiffs and the Settlement Class might receive nothing, the Settlement provides relief and protections for the

Settlement Class now and ensures some recovery against Defendants. As such, this factor weighs in favor of final approval.

### B.      The Settlement Occurred at Arm's Length

The court must also consider whether the settlement "proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Arm's-length negotiations conducted by competent counsel with the assistance of a third-party mediator support a finding that the settlement is far. *See Cole v. Stateserv Med. Of Fla., LLC*, No. 8:17-cv-829, 2018 WL 3860263, at *2 (M.D. Fla. June 19, 2018). This Settlement was the result of intensive, arm's-length negotiations between experienced attorneys with vast experience handling data breach class action cases. Joint Decl. ¶¶ 17-28. The settlement negotiations here took place over the course of several months and an agreement in principle reached only with the guidance of a neutral mediator, Retired Judge Diane Welsh. *Id.* There is no evidence that any collusion or illegality existed during settlement negotiations. *Id.* ¶ 26.; *see Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."); *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"). For these reasons, the court should grant final approval.

### C.      Attorneys' Fees and Expenses are Reasonable

Federal Rule of Civil Procedure 23(h) allows a district court supervising a class action to "award reasonable attorney's fees and nontaxable costs that are authorized by law." Fed. R. Civ. P. 23(h). "[D]istrict courts have great latitude in setting fee awards in class action cases. *In re Home Depot Inc. Customer Data Sec. Breach Litig.*, 931 F.3d 1065, 1078 (11th Cir. 2019) (internal

quotation and citation omitted). "Courts generally analyze the reasonableness of attorneys' fees using one of two approaches. Where class action settlements involve a common fund, courts typically base an award of attorneys' fees on the percentage of the common benefit recovered." *See In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, 2019 WL 2720818, at *2 (N.D. Ga. June 6, 2019) (citing *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)); *see also Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2001) (fee supported by percentage of common fund approach also fair and reasonable under lodestar approach). The percentage method—as opposed to the lodestar method—is preferred because it aligns the interests of the class and its counsel, ensuring that counsel's compensation is directly tied to the benefit achieved for the class. *In re Equifax*, 999 F.3d at 1280.

Here, the approximate value of the Settlement's cash awards and debt relief for the Settlement Class Members is $42,500,000. Class Counsel seek $5,750,000 in Attorneys' Fees and Expenses, 13.5% of the value of the Settlement, which is modest in comparison to awards typically approved by courts within the Eleventh Circuit. *See e.g. Carnegie v. Mut. Sav. Life Ins. Co.*, No. CIV.A.CV-99S3292NE, 2004 WL 3715446, at *37 (N.D. Ala. Nov. 23, 2004) ("A request for $2.35 million in attorneys' fees, expenses, and costs represents 19.6% of a fund totaling $11.96 million. This is a modest request, given the twenty to thirty percent average fee-range identified by the Eleventh Circuit."); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5–6 (S.D. Fla. Sept. 26, 2012) (noting that fees in this Circuit are "roughly one-third"); T. Eisenberg, et al., *Attorneys' Fees in Class Actions: 2009—2013*, N.Y.U. Law Rev. 937, 951 (2017) (median fee from 2009–2013 was 33%). In addition to providing real value in the form of available cash and/or debt relief to the 4.8 million Settlement Class Members impacted by the Data Breach, the Settlement includes important injunctive relief to protect data which continues to be stored by TMX. S.A. §

18

6. The value of this injunctive relief is not estimated in the value of the Settlement, making the fee percentage likely far less than 13.5%. ECF No. 162, 6. The requested Attorneys' Fees and Expenses award is reasonable under the *Johnson* factors. ECF No. 162, 10–16. Thus, the Court should award Class Counsel's request for reasonable Attorneys' Fees and Expenses in full.

## II.    The Court Should Finally Certify the Settlement Class

Plaintiffs and Class Counsel respectfully request that the Court finally certify the Settlement Class for purposes of settlement. Where, as here, a settlement is reached before a litigation determination of class certification, the court may certify a class for purposes of settlement. *Petersen v. Am. Gen. Life Ins. Co.*, No. 3:14-CV-100-J-39JBT, 2019 WL 11093815, at *2 (M.D. Fla. Apr. 4, 2019). "[W]hether a class is certified for settlement or trial purposes, the Court must find that the prerequisites for class certification under Rule 23(a) and (b) of the Federal Rules of Civil Procedure" are met. *Id.*

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Where, as here, plaintiffs seek to certify a class under Rule 23(b)(3), plaintiffs must also establish that (1) the questions of law or fact common to the class members predominate over individual issues of law or fact; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[3] Fed. R. Civ. P. 23(b)(3). As discussed below, each of these requirements is satisfied, and the Court

---

[3] When assessing superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

should finally certify the Settlement Classes for settlement purposes. *See Home Depot*, 2016 WL 6902351, at *2.

### A.     The Rule 23(a) Requirements Are Satisfied

**Numerosity.** The numerosity requirement of Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). In order to satisfy this requirement, the plaintiff is not required to allege the exact number and identity of the class members, but must only establish that joinder is impracticable through some evidence or a reasonable estimate of the number of purported class members. *Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *16 (S.D. Fla. July 13, 2021) (internal citation omitted). As a rule of thumb, in the Eleventh Circuit, "less than twenty-one is inadequate, more than forty [is] adequate, with numbers between varying according to the other factors." *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013). Here, joinder of over 4,800,000 Settlement Class Members would certainly be impracticable, and thus, the numerosity element is satisfied.

**Commonality.** The commonality requirement of Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Courts in this circuit have previously addressed this requirement in the context of data breach class actions and found that it is readily satisfied. *In re Equifax Inc. Customer Data Sec.*

*Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *12 (N.D. Ga. Mar. 17, 2020); *Home Depot*, 2016 WL 6902351, at *2. Indeed, the common issues present here include whether TMX's security environment was adequate to protect Settlement Class Members' Personal Information. Resolution of that inquiry revolves around evidence that does not vary between Settlement Class Members, and for purposes of settlement, can be fairly resolved for all Settlement Class Members at once. Accordingly, common questions of law and fact abound. *See Home Depot*, 2016 WL 6902351, at *2.

**Typicality.** Rule 23(a)(3)'s typicality requirement is satisfied where the claims of the representative parties are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Courts in this circuit have previously addressed this requirement and have found that it "is readily met in settlements of nationwide data breach class actions." *Equifax*, 2020 WL 256132, at *12. Here, Plaintiffs' and Settlement Class Members' claims all involve TMX's conduct toward the Settlement Class Members. The claims are further based on the same overarching legal theories that Defendants failed to adequately secure their Personal Information. Accordingly, typicality is satisfied.

**Adequacy of Representation.** The final requirement of Rule 23(a) is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For this analysis, courts consider: "(1) whether [the class representatives] have interests antagonistic to the interests of other class members; and (2) whether the proposed class counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall*, 258 F.R.D. at 555. Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997).

Here, adequacy is readily satisfied. First, Settlement Class Representatives have no interests adverse or "antagonistic" to absent Settlement Class Members. Joint. Decl. ¶ 64. Second, Class Counsel have significant experience in handling data privacy class actions like this one. Fee Decl. ¶¶ 51-60. Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied.

### B.     The Rule 23(b) Requirements Are Satisfied

**Predominance.** Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . relief." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). For purpose of settlement, the common factual and legal questions all cut to the issues at the heart of this litigation. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1264 (11th Cir. 2004) ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met."). Here, predominating questions of fact and law include whether Defendants had a duty to exercise reasonable care in maintaining, safeguarding, securing and protecting the Personal Information of Plaintiffs and the Settlement Class; and whether Defendants breached that duty. As recognized by other courts, these common questions that arise from Defendants' conduct predominate over any individualized issues. For these reasons, predominance is satisfied.

**Superiority.** Rule 23(b)(3)'s superiority requirement asks whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A superiority analysis pursuant to Rule 23(b)(3) involves an examination of "the relative advantages of a class action suit over whatever other forms of litigation might be

realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010) (internal quotation omitted). The focus is on the efficiency of the class method. *In re Equifax*, 2020 WL 256132 at \*14.

Here, adjudicating individual actions is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Further, because individual cases would involve a relatively small amount of damages compared to the enormous investment of time and money that it will take to litigate a case against companies like Defendants, individual Settlement Class Members have little interest in and gain little benefit from initiating separate actions. Further, individual lawsuits would needlessly waste judicial resources as each lawsuit would likely involve the same evidence concerning Defendants' alleged wrongdoing. Indeed, this proposed Settlement effectively resolves approximately 4,800,000 individuals' lawsuits. Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620. For these reasons, superiority is satisfied. *Home Depot*, 2016 WL 6902351, at \*2.

Thus, the Court should finally certify the Settlement Class for settlement under Rule 23(b)(3).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion and finally approve the Settlement.

Dated: July 29, 2025

Respectfully submitted,

*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson
Georgia Bar No. 725843
**Gibson Consumer Law Group, LLC**
4279 Roswell Road
Suite 208-108
Atlanta, Georgia 30342
Telephone: (678) 642-2503
marybeth@gibsonconsumerlawgroup.com

*/s/ Kelly Iverson*
Kelly Iverson
*Pro Hac Vice*
**Lynch Carpenter, LLP**
1133 Penn Avenue
5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
kelly@lcllp.com

*/s/ Amy Keller*
Amy Keller
*Pro Hac Vice*
**DiCello Levitt LLP**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
akeller@dicellolevitt.com

***Interim Co-Lead Class Counsel***

*/s/ Rebecca Franklin Harris*
Rebecca Franklin Harris
Georgia Bar No. 141350
Franklin Law, LLC
2250 East Victory Drive
Suite 102
Savannah, Georgia 31404
Tel. 912.335.3305
rebecca@franklinlawllc.com

***Interim Chair of Plaintiffs' Steering Committee***

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 29, 2025, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing and effectuate service to all counsel of record in this matter, pursuant to Local Rule 5.1.

/s/ *MaryBeth V. Gibson*
MaryBeth V. Gibson

**Interim Co-Lead Class Counsel**